UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____ x

VDARE FOUNDATION, INC.

    *Plaintiff*,

  against

LETITIA JAMES, in her official capacity
as Attorney General of the State of New York,

    *Defendant.*

_____ x

Civil Action No: ____-cv-_____

**1:22-cv-1337 (FJS/CFH)**

**VERIFIED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

1

## PARTIES

1. Plaintiff VDARE Foundation, Inc. ("VDARE") is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of New York, but with a principal place of business in Berkeley Springs, West Virginia.

2. VDARE was founded to support the efforts of VDARE.com, a non-profit web magazine. VDARE is a charity registered in the State of New York. VDARE is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources.

3. Defendant Letitia James has been the Attorney General of the State of New York since she was sworn into office on January 1, 2019. Her office is located in Albany, New York. She is sued here in her official capacity. She was Attorney General at all times relevant to this Complaint and has final policymaking authority with respect to her office and is responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the attorneys under her command. Her name appears as the Attorney General on all the subpoenas at issue in this matter.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution, and because this action seeks to prevent state officials from interfering with federal rights. Further, subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges, and immunities secured by the United States

Constitution. This Court has supplemental jurisdiction over state law claims asserted in this action under 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) as the Attorney General has a principal office within it.

5.  There is a present and actual controversy between the parties.

6.  The relief requested is authorized pursuant to 28 U.S.C. § 1343(a)(4) (recovery of damages or equitable relief or any other such relief for the protection of civil rights), 28 U.S.C. § 2201 and 2202 (declaratory and other appropriate relief), 42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the Constitution), and 42 U.S.C. § 1988 (awards of attorneys' fees and costs).

### The Attorney General's Violation of VDARE's First Amendment Rights

7.  VDARE's founder, Peter Brimelow, is a well-known magazine editor, political commentator, columnist and author whose career spans five decades. He has served as an editor and writer at the Wall Street Journal, Financial Post, Macleans, Barron's, Fortune, Forbes, National Review, and MarketWatch. He is a recipient of the Gerald Loeb Award for Distinguished Business and Financial Journalism, was a media fellow at the Hoover Institution, and has been described as "a star of the conservative movement in the 2000s." He is the author of four well-regarded books, including Alien Nation: Common Sense About America's Immigration Disaster (1995), a national bestseller in the United States. He also wrote The Patriot Game: National Dreams and Political Realities (1986), a book on Canadian politics that is credited with spurring the creation of the Reform Party of Canada in 1987; as well as The Wall Street Gurus: How You Can Profit from Investment Newsletters; and The Worm in the Apple: How the Teacher Unions Are Destroying American Education.

3

8. Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States. Throughout its existence, VDARE has published pieces that criticize current United States immigration policy for various reasons and from a variety of angles and perspectives. VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants. Brimelow is himself an immigrant and a naturalized United States citizen. Many of VDARE's editors and contributors, current and former, are immigrants or foreign nationals. Stories originally published in VDARE have been positively cited by the New York Times, the Harvard Journal on Law and Public Policy, and many other publications.

9. VDARE is not without detractors. VDARE has repeatedly been tarred with pejoratives such as "white nationalist," and "racist. VDARE rejects these labels. Whatever the views of VDARE's detractors, its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution.

10. Use of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it. On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services. Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats. Such venues have sometimes cancelled contracts with VDARE.

11. To protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law.

## THE ATTORNEY GENERAL HAS EXPRESSED DESIRE TO IMPEDE SPEECH SIMILAR TO VDARE'S

12. The Attorney General, as the State's principal law enforcement officer, should be a stalwart steward of the First Amendment, protecting the right to expression of viewpoints and advocacy of positions about government policy. It is her obligation to distinguish viewpoints protected by the First Amendment with which she disagrees from calls to violence or other non-protected types of expression. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional.").

13. On January 8, 2020, the Attorney General told reporters that her then newly-created "Hate Crimes Unit" would "focus on social media companies:" "We are going to strengthen oversight, because we see how much hate is being fueled by content on the internet. We're calling on these companies to regulate hate speech and strengthen their policies. They can do more to fight these things – racism, the spread of disinformation and hate." *See https://www.haaretz.com/us-news/2020-01-08/ty-article/.premium/new-york-anti-semitism-crisis-jews-violence-trump/0000017f-e39c-d568-ad7f-f3ff3b320000*

14. On August 5, 2020, the Attorney General joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations:"

> *Although Facebook has developed policies against hate speech and organizations that peddle it, we remain concerned that Facebook's policies on Dangerous Individuals and Organizations, including but not limited to its policies on white nationalist and white supremacist content, are not enforced quickly and comprehensively enough.*

15. The Attorney General's desire to suppress free speech has led to ongoing litigation. In *Volokh v. James*, social media platforms and websites have noted her antipathy towards

free speech - - citing her desire to use the law to prevent what she describes as "dangerous and corrosive ideas to spread." *See* Exhibit A at ¶ 18.

