UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VDARE FOUNDATION, INC.,

                    Plaintiff,

     -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                  Defendant.

_____

**22-cv-1337 (FJS/CFH)**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**LETITIA JAMES**
New York State Attorney General
28 Liberty St. New York, NY 10005

By:    JAMES SHEEHAN
        Assistant Attorney General
        NDNY Attorney Bar Roll #516406
        YAEL FUCHS
        Assistant Attorney General
        NDNY Attorney Bar Roll # 702160
        CATHERINE SUVARI*
        Assistant Attorney General
        RICHARD SAWYER*
        Special Counsel, Civil Rights Bureau

        *Pro hac vice applications forthcoming

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 4

New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE. ......................................................................... 4

Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors. ................................................................... 5

The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance. ....................................................................................................... 8

STANDARD OF REVIEW ......................................................................................... 11

ARGUMENT ............................................................................................................... 12

I. Sovereign immunity bars the majority of Plaintiff's claims .................................. 12

II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance. ............................................................................... 13

III. The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity. ............. 14

IV. VDARE has not alleged a plausible First Amendment retaliation claim. ........... 17

B.   VDARE has not and cannot plead "but for" causation because no First Amendment claim can arise from an objectively justified investigation. ................................. 19

C.   VDARE has failed to plead that illicit animus caused an injury .................. 21

V. Count Four must also be dismissed ....................................................................... 22

CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993)........................ 15, 19

*Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322 (N.D.N.Y. 2010).................................... 12

*Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013)........................................... 12

*Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436 (2d Cir. 2003) .......................... 17

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84 (2d Cir.1988)................................... 14

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ................................. 3, 15, 16

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)............................................................ 15

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y 2014) .................................................................. 12

*Avery v. DiFiore*, 2019 WL 3564570  (S.D.N.Y. Aug. 6, 2019)...................................... 12, 19, 21

*Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849 (E.D.N.Y. Sept. 28, 2010)................. 5, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 11

*Bimber's Delwood, Inc. v. James*, 496 F. Supp. 760 (W.D.N.Y. 2020) ....................................... 22

*Brown v. Socialist Workers '74 Comm. (Ohio)*, 459 U.S. 87 (1982)........................................... 16

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).............................................................................. 13

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) .................................................. 15

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001).................................................. 20, 21, 22

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ........................................................... 18

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017).............................. 3, 16

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ............................. 19

*Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521 (S.D.N.Y. 2007) .. 12

*Hartman v. Moore*, 547 U.S. 250 (2006)...................................................................... 18, 19, 20

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) ........................... 19

*Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980) ................................................................ 14

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639 (2d Cir. 2009) .................................... 14

*Matter of Hogan v. Cuomo*, 67 A.D.3d 1144 (3d Dep't 2009) ..................................... 21

*Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700 (2d Cir. 2022) ............................................ 21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ............. 14

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ....................................................... 18, 19, 21

*Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311 (W.D.N.Y. 2020) . 11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ........................................ 12, 13

*People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000 (Sup. Ct. N.Y. Cnty. 2022) ........... 18, 21

*People by James v. VDARE Found., Inc.*, Index No. 453196/2022 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022) ........................................................................ 11, 17, 21

*People by Underwood v. Trump*, 62 Misc. 3d 500 (Sup. Ct. N.Y. Cnty. 2018) .......................... 18

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ........................................ 20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) .................................. 5, 20

*Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir. 1991) ............................................. 13

*Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022) ......... 13

*United States v. Konstantakakos*, 121 F. App'x 902 (2d Cir. 2005) ............................................. 19

*Wayte v. United States*, 470 U.S. 598 (1985) .............................................................. 20

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) .......................................................... 22

**Statutes**

42 U.S.C. § 1983 ............................................................................................. 12, 13

EPTL § 8-1.4(i); .............................................................................................. 5

Exec. Law § 175 ............................................................................................. 5

Exec. Law § 63(12) ............................................................................................... 5

N-PCL § 1008(a)(15) ........................................................................................... 5

N-PCL § 1101 ...................................................................................................... 5

N-PCL § 1102 ...................................................................................................... 5

N-PCL § 1109(b) ................................................................................................. 5

N-PCL § 1115(a) .................................................................................................. 5

N-PCL § 112(b)(6) ............................................................................................... 5

N-PCL § 509 ...................................................................................................... 20

N-PCL § 510 ...................................................................................................... 20

N-PCL § 511 ...................................................................................................... 20

N-PCL § 511-a .................................................................................................. 20

N-PCL § 706 ........................................................................................................ 5

N-PCL § 714 ........................................................................................................ 5

N-PCL § 715 .................................................................................................. 5, 20

N-PCL § 717 ........................................................................................................ 5

N-PCL § 720 ........................................................................................................ 5

N-PCL, Art. 5 ....................................................................................................... 5

U.S. Constitution, Amendment XI .................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 12

Fed. R. Evid. 201 ............................................................................................ 5, 20

**PRELIMINARY STATEMENT**

Plaintiff VDARE Foundation, Inc., a New York-chartered non-profit, has asked the Court

to end the Attorney General's lawful investigation into VDARE's apparent pattern of

self-dealing and financial misconduct by nullifying a valid state administrative subpoena. But

neither the First Amendment nor any other provision of law justifies such a drastic measure, and

the Court's intervention would seriously harm New York State's interest in enforcing its

non-profit law. The Attorney General has a statutory responsibility to protect charitable property

controlled by organizations, like VDARE, under its jurisdiction. Publicly available information

fully justifies its investigation here.

