# EXHIBIT J

## RESIDENTIAL LEASE AGREEMENT

THIS RESIDENTIAL LEASE AGREEMENT (hereinafter referred to as "Agreement") is entered into this_1st__day of ___**April 2021**_____ by and between _**BBB LLC**_ of **304 Cacapon Road Berkeley Springs, West Virginia 25411** ("Landlord"), and **Lydia Brimelow**_ ("Tenant").

**WITNESSETH**

WHEREAS, Landlord agrees to lease the premises identified as: **300 and 304 Cacapon Rd, Berkeley Springs, West Virginia 25411** ("the Premises") for use as a private residence; and

WHEREAS, Tenant agrees to lease the Premises in accordance with the terms and conditions set forth below.

NOW, THEREFORE, In consideration of the mutual covenants contained herein the parties agree to the following:

1. Term of Lease. Tenant agrees to rent the Premises for a period of 12 months commencing on the **1st day of April, 2021** and terminating on the **30th day of April, 2023** ("Term"), or sooner as provided herein.

2. Rent. Tenant agrees to pay annual rent of **$21,624**, in equal monthly installments of **$1800**, payable in advance on the fifth day of each month for that month's rental. The initial rental payment of **$800**, due and payable upon the signing of this Agreement, shall represent the rent for the first month. All rental payments shall be made to Landlord at the address specified above or at such other place as Landlord may designate from time to time.

3. Late Rental Payments and Returned Checks. If Landlord does not receive a monthly rental payment by the 5th day of the month, Tenant agrees to pay a late charge of **$50**, plus **$10** per day for each day thereafter that the rent payment is not received by the Landlord.

3.1. If a monthly rental payment received after the 9th day of the month does not include all applicable late fees and/or "additional rents" as defined herein, the outstanding monthly rental payment will continue to be considered "unpaid".

3.2. Payments received by Landlord will be applied first towards late fees and/or other additional charges, then towards outstanding rent.

3.3. If any check given by Tenant to Landlord for the payment of rent or for any other sum due under this Agreement is returned for insufficient funds, a "stop payment" order, or any other reason, Tenant shall pay Landlord a returned check charge of **$100** and Landlord shall have the right to demand that all future payment obligations be made in cash or by money order.

4. Security Deposit. Upon the signing of this Agreement, Tenant shall deposit **$1000** with Landlord assecurity that Tenant will comply with all of the terms and conditions of this Agreement. THE SECURITY DEPOSIT MAY NOT BE USED TO PAY RENT UNDER ANY CIRCUMSTANCES. Landlord's obligation to release Tenant's security deposit is subject to applicable provisions of law and Tenant's full compliance with the terms and conditions of this Agreement, including but not limited to the following:

4.1. Performance of Tenant's obligations through the full term of the Agreement;
4.2. Confirmation that Tenant has not damaged the Premises, buildings, or grounds;
4.3. Confirmation that the entire dwelling, appliances, closets, and cupboards are clean and free from insects, all debris and rubbish have been removed from the property, carpets are vacuumed and shampooed and left clean and odorless;
4.4. Payment of all unpaid charges including late charges, visitor charges, pet charges, delinquent rents, etc.;
4.5. Return of all keys; and

FILED: NEW YORK COUNTY CLERK 01/03/2023 12:01 PM INDEX NO. 453196/2022
NYSCEF DOC. NO. 45 RECEIVED NYSCEF: 01/03/2023
Case 1:22-cv-01823-JSR Document 120-18 Filed 01/18/23 Page 2 of 6

4.6. Landlord's receipt of Tenant's forwarding address.

5. Use of the Security Deposit. Landlord may use as much of the security deposit as necessary to pay for damages resulting from Tenant's occupancy and use of the Premise or other violations or breaches of the Agreement. If such events occur prior to the termination of the Term, Landlord may demand that Tenant replace the amount of the security deposit used by Landlord. If Landlord sells the Premises, Landlord may transfer the deposit to the new owner for Tenant's benefit. Landlord will notify Tenant of any sale and transfer of the deposit. Landlord will then be released of all liability to return the security deposit to Tenant.

6. Possession of the Premises. Any failure to take possession of the Premises shall not relieve Tenant's obligation to pay rent. If Landlord is unable to deliver possession of the Premises for any reason not within Landlord's control, this Agreement shall remain in full force and effect and Landlord shall not be liable for any resulting damages. Tenant shall not be liable for any rental payment until possession of the Premises is delivered. If Landlord is unable to deliver possession within thirty (30) calendar days after the commencement date identified herein, Tenant may terminate this Agreement by giving written notice to Landlord and shall receive a refund of all rent and security deposits paid.

7. Use of Property. Tenant shall use the Premises exclusively as a private residence with no more than 7 ("Household Members"). Occupancy by guests for more than ten days in any six-month period is prohibited and shall constitute a breach of this Agreement without Landlord's advanced written consent. Tenant shall make no other use of the Premises without Landlord's prior written approval.

8. Alterations by Tenant. Tenant shall not make any alterations, additions, or modifications to the Premises without first obtaining Landlord's express written consent. Any alterations, additions, and/or improvements made to the Premises shall become Landlord's property.

