EXHIBIT M



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

### *SUBPOENA DUCES TECUM*
## THE PEOPLE OF THE STATE OF NEW YORK

To:   Meta Platforms, Inc.
      1601 Willow Road
      Menlo Park, CA 94025

**YOU ARE HEREBY COMMANDED**, under the laws of the State of New York and all business and excuses being laid aside, to produce to the Office of the Attorney General of the State of New York, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the Instructions and Definitions below, any and all documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of entities that You own or control in whole or in part. Your production of Documents in response to this subpoena should be addressed to the attention of Rick Sawyer, Special Counsel for Hate Crimes, and may be submitted by mail or electronic mail provided it is received by **June 10, 2022**, or any agreed upon adjourned date thereafter.

**PLEASE TAKE NOTICE** that the Attorney General deems the Documents and testimony requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that disobedience of this subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject Meta Platforms, Inc., to prosecution under New York law.

**PLEASE TAKE FURTHER NOTICE** that Meta Platforms, Inc., shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. (Additional subpoenas may follow.)

**WITNESS, the Honorable Letitia James**, Attorney General of the State of New York, May 13, 2022.

LETITIA JAMES
Attorney General of New York

By:  /s/ Rick Sawyer

RICK SAWYER
*Special Counsel for Hate Crimes*
28 Liberty Street
New York, New York 10005
Tel. 212.416.6182
richard.sawyer@ag.ny.gov

2

**SCHEDULE**

**A.      Instructions**

1.  Please produce the Documents described in Section C of this schedule, in the accordance with these Instructions (Section A) and the Definitions (Section B) and Format (Section D) described below.

2.  Time Frame.  Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January 1, 2015 through the present** (the "Relevant Period").

3.  Continuing Obligation. The obligation to produce Documents pursuant to this subpoena is a continuing one.  Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4.  No Documents Responsive to Requests.  If there are no Documents responsive to a particular request, please so state in writing, identifying the paragraph number(s) of the request concerned.

5.  All Documents shall be produced with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is responsive.

6.  In order for the response to this subpoena to be complete, it must include a completed version of the attached Certification. In accordance with CPLR 3120 and 3122-a, the Certification must be sworn in the form of an affidavit and subscribed by a qualified witness charged with the responsibility for maintaining the records, stating in substance that (a) s/he is the duly authorized custodian or other qualified witness and has the authority to make the certification; (b) to the best of his/her knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the documents described in this subpoena that are in your possession, custody, or control; (c) to the best of his/her knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in this subpoena, or if they do not represent a complete set of the documents subpoenaed, an explanation of which documents are missing and a reason for their absence is provided; and (d) the records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records.

7.  Documents No Longer in Your Possession. If any Document requested was formerly in your possession, custody or control but is no longer available or no longer exists, submit a statement in writing that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the dates on which the Document was prepared, transmitted or received; (v) specifies the date

on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

8. <u>Privilege.</u> If any Document requested is withheld on ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production.  If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors).  Such statement (or log) shall accompany each production.  Further, for each Document withheld pursuant to this paragraph, the relevant production shall include placeholder pages equivalent in number to the page-length of the withheld Document.

9. <u>Format for Production.</u> Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in their original format, whether hard copy or electronic.

10. <u>Stored Communications Act.</u>  If You are a service which provides (a) the ability to send or receive wire or electronic communication to users; or (b) computer storage or processing services by means of an electronic communications system available to the public, the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, may protect certain customer/subscriber communications, records, and other information pertaining to customers/subscribers that You maintain, other than the (a) name; (b) address; (c) local and long distance telephone connection records, or records of session times and durations; (d) length of service (including start date) and types of service utilized; (e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (f) means and source of payment for such service (including any credit card or bank account number), of a subscriber to or customer of such service.  18 U.S.C. § 2703(c)(2).  This Subpoena should not be interpreted to request information protected by the SCA.  Such protected information need not be produced in response to this Subpoena.  If You have any questions regarding whether certain information is protected by the SCA, You should contact an attorney.

## B.   Definitions

1. "All" shall mean "each and every."

2. "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

3. "Any" shall mean "any and all."

4. "Communications" shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium, and shall include any Document that abstracts, digests, transcribes, records, or reflects any of the foregoing.

