SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by          Index No. _____
LETITIA JAMES, Attorney General of the
State of New York,

                                          Petitioner,

                -against-

VDARE FOUNDATION, INC.,

                                 Respondent.

-----------------------------------------------------------------x

## Memorandum of Law in Support of the Attorney General's Special Proceeding and Application to Compel Respondent VDARE Foundation, Inc. to Comply with an Investigatory Subpoena

LETITIA JAMES
Attorney General of the
State of New York
28 Liberty Street
New York, NY  10005

James Sheehan
Yael Fuchs
Catherine Suvari
Assistant Attorneys General
    *of Counsel*

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT .................................................................. 1

RELEVANT STATUTORY BACKGROUND ............................................. 3

BRIEF STATEMENT OF FACTS ............................................................. 5

    A.    The Attorney General Commenced an Investigation into VDARE's
        Operation and Subpoenaed VDARE Records in Relation to
        that Investigation. ........................................................................ 5

    B.    VDARE Insists that the OAG Must Withdraw the Subpoena and
        Fails to Produce. ......................................................................... 8

ARGUMENT ......................................................................................... 11

    A.    Standard of Review ..................................................................... 11

    B.    The Attorney General's Subpoena Seeks Documents and
        Information Directly Related to a Lawful Regulatory Review. ............. 13

    C.    The Subpoena Poses No Risk of Constitutional Harm. .......................... 14

CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

CASES                                                                                     Page(s)

*Abrams* v. *New York Found. for the Homeless*,
   190 A.D.2d 578 (1st Dep't 1993) ...................................................................3, 15, 16

*Abrams* v. *Temple of the Lost Sheep, Inc.*,
   148 Misc. 2d 825 (Sup. Ct. N.Y. Cty. 1990) ................................................3, 5, 11

*Ams. for Prosperity Found.* v. *Bonta*,
   141 S. Ct. 2373 (2021)...............................................................................................17

*Anheuser-Busch, Inc.* v. *Abrams*,
   71 N.Y.2d 327 (1988) ................................................................................................12

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) .....................................................................................16

*Citizens United* v. *Schneiderman*,
   882 F.3d 374 (2d Cir. 2018)........................................................................................3

*Condon* v. *Inter-Religious Found. for Community Org.*,
   51 A.D.3d 465 (1st Dep't 2008) ...............................................................................15

*Giardina* v. *James*,
   185 A.D.3d 451 (1st Dep't 2020) .............................................................................12

*Hogan* v. *Cuomo*,
   67 A.D.3d 1144 (3d Dep't 2009) .........................................................................12, 14

*In re McDonell*,
   195 Misc. 2d 277 (Sup. Ct. N.Y. Cty. 2002) .............................................................3

*Libre by Nexus, Inc.* v. *Underwood*,
   181 A.D.3d 488 (1st Dep't 2020) .............................................................................12

*Matter of Cuomo* v. *Dreamland Amusements Inc.*,
   22 Misc. 3d 1107 (A), 2009 WL 81139 (Sup. Ct. N.Y. Cty. 2009).........................12

*Matter of Evergreen Assn., Inc.* v. *Schneiderman*,
   153 A.D.3d 87 (2d Dep't 2017).................................................................................16

*Matter of La Belle Creole Int'l, S.A.* v. *Attorney-General of the State of N.Y.*,
   10 N.Y.2d 192, 196 (1961) ........................................................................................12

*Mountain View Coach Lines, Inc.* v. *Storms*,
   102 A.D.2d 663 (2d Dep't 1984)...............................................................................16

iii

*New York* v. *Trump Org.*,
    No. 451685/2020, 2022 WL 489625 (Sup. Ct. N.Y. Cty. Feb. 17, 2022) ............................12

*Roemer* v. *Cuomo*,
    67 A.D.3d 1169 (3rd Dep't 2009) ..........................................................................................12

*Ryan* v. *Lefkowitz*,
    18 N.Y.2d 977 (1966) ......................................................................................................11–12

