# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

VDARE FOUNDATION, INC.

                *Plaintiff,*

       - against -                 Civil Action No. 22-cv-1337 (FJS/CFH)

LETITIA JAMES, in her official capacity
as Attorney General of the State of New York,

                *Defendant.*

---------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

Introduction  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    3

A.    New Developments in State Court Show the  .    .    .    .    .    .    .    .    4
      Merit and Validity of VDARE's Complaint

B.    The Inference of State Retaliation for VDARE's Exercise  .    .    .    .    .    8
      of its Constitutional Rights of Speech and Association

      1.    The Attorney General's Targeting of VDARE as Part of What  .    .    .    .    8
            She Expressly Describes as Her "Oversight" of Speech

      2.    VDARE Turned to this Court for Relief While Complying with the  .    .    .    11
            OAG's Subpoena Only After the OAG took Positions that Risked
            Irreparable Constitutional Harm and VDARE's Ability to Conduct Business

      3.    The OAG Rejected VDARE's Proposed Middle Grounds  .    .    .    .    .    15

      4.    The OAG on December 2, 2022, Demanded that VDARE Disclose  .    .    .    16
            Protected Information, One Day Before a New Law Targeting
            "Hateful Conduct" Became Effective

      5.    The OAG's Pretextual Claims of "Organizational Misconduct"  .    .    .    .    17

Argument

The OAG May Not Defeat this Court's Jurisdiction By Initiating  .    .    .    .    .    22
A State Proceeding After an Aggrieved Litigant Seeks Federal Relief

      1.    Abstention Does Not Apply  .    .    .    .    .    .    .    .    .    .    22

      2.    A Litigant May Not Press New York's Law on Res Judicata .    .    .    .    .    24
            While Violating New York's First-Filed Rule

      3.    Sovereign Immunity Does Not Bar Relief .    .    .    .    .    .    .    .    27

      4.    Standard of Review .    .    .    .    .    .    .    .    .    .    29

Conclusion    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    30

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

VDARE FOUNDATION, INC.

                                 *Plaintiff,*                Civil Action No: 11-cv-1337 (FJS/CFH)

      - against -

LETITIA JAMES, in her official capacity
as Attorney General of the State of New York,

                                 *Defendant.*

-----------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

On December 12, 2022, Plaintiff VDARE FOUNDATION, INC. ("VDARE") initiated this action against the Attorney General of the State of New York (the "Attorney General" or the "OAG") for declaratory and injunctive relief to protect its ability to continue to do business and its rights of free speech and association guaranteed by the federal and state constitutions. On January 18, 2023, the OAG moved to dismiss this action. This Memorandum of Law and the accompanying declaration of VDARE's counsel and exhibits thereto are submitted in opposition to the OAG's motion to dismiss.

<u>Introduction</u>

The circumstances of this case are unprecedented because a state law enforcement

officer has expressly proclaimed her right and intent to conduct "oversight" of the content of speech of organizations like VDARE while advancing a professed need for regulatory oversight of charities.  Precisely because VDARE respects the OAG's broad authority to conduct regulatory oversight as the OAG sees fit, it was complying with its investigative subpoena and was near completing its compliance when it demanded disclosures which implicate VDARE's federal and state constitutional rights to speech and association.  Though VDARE had no objection to disclosing identities of related contractors within the meaning Section 715 of New York's Not-for-Profit Corporation Law nor the amounts paid to and services rendered by other contractors, the OAG demanded disclosure of the identities of VDARE's content providers and other contractors which would put them at risk and threaten VDARE's ability to continue to conduct business.

The OAG could have agreed with one of the middle grounds proposed by VDARE described below without prejudice to its right to revisit the issue or propose one of its own.  Its steadfast refusal to do so coupled with an unjustifiable claim to need constitutionally-protected information without narrow tailoring or any showing of specific investigative need shows that far more is afoot than a small charity's governance.  The OAG's conduct of this matter, described in VDARE's complaint and herein, proves precisely what the OAG denies: it seeks disclosure of the identities of its content providers and other contractors exclusively or substantially so that VDARE will be unable to continue to express a viewpoint with which it disagrees.  The parties are before this Court because the OAG refuses to separate its regulatory oversight of a charity with a professed right of oversight of the content of speech.

A.      *New Developments in State Court Show the Merit and Validity of VDARE's Complaint*

Since VDARE initiated this action, related developments in the Supreme Court of the State of New York, County of New York (the "state court") underscore the merit and validity of VDARE's complaint.  On December 14, 2022, two days *after* VDARE initiated this action, the OAG initiated a special proceeding in state court to compel VDARE's compliance with the OAG's investigative subpoena (the OAG's petition in state court is attached as Exhibit C to its motion to dismiss, Docket No. 12-3; the OAG's subpoena is attached as Exhibit K to its motion to dismiss, Docket No. 12-13).  *See James v. VDARE Foundation, Inc.*, N.Y. County Index No. 453196/2022.  VDARE responded to the OAG's petition in state court by moving to stay the newly-filed proceeding [Frisch Declaration,[1] Exhibit A] based on New York's "first-filed" rule pending resolution of this federal action or at least until decision on the OAG's motion to dismiss this action.  *See Ace Prop. & Cas. Ins. Co. v. Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008) (New York's well-settled "first-filed" rule requires that the "court which has first taken jurisdiction . . . . is the one in which the matter should be determined and it is a violation of the rules of comity to interfere.").  VDARE otherwise opposed the OAG's demand that it disclose information protected by the constitutional rights to free speech and association.  Frisch Declaration, Exhibit A.