### The Attorney General Targets VDARE

16.     On May 13, 2022, the Attorney General's Special Counsel for Hate Crimes subpoenaed Meta, the parent company of Facebook, for information about VDARE. Specifically, the subpoena demanded:

>1. All account opening documents for the Facebook Accounts.
>
>2. Documents sufficient to identify the individuals who opened the Facebook Accounts.
>
>3. All documents concerning the grounds on which the Facebook Accounts were terminated.
>
>4. A true and correct copy of the document entitled "April 2020 Coordinated Inauthentic Behavior Report."
>
>5. All documents relating to the finding that VDARE engaged in "coordinated inauthentic behavior" in its use of Facebook and other Meta platforms.
>
>6. Documents sufficient to identify the Facebook Pages, accounts, and Group used by VDARE in their "coordinated inauthentic behavior" as described by the "April 2020 Coordinated Inauthentic Behavior Report."
>
>7. Documents sufficient to identify the "COVID-19-related conspiracies and hate speech about Asian Americans" shared through the network of fake accounts VDARE created and identified by the "April 2020 Coordinated Inauthentic Behavior Report."
>
>8. All documents indicating that VDARE violated the terms of service of Facebook or other Meta platforms.
>
>9. All complaints made to Facebook or another Meta platform during the Relevant Period concerning any allegations that VDARE violated the platform's terms of service.

10. All documents from investigations by Meta, its predecessors, or agents into allegations that VDARE violated the terms of service of Facebook or other Meta platforms.

11. Documents sufficient to identify the amount, date, purpose, payor name, and payor address for any payment made to VDARE by Facebook Pay or any other Meta payment platform.

12. All documents reflecting withdrawals by VDARE from Facebook Pay or any other Meta payment platform, including the amount, date, withdrawing person or entity and recipients of each withdrawal.

13. All documents relating to any other transfers by VDARE to or from Facebook Pay or any other Meta payment platform, including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.

14. Documents sufficient to identify the final balance(s), if any, in VDARE's Facebook Pay or any other Meta payment account.

15. All account closing documents for VDARE's Facebook Pay or any other Meta payment account.

16. Documents sufficient to identify any advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

17. Documents sufficient to identify the total cost of advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

18. Documents sufficient to identify the audiences targeted by VDARE's advertising within the Relevant Period on Facebook or any other Meta platform.

19. Documents sufficient to identify the number of users to whom VDARE's advertising was delivered within the Relevant Period on Facebook or any other Meta platform. Please note that this request does not call for production of the identity of any user who received VDARE's advertising.

17. None of the documents that the Attorney General demanded from Meta appear reasonably related to any unlawful activity by VDARE. Speech characterized by the Attorney General as "hate speech" and "misinformation" does not render it unprotected by the First Amendment. While VDARE disagrees with Facebook that it ever engaged in "coordinated inauthentic behavior," even such purported behavior does not constitute a

criminal or civil violation.

18. On June 14, 2022 the same Special Counsel for Hate Crimes issued a subpoena to Facebook Payments demanding:

> 1. Documents sufficient to identify the amount, date, purpose, payor name, and payor address for any payment made to VDARE by Facebook Payments, Inc., or any other Meta payment platform.
>
> 2. All documents reflecting withdrawals by VDARE from Facebook Payments, Inc., or any other Meta payment platform, including the amount, date, withdrawing person or entity and recipients of each withdrawal.
>
> 3. All documents relating to any other transfers by VDARE to or from Facebook Payments, Inc., or any other Meta payment platform, including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.
>
> 4. Documents sufficient to identify the final balance(s), if any, in VDARE's Facebook Payments, Inc., or any other Meta payment account.
>
> 5. All account closing documents for VDARE's Facebook Payments, Inc., or any other Meta payment account.

19. VDARE was notified of this subpoena by Facebook's counsel, not by the Attorney General, a violation by the Attorney General of the Stored Communications Act, which requires "with prior notice from the governmental entity to the subscriber or customer if the governmental entity" for administrative subpoenas. 18 U.S.C. § 2703(b).

20. The Facebook Payments and Meta subpoenas collectively asked for information about payments made to VDARE, which would have inevitably disclosed confidential information about VDARE's donors. In addition, asking for information about the names of those who operated the accounts would have identified the names of those who anonymously post from the social media accounts.