The Attorney General began investigating VDARE after its own public filings,

statements, and published media reports revealed a possible pattern of self-dealing, misleading

donor solicitation, misuse of charitable assets, and false reporting. As one example, VDARE

apparently used charitable funds to purchase the $1.4 million medieval-style Berkeley Springs

Castle and promptly conveyed the property to two corporations established by one of its

directors. That director and her husband, the organization's founder and also a director,

admittedly used the castle as a family residence. These transactions, among others, raise serious

questions regarding VDARE's governance and use of charitable assets.

In June 2022, the Attorney General served an investigative subpoena on VDARE for

records relating to the Berkeley Springs Castle transactions, other related-party transactions,

VDARE's corporate structure, record keeping, and relevant governance policies. VDARE did

not move to quash or modify the subpoena and partially complied for months. Its counsel

repeatedly requested deadline extensions and promised to complete production by December 12,

2022. The Attorney General asked VDARE to provide a redaction log by that date to better

1

understand the extensive and haphazard redactions in VDARE's document productions. But VDARE did not complete production, as promised, or provide a redaction log on December 12. Instead, it ceased complying with the subpoena and filed this lawsuit.

VDARE's complaint completely ignores the indicia of self-dealing and other regulatory misconduct that drew the Attorney General's scrutiny. Those facts are detailed at length in a pending state-court petition to compel subpoena compliance. *See* Fuchs Aff., Ex. A. VDARE cannot use its status as a publisher of controversial opinions as a pretext for diversion or waste of charitable assets, and it should not be permitted to use this Court's power to circumvent the Attorney General's lawful investigation.

All of VDARE's claims are without merit and should be dismissed.

*First*, VDARE's claims for monetary damages, and its claims under the New York Constitution (Counts 2 and 3) are barred by the Eleventh Amendment and sovereign immunity and should be dismissed for lack of jurisdiction.

*Second*, the state-court proceeding pending before Justice Sabrina B. Kraus is the proper venue for raising the subpoena objections that VDARE wants this Court to consider. Given the comprehensive regulatory scheme governing New York charities and the State's clear interest in investigating potential violations of that law, the Court should abstain from deciding those issues under the *Burford* abstention doctrine.

*Third*, even if this Court considers VDARE's claims, VDARE has failed to plausibly allege that the Attorney General's subpoena violates the First Amendment (Count 1). In this investigation of self-dealing and misuse of charitable assets, the Attorney General's subpoena reasonably seeks the identities of those who have received payments from VDARE. VDARE has not and cannot cite a single example of a federal court granting the extraordinary relief requested

here—nullifying a lawfully issued subpoena on the basis that financial and governance records must be kept secret from a state agency investigating possible misuse of funds. On the contrary, the Supreme Court recently ratified such investigative tools in the *Americans for Prosperity* decision cited by VDARE. *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). Unlike the federal cases cited by VDARE, the Attorney General is conducting a targeted investigation, not requiring blanket disclosures, and the information sought by the subpoena will not be made publicly available. Nor does the state-court case VDARE cites, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), justify enjoining this investigation. There, in an appeal of a state-court special proceeding (akin to the one pending in this case), the Appellate Division affirmed the Attorney General's subpoena and permitted the investigation to go forward while placing limited restrictions on the subpoena's scope. Nothing in that decision justifies an order under § 1983 declaring the Attorney General's investigation "unconstitutional."

*Fourth*, VDARE's complaint fails to plausibly allege a First Amendment retaliation claim. Illegal conduct, like the possible self-dealing under investigation, is not protected by the First Amendment. And because good cause exists for the Attorney General's subpoena, VDARE cannot show that any improper motive was the but-for cause of the investigation. Nor has VDARE shown any injury from the investigation, despite months of partial compliance and the haphazard disclosure by counsel of many contractors' identities.

*Finally*, because VDARE's other claims must be dismissed, its request for an injunction must also be denied.

For these reasons, the Court should dismiss this action in its entirety.

# BACKGROUND

## New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE.

VDARE incorporated as a not-for-profit charitable corporation under the laws of New York and is registered as a charity under New York law. Compl. ¶¶ 1–2. VDARE does not dispute that it operates subject to the Attorney General's oversight as a New York regulated non-profit entity.