9. No Transfer, Assignment or Subletting. Tenant shall not transfer, assign, or attempt to sublet this Agreement, or any part thereof. Any attempt to assign, transfer, or sublet shall be VOID and, at the election of Landlord, be an irremediable breach of this Agreement and cause for immediate termination.

10. Condition of the Premises. Tenant acknowledges that he or she has examined the entire interior and exterior of the Premises, including plumbing, heating and electrical appliances, smoke detector(s), fixtures, carpets, drapes and paint, and has found them to be in good, safe and clean condition and repair. Tenant further acknowledges that the premises are leased without air conditioning other than one (1) window unit provided by Landlord. Tenant agrees to:

a. Properly use, operate and safeguard the Premises and all furniture and furnishings, appliances and fixtures within the Premises;

b. Maintain the Premises in clean and sanitary condition, and upon termination of the tenancy, to surrender the Premises to Landlord in the same condition as when Tenant first took occupancy, except for ordinary wear and tear,

c. Maintain the surrounding grounds in a clean and safe manner, keeping the grounds clear of rubbish and weeds, and trimming all grass as necessary to effect a neat and orderly appearance to the property,

d. Notify Landlord in writing upon discovery of any damages, defects or dangerous conditions in and about the Premises; and

e. Reimburse Landlord for the cost of any repairs to the Premises of damages caused by misuse or negligence of Tenant or his or her guests or invitees.

11. Premises are Leased Unfurnished. Tenant acknowledges that Premises are leased unfurnished and without appliances except heating device or devices, stove/oven, refrigerator, hot water heater, and one air conditioning window unit. Tenant may freely use any other furniture or appliances as may be present in the Premises. Tenant acknowledges that Landlord may remove, add to, or change any such furniture and appliances at any time at Landlord's sole option.

12. Damage to Personal Property. Landlord shall not be responsible for any loss of or damage to property of Tenant or of others placed, located, or moved into the Premises. Tenant hereby agrees to make no claim for any such damages or loss against Landlord. Tenant shall purchase renter's insurance on all personal property if such coverage is desired.

13. Compliance with Laws. Tenant shall comply with all statutes, ordinances, rules, orders, regulations and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the Premises, or Tenant's use of the Premises.

14. Destruction of Premises. Subject to the exception below, if the Premises are damaged or destroyed as to render them uninhabitable, either Landlord or Tenant shall have the right to terminate this Agreement as of the date on which such damage occurs. Written notice of the intention to terminate the Agreement shall be provided to the other party within fifteen days of when the damage occurred.

a. If any damage results from the conduct or negligence of Tenant or Tenant's guests or invitees, Landlord shall have the sole right to terminate this Agreement. Regardless of whether Landlord exercises its right to terminate the Agreement, Tenant shall remain responsible for all losses associated from the property damage, including, but not limited to, damages and repair costs, replacement value of furnishings, as well as loss of rental income.

15. Default by Tenant. Landlord's acceptance of this Agreement is conditioned upon Tenant's prompt rental payments and full compliance with the terms and conditions of this Agreement. Any failure by Tenant to comply with the terms of this Agreement shall constitute a breach of this Agreement. Upon Tenant's default or breach of this Agreement, Landlord, his agents or attorneys, shall have the right to enter the Premises, and remove all persons from the Premises forcibly or otherwise. Tenant expressly waives any and all notice required by law to terminate tenancy, and waives any and all legal proceedings to recover possession of the Premises. The failure to pay rent when due shall immediately constitute a material breach. Tenant shall remain obligated to pay the rent for the remainder of the Lease Term. Tenant shall also be obligated to pay all costs, including reasonable attorney fees, related to the breach and the collection of any monies owed the Landlord, along with the cost of re-entering, re-renting, cleaning, and repairing the Premises.

16. Abandonment by Tenant. If Tenant abandons or vacates the Premises before the end of the Lease Term, or causes the rent to be in arrears, Landlord may, without any liability to Tenant, cancel this Agreement, enter the Premises, and relet the Premises with or without any furniture that may be therein. Any prior payments made by Tenant to Landlord shall be forfeited. If Landlord is required to remove Tenant's personal property from the Premises after Tenant vacates or abandons the Premises, Tenant hereby waives, releases, quitclaims, and discharges Landlord from any damage for loss of any article of personal property.

17. Utilities. All applications and connection for necessary utility services for the Premises shall be made in the name of the Tenant only. Tenant shall be solely liable for all utility charges as they become due, including but not limited to, those for telephone, cable/satellite service (costs associated with services beyond "Basic"), and Internet service. It shall be a material breach of this Agreement for Tenant to allow any lien or encumbrance against the Premises without Landlord's prior written approval. Tenant specifically authorizes Landlord to deduct amounts of any unpaid bills from the security deposit upon termination of this Agreement. Landlord shall be responsible for real property taxes and assessments.

18. Hazardous Use. Tenant shall not bring or maintain anything within the Premises that could be dangerous, flammable, explosive, or increase the danger of fire or any other hazard.