5. "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

6. "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including: originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires, telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche; storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations. A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

7. The singular form of any word shall include the plural and vice versa.

8. Any word used but not defined in this Schedule shall be construed consistently with its common meaning.

9. "VDARE" shall mean VDARE Foundation, Inc. and (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf including but not limited to Peter Brimelow, Lydia Brimelow, John Brimelow, Scott McConnell, John O'Sullivan, Joseph (Joe) Fallon, and John Wall, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, including Lexington Research Institute, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with VDARE Foundation, Inc., including by possessing, directly or indirectly, the power to direct or cause the direction of VDARE Foundation, Inc.'s management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

**C.** **Documents to Be Produced**

For the **Relevant Time Period**, please produce the following documents relating to any Facebook account established by, held in the name or on behalf of, and/or linked to:

     a.  VDARE Foundation, Inc. (VDARE)
     b.  EIN 22-3691487
     c.  www.vdare.com
     d.  pbrimelow@vdare.com; lbrimelow@vdare.com
     e.  Peter Brimelow, VDARE Chairman;
     f.  Lydia Brimelow, VDARE Treasurer

(collectively the "Facebook Accounts"):

1.  All account opening documents for the Facebook Accounts.

2.  Documents sufficient to identify the individuals who opened the Facebook Accounts.

3.  All documents concerning the grounds on which the Facebook Accounts were terminated.

4.  A true and correct copy of the document entitled "April 2020 Coordinated Inauthentic Behavior Report."

5.  All documents relating to the finding that VDARE engaged in "coordinated inauthentic behavior" in its use of Facebook and other Meta platforms.

6.  Documents sufficient to identify the Facebook Pages, accounts, and Group used by VDARE in their "coordinated inauthentic behavior" as described by the "April 2020 Coordinated Inauthentic Behavior Report."

7.  Documents sufficient to identify the "COVID-19-related conspiracies and hate speech about Asian Americans" shared through the network of fake accounts VDARE created and identified by the "April 2020 Coordinated Inauthentic Behavior Report."

8.  All documents indicating that VDARE violated the terms of service of Facebook or other Meta platforms.

9.  All complaints made to Facebook or another Meta platform during the Relevant Period concerning any allegations that VDARE violated the platform's terms of service.

10. All documents from investigations by Meta, its predecessors, or agents into allegations that VDARE violated the terms of service of Facebook or other Meta platforms.

11. Documents sufficient to identify the amount, date, purpose, payor name, and payor address for any payment made to VDARE by Facebook Pay or any other Meta payment platform.

12. All documents reflecting withdrawals by VDARE from Facebook Pay or any other Meta payment platform, including the amount, date, withdrawing person or entity and recipients of each withdrawal.

13. All documents relating to any other transfers by VDARE to or from Facebook Pay or any other Meta payment platform, including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.

14. Documents sufficient to identify the final balance(s), if any, in VDARE's Facebook Pay or any other Meta payment account.

15. All account closing documents for VDARE's Facebook Pay or any other Meta payment account.

16. Documents sufficient to identify any advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

17. Documents sufficient to identify the total cost of advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

18. Documents sufficient to identify the audiences targeted by VDARE's advertising within the Relevant Period on Facebook or any other Meta platform.

19. Documents sufficient to identify the number of users to whom VDARE's advertising was delivered within the Relevant Period on Facebook or any other Meta platform. Please note that this request does not call for production of the identity of any user who received VDARE's advertising.

**D.      Format for Production**

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1.  <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2:

    - *Metadata Load File*

    - *Extracted or OCR Text Files*

    - *Single-Page Image Files*

    - *Opticon Load File*

    - *Native Files*.

2.  <u>Production File Requirements</u>.

    A.    ***Metadata Load File***

    - Required file format:

        ▪   UTF-8
        ▪   .dat file extension
        ▪   Field delimiter: (ASCII decimal character 20)
        ▪   Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

    - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.

    - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

    - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

    - Accepted date formats:

        ▪   mm/dd/yyyy
        ▪   yyyy/mm/dd
        ▪   yyyymmdd

    - Accepted time formats:

- hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
- hh:mm:ss:mmm

B. *Extracted or OCR Text Files*

- You must produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

C. *Single-Page Image Files (Petrified Page Images)*

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.

- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.

- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."

- Each single-page TIF file must be endorsed with a unique Bates number.

- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).

- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.

- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

D. ***Opticon Load File***

- Required file format:

  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension

- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

  - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  - VOLUME – this value is optional and may be left blank.
  - RELATIVE PATH – the filepath to each single-page image file on the production media.
  - DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
  - BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
  - PAGE COUNT – this value is optional and may be left blank.

- ***Example***:

  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E. ***Native Files***

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.

- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and the original file extension.

- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."

- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.

- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.

- You may be required to supply a software license for proprietary documents produced only in native format.

3. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:

   - data\ (contains production load files)
   - images\ (contains single-page TIF files, with subfolder organization)
     - \0001, \0002, \0003…
   - natives\ (contains native files, with subfolder organization)
     - \0001, \0002, \0003…
   - text\ (contains text files, with subfolder organization)
     - \0001, \0002, \0003…

4. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

5. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the Notice to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the Notice.