*Schneiderman* v. *Tierney*,
    No. 451489/2014, 2015 WL 2378983 (Sup. Ct. N.Y. Cty. May 18, 2015)...........................3-5

*Spitzer* v. *Lev*,
    No. 400989/2002, 2003 WL 21649444 (Sup. Ct. N.Y. Cty. June 5, 2003)...............................3

## STATE STATUTES

CPLR
    § 2308.................................................................................................................................1, 11

Estates, Powers and Trusts Law
    Article 7-A ..........................................................................................................................4, 14
    Article 8 .................................................................................................................................13
    § 8-1.1 *et. seq*. ............................................................................................................... *passim*

Executive Law
    § 63(12)...............................................................................................................................4, 11
    § 172-d.....................................................................................................................................14
    § 175..................................................................................................................................4, 11

Not for Profit Corporation Law (N-PCL)
    § 112...................................................................................................................................4, 11
    §§ 202, 204, 205...................................................................................................................13
    §§ 509, 510, 511, 511-a ....................................................................................................6, 13
    § 515.......................................................................................................................................13
    § 519.......................................................................................................................................13
    § 520.......................................................................................................................................13
    §§ 715, 715-a ........................................................................................................................13

Attorney General Letitia James, on behalf of the People of the State of New York, submits this memorandum of law, along with the accompanying Order to Show Cause, Verified Petition dated December 16, 2022, and Affirmation of Yael Fuchs in Support of Order to Show Cause dated December 16, 2022 ("Fuchs Aff."), together with all exhibits thereto, in support of this special proceeding and her application for a motion to compel and such other relief as the Court deems just, proper, and appropriate under CPLR § 2308.

## PRELIMINARY STATEMENT

The VDARE Foundation, Inc., is a New York not-for-profit charitable corporation registered with the Charities Bureau of the New York Attorney General's Office (OAG). As a New York charitable corporation, its governance must comply with the New York Not-for-Profit Corporation Law; its management of charitable assets must comply with the New York Estates, Powers and Trusts Law; and it must file timely, complete and accurate financial and other disclosures pursuant to the Executive Law. Based on a preliminary investigation, the OAG has reason to believe VDARE has violated each of those requirements.

In 2020, public reporting indicated that VDARE purchased a medieval-style castle that its Chairman and Director Peter Brimelow now uses as a personal residence with his wife (also a director) and family. Following a review of VDARE's public filings and other public material, the Attorney General began investigating VDARE and its leadership concerning misuse of charitable assets, unlawful related-party transactions, unauthorized transfer of charitable assets to for-profit entities (apparently controlled by the Brimelows), and inaccurate filings with the Charities Bureau. Such conduct, if confirmed, would constitute serious violations of New York law.

1

As part of its investigation, the Attorney General served VDARE with a subpoena *duces tecum* dated June 23, 2022 (the "Subpoena"). Since then, VDARE has engaged in a series of delaying tactics and obfuscation. Despite several negotiated extensions, VDARE has produced only a fraction of the responsive documents in its possession. Of the documents produced, the majority are redacted beyond comprehension, and VDARE has refused to produce a redaction log justifying those redactions. VDARE has redacted its own board meeting minutes, bank statements, accounting ledgers, and even financial records for Brimelow's privately held company that has received tens of thousands of dollars in unexplained payments from VDARE. And VDARE has yet to review gigabytes of other documents, let alone prepare them for production. When confronted about this delay and given a promised date certain of December 12, 2022, to comply—nearly six months after the Subpoena's issuance—VDARE on that date opted instead to bring a frivolous lawsuit in federal court. *See VDARE Foundation, Inc. v. James*, No. 22-cv-1337 (FJS/CFH) (N.D.N.Y.).