On January 23, 2023, the state court denied VDARE's motion for a stay and granted the OAG's motion to compel.  Docket No. 15 (the OAG's filing in this Court of the state court's order).  On February 8, 2023, on application by VDARE, the Appellate Division, First Department, stayed the state court's order of January 23, 2023, pending further briefing and decision.  Frisch Declaration, Exhibit R.  The OAG's opposition is to be filed by February 22,

---

[1] "Frisch Declaration" refers to the Declaration of VDARE's counsel filed herewith.

2023, and VDARE's reply by February 27, 2023.

The proceedings in state court demonstrate the sufficiency of VDARE's claim of unconstitutional retaliation and the irreparable constitutional harm VDARE will suffer if it is denied federal redress.  Federal deference to state investigative authority does not extend to state retaliation for exercise of constitutionally-protected speech and association.  Nor does such deference leave federal courts powerless to protect federal constitutional rights.  As demonstrated in VDARE's complaint [Docket No. 1] and herein, VDARE has established that the OAG is targeting VDARE because of its aversion to the content of its protected speech.

No reasonable inference other than unconstitutional retaliation is warranted by the OAG's conduct of this matter.  For example, the OAG represented to this Court in its motion to dismiss this case that its subpoena to VDARE does "*not* seek any information regarding the development or publication of VDARE's online content."  Docket No. 12-1 at 8-9 (emphasis in original).  Simultaneously, the OAG took the contrary and  constitutionally offensive position in state court that "the identities of contractors - - including writers who contribute to the website - - these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct."  Frisch Declaration, Exhibit N at 16.  Apart from taking contradictory positions in two different courts, the OAG's purported rationale for the demanded disclosure does not fit its rationale:  a vendor's provision of services to VDARE and a writer's provision of content to VDARE's website have no automatic connection to any legitimate investigative need.

Also troubling is the OAG's claim that this Court is bound by an order in a state court proceeding, which it initiated only *after* VDARE sought constitutional protection in this

Court.  Especially revealing is the OAG's unseemly subterfuge in secretly rushing to state court to secure a favorable order before this Court hears and rules on its motion to dismiss.  VDARE filed its complaint in this Court on December 12, 2022, simultaneously emailing a courtesy copy of its papers to the OAG in advance of formal service, which provided the OAG with three weeks (until January 4, 2023) to respond.  *See* F. R. C. P. 12(a)(1)(A)(I).  Frisch Declaration, Exhibit A at 2.  On December 21, 2022, a full two weeks before the OAG's response was due on January 4, 2023, the OAG requested and secured VDARE's consent to an extension of its deadline to respond in federal court, from January 4 to 18, 2023.  In so doing, the OAG claimed (in an email) that the extension was necessary because of the holidays and an attorney who had taken ill:  "Because of the holidays and a member of our team who has COVID, we would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY.  Can you please confirm your consent?"  *See* Frisch Declaration, Exhibit A at 2, Exhibit B.

Unbeknownst to VDARE when it consented to the extension on December 21 2022, however, the OAG had already initiated its special proceeding in state court the week before (on December 16, 2022) with a proposed order to show cause.  Frisch Declaration, Exhibit A at 2.  The state court issued the OAG's order to show cause on December 22, 2022, scheduling and conducting oral argument on its motion to compel on January 19, 2023, just two business days before the state court quickly granted the OAG's motion to compel and denying VDARE's application for a stay of the state proceeding based on this first-filed federal action.  Docket No. 15.

The OAG cites no case rewarding a litigant's "race to res judicata" [*see Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)], or permitting a litigant to

cherry-pick from a state's protocols for dueling lawsuits by pressing the state's law on res judicata after violating the state's first-filed rule.  *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 97 (2d Cir. 2023) (courts should ask "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"); *F.T.C. v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) ("applying res judicata here would likely reward gamesmanship").  Res judicata is designed "to prevent serial forum-shopping" [*Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)], not reward it.  The OAG would not have rushed to state court to attempt an end-run around this Court's jurisdiction if VDARE's claim of unconstitutional retaliation was truly unfounded.

B.   *The Inference of State Retaliation for VDARE's Exercise of its Constitutional Rights of Speech and Association*

1.   *The Attorney General's Targeting of VDARE as Part of What She Expressly Describes as Her "Oversight" of Speech*

"To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).  "The analysis for a retaliation claim under the First Amendment and under Article I § 8 of the New York State Constitution is the same." *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 321 (S.D.N.Y. 2019).