21. Had Facebook and Meta supplied the information that the Attorney General demanded, the rights under the First Amendment of donors and commentators would have

been violated.

### The Attorney General's Charities Bureau Subpoena

22.  On June 24, 2022, before Meta or Facebook Payments produced documents, the Attorney General's Charities Bureau issued a subpoena to VDARE, identifying 44 categories of demanded documents.

23.  Among many other things, the Attorney General demanded "Copies of the transcripts to each deposition in the litigation between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." This demand referred to a lawsuit for libel filed by Brimelow against the New York Times for calling him an "open white nationalist," which he is not.

24.  On July 20, 2022, after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to the Attorney General's subpoenas, requested in writing that the she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment of the United States Constitution to express positions critical of governmental officials and policy. The Attorney General declined to withdraw the subpoenas.

25.  In August 2022, before a revised return date, VDARE engaged new counsel and directed him to comply with the Attorney General's subpoena. The Attorney General acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce "very basic corporate records" to demonstrate VDARE's intent to comply in advance of a "rolling production." Between September 19 and November 21, 2022, VDARE produced about 6,000 pages of documents in response to the

Attorney General's subpoena to VDARE after completing review of documents maintained by VDARE electronically and in hard copy.

26.     While making and before completing the production, VDARE advised the Attorney General of its position that production of the identities of many of its contractors would violate the First Amendment to the United States Constitution. VDARE explained to the Attorney General that some contractors would face retribution if their association with VDARE was revealed, and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities were disclosed, as has happened in the past. VDARE cited the Attorney General to *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and holding that an order requiring association to produce membership list interfered with First Amendment freedom of association); and *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 100 (2d Dep't 2017) (applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital). *See also Ronsenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.")

27.     VDARE proposed that the Attorney General identify specific contractors about which she might be concerned; and VDARE could otherwise identify any contractor which might qualify as a "related party" within the meaning of New York law. VDARE

expressed its desire to make as robust a production as possible, proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. The Attorney General rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors.

28. By letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet-and-confer on the issue. VDARE advised the Attorney General that the identities of VDARE's contractors are indispensable to its work, and their identities inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks. VDARE had otherwise advised the Attorney General that the work of its counsel, a solo practitioner reviewing all of VDARE's documents himself, to provide documents with redactions was labor-intensive, time-consuming, and ongoing. VDARE proposed in its letter of October 31, 2022, that the parties meet-and-confer to determine if they could find at least a temporary resolution of the issue.

29. VDARE advised the Attorney General that its concerns were heightened by a letter dated October 11, 2022, sent by members of Congress to Attorney General Merrick Garland, requesting investigation of apparently undue disclosure of confidential information provided to or otherwise obtained by the Attorney General in another matter. On August, 26, 2022, Politico published confidential information about donors to a conservative political non-profit, Stand for America, Inc. According to reports, the information came from the Attorney General's office, though the exact leaker is unknown. *https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-*

*letitia-james-stand-for-america-11662065044.*

30. Meanwhile, in early October 2022, the Attorney General requested that VDARE provide a general outline of electronically-stored files (emails) that VDARE would need to collect for review and produce and begin collecting. VDARE did so, advising that the universe of such files amounted to over 40 gigabytes of data, providing a list of email custodians, and otherwise keeping the Attorney General updated as to the status of the review. The emails, like VDARE's paper documents, contain information about the identities of contractors whose association with VDARE is not required for any legitimate oversight of VDARE by the Attorney General, and the disclosure of which would violate First Amendment protections and risk VDARE's existence.

31. As for the Attorney General's subpoenas to Facebook Payments and Meta, while VDARE questioned the legitimate purpose of the Attorney General's demands, VDARE withdrew its objection to disclosures provided that no personal identifying information was disclosed and the anonymity of its donors and contributors was protected.

32. On December 2, 2022, the Attorney General demanded full compliance with its subpoena to VDARE by December 12, 2022, or would deem VDARE to be in non-compliance. Though VDARE had advised the Attorney General about its concerns about unnecessary disclosure of identifies of contractors, the Attorney General demanded that their identities be disclosed. Though the Attorney General had encouraged VDARE to make a rolling production as documents were reviewed, resulting in later decisions not to redact some information that had earlier been redacted, the Attorney General questioned the validity of VDARE's concerns. Though VDARE had advised the Attorney General that redactions of identities of contractors were intertwined with its records and were

otherwise time-consuming and labor intensive to apply, the Attorney General demanded, by December 12, 2022, a log identifying each redaction of each contractor's identify in VDARE's production (and its prospective production of emails) as a precondition to a meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors.