Under New York law, the Attorney General has a duty to protect "the public interest in charitable property." *Schneiderman v. Tierney*, No. 451489/2014, 2015 WL 2378983, at *2 (Sup. Ct. N.Y. Cnty. May 18, 2015). The law gives the Attorney General "broad supervisory and oversight responsibilities over charitable assets and their fiduciaries." *In re McDonell*, 195 Misc. 2d 277, 278-79 (Sup. Ct. N.Y. Cnty. 2002); *see also Abrams v. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993); *Spitzer v. Lev*, No. 400989/2002, 2003 WL 21649444, at *3 (Sup. Ct. N.Y. Cnty. June 5, 2003); *In re McDonnell*, 195 Misc. 2d 277, 278–79 (Sup. Ct. N.Y. Cnty. 2002). This includes "preventing fraud and self-dealing in charities" by launching investigations and enforcement actions. *Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018).

As the State's chief law enforcement officer, "there is no doubt that the Attorney-General has a right to conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being used properly for the intended beneficiaries." *Abrams v. Temple of the Lost Sheep*, 148 Misc. 2d 825, 828–29 (Sup. Ct. N.Y. Cnty. 1990); *see also People by James v. Nat'l Rifle Assoc. of Am., Inc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022). Under both the Not-For-Profit Corporation Law and the Estates, Powers, and Trusts Law, the Attorney General may pursue such investigations through investigative subpoenas to New York

4

charities, like VDARE, and to any third parties that may have relevant documents or information. *See* EPTL § 8-1.4(i); N-PCL § 112(b)(6); *see also* Exec. Law §§ 63(12) (authorizing subpoenas directed at uncovering fraud and illegality), 175 (authorizing subpoenas for investigations of fraud in charitable solicitations). Issuing such subpoenas is a preliminary step to determine whether cause exists for the Attorney General to take further enforcement action, which could include directing restitution, unwinding transactions, requiring an accounting, removing officers, or dissolving the entity. *See, e.g.,* N-PCL §§ 706, 714, 715, 717, 720, 1008(a)(15), 1101, 1102, 1109(b), and 1115(a); *see also* N-PCL, Art. 5.

**Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors.**

According to VDARE, it is "a mom-and- pop operation run by Peter and Lydia Brimelow, husband and wife." Compl. ¶ 2. VDARE's 2020 IRS Form 990—the most recent available—confirms that the organization is overseen exclusively by the Brimelow family: Peter Brimelow serves as its chairman, Lydia Brimelow as president, and John Brimelow as a director. Fuchs Aff., Ex. B at 7.[1] On that same form, VDARE lists its only activity as "[c]reate[ing] and manag[ing] internet publication." Fuchs Aff., Ex. B at 1.

Publicly available documents suggest that VDARE has grown significantly in recent

---

[1] On a motion to dismiss, the Court may consider the pleading, information incorporated into the pleading by reference, and any document upon which the pleading relies. *Geron v. Seyfarth Shaw LLP*, 736 F.3d 213, 219 (2d Cir. 2013). Specifically, the Court may consider a document where a complaint "relies heavily upon its terms and effect" or "[w]here the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint…." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court may also consider matters that are subject to judicial notice, including properly recorded deeds, *Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010), newspaper articles, and regulatory filings, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). *See* Fed. R. Evid. 201.

years, and the organization now reports millions of dollars in charitable donations and hundreds of thousands of dollars in compensation for Peter Brimelow. In 2019, VDARE reported $4.2 million in donations to the IRS, an eightfold increase over its reported 2018 revenue. *See* Fuchs Aff., Ex. C, D. And Peter Brimelow's reported compensation jumped from $181,675 in 2018 to $345,364 in 2019. *Id.* In 2020, VDARE reported paying more than $300,000 in compensation to Peter and Lydia Brimelow. Fuchs Aff., Ex. B.

On February 14, 2020, VDARE purchased a medieval-style castle in Berkley Springs, West Virginia. Shortly after the purchase, Lydia Brimelow confirmed that VDARE bought the castle with donor funds, writing that "donors stepped forward in an unprecedented way" to enable the purchase. *Lydia Brimelow: We Got the Keys to the Castle!*, VDARE.com, https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited Dec. 12, 2022).. She described the castle as a "meeting space," and wrote that "[h]aving a space where we can meet and share ideas without fear of deplatforming will make a difference so material it is hard to overstate." *Id.*

But statements published on VDARE's website within months of the purchase indicate that Peter and Lydia Brimelow were not using the castle as a meeting space but instead as their family's full-time residence. The Brimelows posted family photos celebrating the Fourth of July and Christmas Eve in the castle. *The Brimelow Family Wishes You a Happy Independence Day*, https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited Dec. 20, 2022); *Merry Christmas from VDARE.com!*, VDARE.com, https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-4d90-93b9-c82cd46c5950 (last visited Dec. 20, 2022). And, describing a visit to the castle, a VDARE contributor wrote that "Peter and Lydia Brimelow have moved in and spend most of

their time there." *Radio Derb: Castling with VDARE.com*, VDARE.com,

https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited Dec. 20, 2022). In a state-court filing, VDARE's

counsel admitted that Peter and Lydia Brimelow lived in the castle "for a period of months" and

stated that they still live on the castle's grounds. *See* Fuchs Aff., E.