19. No Indoor Smoking. Tenant will not smoke and will not permit guests or invitees to smoke tobacco or any other substance within any structure in the premises. Smoking on open porches and under overhangs is permitted.

20. **Renewal and Changes in Lease.** The Landlord may offer the Tenant a new lease to take effect at the end of the Lease Term. The new lease agreement may include reasonable changes. Landlord shall notify Tenant of any proposed new lease provisions at least 60 days before the end of the present lease term. If no changes to the lease are made, Tenant may continue to rent the Premises on a month-to-month basis with the rest of the lease provisions remaining the same. In either case, Tenant shall notify Landlord at least 30 days before the end of the present lease term.

21. **Pets.** No dogs, cats, or other animals shall be permitted to reside in the Premises without Landlord's prior written consent and right to require an additional security deposit.

22. **Landlord's Right of Entry and Inspection.** Landlord, or any of his agents, shall have the right to enter the Premises to examine the property, make repairs, additions or alterations as deemed necessary for the safety, comfort, or preservation of the Premises.

   a. Except in case of emergency, Landlord shall give Tenant reasonable notice of intent to enter. For these purposes, twenty-four (24) hour written notice shall be deemed reasonable.

   b. To facilitate Landlord's right of access, Tenant shall not, without Landlord's prior written consent, add, alter or re-key any locks to the Premises. At all times Landlord shall be provided with a key or keys capable of unlocking all such locks and gaining entry. Tenant further agrees to notify Landlord in writing if Tenant installs any burglar alarm system, including instructions on how to disarm it in case of emergency entry.

   c. Landlord shall have the right to exhibit the Premises, and to place notices "For Rent" of "For Sale" at any time within sixty (60) days before the expiration of this Agreement.

23. **Individual Tenant Liability.** Each tenant who signs this Agreement, regardless of possession or occupancy of the Premises, shall be jointly and severally liable for the full performance of each and every obligation of this Agreement, including, but not limited to, payment of all outstanding rental payments, and any and all costs to remedy damages to the Premises regardless of whether such damages were caused by a Tenant or invitee of a Tenant.

24. **Care and Maintenance of Premises.** Tenant accepts the Premises in the condition they are in at the beginning of this Lease Term. Tenant shall maintain the Premises in the same condition, order, and repair as found at the commencement of the Lease Term. Tenant shall immediately replace or repair any damage to water apparatus, electric lights, or any fixture, appliances or appurtenances within the Premises caused by any act or neglect of Tenant, or of any guests, visitors, or persons under the control of the Tenant.

25. **Smoke Detectors.** The Premises are equipped with smoke detection device(s). Tenant shall be responsible for reporting any problems, maintenance or repairs to Landlord. Replacement of batteries is the responsibility of Tenant.

26. **Indemnification of Landlord.** The parties expressly understand and agree that Landlord shall not be liable for any damage or injury to Tenant, any other person, or to any property, occurring on any part of the Premises. Tenants expressly release Landlord from any and all liability for any damages or injury to Tenants, or any other person, or to any property, occurring on the Premises unless such damage is the direct result of the negligence or unlawful act of Landlord or Landlord's agents. Tenant shall indemnify, defend, and hold harmless Landlord and his agents, from any and all claims for such injury and/or damage, no matter how caused.

27. **Remedies.** Landlord's rights and remedies provided herein shall be cumulative.

28. **Insurance.** Tenant assumes full responsibility for all personal property placed, stored, or located on or about the Premises. Landlord does not insure tenant's personal property. Landlord recommends that Tenants obtain insurance to protect against risk of loss from harm to Tenant's personal property. Landlord shall not be responsible for any harm to Tenant's property resulting from fire, theft, burglary, strikes, riots, orders or acts of public authorities, acts of nature or any other circumstance or event beyond Landlord's control.

29. **Subordination.** This Agreement is subordinate and inferior to any mortgage(s) encumbering the Premises whether currently existing or subsequently executed.

30. Entire Agreement. This Agreement constitutes the entire understanding of the parties. This Agreement supersedes and terminates all prior representations, warranties, and agreements, written or oral, regarding the subject matter of this Agreement. Any modification to this Agreement must be in a writing signed by both parties.

31. Notice. Written notice mailed and delivered to the Premises shall constitute sufficient notice to Tenant and written notice mailed and delivered to the address provided above shall constitute sufficient notice to Landlord.

32. Severability. Should any provision of this Agreement be held invalid, illegal, or unenforceable in any respect by any court of competent jurisdiction, such holding shall not impair the validity, legality, or enforceability of the remaining provisions of this Agreement.

33. No Waiver. Failure or delay on the part of either party to exercise any right, remedy, power, or privilege hereunder shall not operate as a waiver. Any waiver must be in writing and signed by the party granting such waiver in order to be effective.

34. Governing Law. This Agreement, and the rights and duties of the parties hereunder, shall be construed in accordance with, and governed by, the substantive laws of the State of West Virginia.

IN WITNESS WHEREOF, the parties have executed this Residential Lease Agreement for the purposes herein expressed the day and year above written.

_____          _____
Landlord –                          Tenant –