   <u>Relational Databases</u>

   - Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

   - Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

   - Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

11

7.  <u>Media and Encryption</u>. All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.

**ATTACHMENT 1**
**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\…\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\…\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |

| SUBJECT | Subject line of the email. | |
|---|---|---|
| DATERCVD | Date and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;… |
| NUMATTACH | Number of attachments. | |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | |
| REVISION | Number of revisions to a document. | 18 |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| MSGINDEX | Email message ID | |
| CONVERSATIONINDEX | Email Conversation Index | |

**Certification of Business Records**

State of _____)
                                    ) ss.:
County of _____)


_____, being duly sworn, deposes and says:


1.  I am the duly authorized custodian or other qualified witness of the business records of _____.

    I am familiar with the business practices and procedures of _____ and have the authority to make this certification.


2.  To the best of my knowledge, after reasonable inquiry, the records produced in response to the subpoena are accurate versions of the documents described in the subpoena that are in my possession, custody or control.


3.  To the best of my knowledge, after reasonable inquiry, the records represent all the documents described in the subpoena duces tecum except that the following documents are missing for the reason stated:

    _____


4.  The records produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and it was the regular course of business to make such records.


Sworn to before me this ____


day of _____, 2022


                                                    _____
                                                    Notary Public



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

## *SUBPOENA DUCES TECUM*
## THE PEOPLE OF THE STATE OF NEW YORK

To:     Facebook Payments, Inc.
        1601 Willow Road
        Menlo Park, CA 94025

**YOU ARE HEREBY COMMANDED**, under the laws of the State of New York and all business and excuses being laid aside, to produce to the Office of the Attorney General of the State of New York, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the Instructions and Definitions below, any and all documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of entities that You own or control in whole or in part. Your production of Documents in response to this subpoena should be addressed to the attention of Rick Sawyer, Special Counsel for Hate Crimes, and may be submitted by mail or electronic mail provided it is received by **June 29, 2022**, or any agreed upon adjourned date thereafter.

**PLEASE TAKE NOTICE** that the Attorney General deems the Documents and testimony requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that disobedience of this subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject Facebook Payments, Inc. to prosecution under New York law.

**PLEASE TAKE FURTHER NOTICE** that Facebook Payments, Inc., shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. (Additional subpoenas may follow.)

1

**Witness, the Honorable Letitia James**, Attorney General of the State of New York, June 14, 2022.

Letitia James
Attorney General of New York

By:  /s/ Rick Sawyer

Rick Sawyer
*Special Counsel for Hate Crimes*
28 Liberty Street
New York, New York 10005
Tel. 212.416.6182
richard.sawyer@ag.ny.gov

## SCHEDULE

### A. Instructions

1. Please produce the Documents described in Section C of this schedule, in the accordance with these Instructions (Section A) and the Definitions (Section B) and Format (Section D) described below.

2. Time Frame.  Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January 1, 2015 through the present** (the "Relevant Period").

3. Continuing Obligation. The obligation to produce Documents pursuant to this subpoena is a continuing one.  Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4. No Documents Responsive to Requests.  If there are no Documents responsive to a particular request, please so state in writing, identifying the paragraph number(s) of the request concerned.

5. All Documents shall be produced with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is responsive.

6. In order for the response to this subpoena to be complete, it must include a completed version of the attached Certification. In accordance with CPLR 3120 and 3122-a, the Certification must be sworn in the form of an affidavit and subscribed by a qualified witness charged with the responsibility for maintaining the records, stating in substance that (a) s/he is the duly authorized custodian or other qualified witness and has the authority to make the certification; (b) to the best of his/her knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the documents described in this subpoena that are in your possession, custody, or control; (c) to the best of his/her knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in this subpoena, or if they do not represent a complete set of the documents subpoenaed, an explanation of which documents are missing and a reason for their absence is provided; and (d) the records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records.

7. Documents No Longer in Your Possession. If any Document requested was formerly in your possession, custody or control but is no longer available or no longer exists, submit a statement in writing and under oath that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the dates on which the Document was prepared, transmitted or received; (v) specifies the date

on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

8. <u>Privilege.</u> If any Document requested is withheld on ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production.  If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors). Such statement (or log) shall accompany each production.  Further, for each Document withheld pursuant to this paragraph, the relevant production shall include placeholder pages equivalent in number to the page-length of the withheld Document.

9. <u>Format for Production.</u> Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in their original format, whether hard copy or electronic.