The OAG now seeks judicial supervision to compel compliance with its lawfully issued subpoena. New York law vests the OAG with broad authority to oversee not-for-profit entities and their fiduciaries, and there is no question that VDARE is subject to the OAG's oversight. The delays and gaps in document production have prejudiced the OAG's ability to conduct a timely investigation of VDARE's compliance, and VDARE's extensive redactions have made it impossible for the OAG to confirm or deny its suspicions that VDARE and its fiduciaries have repeatedly violated the law. As set forth below, in light of the OAG's well-established authority to investigate unlawful activity by New York non-profit organizations and because VDARE's objections are unsupported by any showing of actual or likely harm, the OAG is entitled to an order compelling VDARE to comply with the Subpoena.

## RELEVANT STATUTORY BACKGROUND

Not-for-profit and charitable organizations do not have shareholders or owners to whom they are accountable:  the Attorney General is the primary law enforcement officer in the State vested with broad discretion to oversee such entities, to enforce compliance with the law, to protect the public trust, to ensure that donations and property held for charitable purposes are being properly used for their intended beneficiaries, and to prevent waste and fraud.  *See Abrams* v. *Found for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993); *Schneiderman* v. *Tierney*, No. 451489/2014, 2015 WL 2378983, at *2 (Sup. Ct. N.Y. Cty. May 18, 2015); *Abrams* v. *Temple of the Lost Sheep, Inc.*, 148 Misc. 2d 825, 828–29 (Sup. Ct. N.Y. Cty. 1990); *Spitzer* v. *Lev*, No. 400989/2002, 2003 WL 21649444, at *3 (Sup. Ct. N.Y. Cty. June 5, 2003).  Under New York law, the Attorney General is responsible for ensuring that entities like VDARE are not misused and for protecting "the public interest in charitable property." *See Tierney*, 2015 WL 2378983, at *3.  She safeguards that public interest through investigations and enforcement actions to prevent, among other things, fraud and misconduct by not-for-profit charitable organizations. *See In re McDonell*, 195 Misc. 2d 277, 278-79 (Sup. Ct. N.Y. Cty. 2002) ("The State Legislature has given the Attorney General broad supervisory and oversight responsibilities over charitable assets and their fiduciaries, as enumerated in the Not-For-Profit Corporation Law, the EPTL and the Executive Law."); *Citizens United* v. *Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018) (outlining New York's regulatory regime for non-profits and recognizing the "important government interests at stake" in OAG regulation of New York's non-profit sector, including "preventing fraud and self-dealing in charities").

The Attorney General's statutory oversight mandate is expansive: the Not-for-Profit Corporation Law assigns the OAG responsibility for the supervision of not-for-profit

3

corporations and grants the OAG broad investigatory powers in furtherance of that authority. *See Tierney*, 2015 WL 2378983, at *2–3. Under the Estates, Powers and Trusts Law, the Attorney General "may investigate transactions and relationships of trustees for the purpose of determining whether or not property held for charitable purposes has been and is being properly administered" and may take such steps as the OAG deems "relevant to the inquiry." EPTL § 8-1.4(i). The Attorney General also has the authority to subpoena both the subject of an investigation and any independent entities or persons that may have documents and information relevant to her review. *See, e.g.*, EPTL § 8-1.4(i) ("The attorney general… [is] empowered to subpoena any trustee, agent, fiduciary, beneficiary, institution, association or corporation *or other witness*, examine any such witness under oath and, for this purpose, administer the necessary oaths, and require the production of any books or papers which they deem relevant to the inquiry." (emphasis added)); N-PCL § 112(b)(6) (the Attorney General "may take proof and issue subpoenas in accordance with the civil practice law and rules" in connection with investigations of potential misconduct giving rise to the remedies set forth in Not-for-Profit Corporation Law § 112(a)); *Tierney*, 2015 WL 2378983, at *3. Executive Law section 63(12) similarly authorizes the Attorney General to take proof and make a determination of relevant facts through the issuance of subpoenas in accordance with the civil practice law and rules during an investigation of potential repeated fraudulent or illegal acts. *See also* Exec. L. § 175 (authorizing the Attorney General to "take proof, issue subpoenas and administer oaths" in connection with investigations of potential misconduct in violation of Article 7-A of the Executive Law, which concerns the solicitation and collection of funds for charitable purposes.). These standards make clear that the Attorney General has a right to conduct investigations to determine whether charitable assets are being used properly for the benefit of intended

4

beneficiaries. *Temple of the Lost Sheep, Inc.*, 148 Misc 2d at 828–29; *Tierney*, 2015 WL 2378983, at *2–3. A subpoena issued by the Attorney General in that context is presumptively valid and, to challenge the subpoena, a challenging party "has the burden of proof to establish" its invalidity. *Tierney*, 2015 WL 2378983, at *3.