Imposing on "associational rights . . . .  cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2389 (2021).  Subpoenas which could have "a chilling effect

on its associations with its employees and potential clients" by breaking anonymity are invalid. *See, e.g.*, *Brown v. Socialist Workers '74 Committee* (Ohio), 459 U.S. 87, 96 (1982) ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information.  Because an individual who enters into a transaction with a minor party purely for commercial reasons lacks any ideological commitment to the party, such an individual may well be deterred from providing services by even a small risk of harassment."); *New York State Senate Republican Campaign Comm. v. Sugarman*, 165 A.D.3d 1536, 1540–41 (3d Dep't 2018) (the subpoena's demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association") (*quoting Matter of Kalkstein v. DiNapoli*, 228 A.D.2d 28, 30 (3d Dep't 1997) (quotation marks omitted); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and holding that an order requiring an association to produce a membership list interfered with the First Amendment freedom of association); *Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 100 (2d Dep't 2017) (applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital). *See also Ronsenblatt v. Baer,* 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.  Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.")

9

VDARE's Verified Complaint sufficiently states a claim against the OAG for unconstitutional retaliation.  The OAG's targeting of VDARE follows the Attorney General's creation of a "Hate Crimes Unit," which she claimed would "strengthen *oversigh*t, because we see how much hate is being fueled by content on the internet."  Complaint at ¶13 (emphasis added).  She joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations," resulting in at least one other case in federal court apart from this case challenging her pursuit of speech with which she disagrees.  Complaint at ¶14 (attaching complaint in *Volokh v. James*, 1:22-cv-10195 (S.D.N.Y.)).  Just last week, the OAG was enjoined in *Volokh* from enforcing a new law aimed at speech.  *See* Frisch Declaration, Exhibit O at 1 ("Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'") (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017)).

Just before the OAG issued its subpoena to VDARE, the OAG's Special Counsel for Hate Crimes issued separate subpoenas to Meta, the parent company of Facebook, and Facebook Payments.  Complaint at ¶¶16-18.  The OAG thereafter issued a subpoena to VDARE through its Charities Bureau, including a demand for "Copies of the transcripts to each deposition in the litigation between [VDARE founder] Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings."  This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for calling him an "open white nationalist."  Complaint ¶23.

These expressed statements and actions of the OAG, which it does not and cannot

deny, preceded and are attendant its demand that VDARE produce "the identities of contractors - - including writers who contribute to the website," which it claims, without any legitimate basis, "are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct."  Frisch Declaration, Exhibit N at 16.  Unless the Appellate Division reverses the state court's stayed order, and absent relief in this Court, an order compelling VDARE to produce this constitutionally protected information will stand.

2.   *VDARE Turned to this Court for Relief While Complying with the OAG's Subpoena Only After the OAG took Positions that Risked Irreparable Constitutional Harm and VDARE's Ability to Conduct Business*

Notwithstanding concerns of VDARE's predecessor counsel that the OAG's subpoena was a pretext aimed at VDARE's right to express positions critical of governmental officials and policy, VDARE's new counsel pledged compliance.  Recognizing the OAG's broad discretion to exercise regulatory oversight of charities registered in New York and issue investigative subpoenas, between September and November 2022 VDARE produced over 6,000 pages of documents to the OAG as part of a rolling production after completing review of documents maintained in hard copy and electronically [Complaint at ¶25] - - the universe of responsive documents so maintained.   Frisch Declaration, Exhibit S at 6.  By December 2022, VDARE had engaged a vendor to secure its 40 gigabytes of emails (the equivalent of millions of pages) for its counsel's review; had identified email custodians to the OAG; and counsel's review for responsive emails was well under way.  Frisch Declaration, Exhibit A at 6, Exhibit S at 6.

In otherwise complying with the OAG's subpoena, VDARE disputed the subpoena's demand for the identities of contractors who did business with VDARE.  The

subject matter of VDARE's principal activity - - commentary about immigration policy of the

United States disseminated to the public through its website at www.VDARE.com - - is

controversial.  As VDARE demonstrated in state court without dispute, VDARE's lawful speech

has led to and continues to cause retaliation against people and entities associated with it and

attendant reputational and professional harm.  Contractors providing services essential to

VDARE's very existence have refused to continue to do business with VDARE, including

venues which have cancelled contracts with VDARE to host conferences, sometimes because of

disagreement with VDARE's views, but typically because of their aversion to public protests.

These harms to VDARE have made it increasingly difficult for VDARE to find alternative

contractors to stay in business.  *See* Frisch Declaration, Exhibit A at 4 (citing *"VDARE responds*

*to conference cancellation at Cheyenne Mountain Resort,"* www.kktv.com, Aug. 15, 2017

("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April

of next year. We remain committed to respecting the privacy of guests at the resort."); Kristine

Phillips, The Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite

National Park, canceled [VDARE's] booking after receiving complaints about the organization's

views."); *"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To*

*Announce New Venue Soon!"* www.vdare.com, Mar. 7, 2018.