33. The Attorney General's position threatens VDARE's existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech.

## COUNT ONE
### Declaratory Relief under the First Amendment

34. VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

35. Long established First Amendment precedent establishes the right to associate with a group for "advocacy of both public and *private points of view, particularly controversial ones.*" *NAACP v. Alabama ex rel. Patterson*, 357 U.S. at 460 (emphasis added). This right is infringed when the identities of anonymous members of a controversial group are sought through a government subpoena. *See id.* at 462 (order requiring association to produce membership list interfered with First Amendment freedom of association).

36. Imposing on "associational rights" . . . "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2389 (2021).

37. Subpoenas which could have "a chilling effect on its associations with its employees and potential clients" by breaking anonymity are invalid. *See, e.g.*, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d at 100. *See also Brown v. Socialist Workers '74*

*Committee (Ohio)*, 459 U.S. 87, 96 (1982) ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information. Because an individual who enters into a transaction with a minor party purely for commercial reasons lacks any ideological commitment to the party, such an individual may well be deterred from providing services by even a small risk of harassment.")

38. The Attorney General has failed to recognize the rights of speech and association of VDARE and its contractors and has rejected reasonable proposals to accommodate VDARE's concerns, which helps demonstrate the Attorney General's true agenda.

### COUNT TWO

**(Violation of VDARE's First and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 by Retaliating Against VDARE Based on Exercise of Its Rights of Freedom of Speech and of Association)**

39. VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

40. The First Amendment, which applies to the Attorney General by operation of the Fourteenth Amendment, secures VDARE's right to free speech, including its right to express political beliefs about immigration and related polices of the United States, regardless of whether the Attorney General agrees.

41. The Attorney General has expressed her desire to use her power to limit speech with which she disagrees and has cited the First Amendment as an obstacle to her goal.

42. The Attorney General's subpoena to VDARE is an offshoot of the Attorney General's targeting of VDARE because of its viewpoints.

43. Government action in retaliation for the exercise of protected speech violates the First Amendment of the United States Constitution. *See Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992).

44. "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

45. VDARE's expressed viewpoints about immigration and related subjects are protected by the First Amendment.

46. Subpoenas can constitute the basis of adverse action to show retaliation. *See, e.g., Molefi v. Oppenheimer Tr.*, No. 03 CV 5631 FBVVP, 2007 WL 538547, at *4 (E.D.N.Y. Feb. 15, 2007).

47. The Attorney General has targeted VDARE in retaliation for constitutionally protected speech.

## COUNT THREE

**(Violation of VDARE's Rights Under Article I, Section 8 of the
New York State Constitution by Retaliating Against VDARE Based
on Exercise of Its Rights of Freedom of Speech and Association)**

48. VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

49. Article I, Section 8 of the New York State Constitution secures VDARE's right to free speech, including its right to express political beliefs concerning immigration policy,

50. "The analysis for a retaliation claim under the First Amendment and under Article I § 8 of the New York State Constitution is the same." *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 321 (S.D.N.Y. 2019). The Attorney General's targeting of VDARE constitutes retaliation under the United States and New York Constitutions.

## COUNT FOUR

### (Preliminary and Permanent Injunctions)

51. VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

52. VDARE seeks and is entitled to a preliminary injunction prior to judgment in this case and a permanent injunction thereafter barring the Attorney General from enforcing her unconstitutional demands.

53. VDARE will suffer irreparable harm absent such injunctive relief, including disclosure of identities of contractors, which disclosure cannot be undone.

54. VDARE is likely to prevail on the merits in this litigation.

55. The balance of equities favors VDARE.

56. The public interest favors VDARE as the public interest itself lies squarely with the vigorous exercise of First amendment rights.

### DEMAND FOR JURY TRIAL

VDARE hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE VDARE respectfully requests judgment:

    i. On the First Cause of Action, declaring the Subpoenas' attempt to compel First Amendment speech and associational rights unconstitutional

    ii. On the Second Cause of Action, for compensatory and punitive damages in an amount to be determined at trial;

    iii. On the Third Cause of Action, for compensatory and punitive damages in an amount to be determined at trial;

      iv.      On the Fourth Cause of Action, to enjoin the Defendant from enforcing the subpoena;

      v.      For the costs of this action, attorney's fees and such other further and different relief as this court deems just and proper.

Dated: December 12, 2022

Respectfully submitted,

*/s/ Andrew J. Frisch*
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

## VERIFICATION OF LYDIA BRIMELOW

Pursuant to 28 U.S.C. 1746, Lydia Brimelow declares as follows:

1. I am President of VDARE Foundation, Inc., the Plaintiff herein, and a citizen of the United States.

2. I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief

3. I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 12, 2022

*Lydia Brimelow* Lydia Brimelow