Later in 2020, Lydia Brimelow executed two transfers on behalf of VDARE conveying

the entire castle property—a $1.4 million charitable asset—to two West Virginia corporations

she had founded earlier that year. *See* Fuchs Aff., Exs. F–I. One deed filed with the Morgan

County, West Virginia, Register of Deeds conveyed the castle itself and the land it occupies to

the Berkeley Castle Foundation, Inc., a not-for-profit established by Lydia Brimelow. Fuchs Aff.,

Exs. F, H. A second deed conveyed the remaining eight parcels of surrounding land to BBB,

LLC, a for-profit corporation also established by Lydia Brimelow. Fuchs Aff., Exs. G, I. The

sole signatory for both deeds was Lydia Brimelow. Fuchs Aff., Exs. F, G. Under the tagline

"When nothing but a castle will do," the Berkeley Castle Foundation now advertises the castle as

a for-rent event space. https://www.berkeleyspringscastle.com/contact.html (last visited

December 14, 2022). According to a publicly filed contract signed by Lydia Brimelow (as both

landlord and tenant), the Brimelows now pay monthly "rent" to BBB, the for-profit corporation,

to reside on the castle property. Fuchs Aff., Ex. J. In other words, the Brimelows used charitable

funds to purchase property in which they reside, transferred the grounds to a for-profit

corporation they control, and now pay rent to that company, in essence to themselves.

There is a host of potential violations of New York charities law implicated in this series

of transactions. As an example, transferring or approving a transfer of charitable assets from a

charitable New York not-for-profit corporation to a for-profit entity without fair compensation is

a violation of New York and federal law and a breach of the fundamental fiduciary responsibilities of directors and officers. *See generally* Fuchs Aff., Ex. A (petition to compel subpoena in state court). The castle transactions were not reported on VDARE's 2020 IRS Form 990, as required by federal and New York law, nor were they submitted to the Charities Bureau or the New York Supreme Court for approval, as required by N-PCL §§ 510, 511, and 511a. *See* Fuchs Aff. at B. Even had they been submitted, neither the Charities Bureau nor the Court would have the authority to approve such a transaction because VDARE had no independent directors who could have approved it. *See* N-PCL § 510.

**The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance.**

On June 24, 2022, the Attorney General served VDARE with an investigative subpoena seeking information related to VDARE's purchase and conveyance of the Berkeley Springs Castle and other transactions between VDARE, the Brimelows, and entities they control (the "VDARE Subpoena"). Compl. ¶ 22; Fuchs Aff., Ex. K at 5–9. The VDARE Subpoena also sought information related to VDARE's compliance with New York law governing charities, including VDARE's structure, conflict -of -interest policies, charitable solicitations, and financial operations. Fuchs Aff., Ex. K at 5–9.[2]

The VDARE Subpoena did *not* seek any information regarding the development or

---

[2] The Attorney General also served subpoenas on Meta, Facebook's parent company, for information related to allegations that VDARE had engaged in what Facebook characterized as "coordinated inauthentic behavior," activity that could constitute breaches of fiduciary duty under New York law. Compl. ¶¶ 16, 17. Facebook's "Coordinated Inauthentic Behavior Report" described this misconduct as "us[ing] fake accounts to create fictitious personas, post in Groups, manage Pages, drive traffic to off-platform sites, and evade enforcement." Compl. ¶¶ 16, 17; Fuchs Aff. Ex. L at 16. Contrary to VDARE's assertion, *see* Compl. ¶ 19, the Facebook Subpoenas did *not* call for information protected by 18 U.S.C. § 2703(b), and explicitly said so on their face. *See* Fuchs Aff., Ex. M at 4, ¶ 10.

publication of VDARE's online content. *Id.* Nonetheless, VDARE's counsel initially refused to comply with the subpoena at all, describing it as "incredibly unlawful." Compl. ¶ 24; Fuchs Aff. Ex. N. To address VDARE's expressed concerns, the Attorney General agreed to permit limited redactions omitting names and address information for donors and uncompensated volunteers. *See* Fuchs Aff. Ex. O. But VDARE's counsel continued to refuse compliance.

In August 2022, VDARE retained new counsel and allegedly directed him to comply with the VDARE Subpoena. Compl. ¶ 25. In a letter on September 19, 2022, the new counsel identified "a significant volume of electronically-stored (sic) and hard copy documents that need to be reviewed" for production. Compl. ¶ 25; Fuchs. Aff., Ex. P. The parties also agreed on amending the scope of the Facebook Subpoenas to omit donors' identifying information. Compl. ¶ 31.

On September 19, 2022, nearly two months after the VDARE Subpoena's initial deadline, VDARE's counsel finally produced a mere 27 heavily redacted documents without Bates numbers. *See* Fuchs Aff., Exs. P, Q. VDARE provided no log to identify or explain the redactions. *See* Fuchs Aff., Ex. Q; Compl. ¶¶ 28, 32. By email, the OAG requested a redaction log describing the legal basis for each redaction and the category of information being withheld—information to which it is entitled under law. *Id.* Without such redactions, the email explained, the OAG had no means to "reliably identify what has been deleted…and on what legal basis." Fuchs Aff., Ex. Q..