10. <u>Stored Communications Act.</u>  If You are a service which provides (a) the ability to send or receive wire or electronic communication to users; or (b) computer storage or processing services by means of an electronic communications system available to the public, the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, may protect certain customer/subscriber communications, records, and other information pertaining to customers/subscribers that You maintain, other than the (a) name; (b) address; (c) local and long distance telephone connection records, or records of session times and durations; (d) length of service (including start date) and types of service utilized; (e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (f) means and source of payment for such service (including any credit card or bank account number), of a subscriber to or customer of such service.  18 U.S.C. § 2703(c)(2).  This Subpoena should not be interpreted to request information protected by the SCA.  Such protected information need not be produced in response to this Subpoena.  If You have any questions regarding whether certain information is protected by the SCA, You should contact an attorney.

## B.  Definitions

1. "All" shall mean "each and every."

2. "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

3. "Any" shall mean "any and all."

4.  "Communications" shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium, and shall include any Document that abstracts, digests, transcribes, records, or reflects any of the foregoing.

5.  "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

6.  "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including:  originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires, telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche; storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations.  A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

7.  The singular form of any word shall include the plural and vice versa.

8.  Any word used but not defined in this Schedule shall be construed consistently with its common meaning.

9.  "VDARE" shall mean VDARE Foundation, Inc. and (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf including but not limited to Peter Brimelow, Lydia Brimelow, John Brimelow, Scott McConnell, John O'Sullivan, Joseph (Joe) Fallon, and John Wall, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, including Lexington Research Institute, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with VDARE Foundation, Inc., including by possessing, directly or indirectly, the power to direct or cause the direction of VDARE Foundation, Inc.'s management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

**C.       Documents to Be Produced**

For the **Relevant Time Period**, please produce the following documents relating to any Facebook account established by, held in the name or on behalf of, and/or linked to:

    a.  VDARE Foundation, Inc. (VDARE)
    b.  EIN 22-3691487
    c.  www.vdare.com
    d.  pbrimelow@vdare.com; lbrimelow@vdare.com
    e.  Peter Brimelow, VDARE Chairman;
    f.  Lydia Brimelow, VDARE Treasurer

(collectively the "Facebook Accounts"):

1.  Documents sufficient to identify the amount, date, purpose, payor name, and payor address for any payment made to VDARE by Facebook Payments, Inc., or any other Meta payment platform.

2.  All documents reflecting withdrawals by VDARE from Facebook Payments, Inc., or any other Meta payment platform, including the amount, date, withdrawing person or entity and recipients of each withdrawal.

3.  All documents relating to any other transfers by VDARE to or from Facebook Payments, Inc., or any other Meta payment platform, including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.

4.  Documents sufficient to identify the final balance(s), if any, in VDARE's Facebook Payments, Inc., or any other Meta payment account.

5.  All account closing documents for VDARE's Facebook Payments, Inc., or any other Meta payment account.

**D.     Format for Production**

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2:

   - *Metadata Load File*

   - *Extracted or OCR Text Files*

   - *Single-Page Image Files*

   - *Opticon Load File*

   - *Native Files*.

2. <u>Production File Requirements</u>.

   A. ***Metadata Load File***

   - Required file format:

     ▪ UTF-8
     ▪ .dat file extension
     ▪ Field delimiter: (ASCII decimal character 20)
     ▪ Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

   - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.

   - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

   - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

   - Accepted date formats:

     ▪ mm/dd/yyyy
     ▪ yyyy/mm/dd
     ▪ yyyymmdd

   - Accepted time formats:

- hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
- hh:mm:ss:mmm

B. ***Extracted or OCR Text Files***

- You must produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

C. ***Single-Page Image Files (Petrified Page Images)***

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.

- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.

- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."

- Each single-page TIF file must be endorsed with a unique Bates number.

- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).

- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.

- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

D. ***Opticon Load File***

- Required file format:

    - Field delimiter: , (ASCII decimal character 44)
    - No Text Qualifier
    - .opt file extension

- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

    - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
    - VOLUME – this value is optional and may be left blank.
    - RELATIVE PATH – the filepath to each single-page image file on the production media.
    - DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
    - FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
    - BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
    - PAGE COUNT – this value is optional and may be left blank.

- ***Example***:

    ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
    ABC00002,,IMAGES\0001\ABC00002.tif,,,,
    ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
    ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

E. ***Native Files***

- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.

- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and the original file extension.

- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."

- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.

9

- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.

- You may be required to supply a software license for proprietary documents produced only in native format.

3. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:
   - data\ (contains production load files)
   - images\ (contains single-page TIF files, with subfolder organization)
     - \0001, \0002, \0003…
   - natives\ (contains native files, with subfolder organization)
     - \0001, \0002, \0003…
   - text\ (contains text files, with subfolder organization)
     - \0001, \0002, \0003…

4. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

5. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the Notice to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the Notice.

   <u>Relational Databases</u>
   - Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.
   - Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.
   - Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

7. <u>Media and Encryption</u>. All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.