## BRIEF STATEMENT OF FACTS

### A. The Attorney General Commenced an Investigation into VDARE's Operation and Subpoenaed VDARE Records in Relation to that Investigation.

VDARE is a New York charitable not-for-profit corporation that incorporated in New York in 1999. Fuchs Aff. ¶ 6. In 2000, VDARE, then known by its previous name, the Lexington Research Institute, Limited, applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3) charitable entity. *Id.* ¶¶ 8, 9. VDARE did not register with the Attorney General's office (as required by New York law) until 2009. *Id.* ¶¶ 10, 11.

In its application for federal tax-exempt status, VDARE stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. *Id.* ¶ 8. VDARE described its "primary purpose" as "creating a publication web page and magazine," with editorial content focusing on "both foreign and domestic policy issues." *Id.* VDARE failed to register with the Attorney General until 2009, nine years after its incorporation. In its initial filing, VDARE described its purpose as "creat[ing] and manag[ing] internet publications." *Id.* ¶ 12.

In 2019, VDARE reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. *See id.* at Exs. E and F. In early 2020, VDARE spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia. *Id.* ¶¶ 20, 22. Public postings by VDARE Chairman Peter Brimelow and others

5

indicate that he and his family have used the castle as their primary residence since at least March 2020: Brimelow and his wife have posted photos of the family celebrating 4th of July and Christmas Eve holidays at the castle, and a VDARE website contributor reported in December 2020 that "Peter and Lydia Brimelow have moved in and spend most of their time [in the castle]…." *Id.* ¶¶ 25-27.

During this same period, VDARE also substantially increased payments to Brimelow and to third-party, for-profit companies he controls: in 2019, Brimelow's reported salary more than doubled and comprised roughly one third of VDARE's operating expenditures. *Id.* at Ex. F. VDARE separately reported spending tens of thousands of dollars on "office expenses" and "office occupancy" in 2019 as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based (like VDARE) at Brimelow's residential home address. *Id.*

In December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property—bought with charitable funds—to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a VDARE director, five months earlier. VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative non-profit corporation. And it conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation. *Id.* ¶ 28. These transactions by a New York charitable not-for-profit require submission of a petition by VDARE for review and approval by the Attorney General or the Supreme Court under Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law. Each transaction also would require, under Section 509 of the N-PCL, approval by disinterested members of the VDARE Board of Directors. Because the Brimelows were together two of VDARE's three directors according to VDARE's 2020 Form 990 (the third

6

being Peter Brimelow's brother), no approval by disinterested directors could possibly have been granted.

Each of the castle and compensation transactions is also a "related-party transaction" under Section 715 of the Not-For-Profit Corporation Law that requires review by disinterested board members to ensure fair consideration and examination of alternatives, contemporaneous record-keeping, and proper disclosure on Schedule L of the IRS 990. To the extent that the payments to Brimelow or to his related entities constitute "private inurement," or an excess benefit disclosable on VDARE's IRS 990 return for 2019, and Brimelow could be required to pay a significant excise tax. *See* Internal Revenue Service Filing Information, Intermediate Sanctions - Excise Taxes, *at* https://www.irs.gov/charities-non-profits/charitable-organizations/intermediate-sanctions-excise-taxes (last visited Dec. 15, 2022).