       Likewise, multiple businesses providing services essential to VDARE's

continued operations have terminated their relationships with VDARE, including Mailchimp and

Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and

other lesser-known businesses.  VDARE created an entity called "Happy Penguins LLC" for the

sole purpose of paying VDARE's employees so that they could identify a non-controversial

entity (Happy Penguins) - - and not VDARE - - as their employer.  *See* Frisch Decl, Exhibit __ (attached VDARE's Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC / Peter Brimelow" (VDARE's founder) as a service providing leased employees).  Frisch Declaration, Exhibit A at 4-5.

The threat to VDARE's rights to free speech and association is ongoing and presents a genuine risk of irreparable harm.  As recently as January 4, 2023, the Washington Post published an article entitled, *"A 'hate castle' or welcome neighbor? VDare divides a West Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare, which some consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4, 2023. Comments to the article posted at *www.washingtonpost.com* contain multiple instances of public abuse of and threats to VDARE's neighbors in West Virginia solely because their favorable opinions of VDARE or its principals were quoted in the article.  Some comments identify those quoted in the article by name; claim that those with favorable opinions of VDARE's principals must necessarily be white supremacists; and threatened them with commercial retaliation and not to "spend money in their town."  One especially vile public comment called out an elderly proprietor of a local business as a "filthy racist" because she was quoted in the article as defending VDARE's principals.  Frisch Declaration, Exhibit S at 8.

The OAG made no genuine effort in state court and refused VDARE's repeated requests to show why its request for these identities could not be narrowly tailored.  *See Evergreen Assn.,* 153 A.D.3d at 87 (citing *Shelton v. Tucker*, 364 U.S. 478, 488 (1960)) (the Attorney General's legitimate investigative purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved," and applying

strict scrutiny where compliance with the OAG's subpoena would "have a chilling effect on [the

group's] associations with its employees and potential clients" as well as at least one hospital);

*Sugarman*, 165 A.D.3d at 1540–41 (the subpoena's demands capture materials that are

"extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on

petitioners' First Amendment rights of political expression and association") (citing *Evergreen*

and quoting *Matter of Kalkstein v. DiNapoli,* 228 A.D.2d 28, 30 *(*3d Dep't 1997) (quotation

marks omitted)).  *See also NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958)

(protecting the right of "advocacy of both public and private points of view, particularly

controversial ones" and requiring association to produce membership list interfered with First

Amendment freedom of association).

     Likewise constitutionally offensive - - and irrational - - is the OAG's

analogy of VDARE's vendors and content providers to the copyright violator in *Arista Recs.,*

*LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), who declined to reveal his name after the

copyright holder tracked him via his computer's IP address.  *See* OAG Memo at 15.  The OAG

relies on *Arista's* principle that anonymity may not be used to mask violations of the law [*see*

Frisch Declaration, Exhibit S at 16], but none of VDARE's vendors nor content providers are

alleged to have violated the law nor to have helped VDARE to do so.  The OAG's demand that

VDARE reveal their identities is more than an overreach:  it warrants the inference that the OAG

is after VDARE *because* of its speech and is demanding that it reveal identities of its vendors and

content providers because either it intends to put it out of business or is otherwise hostile to the

rights of those with whom it disagrees.

     Before constitutionally-protected disclosures may be compelled, more is

required than a general claim of investigative need.  Instead, **anonymous Internet speech is**

**protected by the First Amendment unless a party seeking enforcement of a subpoena first**

**establishes** "a real evidentiary basis for believing that the defendant has engaged in wrongful

conduct that has caused real harm to the interests of the plaintiff" so that a court may then "assess

and compare the magnitude of the harms that would be caused" to freedom of speech and the

defendant's commercial interests."  *See Mirz v. Yelp, Inc.*, 2021 U.S. Dist. LEXIS 160961

(S.D.N.Y. Aug. 25, 2021); *"Anonymous criticism helped make America great: Trump's critic is*

*utilizing a practice employed by many of the Founding Fathers to protect truth from power,*" The

Washington Post, Sept. 8, 2018 ("anonymous publication has been an essential feature of

American democracy since its beginning.  It has long allowed vulnerable voices to participate in

public politics and speak truth to power.  Indeed, anonymous debate was at the center of the

revolutionary politics that led to American independence, the U.S. Constitution and the Bill of

Rights, which enshrined the press freedoms that continue to protect anonymous speech today.").

Frisch Declaration, Exhibit S at 16-17.

The OAG - - and the state court - - also elected not to address or even mention

VDARE's concern about the OAG's apparent disclosure of constitutionally-protected

information in another investigation of a conservative not-for-profit entity.  On August, 26, 2022,

Politico published confidential information about donors to this other entity in the OAG's cross

hairs.  Thereafter, on October 11, 2022, members of the United States Congress wrote to United

States Attorney General Merrick Garland, requesting investigation of apparently undue

disclosures provided to or otherwise obtained by the OAG.  Frisch Declaration, Exhibit A at 7.