In the nine weeks between September 19 and November 21, VDARE produced only about 6,000 pages of documents, including many duplicates. Compl. ¶ 25. The productions consisted primarily of documents from VDARE's paper files and did not include the 40 gigabytes of emails or other electronically stored data identified by VDARE's counsel. Compl.

¶¶ 25, 30. The documents also bore numerous redactions, and VDARE again did not provide a redaction log. Compl. ¶¶ 28, 32. According to VDARE, despite having more than six months to work, completing production and compiling a redaction log had not been possible because redacting documents is "labor-intensive and time-consuming." Compl. ¶¶ 28, 32. VDARE's counsel then missed an agreed November 21, 2022 deadline for electronic file production. On November 28, he wrote that email production would be complete by December 12, 2022. *See* Fuchs Aff., Ex. S.

After several attempts to resolve the dispute regarding redactions and to obtain a complete production, *see* Compl. ¶¶ 26–28, 30–31, on December 2, 2022, the OAG requested a complete production and redaction log by December 12, the date set by VDARE's counsel, Compl. ¶ 32; *see* Fuchs. Aff., Exs. S, T. The OAG's letter identified three areas of deficiencies: "(1) ongoing delay and…repeated failure to abide by deadlines that [VDARE itself] proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which [VDARE has] not provided any legal justification and which appear to be applied haphazardly." Fuchs Aff., Ex. T at 1. The letter identified redactions to, among other things, the "contact information for an architectural firm hired to review potential renovations at the Berkeley Springs Castle property," "bank statements to accounts held by entities *other* that VDARE," including bank accounts for the Brimelows' privately controlled LLC, and "contact information for an individual hired to perform 'VDARE Admin' services." *Id.* at 3. The OAG observed:

> These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious

concerns about the legal basis for any such redactions.

*Id.*

On December 12, 2022, rather than provide a redaction log or make its required production, VDARE filed the present lawsuit. Despite months of partial compliance with the subpoena and promises to complete production, VDARE now claims that the Attorney General's efforts to compel timely and full compliance "threatens VDARE's existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected (sic) speech." Compl. ¶ 33.

On December 16, 2022, after VDARE missed its own proposed production deadline of December 12, the OAG began a state-court proceeding to compel compliance. *See People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. No. 1 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022). Justice Sabrina B. Kraus of the New York County Supreme Court ordered VDARE to show cause and to respond by January 12, 2023; argument is set for January 19. *See People v. VDARE*, Index No. 453196/2022, Dkt. No. 33 (Sup. Ct. N.Y. Cnty. Dec. 21, 2022).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint's allegations are generally taken as true, a plaintiff must provide "more than labels and conclusions…. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*, quoting *Twombly*, 550 U.S. at 555. "A plaintiff must show more than a sheer possibility that a defendant has acted unlawfully." *Avery v.*

*DiFiore*, 2019 WL 3564570, at *2 (S.D.N.Y. Aug. 6, 2019) (cleaned up).

"The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) (cleaned up).

## ARGUMENT

### I.   Sovereign immunity bars the majority of Plaintiff's claims.

Sovereign immunity bars VDARE's claims seeking compensatory and punitive damages under 42 U.S.C. § 1983 (Count Two) and its claims under the New York Constitution (Count Three). Those claims must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

VDARE sued the Attorney General in her official capacity only, and all of its claims for monetary relief under § 1983 are therefore barred by the Eleventh Amendment and must be dismissed. *See, e.g.*, *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y 2014) (holding that the Eleventh Amendment bars § 1983 suits against the State of New York and state officers in their official capacities); *Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521, 536 (S.D.N.Y. 2007) (holding "a suit against a State official in [her] official capacity is, in effect, a suit against the state itself, which is barred." (cleaned up)).

Sovereign immunity also bars VDARE's claim under the New York Constitution (Count Three). "Sovereign immunity bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought." *Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322, 335 (N.D.N.Y. 2010) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984)). That includes injunctive or declaratory relief

against a state officer—unlike suits under federal law, such relief is not permitted for claims under state law. *Pennhurst*, 465 U.S. at 106. The Court must therefore dismiss VDARE's state-law claim for lack of jurisdiction.

## II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance.

This action is an explicit attempt by VDARE to turn a state-law discovery dispute into a federal case, and, by extension, evade scrutiny for possible violations of New York state law. VDARE's request that this Court enjoin the Attorney General's subpoena constitutes an unwarranted federal intrusion into New York's oversight of charitable entities that raises serious federalism and comity concerns. Given the pending subpoena enforcement action, VDARE's claims here, including the constitutional issues it raises, may be litigated as defenses in the state forum. This is a clear example of an instance where abstention is justified. *See Burford v. Sun Oil Co*., 319 U.S. 315 (1943); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991);*see also Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022) (dismissing a § 1983 lawsuit brought to nullify a state administrative subpoena and holding "[a] state's interest in enforcing its own laws and investigating their violation cannot seriously be disputed" (cleaned up)).