These transactions also raise serious concerns about whether VDARE's board is fulfilling its fiduciary duties under New York law to oversee VDARE's finances, the implementation of its conflict-of-interest policy, and Brimelow's actions as a director, officer and chief manager of the organization, as well as the board's independence from Brimelow. As of November 2020, according to VDARE's Form 990, VDARE's reported board consisted of four people—and three of them were Brimelows. A review of VDARE's Form 990s and other publicly available documents support these concerns and raise questions regarding the truth and accuracy of those filings.

Based on the information it had obtained, the Attorney General began an investigation of VDARE and its leadership for potential violations of the New York law applicable to charities. The Subpoena seeks documents relating to the misconduct described above—documents, for example, concerning VDARE's organizational structure, compliance conflict-of-interest policy

requirements under New York law, and financial operations; its purchase and conveyance of the

Berkeley Springs Castle, including whether its use as the Brimelows' private residence violates

the law; and transactions between VDARE and entities controlled by the Brimelows.

The Subpoena does *not* seek any information regarding the development or publication of

VDARE's online opinion or analytical content.  In response to concerns expressed by VDARE

counsel, the Attorney General has also clarified that any responsive material produced pursuant

to particular requests that address VDARE fundraising may be redacted in the first instance to

omit identifying name and address information for donor-supporters and uncompensated

volunteers.  Fuchs Aff. ¶ 42.

### B. VDARE Insists that the OAG Must Withdraw the Subpoena and Fails to Produce.

VDARE does not dispute that it is a New York-incorporated entity subject to the

Attorney General's regulatory oversight.  VDARE nonetheless refused to comply with the

Subpoena immediately upon receipt:  in a letter dated July 2, 2022, VDARE asked the Attorney

General to withdraw the Subpoena in its entirety without any reference to individual categories

of requested information or material.  *Id*. ¶ 39.  On July 20, 2022, following a telephonic meet

and confer with the Attorney General's Office, VDARE asserted that the Subpoena was

"incredibly unlawful" and repeated its request that the Subpoena be withdrawn.  *Id*. ¶ 41.

VDARE argued in its July 20 letter that because it operates as an online publisher of

"controversial" speech by anonymous writers and for anonymous readers, the First Amendment

entirely prohibits thirty-two of the forty-four individual requests in the Attorney General's

investigative demand.

The parties have met and discussed VDARE's position on multiple occasions since July.

The OAG responded by email on July 27 to the objections raised in VDARE's July 20 letter and

attempted to address VDARE's concerns by clarifying certain individual terms and requests that VDARE had identified as potentially including protected agent or donor information. *Id*. ¶ 42. The OAG also consented to extensions of the Subpoena's deadline to accommodate vacation, holidays, and other unrelated work obligations for VDARE counsel. *Id*. ¶ 43. Beginning in late July, the OAG also repeatedly offered to meet and confer to confirm whether any remaining objections existed – these proposed meetings, once scheduled, were themselves adjourned on multiple occasions at VDARE's request.

On September 19, 2022, new counsel for VDARE wrote to the OAG, "I do not stand by my predecessor counsel's position that the Subpoena be withdrawn" and noted in his letter "a significant volume of electronically-stored and hard copy documents that need to be reviewed." *Id*. ¶ 43. VDARE made its first production that day, nearly two months after the Subpoena's original deadline for production. The September 19 production contained 27 documents produced without Bates numbers and bearing unmarked redactions. No log was provided to identify or explain the redactions. The OAG immediately demanded a redaction log and repeated that demand for the ensuing three months without any compliance. *Id*. ¶¶ 44-45.