*3.  The OAG Rejected VDARE's Proposed Middle Grounds*

Before seeking relief in this Court, VDARE attempted to accommodate the OAG by proposing two middle grounds, both of which were summarily rejected. *First*, VDARE proposed that it disclose the identities of all contractors who might qualify as "related" within the meaning of Section 715 of New York's Not-for-Profit Corporation Law and otherwise produce all information for all contractors about services provided and the amounts paid to each, without prejudice to the OAG's right to revisit the issue. The OAG would presumably have no investigative need for the identities of unrelated contractors near VDARE's headquarters in West Virginia (or elsewhere) earning *de minimis* compensation, or unrelated providers of general services such as website hosting, among other unrelated contractors. While the OAG rejected this middle ground, VDARE nonetheless provided it with an independent auditor's report which identified contractors which might qualify as related. Frisch Declaration, Exhibit A at 5-6, Exhibit S at 10.

*Second*, after the OAG initiated the state court action in response to VDARE's complaint in this Court, VDARE alternatively proposed that it produce a fully unredacted list of contractors to the state court *in camera* (a protocol used in *Matter of Evergreen*, 153 A.D.3d at 87), subject to the OAG's request for disclosure of the identities of any particular unrelated contractor upon a showing of a narrowly-tailored investigative need. This proposed middle ground was also rejected. Frisch Declaration, Exhibit S at 10-11.

4.     *The OAG on December 2, 2022, Demanded that VDARE Disclose Protected Information, One Day Before a New Law Targeting "Hateful Conduct" Became Effective*

On December 2, 2022, the OAG demanded that VDARE, within ten days, disclose constitutionally-protected information, reveal previously-redacted information in the

16

first 6,000 pages of production, complete review of its 40 gigabytes of emails, and produce a complete redaction log for the entirety of its production.  Frisch Declaration, Exhibit G.  The OAG made her demand *one day before* December 3, 2022, the effective date of New York State's new law - - General Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of social media to vilify, humiliate, or incite violence.  VDARE does not use social media (or any outlet) to vilify, humiliate, nor incite violence against anyone.

The OAG's demand on December 2, 2022, and its attendant claim of non-compliance despite VDARE's production of all responsive documents maintained in hard copy and electronically and its ongoing review of its emails, was not the first temporal connection between the OAG's professed regulatory oversight of VDARE while signaling another agenda.  As described above, the OAG's subpoena to VDARE came on the heels of its subpoenas to Facebook Payments and Meta, which followed the Attorney General's public statements of her resolve to "strengthen oversight" of certain non-violent speech.

It was not until December 12, 2022, when the inference of the OAG's targeting of VDARE for reasons other than regulatory compliance was inescapable, did VDARE initiate this action to protect itself and its rights of speech and association guaranteed by the federal and state constitutions.

5.      *The OAG's Pretextual Claims of "Organizational Misconduct"*

The OAG's claim of "organizational misconduct" is palpably pretextual.  For example, a purported impetus for the OAG's investigation was VDARE's purchase in 2020 of a castle-styled property in West Virginia.  VDARE did not dispute the OAG's discretion to conduct oversight of a charity's purchase of such a property and instead addressed the issues in

17

its disclosures and offered to meet immediately with the OAG to discuss it.  Frisch Declaration, Exhibit A at 15, Exhibit S at 17.  The OAG's rejection of VDARE's offer to begin meeting immediately with VDARE's counsel about the castle undermines its claim that its overriding concern is ongoing misuse or dissipation of charitable assets.

VDARE explained, as otherwise publicly reported, that VDARE acquired the castle to host conferences and thereby eliminate the risk that VDARE's events could only be conducted at the whim of independent venue owners.  *See* Frisch Declaration, Exhibit A at 8 (citing Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020) (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views."); *see also* NYSCEF Docket No. 4 (Affirmation of the OAG in support of its motion to compel) at 5 (citing VDARE's public report of purchase of castle for use as a meeting place "without fear of deplatforming").

The OAG questioned the use of the castle itself as housing for the Brimelows and their three children.  Among documents produced by VDARE is a lease agreement establishing that the Brimelows paid rent to live in a cottage on the castle grounds beginning in April 2021.  Frisch Declaration, Exhibit A at 8, Exhibit H.  Before the cottage was habitable, the Brimelows paid rent for them and their three children to live in the castle for a period of months after moving to West Virginia from Connecticut.  *See* Frisch Declaration, Exhibit A at 8, Exhibit S at 18.  VDARE's counsel proposed a meeting with the OAG as part of a presentation to show that the Brimelows paid rent to live in the castle, used the castle as a residence only until their cottage was made habitable for lease, and that the Brimelows *never*

derived any financial gain from the castle.   Frisch Declaration, Exhibit S at 18.  The OAG rejected VDARE's proposal.