### A. The Court should abstain under the *Burford* abstention doctrine.

In *Burford v. Sun Oil Co*., 319 U.S. 315 (1943), the Supreme Court held that where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings…where the 'exercise of federal review…would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

(1989) (internal citation and quotation marks omitted).

*Burford* abstention applies to prevent federal courts from "interfering with state efforts…in an area of comprehensive regulation or administration," even where a federal question may be present. *American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988) (noting also that abstention may be appropriate "in deference to parallel state court proceedings….in order to further the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." (cleaned up)). *See also Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir.1980). Burford abstention applies when "the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009), and charities regulation certainly qualifies.

New York has a comprehensive statutory scheme for the oversight of charitable not-for-profits, which empowers the Attorney General to carry out the important state interest of ensuring proper governance and proper use of charitable assets to fulfill a legitimate charitable mission. Following an initial investigation, the Attorney General served a lawful investigative subpoena on VDARE. The ongoing proceeding in New York State Supreme Court is the appropriate place to assess VDARE's assertions that the Attorney General's claims of illegal conduct lack merit or infringe constitutional rights.

In light of the foregoing, the Court should abstain here.

## III.   The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity.

VDARE cannot cite a single case where a federal court has granted the extraordinary relief VDARE seeks under Count One: an order declaring "unconstitutional" a state administrative subpoena investigating a registered charity's self-dealing and diversion of charitable funds, solely on the basis that the subpoena infringes on an asserted First Amendment

14

right to keep contractors' identities a secret. To the contrary, the leading case VDARE cites, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), explicitly endorsed the use of such investigative tools. There, the Court found that the state "has an important interest in preventing wrongdoing by charitable organizations," and the Attorney General could use subpoenas and audit letters to combat "misuse, misappropriation, and diversion of charitable assets…false and misleading charitable solicitations [and] other improper activities by charities." *Id.* at 2386 (cleaned up). Anonymity *can* be an important First Amendment right, but when it is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (affirming decision not to quash *federal* subpoena on First Amendment grounds because it would reveal the identity of alleged copyright violator); *see also Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't 1993) ("The mere utterance of First Amendment privileges by a purported eleemosynary [charitable] organization cannot shield defendants from the scrutiny of the Attorney-General.").

Here, in an investigation of potential misuse of charitable assets, complete review of transaction parties, organizational spending, and governance and financial controls is critical. Public records have already disclosed more than a million dollars in transactions between VDARE and two corporations established—and controlled—by VDARE's directors. As described above, such transactions could not have been approved by a disinterested board— because the board consisted entirely of Brimelows—and thus violated New York law. Without review of VDARE's actual financial operation and its control by the Brimelows, the Attorney General cannot fulfill her mandate of "preventing fraud and self-dealing in charities." *Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018). No authority has ever held that

15

the Constitution applies the sort of blanket immunity to such scrutiny that VDARE requests here.

The cases VDARE cites are not to the contrary. *Americans for Prosperity* prohibited only mandated donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. 141 S. Ct. 2386–87. Here, that decision is doubly irrelevant because the OAG has issued a valid subpoena (as that case endorsed) and has already agreed to redactions to unrelated donor identifying information (the only category of First Amendment-protected information at issue there). Similarly, *Brown v. Socialist Workers '74 Comm. (Ohio)* invalidated a statutory requirement that a political party report *all* of its donors and contractors for a list that would be "open to public inspection for at least six years." 459 U.S. 87, 89–90 (1982). Like *Americans for Prosperity*, that case did not even address, let alone call into question, a state's authority to issue targeted investigative subpoenas as part of a statutorily authorized, pre-complaint regulatory investigation. And VDARE has not come close to identifying a commensurate harm to that law's six-year public inspection requirement. It has not and cannot allege a *single* instance of the Attorney General publicizing confidential information obtained through a valid subpoena. Finally, despite VDARE's misleading characterization, *see* Compl. ¶ 37, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), did *not* hold that the Attorney General's subpoena was "invalid." There, the court upheld the Attorney General's subpoena and enforced compliance but narrowed the scope of some of the subpoena's demands. *Id.* at 101–03. Such fine-tuning is a far cry from what VDARE seeks here—complete invalidation of the VDARE Subpoena.[3]

VDARE's request in Count One for an order declaring the VDARE Subpoena

---

[3] VDARE is free to raise similar arguments in the state-court proceeding if it believes some of the subpoena's requests violate the First Amendment. What it cannot do—and *Evergreen* did not

"unconstitutional" should accordingly be dismissed for failure to state a claim.