In the twelve weeks since its first September delivery, VDARE has produced approximately 6,000 pages from its hard copy records. *Id*. ¶ 46. It has redacted that material without offering any legal basis for individual redactions or any explanation for how material was chosen for redaction. *Id*. The redactions are extensive, and they have been applied across almost every category of document produced, including VDARE board meeting minutes, VDARE bank statements, internal VDARE accounting ledgers, VDARE credit card statements, invoices sent to VDARE, financial records for the limited liability company (Happy Penguins LLC) from which VDARE has historically leased Peter Brimelow's services, and bank

9

statements to accounts held personally by Peter and Lydia Brimelow. *Id.* In one instance, VDARE appears to have redacted a magazine subscription renewal form addressed to Peter Brimelow. *Id.*

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions, VDARE's hard copy production was complete. *Id.* ¶ 47. On that date, VDARE identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information. *Id.* ¶ 48. VDARE's counsel stated that review of that material would be completed by November 21, 2022. *Id.*

VDARE did not produce any material from its electronic files as promised on November 21. *Id.* ¶ 49. Instead, VDARE counsel unilaterally established December 12, 2022, as a new deadline for completing email production. *Id.* On December 2, the OAG wrote to VDARE, summarizing its concerns with the pace and scope of VDARE's production, including its extensive redactions, and demanded that VDARE complete its subpoena compliance and produce a redaction log by December 12, 2022. *Id.* ¶ 51. VDARE did not comply, instead filing a frivolous lawsuit in federal court.

Despite twenty weeks of extensions, to date, VDARE has failed to produce responsive material from the following categories of records called for by the Subpoena: (i) solicitation materials sent by VDARE to potential contributors; (ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv) documents concerning Director and Officer liability insurance held by VDARE for the benefit of its Board; and (v) documents sufficient to demonstrate who controls VDARE's financial accounts. The documents it has produced contain heavy redactions unexplained and unjustified by any redaction log.

10

## ARGUMENT

The Attorney General has broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-1.4(m). *See also Temple of the Lost Sheep*, 148 Misc. 2d at 828–29 ("There is no doubt that the Attorney General has a right to conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being properly used for the benefit of intended beneficiaries. This authority is granted to the Attorney General pursuant to the various articles of the Not-For-Profit Corporation Law and the Estates, Powers and Trusts Law identified in the challenged subpoena here."). VDARE has not articulated any plausible basis for refusing to comply with the Subpoena and the Attorney General now asks the Court to issue an order pursuant to CPLR § 2308 to ensure that VDARE promptly responds to the Attorney General's investigative requests without further limitation or delay.

### A. Standard of Review

The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828 ("It is well settled that one who challenges a subpoena issued by the Attorney General, which is presumptively valid, has the burden of proof to establish the invalidity of the subpoena[.]"); CPLR § 2308(b)(1) (where a subpoenaed party has failed to comply with a non-judicial subpoena, the issuer of the subpoena may seek a court order to compel a response and the court must order compliance if it finds that the subpoena was authorized.).

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *See*

*Ryan* v. *Lefkowitz*, 18 N.Y.2d 977, 979 (1966); *Hogan* v. *Cuomo*, 67 A.D.3d 1144, 1145 (3d

Dep't 2009); *New York* v. *Trump Org.*, No. 451685/2020, 2022 WL 489625, at *5 (Sup. Ct. N.Y.

Cty. Feb. 17, 2022) (quoting *Anheuser-Busch. Inc.* v. *Abrams*, 71 N.Y.2d 327, 332 (1988)), *aff'd*

205 A.D.3d 625 (2022)) ("In defending his inquiry, the Attorney-General enjoys a presumption

that he is acting in good faith")*.* The Attorney General's subpoena requests must demonstrate a

"reasonable relationship to the subject matter under investigation and the public interest to be

served." *Giardina* v. *James*, 185 A.D.3d 451 (1st Dep't 2020) (affirming denial of petition to

quash and grant of motion to compel compliance with investigative subpoenas)*. See also Matter*

*of La Belle Creole Int'l, S.A.* v. *Attorney-General of the State of N.Y.*, 10 N.Y.2d 192, 196

(1961); *Roemer* v. *Cuomo*, 67 A.D.3d 1169, 1171 (3rd Dep't 2009) ("[The Attorney General]

enjoys a presumption that [s]he is proceeding in good faith. A motion to quash…raises only the

issues of the authority of the investigating body and whether the inquiry falls within the scope of

that authority and, to be sustained, [the Attorney General] need only make a preliminary showing

that the information sought is reasonably related to a proper subject of inquiry.") (internal

quotations and citations omitted); *Matter of Cuomo* v. *Dreamland Amusements Inc.*, 22 Misc. 3d

1107 (A), 2009 WL 81139, at *6 (Sup. Ct. N.Y. Cty. 2009). A party must respond to an

investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry."

*Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 331–32 (1988).

   VDARE has not demonstrated, as it must to lawfully defy the Subpoena's demands, that

"the futility of the process to uncover anything legitimate is inevitable or obvious" or that any

"information sought is utterly irrelevant to any proper inquiry." *Libre by Nexus, Inc.* v.

*Underwood*, 181 A.D.3d 488 (1st Dep't 2020) (citing *Matter of Kapon* v. *Koch*, 23 N.Y.3d 32,

38 (2014), and affirming denial of motion to quash investigative subpoena *duces tecum*).

### B. The Attorney General's Subpoena Seeks Documents and Information Directly Related to a Lawful Regulatory Review.

New York State's public policy interest in ensuring the robust regulation of tax-exempt charitable entities like VDARE is beyond question, as is the Attorney General's authority to supervise and investigate such entities when misconduct is suspected. The Attorney General's investigation and Subpoena are narrowly focused on well-established principles within this regime: the subject matter areas identified by the Subpoena fall squarely within the statutory provisions that govern not-for-profit corporations like VDARE. The Not-for-Profit Corporation Law, for example, provides that entities like VDARE may be formed only for charitable purposes, *see, e.g.*, N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a). The Subpoena's requests demand exactly the type of material that will permit the Attorney General to determine whether VDARE has complied with these requirements, including, for example, complete copies of VDARE annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review.

Article 8 of the Estates Powers and Trusts Law similarly authorizes the Attorney General to supervise the operation and administration of entities, trusts and persons holding and administering charitable assets, and VDARE qualifies as exactly such an entity. EPTL §§ 8-1.4, 8-1.9. The EPTL vests the Attorney General with express authority to "represent the

beneficiaries of such [charitable] dispositions," to "enforce the rights of such beneficiaries by appropriate proceedings in the courts," to supervise and to "institute appropriate proceedings . . . to secure the proper administration of any [charitable] trust." *See generally id.* § 8-1.1 *et. seq.* The Subpoena's requests call for documents that will permit the Attorney General to determine whether there has been any diversion of charitable assets—for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries.

Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, *inter alia*, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. *See generally* Executive Law § 172-d. Review of VDARE's public statements demonstrates that VDARE has sought funding to fund alleged programmatic use of the castle, and the Subpoena demands information related to that use.

Given these standards, and the conduct already identified through review of publicly available information regarding VDARE's spending and operation, there is no question that the Attorney General's regulatory mandate and preliminary investigation establish a reasonable basis for the document and information demands in her investigative subpoena. *Hogan*, 67 A.D.3d at 1146 ("Respondent had more than an adequate basis to issue the subpoenas here. The information forming the factual basis need not be sufficient to establish fraud or illegality, or even provide probable cause, as long as the futility of the process is not inevitable or obvious."). VDARE has not identified any facts or circumstances that demonstrate otherwise.

### C. The Subpoena Poses No Risk of Constitutional Harm.

In response to the OAG's investigatory subpoena for documents related to VDARE's corporate conduct, VDARE has raised constitutional objections related to its *donors'* First

14

Amendment rights.  But merely invoking the First Amendment does not shield a non-profit from

investigative review. Because the OAG has agreed, in the first instance, to redact donors' and

volunteers' identities, VDARE must show how this Subpoena will cause the organization itself

any First Amendment injury.[1]  *See New York Found. For the Homeless*, 190 A.D.2d at 578

(affirming finding of contempt for "persistent and willful defiance of Supreme Court subpoena")

("The mere utterance of First Amendment privileges…cannot shield defendants from the

scrutiny of the Attorney General…and to enjoin them from soliciting funds improperly (EPTL

8-1.4)."). *See also Condon* v. *Inter-Religious Found. for Community Org.*, 51 A.D.3d 465, 466

(1st Dep't 2008) (affirming grant of petition to compel compliance with DOE investigative

subpoenas that did not seek "membership lists" and did not "on their face implicate core First

Amendment concerns of freedom of association that would require some heightened showing to

warrant disclosure").