Similarly, the OAG has insinuated that the Brimelows incorporated two entities, the Berkeley Castle Foundation and BBB, LLC, to camouflage misuse or dissipation of charitable assets, but VDARE produced the bylaws for the Berkeley Castle Foundation and an operating agreement for BBB, LLC, both of which identify VDARE as fully supporting or owning both entities.  Frisch Declaration, Exhibits P and Q.  The OAG in her submission to state court made no reference to either document.  As noted above, the OAG rejected VDARE's invitation to begin meeting with its counsel about the castle immediately, instead pressing her demands for disclosures of VDARE's contractors.  The OAG's selective presentation of facts supports VDARE's claim of the OAG's use of regulatory oversight to camouflage the Attorney General's expressed intent to target speech.

Other professed concerns about VDARE also fail to demonstrate any connection between the constitutionally-protected information and any true investigative need.  For example, the OAG argued in state court in support of its motion to compel that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990.  Peter and Lydia Brimelow, however, share the same last name, holding themselves out as husband and wife on the same VDARE website which the OAG reviewed to find information supporting its investigation, and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990.  Frisch Declaration, Exhibit A at 9, Exhibit S at 19.  The OAG asserted no connection between this

purported misstep in completing an IRS form and the identities of VDARE's vendors or content providers.

Similarly, the OAG insinuated that Peter Brimelow's compensation reported in VDARE's 2019 IRS Form 990 was atypically high [NYSCEF Docket No. 3 at 9], but omitted that VDARE's total contributions for 2019 were $4,259,309 [see Frisch Declaration, Exhibit A at 9-10, Exhibit S at 19], a far substantially greater amount than in other years.  The OAG also insinuated malfeasance from an auction of furnishings from the castle [NYSCEF Docket No, 4 at 8], but, on information and belief, the entirety of *de minimis* proceeds from the auction inured to VDARE's benefit.  Frisch Declaration, Exhibit S at 19-20.  None of this innuendo from the OAG justified its demand for the identities of vendors and content providers.

Nor did the mechanics of VDARE's compliance warrant the OAG's demand for constitutionally-protected information.  In demanding on December 2, 2022, that  VDARE complete its production and identify all contractors without redactions by December 12, 2022, the OAG complained that VDARE had inconsistently applied redactions without a log identifying the bases for the redactions.  But the OAG had itself agreed to "a rolling production," which enabled VDARE - - acting in good faith - - to reassess the need for redactions as its review continued.  VDARE's counsel expressly told the OAG that it had redacted some information in earlier installments of the rolling production which upon later review had been unnecessary.  Frisch Declaration, Exhibit A at 10.

Nor did the OAG's complaint about delays in VDARE's production warrant its demand for constitutionally protected information or any inference of bad faith.  By the time of the OAG's letter of December 2, 2022, VDARE had completed production of documents

maintained in hard copy and electronically and review of 40 gigabytes of emails was well under

way.  VDARE is literally a mom-and-pop operation, run by parents of three home-schooled

children, represented by a solo practitioner with no legal or administrative staff.  *See* Frisch

Declaration, Exhibit A at 10-11.  The types of mechanical issues of compliance about which the

OAG complained are typically solvable, especially where the respondent is close to completing

compliance.

While the OAG alleged with rhetorical flourish that redactions had been made to

almost every category of document produced [NYSCEF Docket No. 3 at 9], the vendors, content

providers, and donors whose identities were redacted are inextricable parts of VDARE's business

- - as VDARE's counsel had expressly advised the OAG.  *See* Frisch Declaration, Exhibit A at

11, Exhibit S at 20-21 (VDARE's counsel emailing the OAG that "the identities of VDARE's

donors, content providers, and vendors who provide services to VDARE in its locality or are

otherwise indispensable to its work are inextricably intertwined with some of its financial

records.  For example, some of these entities are identified in bank statements in lists of monthly

transactions and associated copies of checks.  The work to provide such financial records with

redactions is labor-intensive and time-consuming and is ongoing.").  Even if a redaction log after

the final installment of the rolling production did not the satisfy the OAG's indiscriminate

preferred timing, it did not justify the OAG's immediate demand for constitutionally-protected

disclosures far afield from any true investigative need.

<u>Argument</u>

<u>The OAG May Not Defeat this Court's Jurisdiction By Initiating
A State Proceeding After an Aggrieved Litigant Seeks Federal Relief</u>

"[T]he obligation of federal courts to hear cases within their jurisdiction is 'virtually unflagging.'" *Trump v. James*, 2022 WL 1718951 at *23 (N.D.N.Y. May 27, 2022) (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022).  VDARE chose this federal forum to seek redress for its constitutional grievances - - the first-filed judicial proceeding arising from the OAG's targeting of VDARE.  None of the OAG's proffered roadblocks prevent this Court from hearing VDARE's constitutional grievances.