## IV.    VDARE has not alleged a plausible First Amendment retaliation claim.

VDARE's cursory allegation of "pretext" is not supported by any plausible allegation of fact and cannot overcome the presumption of regularity accorded to the Attorney General's review. The Attorney General began investigating VDARE after it became apparent that the organization had used charitable funds to buy a castle for its directors to use as a family residence. Public records further showed that VDARE conveyed the entire castle property to two corporations established by director Lydia Brimelow and that the only signatory to those deeds was Lydia Brimelow herself. Fuchs Aff. Exs. E–H. Those transactions should have been disclosed to the IRS and reviewed by the Attorney General's office but were not. Those facts suggested of self-dealing, misappropriation, and breach of fiduciary duties by VDARE's directors, and false filings by VDARE with the Charities Bureau, in violation of New York law. Other potential violations of law were apparent from the face of documents VDARE submitted to the IRS and the Attorney General's Office. *See generally* Fuchs Aff., Ex. A; *People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022) (setting forth the Attorney General's basis to investigate).

Under Count Two, VDARE argues that the First Amendment shields it from such scrutiny because of an asserted retaliatory motive. But it is not "within the province of the courts

---

do—is use this Court to invalidate the entire subpoena on a nebulous First Amendment ground. To the extent the Court believes the subpoena requires fine-tuning, the issue is not yet ripe for consideration because the same issue is pending in state court, and this Count should still dismiss on prudential ripeness grounds. *See, e.g.*, *Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436, 440 (2d Cir. 2003) (dismissing appeal as unripe, holding the issues it raised were "ill-suited for judicial resolution at this stage" because other remedies were available). Finally, *Evergreen* is fully distinguishable because the investigation at issue in that case did not entail allegations of financial misconduct and self-dealing, like those against VDARE, that require disclosure of financial records, including records of payments made, and governance documents.

to subjectively determine the motivation of a government agency in commencing an enforcement proceeding, or to dismiss the proceeding because of the political disagreements of the parties." *People by Underwood v. Trump*, 62 Misc. 3d 500, 509 (Sup. Ct. N.Y. Cnty. 2018). VDARE has failed to plead, as it must to succeed, that "animus and bias were the *sole* motivating factors for initiating the investigation." *Id.*; *see also People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022) (rejecting a First Amendment retaliation claim because "the 'nonretaliatory grounds' were more than sufficient to justify the Attorney General's investigation") (emphasis added).

To state a First Amendment retaliation claim, VDARE must adequately plead that "(1) [it] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [its] exercise of that right; and (3) the defendant's actions caused [it] some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

VDARE fails to plead all three elements. *First*, the alleged wrongdoing at issue in the Attorney General's investigation is not First Amendment-protected activity and VDARE does not allege any injury through the Attorney General's subpoena into its protected online speech or the identities of its readers or donors. *Second*, VDARE has not, and cannot, plead that the Attorney General's investigation was illegitimate. VDARE's allegations cannot overcome the "presumption of regularity" afforded the Attorney General's actions. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006). *Third*, VDARE has not pleaded that retaliatory animus was the but-for cause of any injury. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (emphasis in

original).

### A.      Illegal conduct is not protected by the First Amendment.

VDARE does not and cannot contend that possible self-dealing, looting of charitable assets, and false filings are protected by the First Amendment. *See, e.g., Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 710 (S.D.N.Y. 2018) ("Ensuring that 'accurate information' reaches the market and the public is consistent with a *bona fide* investigation—not retaliation."); *see also United States v. Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005) ("[I]t has long been established that the First Amendment does not shield knowingly false statements made as part of a scheme to defraud."); *N.Y. Found. for the Homeless*, 190 A.D.2d at 578.

The VDARE Subpoena calls primarily for documents related to VDARE's governance, financial controls, and financial relationships with VDARE directors and their corporations, and it is aimed at discovering financial misconduct. The subpoena does not call for documents related to VDARE's editorial content—its First Amendment-protected activity. VDARE may not use its status as a publisher of controversial opinion as a pretext for its directors to divert or waste charitable assets. Allegations of such misconduct are a proper target of an investigation.

### B.      VDARE has not and cannot plead "but for" causation because no First Amendment claim can arise from an objectively justified investigation.

The retaliation claim also fails because VDARE has not, and cannot, plead that the Attorney General's investigation lacked a legitimate basis. Under settled precedent, a First Amendment retaliation claim requires proving that the investigation would not have taken place "but for" a retaliatory motive—in other words, the investigation had no legitimate legal or factual basis. *Nieves*, 139 S. Ct. at 1722 (citing *Hartman*, 547 U.S. at 259–260); *see also Avery*, 2019 WL 3564570, at *3 (applying *Nieves* on a motion dismiss). Conversely, when an

investigation has a legitimate cause, a retaliation claim necessarily fails. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[B]ecause defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive…need not be undertaken."); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (similar). The requirement of "but for" causation advances the "presumption that a prosecutor has legitimate grounds for the action [she] takes." *Hartman*, 547 U.S. at 263 (citing *Wayte v. United States*, 470 U.S. 598, 607–08 (1985)).