    VDARE has not, and cannot, show that the subpoena would impair its own First

Amendment rights.  Despite the parties' agreement to redact *donor* information, VDARE has

redacted much more, including its own board meeting minutes, bank statements, accounting

ledgers, credit card statements, invoices it received from third parties, and even financial records

for the Brimelows' own for-profit businesses (that have received thousands of dollars in

unexplained payments from VDARE).  None of these redactions are remotely proper or related

to protected First Amendment interests.

    But even if VDARE could show a potential First Amendment injury, it would still find no

help from *Matter of Evergreen Assn., Inc.* v. *Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), a

case it cited in support of its position.  There, the court upheld an investigative subpoena

---

[1] The OAG reserves the right to seek donor identities when and if those identities become relevant to its lawful investigation.

examining a crisis pregnancy center's unlawful practice of medicine despite the possibility of

First Amendment chill, compelling compliance with demands tailored to its investigation. The

Attorney General maintains that *Evergreen*'s recognition of a First Amendment harm was

wrongly decided as a matter of law and reserves the right to challenge it on appeal, while

recognizing that this Court is bound by its holding. *See, e.g.*, *Mountain View Coach Lines, Inc.*

v. *Storms*, 102 A.D.2d 663, 664–65 (2d Dep't 1984). But even under *Evergreen*'s reasoning, the

Subpoena survives review. The Subpoena's requests are narrowly tailored to investigate

VDARE's financial and governance misconduct and have been clarified to eliminate the

possibility of First Amendment concerns from anonymous VDARE donors or volunteers.

Although VDARE may claim that redactions are required to protect the identities of

contractors—including writers who contribute to the website—these are precisely the records the

OAG must examine in its investigation of VDARE's organizational misconduct. To the extent

anonymity is used to mask violations of the law, "it is unprotected by the First Amendment."

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (affirming decision not to quash a

subpoena on First Amendment grounds because it would reveal the identity of alleged copyright

violator). Given the web of transactions among VDARE and Brimelow-controlled entities

*already* discovered by the OAG, the identities of contractors are central to the OAG's

investigation. VDARE, and the Brimelows, cannot hide behind the First Amendment to shield

self-interested transactions from regulatory scrutiny. *See New York Found. for the Homeless*,

190 A.D.2d at 578. As another example, the only board member among four who is not a

Brimelow family member is a known VDARE contributor. The Attorney General may probe

this contributor's compensation as part of its investigation of conflicts of interest and board

independence. And the Attorney General may seek the identities of other contributors to

16

determine whether further conflicts of interest may exist.

VDARE's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is equally unavailing. That decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. *See Ams. for Prosperity Found.*, 141 S. Ct. at 2386–87 (noting the obvious, and "substantial," governmental interest in protecting the public from the harms caused by fraud, misuse, misappropriation, and diversion of charitable assets and observing, "Such offenses cause serious social harms. And the Attorney General is the primary law enforcement officer charged with combating them under California law."). Here, that decision is doubly irrelevant because the OAG seeks to compel subpoena compliance (as that case permits) and has already agreed to redactions to unrelated donor identifying information (the only category of First Amendment-protected information at issue there).

## **CONCLUSION**

For all the foregoing reasons, the Attorney General respectfully requests that the Court issue an order: (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed-upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate.

17

Dated: New York, New York
December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

By: /s/ *James G. Sheehan*
James G. Sheehan
Yael Fuchs
Catherine Suvari
Assistant Attorneys General
28 Liberty Street
New York, New York 10005
(212) 416-8490
James.Sheehan@ag.ny.gov

18