In addition, VDARE is not claiming that the First Amendment prohibits the use of an administrative subpoena as an investigative tool [*see* OAG Memo at 14], but that the OAG's conduct constitutes unconstitutional retaliation; in fact, VDARE was complying with the subpoena before the OAG demanded protected information.  If the OAG's position is correct, state actors could unconstitutionally retaliate with impunity.  VDARE initiated this case precisely because the OAG's conduct rebutted the presumption of regularity.

1.    *Abstention Does Not Apply*

The OAG argues that VDARE seeks "to turn a state-law discovery dispute into a federal case," which interferes with "ongoing state-court litigation."  But the OAG initiated the state court proceeding *after* VDARE filed its complaint in violation of the state's first-filed rule and created the purported interference of which it now complains.

Abstention applies to certain pre-existing *proceedings*, not the issuance of a "non-self executing" state attorney general's investigative subpoena, nor an attorney general's

administrative proceeding to enforce one.  *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 US 350, 370 (1989).  In *Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 27 F.4th 886 (3d Cir. 2022), the Third Circuit rejected abstention where the plaintiff alleged that a subpoena was retaliation for Smith & Wesson's exercise of its constitutional rights. The state attorney general was only "investigating possible violations" of the Consumer Fraud Act, had not alleged any substantive wrongdoing, and only alleged violation of a procedural rule related to the production of documents.  The court ruled that abstention was not proper because the "production order was not 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81-82 (2013); *see also Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016) (rejecting abstention of state attorney general's administrative subpoena because "we cannot agree . . . that an executive official's service of a non-self-executing subpoena creates an ongoing state judicial proceeding.").

The Supreme Court's most recent guidance in *Sprint Commc'ns* explains that abstention "extends . . . no further" than three "exceptional circumstances":  (1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. at 73.   None of these circumstances is present here.

In fact, the holding of *Smith and Wesson* was favorably cited by this Court in *Trump v. James.*2022 WL 1718951 (N.D.N.Y. May 27, 2022).  This Court in *Trump v. James* agreed that, like *Smith and Wesson*, "the New York proceeding is not a civil enforcement

proceeding akin to a criminal prosecution," and implied it would have rejected abstention over the subpoena itself.  It only abstained based "in light of the . . . order holding Mr. Trump in contempt," because civil contempt order fall into the category of "powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments."

"[T]he weight of the First Amendment issues involved counsels against abstaining." *Hartford Courant Co. v. Pellegrino*, 380 F. 3d 83, 100 (2d Cir. 2004).  "Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).  *See also Felmeister v. Office of Attorney Ethics*, 856 F. 2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised.").

Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights.*" Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994); see also *Felmeister v. Office of Attorney Ethics*, 856 F. 2d 529, 534 (3d Cir. 1988) ("[W]e have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised."); *Hartford Courant Co. v. Pellegrino*, 380 F. 3d 83, 100 (2d Cir. 2004)  ("the weight of the First Amendment issues involved counsels against abstaining.").

2.  *A Litigant May Not Press New York's Law on Res Judicata
    While Violating New York's First-Filed Rule*

In opposing a stay of the state court proceeding pending resolution of VDARE's federal case against the OAG or at least pending decision on its motion to dismiss this case), the

OAG did not dispute that VDARE initiated this case before the OAG initiated its special

proceeding in state court.  New York's well-settled "first-filed" rule requires that the "court

which has first taken jurisdiction" - - this Court - - "is the one in which the matter should be

determined and it is a violation of the rules of comity to interfere."  *Ace Prop. & Cas. Ins. Co. v.*

*Fed.-Mogul Corp.*, 55 A.D.3d at 480; *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1,

7 (1st Dep't 2007) (same); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d

87, 95 (1st Dep't 2013) (same); C.P.L.R. 3211(a)(4).

      New York's first-filed rule and res judicata exist in tandem.  They are both part of

New York's protocols for dueling lawsuits between the same parties.  "The rule favoring the

right of the first litigant to choose the forum, absent countervailing interests of justice or

convenience, is supported by reasons just as valid when applies to the situation where one suit

*precedes the other by a day* as they are in a case where a year intervenes between the suits."

*Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), abrogated on unrelated

grounds *by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (internal citations and quotations

omitted) (emphasis added).

      Instead of acknowledging that VDARE had a right to choose its forum

under settled law in New York, or otherwise consenting to a stay at least to accommodate a

decision by this Court on the OAG's motion to dismiss this case, the OAG analogized VDARE

to a commercial plaintiff precipitously seeking tactical advantage by choosing a forum

inconvenient to an aggrieved commercial opponent and argued that it was improper for VDARE

to seek federal relief after the OAG threatened enforcement on December 2, 2022.  Frisch

Declaration, Exhibit S at 13.  The analogy pressed by the OAG General was misplaced for at

least three independent reasons.