The Court can take judicial notice of public records, public filings, and public statements made by VDARE providing ample justification for the Attorney General's subpoena. Fed. R. Evid. 201; *Awan*, 2010 WL 3924849, at *2; *Staehr*, 547 F.3d at 425. Public records indicate that VDARE purchased a $1.4 million medieval-style castle in West Virginia, and public statements by VDARE suggest that it was bought with donor funds. *Supra*, 2–3. Additional statements by VDARE and published on its website indicate that VDARE's directors, Peter and Lydia Brimelow, use that castle as a family residence. *Id.* Public records show that VDARE conveyed the castle to two corporations owned and controlled by Lydia Brimelow, and the only signatory on both deeds was Lydia Brimelow herself. *Supra*, 3–4. And a document filed publicly by VDARE indicates that the Brimelows pay "rent" to BBB, LLC, the for-profit corporation Lydia Brimelow established, to reside on the castle grounds. *Supra*, 4. Those "related-party" transactions required disinterested board approval, disclosure on VDARE's IRS Form 990, and the submission of a petition by VDARE for review and approval by the Attorney General or N.Y. Supreme Court. *See* N-PCL §§ 509, 510, 511, 511-a, 715; Internal Revenue Service Filing Information, Intermediate Sanctions—Excise Taxes, at https://www.irs.gov/charities-non-profits/charitable-organizations/intermediate-sanctions-excise-taxes (last visited Dec. 15, 2022). Based on public records, none of those steps appears to have been taken. *See generally* Fuchs

Aff., Ex. A; *People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4

(Sup. Ct. N.Y. Cnty. Dec. 16, 2022) (setting forth the Attorney General's basis to investigate).

Those facts more than justify the Attorney General's investigation. Under New York law,

the factual basis for an investigative subpoena "need not be sufficient to *establish* fraud or

illegality, or even provide probable cause, as long as the futility of the process is not inevitable or

obvious." *Matter of Hogan v. Cuomo*, 67 A.D.3d 1144, 1146 (3d Dep't 2009) (emphasis added).

It is enough, as here, that available information provide a reasonable basis for further

investigation. Because the Attorney General's investigation has a legitimate basis, VDARE's

retaliation claims fail, and it does not matter whether VDARE has pleaded any alternative

motivation, no matter how nefarious. *See Nieves*, 139 S. Ct. at 1722; *Avery,* 2019 WL 3564570,

at *3; *Nat'l Rifle Ass'n*, 75 Misc. 3d at 1005.[4]

### C.   VDARE has failed to plead that illicit animus caused an injury.

Finally, VDARE's claims also fail because it has not plausibly alleged an actionable

injury. *Dorsett*, 732 F.3d at 160. VDARE's only alleged injury is the conclusory assertion that

the OAG's investigation "threatens VDARE's existence." Compl. ¶¶ 30, 33. This is not

adequate—such "cursory" allegations are insufficient to "establish facial plausibility." *Zherka v.*

---

[4] The Court need not reach this question, *see Curley*, 268 F.3d at 73, but VDARE has also failed to plead *any* First Amendment animus. The out-of-context quotes from the Attorney General related to oversight of "social media companies" like Facebook do not establish any animus toward VDARE. *See* Compl. ¶¶ 13, 14; *Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700, 714–18 (2d Cir. 2022) (holding First Amendment permits a government official to speak about "her preferred course of action…it gives her the freedom to advocate for it"). VDARE has not and cannot plead a single example of the Attorney General abusing her authority by retaliating against an individual or entity based on their speech. The lawsuit VDARE cited—and attached to its complaint—concerns the constitutionality of a duly enacted state law that the Attorney General has yet to enforce. Compl. ¶ 15. The Attorney General has argued that the law is constitutional, but the outcome of that proceeding has no bearing on the serious but unsupported assertion made here—that the Attorney General has launched a baseless investigation to punish VDARE for protected speech.

*Amicone*, 634 F.3d 642, 647 (2d Cir. 2011). Moreover, VDARE has been complying partially

with the VDARE Subpoena for months without any discernable injury to it or its contractors—

despite "the unredacted disclosure of numerous other VDARE contractors, vendors, and

employees identified in VDARE's records." Fuchs Aff., Ex. T at 3. Given the absence of any

First Amendment chill or other injury notwithstanding the investigation already under way,

VDARE cannot show that it has suffered an actionable injury. *See Curley*, 268 F.3d at 73.

     For these reasons, the First Amendment claims fail.

**V.    Count Four must also be dismissed.**

     Because VDARE's substantive claims (Counts One through Three) must be dismissed for

lack of jurisdiction and fail to state a claim, its request for an injunction (Count Four) must also

be denied as moot. VDARE has not moved for a preliminary injunction, and any such motion

would be futile because it has not and cannot meet its burden of showing "a clear or substantial

likelihood of success on the merits and a strong showing of irreparable harm." *Bimber's

Delwood, Inc. v. James*, 496 F. Supp. 760, 761 (W.D.N.Y. 2020) (cleaned up).

**CONCLUSION**

     For the reasons set forth above, the Complaint should be dismissed in its entirety. In the

event any claims survive, the Attorney General respectfully requests 30 days to submit an

answer.

          Dated: January 18, 2023

          LETITIA JAMES
          Attorney General for the State of New York
          *Attorney for State Defendants*
          s/ Yael Fuchs
          Yael Fuchs
          Co-Chief, Enforcement Section, Charities

22