*First*, unlike a commercial plaintiff who rushes to an inconvenient forum as soon as its opponent signals an intent to litigate, the OAG's resort to litigation is inherent in virtually every subpoena she issues.  *See* Docket 12-13 (the Subpoena issued to VDARE in June 2022 included the standard warning that the OAG General can seek enforcement for disobedience). The OAG's analogy to commercial litigation would serve to bar every person to whom it issues a subpoena from ever seeking federal redress in every case no matter how irreparable the federal constitutional harm.

*Second*, apart from the subpoena's inclusion of the standard warning of its right to seek enforcement, the OAG began expressly threatening VDARE with a motion to compel as early as September 8, 2022, before its new counsel had even begun to undertake VDARE's compliance with the subpoena - - three months before December 10, 2022, when VDARE filed its federal case.  *See* Frisch Declaration, Exhibit S at 13-14, Exhibit K ("We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue to extending the deadline and will seek judicial relief ourselves to move this process forward.").

*Third*, unlike a commercial litigant who chooses a geographically inconvenient forum to vindicate its interests in a financial transaction, VDARE chose federal court to vindicate its federal constitutional rights - - and did so here in Albany where the OAG maintains an executive office.

In urging application of res judicata, the OAG glosses over the doctrine's application to "previous" actions [*see, e.g.*, *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285

(2d Cir. 2000)] and the effect of "prior" actions [*Gherardi v. State of New York*, 161 Fed. Appx. 60, 61 (2d Cir. 2005)] in the cases which it cites.  Docket 15 at 2-3.  The OAG does so because VDARE's action came first, and the use of the words "previous" and "prior" to describe actions in New York must be interpreted in the context of New York's first-filed rule.  The OAG interprets the standard as if it means to encourage litigants to race to initiate new litigation to quickly obtain the first ruling.  The OAG cites no case condoning this type of gamesmanship.

But even if New York's first-filed rule can be so readily evaded, a judgment first in time does not control where the policy favoring preclusion of the second action is clearly and convincingly overcome, as here, where it fails "to yield a coherent disposition of the controversy" or sustains the apparent invalidity of a personal liberty.  Restatement (Second) of Judgments § 26 (1982).  So here.  The state court barely mentioned the substantial claim of unconstitutional retaliation made here nor require the OAG to show what legitimate investigative need could conceivably justify constitutionally-protected disclosures without at least some narrow tailoring or specific articulated need.  The state court inexplicably concluded that VDARE raised constitutional objections only on behalf of its donors [Docket 15 at page 10 of 14], but VDARE repeatedly raised objections to disclosure of contractors and content providers as violations of the constitutional rights of speech and association [*see, e.g.*, Frisch Declaration, Exhibits C and D], which the state court failed to address in any adequate, coherent, or reasoned way.

### 3.   *Sovereign Immunity Does Not Bar Relief*

Sovereign immunity is inapplicable here because VDARE seeks prospective relief for an ongoing violation of federal law.  See *Verizon Maryland Inc. v. Public Serv. Comm. of Maryland,* 535 U.S. 635 (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261,

296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in

judgment);  *Clark v. DiNapoli,* 510 Fed. Appx. 49, 51 (2d Cir. 2013).

An exception to immunity allows a federal court to issue an injunction against a

state official in her official capacity who is acting contrary to federal law.  *Ex parte Young,* 209

U.S. 123 (1908);  *New York Health and Hospitals Corporation et al. v. Perales,* 50 F.3d 129

 (2d Cir.1995).  This exception is utilized "when there is a specific conflict between the federal

mandate and the state plan or practice that a federal right is implicated," *Doe v. Pfrommer,* 148

F.3d 73, 80-81 (2d Cir.1998), and is authorized to "vindicate the supremacy of [federal]

law." *Ward v. Thomas,* 207 F.3d 114, 119  (2d Cir.2000).  Under the doctrine of *Ex parte*

*Young,* a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against

individual state officers, as opposed to the state, in their official capacities, provided that [her]

complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly

characterized as prospective."  *Clark v. DiNapoli,* 510 Fed. Appx. at 51 (2d Cir.2013) (internal

quotation marks and citation omitted).  The Supreme Court has held that "[i]n determining

whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need

only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation

of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland Inc. v.*

*Public Serv. Comm. of Maryland,* 535 U.S. at 635.  "[D]eclaratory relief, while equitable in

nature, is barred by the Eleventh Amendment 'when it would serve to declare only past actions in

violation of federal law; retroactive declaratory relief cannot be properly characterized as

prospective.' " *Neroni v. Coccoma,* 2014 WL 2532482 at *9 (N.D.N.Y. June 5, 2014)

(quoting *Kent v. New York,* 2012 WL 6024998 at *7  (N.D.N.Y. Dec. 4, 2012) (internal quotation

marks and citation omitted)).

       4.     *Standard of Review*

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).  The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

VDARE has amply satisfied these standards.

CONCLUSION

For these reasons, the Attorney General's motion to dismiss should be denied.

Dated:  February 22, 2023

<div style="margin-left:40%;">

*/s/ Andrew J. Frisch*
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorney for Plaintiff*

</div>