# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VDARE FOUNDATION, INC.

               *Plaintiff,*

      - against -                    Civil Action No. 22-cv-1337 (FJS/CFH)

LETITIA JAMES, in her official capacity          **DECLARATION**
as Attorney General of the State of New York,

               *Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Andrew J. Frisch hereby declares the following pursuant to 28 U.S.C. § 1746:

1.      I am counsel of record in this case for VDARE FOUNDATION, INC. ("VDARE") and submit this Declaration in support of VDARE's order to show cause seeking a temporary injunction to stay the  Office of the Attorney General's (the "OAG") enforcement of the Appellate Division, First Department's Order, dated March 9, 2023 (Docket No.28), reinstating of Judge Kraus Order, dated January 23, 2023 (Docket No. 15) and requiring the immediate production of constitutionally protected information, pending this Court's resolution of the OAG's motion to dismiss, and if denied, until resolution of this case. I am also counsel of record for VDARE in *James v. VDARE Foundation, Inc.*, N.Y. County Index No. 453196/2022, a special proceeding initiated by the Attorney General in the Supreme Court of the State of New York, County of New York ("state court"), after VDARE initiated this federal case.

2.      The document identified below is a true and accurate copy as described.

.

3.      The document is as follows:

Exhibit A      A memorandum of law submitted by the OAG in the Appellate Division, First Department  (Case No. 2023-00672; NYSCEF Docket No 5.)

4.      Notice of the Order to Show cause was provided to the OAG on March 20, 2023.

I declare under penalty of perjury that the foregoing is true and correct.


Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch

Executed on March 20, 2023

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION – FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,
by Letitia James, Attorney General
of the State of New York

            *Petitioner-Respondent,*

            v.

VDARE FOUNDATION, INC.,

            *Respondent-Appellant.*

Mot. No. 691

Case No. 2023-00672

Supreme Court
New York County
Index No. 453196/2022

# MEMORANDUM OF LAW IN OPPOSITION TO APPLICATION FOR A STAY PENDING APPEAL

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent
28 Liberty Street
New York, NY 10005
(212) 416-8656

ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANDREA W. TRENTO
  *Assistant Solicitor General*
    *of Counsel*

Dated: February 22, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ........................................................................................ 3

    A.   Statutory Background ................................................................. 3

    B.   Factual and Procedural Background ....................................... 5

        1.   VDARE's suspected violations of New York law .............. 5

        2.   VDARE's minimal and deficient responses to New
             York State Office of the Attorney General (OAG)
             subpoena ........................................................................... 9

        3.   VDARE's preemptive federal action ............................... 12

        4.   OAG's state-court proceeding .......................................... 13

ARGUMENT .......................................................................................... 16

    THIS COURT SHOULD DENY VDARE'S MOTION FOR A STAY
    PENDING APPEAL ................................................................................... 16

    A.   VDARE Is Unlikely to Succeed on the Merits of Its
        Appeal. .................................................................................... 17

        1.   Supreme Court properly denied VDARE's motion to
             dismiss or, in the alternative, to stay the subpoena-
             compliance proceeding ..................................................... 17

        2.   Supreme Court properly granted OAG's motion
             to compel. ......................................................................... 22

B.  Equitable Factors Weigh against Staying Supreme Court's Order That VDARE Comply with Its Outstanding Subpoena Obligations. ....................................... 32

    1.  VDARE will not be harmed—irreparably or otherwise—by complying with the order. ........................ 33

    2.  The relative hardships of the parties weigh in favor of denying VDARE's application. ..................................... 36

CONCLUSION ........................................................................... 38

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abrams v. New York Found. for the Homeless*,
190 A.D.2d 578 (1st Dep't 1993)..................................................23

*Ace Prop. & Cas. Ins. Co. v. Federal-Mogul Corp.*,
55 A.D.3d 479 (1st Dep't 2008)...................................................19

*Americans for Prosperity Foundation v. Bonta*,
141 S. Ct. 2373 (2021)............................................................30-32

*Anheuser-Busch, Inc. v. Abrams*,
71 N.Y.2d 327 (1988).............................................................5, 23

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
459 U.S. 87 (1982)................................................................27-28

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)..................................................................13

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) ......................................................23

*Da Silva v. Musso*,
76 N.Y.2d 436 (1990).........................................................16-17, 36

*DeLury v. City of New York*,
48 A.D.2d 405 (1st Dep't 1975)...............................................16, 33

*Herbert v. City of New York*,
126 A.D.2d 404 (1st Dep't 1987)..................................................17

*Hudgens v. NLRB*,
424 U.S. 507 (1976)..................................................................28

*In re Dreier*,
438 B.R. 449 (Bankr. S.D.N.Y. 2010) ..........................................21

| Cases | Page(s) |
|---|---|

*John Doe No. 1 v. Reed,*
   561 U.S. 186, 201 (2010) ...................................................................... 27

*Kent Dev. Co. v. Liccione,*
   37 N.Y. 2d 899 (1975) ......................................................................... 18

*L-3 Communications Corp. v. SafeNet, Inc.,*
   45 A.D.3d 1 (1st Dep't 2007) .............................................................. 19

*Matter of American Dental Coop., Inc. v. Attorney-General of
   State of N.Y.,*
   127 A.D.2d 274 (1st Dep't 1987) ........................................................ 25

*Matter of Doe v. Kuriansky,*
   91 A.D.2d 1068 (2d Dep't 1983) ........................................................... 4

*Matter of Evergreen Assn., Inc. v. Schneiderman,*
   153 A.D.3d 87 (2d Dep't 2017) ................................................... 24, 31-32

*Matter of Giardina v. James,*
   185 A.D.3d 451 (1st Dep't 2020) ........................................................ 22

*Matter of La Belle Creole Intl., S.A. v. Attorney-General of State of N.Y.,*
   10 N.Y.2d 192 (1961) ............................................................................ 4

*Matter of Libre by Nexus, Inc. v. Underwood,*
   181 A.D.3d 488 (1st Dep't 2020) .................................................. 23, 25-26

*Matter of Nicholson v. State Commn. on Jud. Conduct,*
   50 N.Y.2d 597 (1980) ......................................................................... 22

*Matter of Roemer v. Cuomo,*
   67 A.D.3d 1169 (3d Dep't 2009) ......................................................... 23

*Pirraglia v. Jofsen, Inc.,*
   148 A.D.3d 648 (1st Dep't 2017) ........................................................ 17

*Rand v. Rand,*
   201 A.D.2d 403 (1st Dep't 1994) ........................................................ 17

| Cases | Page(s) |
|---|---|

*Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*,
    110 A.D.3d 87 (1st Dep't 2013) ........................................................... 19

*Virag v. Hynes*,
    54 N.Y.2d 437 (1981) ........................................................................... 37

*Volokh v. James*,
    No. 22-cv-10195, 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ........... 35

*Walsh v. Goldman Sachs & Co.*,
    185 A.D.2d 748 (1st Dep't 1992) ......................................................... 18

*White Light Prods. v. On the Scene Prods.*,
    231 A.D.2d 90 (1st Dep't 1997) ...................................................... 19-20

*Wiseman v. American Motors Sales Corp.*,
    103 A.D.2d 230 (2d Dep't 1984) .......................................................... 26

**Constitution**

N.Y. Const. art. I, § 8 ................................................................................ 12

**Laws**

C.P.L.R. § 3211 ........................................................................................ 18

Estates, Powers and Trusts Law § 8-1.4 .................................................... 3

Executive Law
    art. 7-a ................................................................................................ 24
    § 63 ....................................................................................................... 4
    § 172 ..................................................................................................... 6
    § 172-b ................................................................................................ 29
    § 172-e ................................................................................................ 29

General Business Law § 394-ccc ......................................................... 34-35

**Laws** <span style="float:right">**Page(s)**</span>

Not-for-Profit Corporation Law
    § 112 ................................................................................... 4
    §§ 509-511-a .................................................................... 24
    § 509 .................................................................................. 8
    § 510 .................................................................................. 8
    § 515 ................................................................................ 24
    § 715 ............................................................................. 8, 24
    § 715-a ........................................................................... 24

**Miscellaneous Authorities**

Davies, Mark, et al., 8 *New York Practice Series, Civil Appellate Practice* § 9:4 (3d ed. May 2022 update) (Westlaw) ...................... 17, 36

The Editorial Board, *All About Nikki Haley's Donors*, Wall St. J. (Sept. 4, 2022), https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america-11662065044 ........................................... 29

Isenstadt, Alex, *Document Reveals Identity of Donors Who Secretly Funded Nikki Haley's Political Nonprofit*, POLITICO (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/donors-secretly-funded-nikki-haleys-nonprofit-00053963 ............................................. 29

VDARE.com, https://vdare.com/donate ................................................... 37

## PRELIMINARY STATEMENT

In this special proceeding to compel compliance with a subpoena duces tecum, the New York State Office of the Attorney General (OAG) has amply demonstrated that its subpoena to VDARE Foundation, Inc. is reasonably related to the State's strong interest in the regulation of charitable organizations for the public good. VDARE has stymied OAG's investigation at every turn—first by seeking numerous extensions of the compliance deadline, then by producing a trickle of documents with heavy and unexplained redactions, and finally by filing a preemptive lawsuit in federal district court seeking to enjoin OAG's investigation in its entirety and dallying in seeking relief in even that action. Supreme Court, New York County (Kraus, J.) properly granted OAG's motion to compel VDARE's compliance with the duly issued subpoena and denied VDARE's motion to dismiss or stay the subpoena-compliance proceeding pending resolution of its federal action. This Court should deny VDARE's request for the extraordinary relief of a stay of Supreme Court's order pending appeal.

*First*, VDARE has failed to show that it is likely to succeed on the merits of its appeal. VDARE's insistence that Supreme Court was required

to defer to the "first-filed" federal case is wrong as a matter of law—both because the "first-filed" rule does not apply where the relief sought in the later-filed action (that is, compliance with an OAG investigative subpoena) is not available in the earlier-filed action, and because it is not controlling where the actions were filed near in time to one another or where one party files first preemptively after learning of the opposing party's intent to commence litigation. In any event, VDARE's assertion that OAG's investigation is motivated by harassment or retaliation is bereft of any evidence and is belied by the facial legitimacy of the subpoena.

*Second*, equitable factors also support denial of VDARE's application for stay pending appeal. VDARE has not put forward any evidence that it faces irreparable harm from the denial of its application; indeed, VDARE's copious litigation delays bely any allegation of harm. By contrast, a stay would prolong OAG's already-delayed investigation by months, to the detriment of the public interest in expeditious investigations and ensuring the compliance by organizations like VDARE with laws governing misuse of charitable assets.

# BACKGROUND

## A.    Statutory Background

VDARE is a charitable non-profit corporation organized under the laws of the State of New York. <u>Affirm. of Andrew J. Frisch in Supp. of Appl. for Stay & Interim Relief Pending Appeal (Frisch Affirm.) ¶ 4 (Feb. 6, 2023)</u>; *Id.*, Ex. A (Supreme Court Decision & Order on Mot. (Jan. 23, 2023)) at 1.[1] New York charitable organizations and their officers, directors, and trustees are subject to regulation by the State.

As relevant here, OAG is empowered to "investigate transactions and relationships of trustees for the purpose of determining whether or not property held for charitable purposes has been and is being properly administered," including by "subpoena" for the "production of any books or papers" and "examin[ation]" of "any . . . witness under oath." Estates, Powers and Trusts Law § 8-1.4(i); *see id.* § 8-1.4(a)(2) ("trustee" defined to include "any non-profit corporation organized under the laws of this state for charitable purposes").

---

[1] The Frisch Affirmation is <u>NYSCEF Doc. No. 3</u> in this appellate proceeding. All other references to NYSCEF documents herein are to the electronic docket of the trial court. All lettered exhibit references are to the exhibits attached to the Frisch Affirmation.

OAG may also institute an action or special proceeding to seek a variety of remedies relating to the operation or dissolution of not-for-profit corporations, including "[t]o enjoin, void or rescind any related party transaction, seek damages and other appropriate remedies, in law or equity, in addition to any actions pursuant to section 715 (Related party transactions) of this chapter," Not-for-Profit Corporation Law § 112(a)(10), and is authorized to "take proof and issue subpoenas" in connection with any such investigation, *id.* § 112(b)(6). Aside from these specific powers, OAG is broadly authorized to take legal action against "repeated fraudulent or illegal acts or . . . persistent fraud or illegality in the carrying on, conducting or transaction of business" and may "issue subpoenas" in connection with any such investigation. Executive Law § 63(12).

Subpoenas issued by OAG are "presumptively valid," and a challenging party has the burden of proof to establish an investigatory subpoena's invalidity. *Matter of Doe v. Kuriansky*, 91 A.D.2d 1068, 1068 (2d Dep't 1983). To satisfy that heavy burden, a party must show that the information sought by OAG's subpoena is "utterly irrelevant to any proper inquiry." *Matter of La Belle Creole Intl., S.A. v. Attorney-General of State of N.Y.*, 10 N.Y.2d 192, 196 (1961). If the legality of the conduct

being investigated is even "arguable, then the subpoena[] issued pursuant to the Attorney-General's broad powers to investigate possible violations of [New York law] must be sustained." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988).

## B.    Factual and Procedural Background

### 1.    VDARE's suspected violations of New York law

VDARE incorporated in New York in 1999. Ex. A at 1. In 2000, VDARE applied for (and, in 2001, received) charitable tax-exempt status from the federal Internal Revenue Service (IRS) under Section 501(c)(3) of the Internal Revenue Code, stating in its application that it planned to operate from offices in New York and listed two of its four directors at addresses in New York City. *Id.* at 1-2. As reported to the IRS, VDARE's mission is to "[c]reate and manage [an] internet publication." Affirm. of Yael Fuchs in Supp. of OAG's Order to Show Cause to Compel Compliance with Investigative Subpoena ¶ 15 (Dec. 16, 2022), NYSCEF Doc. No. 4 (attached hereto without accompanying exhibits as Ex. 1). It operates a website (www.vdare.com) to that end. *Id.* ¶ 17.

Despite organizing as a New York charitable not-for-profit corporation in 1999, VDARE did not register with OAG until 2009. *Id.*

¶¶ 10-11; *see* Executive Law § 172(1) (requiring charitable organizations that "intend[] to solicit contributions from persons in this state or from any governmental agency" to register with OAG prior to any solicitation). As of the commencement of this proceeding, VDARE failed to file a required report by an independent auditor for its 2019 filings and has not filed required annual financial reports (or exemption statements) with OAG for the years 2020 or 2021, preventing OAG from exercising its oversight function over VDARE, its fiduciaries, and its assets. Ex. 1 ¶ 16; *see* Executive Law § 172(a)-(c). Nor has VDARE made required disclosures regarding the relationships of its current board members. According to VDARE's publicly available 2020 Form 990 filed with the IRS, its Board consisted of three directors: Peter Brimelow, Lydia Brimelow, and John Brimelow. Ex. 1 ¶ 20. John Brimelow is disclosed on Schedule O of Form 990 as Peter Brimelow's brother. *See id.* ¶ 19. However, Lydia Brimelow is disclosed nowhere on Form 990 as Peter Brimelow's wife, as would otherwise be required by law. *See id*.

OAG became aware of other potential improprieties in VDARE's operations through publicly reported and available materials. For example, in 2019, VDARE reported a six-fold increase in revenue, from

$700,000 in 2018 to approximately $4.3 million in 2019. Ex. A at 2. Also in 2019, VDARE doubled the salary of its Chairman, Peter Brimelow, to approximately $345,000, comprising roughly one-third of VDARE's operating expenses. *Id.*; *see* Ex. 1 ¶ 35(e). VDARE pays Brimelow's salary through an independent contractor, Happy Penguins LLC (Frisch Affirm. ¶ 12), which is owned by Brimelow (Ex. 1 ¶ 35(d)). VDARE's payments to Happy Penguins LLC in 2019 exceeded Brimelow's reported salary by tens of thousands of dollars. *Id.* ¶ 35(e). VDARE also listed Peter Brimelow's residential home address in Connecticut as its corporate address while reporting over $45,000 in "office" and "occupancy" expenses paid to the Brimelows in 2019. *Id.*

In or around February 2020, VDARE purchased Berkeley Springs Castle in West Virginia as a "meeting space" for approximately $1.4 million. Ex. A at 2; Ex. 1 ¶ 23. Public reporting indicates that Brimelow and his family have used the property as their primary residence since March 2020. Ex. A at 2; Ex. 1 ¶¶ 25-27. In December 2020, VDARE conveyed the property to two West Virginia corporations incorporated by Brimelow's wife, Lydia (another VDARE director), with the Berkeley Springs Castle itself going to a non-profit corporation called Berkeley

Castle Foundation (and the remaining land to a for-profit corporation called BBB, LLC. Ex. A at 2; Ex. 1 ¶¶ 28-33. Not only were these transactions impermissibly omitted from VDARE's 2020 Form 990 (Ex. 1 ¶ 29), under New York law each required approval and written documentation of that approval by disinterested members of the VDARE Board of Directors, *see* Not-for-Profit Corporation Law §§ 509, 715(a)(3), and should have been submitted for review and approval to OAG or to Supreme Court, *see id.* § 510(a)(3). Transfer of charitable assets to a for-profit entity without fair consideration to disqualified persons is a violation of both New York and federal law. Ex. 1 ¶ 28.

In April 2020, Facebook suspended VDARE's Facebook account based on Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by creating a network of "fake accounts to create fictitious personas . . . [,] drive traffic to off-platform sites, and evade enforcement." *Id.* ¶ 36. Facebook determined that VDARE spent approximately $114,000 buying ads to further these efforts. These expenditures could constitute a waste of charitable assets and breach of the Brimelows' fiduciary duties as VDARE officers and directors. *Id.*

### 2. VDARE's minimal and deficient responses to New York State Office of the Attorney General (OAG) subpoena

On June 24, 2022, OAG served a subpoena duces tecum on VDARE's designated agent and mailed a copy of the subpoena to VDARE's most recent address identified in annual filings with OAG's Charities Bureau. *Id.* ¶¶ 37-38. The subpoena sought documents concerning VDARE's organizational structure, compliance with conflict-of-interest policy requirements under New York law, financial operations, purchase and conveyance of the Berkeley Springs Castle, and transactions with entities controlled by its directors. Ex. A at 3; *see generally* Ex. F (Subpoena Duces Tecum to VDARE (June 23, 2022)).

On July 2, 2022, VDARE's prior counsel demanded that the subpoena be withdrawn and on July 20, 2022, served individual objections to each of the subpoena requests. Ex. 1 ¶¶ 39-41. The initial response deadline of July 24, 2022, passed without the production of a single responsive document.

On July 27, 2022, OAG clarified the subpoena requests by agreeing that the names of certain individuals, including VDARE donors and volunteer supporters, could be redacted from otherwise responsive

records. *Id.* ¶ 42. In August 2022, VDARE obtained new counsel and indicated that it intended to comply with the subpoena but that its new counsel needed additional time to collect and review potentially responsive material. *Id.* ¶ 43.

On September 19, 2022—nearly three months after the subpoena's issuance and two months after its deadline for response and production—VDARE made a production of approximately 27 redacted documents, without Bates numbers or a log explaining the basis for any of the redactions. *Id.* ¶ 44; *see* Ex. A at 3. On September 30, 2022, OAG demanded the production of a redaction log and requested that all future redactions be accompanied by such a log in the first instance. Ex. 1 ¶ 45. In the ensuing 12 weeks, VDARE made modest productions from its hard copy files, but the productions continued to have significant redactions that were not accounted for in any accompanying log. *Id.* ¶ 46; *see* Ex. A at 3. Redactions appear on almost every category of document produced, including board meeting minutes, bank statements, accounting ledgers, credit card statements, invoices from contractors, financial records for Happy Penguins LLC, and Peter and Lydia Brimelow's personal bank statements. Ex. 1 ¶ 46; *see* Ex. A at 3. As a result, OAG has had no means

to reliably identify what has been deleted from VDARE's productions and on what legal basis such deletions were made. Ex. 1 ¶ 45.

On October 31, 2022, VDARE represented that its hard-copy document production was substantially complete (despite the absence of entire categories of requested documents from VDARE's production (*see id.* ¶ 47)) and identified for the first time 22 unique email accounts containing approximately 40 gigabytes of potentially responsive data that needed to be reviewed. *Id.* ¶ 48; *see* Ex. A at 3. VDARE stated that its review of these materials would be complete on November 21, 2022. Ex. 1 ¶ 48. But on November 21 and then again on November 28, 2022— now more than five months after the subpoena was issued and four months after the original production deadline—VDARE informed OAG that the review was taking longer than expected. *Id.* ¶ 49. On November 28, 2022, VDARE stated that it would now aim to complete this review and production by December 12, 2022. *Id.*; *see* Ex. A at 4.

On December 2, 2022, OAG sent a letter to VDARE summarizing its concerns about (among other things) VDARE's production delays, VDARE's unfounded objections to some of the specific subpoena requests, and VDARE's repeated failure to provide a privilege or redaction log. *See*

*generally* Ex. G (Letter from OAG to VDARE (Dec. 2, 2022)). OAG agreed to a sixth deadline extension to December 12 but stated that it would seek judicial intervention if VDARE failed to complete its production by that date. *Id.* at 3.

### 3. VDARE's preemptive federal action

On December 12, 2022, VDARE did not complete its document production. In fact, it produced no documents at all. *See* Ex. 1 ¶¶ 53-54. Instead, VDARE filed a federal lawsuit in the U.S. District Court for the Northern District of New York against Attorney General James in her official capacity, contending that the subpoena *in its entirety* was issued for impermissible pretextual reasons in retaliation for VDARE's exercise of its First Amendment speech rights and violated VDARE's speech and associational rights under the First Amendment and the New York Constitution, art. I, § 8. *See* Ex. B (Verified Compl. for Declaratory & Injunctive Relief (Dec. 12, 2022)) ¶¶ 33-50. VDARE sought compensatory and punitive damages and preliminary and permanent injunctive relief but did not move the federal court for any injunctive relief while its complaint was pending.

On January 18, 2023, OAG moved to dismiss the federal action, contending that VDARE's claims for damages and its claims based on the New York Constitution are barred by sovereign immunity, that the federal court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and that VDARE's complaint fails to state a First Amendment claim in any event. *See generally* Ex. J (Mem. of Law in Supp. of Def.'s Mot. to Dismiss (Jan. 18, 2023)). VDARE has sought multiple extensions on its deadline to respond to OAG's motion, and its opposition is currently due on February 22, 2023.

### 4. OAG's state-court proceeding

On December 16, 2022, OAG instituted this special proceeding in Supreme Court, New York County and moved by order to show cause to compel VDARE's compliance with the subpoena. *See* NYSCEF Doc. Nos. 1-4. On January 3, 2023, VDARE moved by order to show cause to dismiss or stay the state-court proceeding pending resolution of the federal litigation, contending that the subpoena was pretextual, *see* Ex. H (Affirm. of Andrew J. Frisch in Supp. of Resp't's Order to Show Cause (Jan. 3, 2023)) ¶¶ 6-22, and that the issues raised in both proceedings

were duplicative, *see id.* ¶¶ 23-24. Argument on both motions was held on January 19, 2023.

On January 23, 2023, Supreme Court (Kraus, J.) issued an order denying VDARE's motion to dismiss or stay the state-court proceeding, and granting OAG's motion to compel. *See* Ex. A. Supreme Court reasoned that OAG is authorized to enforce the State's policy interest in "ensuring the robust regulation of tax-exempt charitable entities like [VDARE] . . . when misconduct is suspected" and that the subpoena "is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations." Ex. A at 6. Supreme Court noted that VDARE "admits the critical facts that first triggered [OAG's] scrutiny," such as the close family relationships among VDARE's directors and the Brimelows' use of a $1.4 million charitable asset as their personal residence. *Id.* at 7-8.

Supreme Court also concluded that VDARE had failed to carry its "initial threshold burden" of showing that the production of outstanding information in response to the subpoena would impair its First Amendment rights (as opposed to those of its donors or volunteers, which it noted OAG agreed to allow to be redacted). *Id.* at 7. The court also found

that the production of a redaction log posed no First Amendment concerns whatsoever, and that the identities of VDARE's contractors were essential to evaluate the legality of the transactions in which they were involved. *Id.* at 8.

Finally, Supreme Court found that VDARE had presented "no compelling basis for a stay of this proceeding in its moving papers, and acknowledged at oral argument [that] it ha[d] not sought a stay of this proceeding from the Federal District Court." *Id.* at 9. Accordingly, Supreme Court ordered VDARE (1) to comply with its outstanding subpoena obligations (while allowing redactions of the names of private attendees or private contributors to the organization); (2) reproduce previously produced documents with redactions consistent with its order along with a log identifying the basis for any remaining redactions by February 10, 2023; and (3) complete review and production of the remaining responsive electronic files along with a log identifying the basis for any redactions in that production by February 24, 2023. *Id.* at 9-10. Supreme Court also advised the parties that they may "enter into a Stipulation for the Production of Confidential Information pursuant to

this order and submit said stipulation to be so-ordered by the court." *Id.* at 10.

On February 6, 2023, VDARE noticed its appeal and informed this Court that it would be moving for an emergency stay. On February 7, 2023, just three days before its first production deadline under Supreme Court's order, VDARE filed this application for interim relief and emergency stay pending appeal. On February 8, 2023, this Court issued an interim stay and ordered briefing on VDARE's application for an emergency stay pending appeal.

## ARGUMENT

### THIS COURT SHOULD DENY VDARE'S MOTION FOR A STAY PENDING APPEAL

"[T]here is no entitlement to a stay" pending appeal. *Da Silva v. Musso*, 76 N.Y.2d 436, 443 n.4 (1990). To obtain such relief, the applicant must demonstrate both a "reasonable probability of ultimate success in the action, as well as the prospect of irreparable harm" without a stay. *DeLury v. City of New York*, 48 A.D.2d 405, 405 (1st Dep't 1975). This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d

at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Mark Davies et al., 8 *New York Practice Series, Civil Appellate Practice* § 9:4 (3d ed. May 2022 update) (Westlaw). Each of these criteria weighs heavily against granting VDARE's motion.

## A.    VDARE Is Unlikely to Succeed on the Merits of Its Appeal.

VDARE has failed to demonstrate a "likelihood of success on the merits" of its appeal, as is necessary to obtain a stay in this Court. *Rand v. Rand*, 201 A.D.2d 403, 403 (1st Dep't 1994); *Pirraglia v. Jofsen, Inc.*, 148 A.D.3d 648, 649 (1st Dep't 2017) (same). Indeed, this Court has been clear that a stay pending appeal is improper in cases, such as this one "where the appeal is meritless or taken primarily for the purpose of delay." *Herbert v. City of New York*, 126 A.D.2d 404, 407 (1st Dep't 1987).

### 1.    Supreme Court properly denied VDARE's motion to dismiss or, in the alternative, to stay the subpoena-compliance proceeding.

Supreme Court properly denied VDARE's motion to dismiss or stay this subpoena-compliance proceeding in favor of the "first-filed" federal litigation.

Motions to dismiss premised on the prior existence of another action between the parties are governed by C.P.L.R. § 3211(a)(4), which authorizes dismissal or any other "such order as justice requires" where "there is another action pending between the same parties *for the same cause of action* in a court of any state or the United States." C.P.L.R. § 3211(a)(4) (emphasis added). Here, the federal action commenced by VDARE and the subpoena-compliance proceeding initiated by OAG four days later are not the "same cause of action": VDARE and OAG respectively seek different relief, and the relief sought by OAG in the state-court proceeding (that is, an order mandating compliance with an OAG investigative subpoena) is not even available to it in federal court. In such circumstances, New York courts must deny motions brought under C.P.L.R. § 3211(a)(4). *See Walsh v. Goldman Sachs & Co.*, 185 A.D.2d 748, 749 (1st Dep't 1992) (reversing dismissal due to prior pending action where plaintiff could not obtain complete relief in prior action); *Kent Dev. Co. v. Liccione*, 37 N.Y. 2d 899, 901 (1975).[2]

---

[2] VDARE's authorities for the proposition that the "first-filed" rule is sacrosanct in this Court (*see* Frisch Affirm. ¶ 24) are not to the contrary, as none of those cases involved circumstances where, as here, the relief sought by the plaintiff in the later-filed proceeding was unavailable to it

(*continued on the next page*)

Moreover, even if the absence of the availability of relief for OAG in federal court were not dispositive of the issue (though it is), the "first-filed" rule is "not controlling" where, as here, the "commencement of the competing actions has been reasonably close in time," *L-3 Communications Corp.*, 45 A.D.3d at 9, and where "one party files the first action preemptively, after learning of the opposing party's intent to commence litigation," *id.* at 8; *see also White Light Prods. v. On the Scene Prods.*, 231 A.D.2d 90, 98 (1st Dep't 1997). Here, only four days separated the filing of the two proceedings, and VDARE filed its federal court proceeding on the very day by which OAG had demanded that VDARE complete its production so as to avoid the resort to "judicial intervention to obtain compliance." Ex. G at 3; *see L-3 Communications*, 45 A.D.3d at 8-10 (reversing dismissal of later-filed New York action, where only four

_____

in the first-filed proceeding. *See, e.g.*, *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 96 (1st Dep't 2013) (noting that the plaintiff sought "the same damages for the same alleged injuries relating to the same transaction from close corporate affiliates" in the two cases, warranting dismissal of the later-filed action); *L-3 Communications Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 5 (1st Dep't 2007) (describing how both cases involved claim for breach of contract based on the same conduct); *Ace Prop. & Cas. Ins. Co. v. Federal-Mogul Corp.*, 55 A.D.3d 479, 479 (1st Dep't 2008) (same).

days separated the lawsuits and first lawsuit was filed "preemptively, in order to gain a tactical advantage," after litigation had been threatened by the other party).

VDARE complains that this exception to the first-filed rule should not apply in the context of investigative subpoenas issued by OAG, because OAG's "resort to litigation is inherent in virtually every subpoena it issues," and thus "every person issued a subpoena by the [OAG]" would be barred from collaterally attacking that subpoena in another venue. Frisch Affirm. ¶ 26. But this premise can be restated to make the opposite point: a rule that allowed every person issued a subpoena by OAG to obtain an indefinite stay of its enforcement merely by filing a preemptive collateral challenge in federal court would reward the very "procedural gamesmanship" and "[d]elaying tactics" that this exception was designed to prevent. *White Light Prods.*, 231 A.D.2d at 98. VDARE's own conduct evidenced that it saw OAG's December 2, 2022, threat to seek "judicial intervention" in the event of VDARE's failure to comply by its self-imposed December 12 deadline (Ex. G at 3) as something more serious than the boilerplate reservation of rights found in the subpoena itself. *See* Frisch Affirm. ¶ 9 (characterizing the December 2 letter as "unduly

heavy-handed"). Aware that OAG's patience had worn thin, VDARE rushed into federal court on the very day it had committed to provide its final production in response to the subpoena, precisely to avoid a motion to compel in state court. Supreme Court properly rejected the application of the first-filed rule here in denying VDARE's motion to dismiss or stay in the alternative.

Finally, there is no merit to VDARE's contention that OAG's state-court action was itself the product of forum-shopping or "subterfuge." Frisch Affirm. ¶¶ 30, 32. In bringing this subpoena-compliance proceeding, OAG made good on its December 2 threat to seek judicial relief for VDARE's non-compliance with the subpoena in the only forum where such relief was available to it. *See, e.g.*, *In re Dreier*, 438 B.R. 449, 459 (Bankr. S.D.N.Y. 2010) (holding that it is "not forum shopping" where a litigant has pursued litigation in "the only forum where he can press" his claim). And VDARE's allegation that OAG engaged in "subterfuge" (*see* Frisch Affirm. ¶¶ 30-31) in order to obtain a two-week extension over the holidays and due to illness to respond to VDARE's federal complaint is nonsensical. VDARE claims that it was duped into consenting to this request on December 21, 2022, because it did not know at that time of

OAG's state-court petition filed on December 16. (*Id.* ¶ 31.) But even if OAG had control over the timing of the court's issuance of the order to show cause (and it did not), the federal court did not grant OAG's motion for an extension until December 28, 2022, *see VDARE Found.*, No. 22-cv-01337 (N.D.N.Y. Dec. 28, 2022), ECF No. 9—*six days* after VDARE became aware of the proceeding on December 22 (*see* Frisch Affirm. ¶ 31). Yet VDARE did not withdraw its consent to OAG's request at any time after learning of this alleged "subterfuge." VDARE's allegation of misconduct and "subterfuge" should be rejected.

### 2. Supreme Court properly granted OAG's motion to compel.

Supreme Court also properly granted OAG's motion to compel VDARE to comply with the duly issued subpoena.

A motion to compel compliance with a subpoena "raises only the issues of the authority of the investigating body and whether the inquiry falls within the scope of that authority." *Matter of Nicholson v. State Commn. on Jud. Conduct*, 50 N.Y.2d 597, 610 (1980); *see Matter of Giardina v. James*, 185 A.D.3d 451 (1st Dep't 2020). To establish the legitimacy of the inquiry, OAG "need only make a preliminary showing

that the information sought is reasonably related to a proper subject of inquiry." *Matter of Roemer v. Cuomo*, 67 A.D.3d 1169, 1171 (3d Dep't 2009) (quotation marks omitted). Moreover, OAG "enjoys a presumption that [s]he is proceeding in good faith." *Id.*; *see Anheuser-Busch, Inc.*, 71 N.Y.2d at 332. Unless the respondent can demonstrate that "the futility of the process to uncover anything legitimate is inevitable or obvious" or that any "information sought is utterly irrelevant to any proper inquiry," the subpoena will be enforced. *Matter of Libre by Nexus, Inc. v. Underwood*, 181 A.D.3d 488, 488 (1st Dep't 2020) (quotation marks omitted).

OAG has satisfied this standard. There can be no question—and VDARE does not dispute (*see* Frisch Affirm. ¶ 8)—that the subject matter of the subpoena concerns a "proper subject of inquiry." New York has a strong public policy interest in ensuring the robust regulation of the assets of tax-exempt charitable entities like VDARE, *see Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018) (noting the "important government interests at stake" in the regulation of New York's non-profit sector), and vests significant authority in OAG to enforce those interests, *see, e.g.*, *Abrams v. New York Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't 1993). *See generally* Ex. A at 6.

Moreover, the categories of information sought by OAG (and withheld by VDARE)—the identities of VDARE's contractors, and other redacted information appearing on the likes of bank statements, board minutes, accounting ledgers, credit card statements, invoices from contractors, and financial records for related parties—are "reasonably related" to the State's regulatory interest in the operations of charitable non-profit corporations and specifically in identifying and rooting out improper related party transactions. *See, e.g.*, Not-for-Profit Corporation Law §§ 509-511-a (regulation of real property transactions by non-profit corporations); *id.* §§ 515(a)-(b) (distribution of organization's income or profits to directors and officers, including compensation); *id.* §§ 715, 715-a (related party transactions and conflicts-of-interests); Executive Law art. 7-a (solicitation of funds); Estates, Powers and Trusts Law§ 8.1.4(a), (i) (supervision of non-profit corporations organized for charitable purposes, including "whether or not property held for charitable purposes has been and is being properly administered"). *See generally* Ex. A at 6-7.

Finally, the publicly reported conduct by VDARE more than justifies the State's inquiry. *See Matter of Evergreen Assn., Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2d Dep't 2017) (requiring "an authentic factual basis

to warrant the investigation"); *see also Matter of American Dental Coop., Inc. v. Attorney-General of State of N.Y.*, 127 A.D.2d 274, 280 (1st Dep't 1987) (noting that while OAG must show "some factual basis for [her] investigation," she "is not required to demonstrate probable cause or disclose the details of [her] investigation"). OAG has identified required omissions about the relationships between and among VDARE's directors from its regulatory filings; potential irregularities regarding the compensation paid to VDARE's Chairman, Peter Brimelow, through a separate entity owned by Mr. Brimelow himself; and the questionable use of VDARE's single-biggest asset—the Berkeley Springs Castle in West Virginia—as a personal residence by Brimelow and his family, and subsequent disposition of that property to entities owned or controlled by VDARE director Lydia Brimelow. *See generally* Ex. 1 ¶¶ 19-36; Ex. A at 2-3. These publicly reported incidents call into question VDARE's compliance with the State's requirements for non-profit corporations.

VDARE does not meaningfully argue that the information at issue "is utterly irrelevant to any proper inquiry" by OAG.[3] *Matter of Libre*, 181

---

[3] VDARE cites one only example of a request that is "far afield from legitimate regulatory oversight": deposition transcripts and document

(*continued on the next page*)

A.D.3d at 488 (quotation marks omitted). Instead, it claims that the investigation itself is "retaliatory"—that VDARE is being targeted "for reasons other than regulatory compliance"—because OAG has taken unspecified "unduly aggressive positions" in the course of negotiating the scope and timing of VDARE's response to the subpoena, and because the investigation has coincided with the effective date of a statute aimed at "hateful conduct" on social media as well as the issuance of subpoenas to Facebook and Meta by a newly established "Hate Crimes Unit" within the Office. Frisch Affirm. ¶¶ 19-20. But none of these contentions evinces retaliatory conduct by OAG, particularly in light of the public information that provided a factual basis for OAG's inquiry.

Shifting gears, VDARE next claims that it is entitled to withhold a narrower swath of the information at issue—i.e., "the identities of

_____

productions from recent litigation between Peter Brimelow and/or VDARE and the *New York Times* regarding whether certain articles by the *Times* about Brimelow and VDARE were defamatory. Frisch Affirm. ¶ 22. But it was reasonable for OAG to surmise that such materials might have touched on the operations of VDARE, which does fall squarely within the "legitimate regulatory oversight" of OAG. *Cf. Wiseman v. American Motors Sales Corp.*, 103 A.D.2d 230, 237 (2d Dep't 1984) (disclosure "should not be prohibited" where the request "is made in good faith and the information sought is reasonably calculated to lead to the discovery of admissible proof").

contractors who did business with VDARE"—because the disclosure and publicization of those identities could threaten VDARE's "very existence," thereby impinging on its First Amendment rights.[4] Frisch Affirm. ¶ 11. This argument fails for several reasons.

*First*, VDARE has not advanced any evidence of a nexus between the First Amendment harm it alleges and its production of information in response to the subpoena. *See Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 93 (1982) (noting that the person from whom disclosure is sought must establish a "reasonable probability" that disclosure of donors' or members' identities "'will subject them to threats, harassment, or reprisals from either Government officials or private parties'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976))); *John Doe No. 1 v. Reed*, 561 U.S. 186, 201 (2010) (compelling disclosure of same-sex marriage ballot petition signatures where plaintiffs provided "scant

_____

[4] VDARE makes no argument justifying the numerous redactions it has made to board meeting minutes, bank statements, accounting ledgers, credit card statements, and financial records, or as to its failure to produce responsive documents from the e-mail data that it has identified. To the extent this Court is inclined to grant emergency relief as to the order granting the motion to compel on First Amendment grounds, it should require VDARE to produce any withheld material or information that does not reflect the identity of any VDARE contractor.

evidence or argument beyond the burdens they assert disclosure would impose on R–71 petition signers or the signers of other similarly controversial petitions"). It identifies several purported instances where contractors terminated relationships with VDARE as a result of the "reputational and professional harm" they suffered due to their association with the organization. Frisch Affirm. ¶ 11. But even assuming these terminations were the result of contractors being "deterred by the public enmity attending publicity," *Brown*, 459 U.S. at 98, and not by the contractors' own "disagreement with VDARE's views"[5] (Frisch Affirm. ¶ 11), VDARE fails to explain why the production of the contractors' identities *to the government* would bring about the publicity that VDARE contends would cause it constitutional harm—particularly given Supreme Court's invitation to enter into a confidentiality agreement (*see* Ex. A at 10; Ex. L (Stipulation and [Proposed] Order for the Production of

---

[5] VDARE does not enjoy a First Amendment right to obtain services from providers who are themselves unwilling to associate with its views. *See, e.g.*, *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.").

Confidential Information)) that would restrict OAG's ability to publicize or utilize such information outside of its investigation.

VDARE's vague allegation that OAG allegedly disclosed confidential information connected to an investigation of "another conservative not-for-profit entity in OAG's cross hairs" (Frisch Affirm. ¶ 16) is insufficient in this regard. For one, VDARE gets the reported facts of this alleged incident wrong. According to the reporting cited by VDARE, the material in question was a "donor tax filing" initially filed with the IRS.[6] These tax returns are also filed with OAG and the New York Department of State annually as a matter of course. *See* Executive Law §§ 172-b(7), 172-e(4). Nothing in the article cited by VDARE suggests that the organization in question was being "investigated" or was in the "cross hairs" of OAG. In any event, the existence of a protective order here would provide recourse to VDARE in the event of an unauthorized disclosure.

---

[6] The Editorial Board, *All About Nikki Haley's Donors*, Wall St. J. (Sept. 4, 2022), https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america-11662065044; Alex Isenstadt, *Document Reveals Identity of Donors Who Secretly Funded Nikki Haley's Political Nonprofit*, POLITICO (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/donors-secretly-funded-nikki-haleys-nonprofit-00053963. All URLs were last visited on February 22, 2023.

*Second*, even if VDARE could show a nexus between complying with the subpoena and its alleged First Amendment harm, VDARE is still unlikely to succeed on its appeal because the disclosure obligation nevertheless satisfies constitutional "exacting scrutiny" under *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021). "Under that standard, there must be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,'" *id.* at 2383 (quoting *Reed*, 561 U.S. at 196), and the disclosure requirement must "be narrowly tailored to the interest it promotes, even if it is not the least restrictive means of achieving that end," *id.* at 2384.

Here, the State's interest in ensuring that VDARE is not being used to enrich its insiders is unquestionably important, and the obligation to comply with a subpoena request for the identities of those who have been paid by the organization—particularly in light of public reporting that calls into question VDARE's conduct on this issue—is substantially related to that interest. The disclosure obligation is also narrowly tailored in that: (1) it was imposed by subpoena following public reporting about

VDARE's potential misconduct;[7] (2) it is limited to contractors and does not seek the identities of donors, volunteers, or other unpaid contributors;[8] (3) per Supreme Court's order, it can be made subject to a protective order that would restrict OAG's ability to use the information for other purposes or disclose the information to third parties; and (4) it is necessary for OAG to be able to evaluate whether impermissible related party transactions have taken place at VDARE.

VDARE contends that the obligation can be narrowed further by requiring VDARE to produce the identities of only those contractors "who might qualify as 'related' within the meaning of Section 715." Frisch Affirm. ¶ 17. But that would allow VDARE to make its own unilateral determination of relatedness—the very legal question that is the subject of the investigation—a scenario that would undermine, rather than further, the State's interests in ensuring that VDARE is being properly

---

[7] *Compare Bonta*, 141 S. Ct. at 2386 (donor disclosure obligation not narrowly tailored where it was imposed annually on all registered charities and where the information was not an "integral part of California's fraud detection efforts").

[8] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 93 (subpoena seeking information from crisis pregnancy center where organization "did not engage in any commercial transactions and provided all services pro bono, relying heavily on unpaid volunteers").

run.[9] Next, VDARE offers an alternative that is narrower still: production of unredacted contractor identities *in camera* to the court, for the court to then determine what contractors were "related parties." Frisch Affirm. ¶ 18; *see* Ex. L. But that proposal would put the *court* in the position of investigating potential misconduct by a charitable investigation and deciding an ultimate legal issue in the case without the benefit of briefing or analysis by the parties. It would also impose a least restrictive means requirement that is at odds with the "exacting scrutiny" standard in *Bonta*, 141 S. Ct. at 2384.

## B. Equitable Factors Weigh against Staying Supreme Court's Order That VDARE Comply with Its Outstanding Subpoena Obligations.

Equitable considerations and the public interest weigh heavily against staying the preliminary injunction pending VDARE's meritless appeal.

---

[9] *Compare Matter of Evergreen Assn.*, 153 A.D.3d at 101 (narrowing OAG's requests for information to those "which pertain to the potential provision of medical or medical-related services," *not* to those which are responsive to the ultimate investigative question of whether Evergreen was engaging in the unauthorized practice of medicine.)

## 1. VDARE will not be harmed—irreparably or otherwise—by complying with the order.

To obtain a stay pending appeal, VDARE was required to show that it faces "the prospect of irreparable harm" in the absence of a stay. *DeLury*, 48 A.D.2d at 405. Here, VDARE has failed to make any evidentiary showing that complying with the subpoena would interfere with its First Amendment rights, much less that it would be irreparably harmed by such compliance. Nor has VDARE acted with the urgency that would suggest that it even believes that complying with the subpoena would cause it harm. Accordingly, VDARE has provided no basis for this Court to stay the enforcement of Supreme Court's order.

*First*, VDARE has demonstrated no cognizable harm arising from compliance with Supreme Court's order. VDARE's application for stay to this Court consists of an attorney affirmation that largely regurgitates the evidence presented in an attorney affirmation submitted to the court below. *See generally* Frisch Affirm.; Ex. H. No officer or director of VDARE has provided any direct evidence of harm. Nor has VDARE submitted any evidence (even anonymously) on behalf of a contractor, donor, or volunteer explaining that VDARE's compliance with Supreme Court's order will deter that third party from continuing to work with VDARE. All that is

before the Court is the say-so of VDARE's counsel, and references to various media reports suggesting that the *publicization* of a contractor's relationship with VDARE could deter it from working with VDARE in the future.[10] *See* Frisch Affirm. ¶¶ 11-13. This paltry showing is insufficient to establish VDARE's entitlement to a stay.

VDARE's contention that it faces irreparable harm due to the State's ostensibly "retaliatory" investigation (*see* Frisch Affirm. ¶¶ 9-10, 19-22) suffers from a similar lack of proof. Merely alleging, without evidence, that OAG has taken "unduly aggressive positions" in seeking compliance with an otherwise legitimate and narrowly tailored subpoena is not enough to establish irreparable injury. Nor does the arrival of the effective date of a statute "aimed at 'hateful conduct'" on social media (Frisch Affirm. ¶ 19) evidence that OAG's investigation is somehow irreparably harmful: what the identities of VDARE's contractors have to do with that statute is unaddressed by VDARE's application.[11] And

---

[10] Notably, these reports are equally susceptible to the inference that contractors have declined to work with VDARE because of their own disagreement with VDARE's advocacy, in which case VDARE's harm has nothing to do with OAG's subpoena or Supreme Court's order.

[11] That statute, General Business Law § 394-ccc, requires "social media networks"—defined as "service providers, which, for profit-making

(*continued on the next page*)

finally, the requested stay in this case—even if granted—would have no bearing on the enforceability of OAG's independent subpoena to Facebook and Meta for information regarding VDARE's suspension from that platform. Therefore, VDARE's complaints about that subpoena have no relevance to this stay application.

*Second*, VDARE has not acted with the urgency in this litigation, or in the parallel federal litigation, that would suggest that it believes its very existence to be placed at risk by Supreme Court's order, as it now claims to be the case (*see* Frisch Affirm. ¶ 5). Not only did VDARE wait six months before attempting to seek relief in federal court (on the flimsiest of notions that the State's allegedly improper motives only then became apparent), but it also did not seek emergency relief in that court despite the pendency of this proceeding, and waited more than two weeks

---

purposes, operate internet platforms" designed to allow content-sharing—to maintain a mechanism for users to report hateful conduct and to maintain a policy for how they will respond to such reports. *Id.* § 394-ccc(1)(b), (2), (3). At minimum, VDARE does not fall within the ambit of this statute because it does not operate an internet platform "for profit-making purposes." In any event, a preliminary injunction was recently entered against the enforcement of this statute. *See Volokh v. James*, No. 22-cv-10195, 2023 WL 1991435, at *11 (S.D.N.Y. Feb. 14, 2023).

after the issuance of Supreme Court's order—until just days before its first production deadline under that order—before seeking emergency relief in this Court. These delays call into question whether VDARE truly considers itself likely to be harmed by compliance with OAG's subpoena, and now with Supreme Court's order, or whether VDARE is instead utilizing various options in its toolbox of delay.

## 2. The relative hardships of the parties weigh in favor of denying VDARE's application.

This Court also is "duty-bound to consider the relative hardships that would result from granting (or denying)" the application, *Da Silva*, 76 N.Y.2d at 443 n.4, which in a government enforcement action entails weighing the potential prejudice to the public from a stay, *see* Davies et al., *supra*, § 9:4. This criterion weighs heavily against an appellate stay here.

A stay would prolong OAG's investigation—already delayed by VDARE's dilatory conduct in responding to the subpoena—by months, as the appeal on the merits will require time to be calendared, briefed, argued, and eventually decided by this Court. "Constant delays occasioned by unmeritorious motions to quash followed by routine appeals can lead

not only to the loss of evidence and the fading of witnesses' memories, but also may completely frustrate the course of legitimate investigation into potentially criminal" or otherwise improper activity. *Virag v. Hynes*, 54 N.Y.2d 437, 443 (1981). There is a strong "public[] interest in the fair and expeditious administration" of the laws governing charitable entities in New York, *cf. id.* at 444, particularly given that VDARE continues to solicit donations from residents of New York (and elsewhere).[12] Delayed resolution of OAG's investigation into the propriety of VDARE's various uses of its solicited funds risks harming the public interest. In light of the absence of any irreparable harm occasioned by the denial of a stay, and the harm to the public interest attendant to the entry of a stay, the Court should deny VDARE's application.

---

[12] *See* VDARE.com, https://vdare.com/donate.

## CONCLUSION

This Court should deny a stay pending appeal.

Dated:   New York, New York
         February 22, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent

By: _____
    ANDREA W. TRENTO
    Assistant Solicitor General

28 Liberty Street
New York, NY 10005
(212) 416-8656
andrea.trento@ag.ny.gov

ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANDREA W. TRENTO
  *Assistant Solicitor General*
     *of Counsel*

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the
State of New York,

                                   Petitioner,

           -against-

VDARE FOUNDATION, INC.,

                              Respondent.

Index No. _____

**AFFIRMATION OF GOOD FAITH AND IN SUPPORT OF THE ATTORNEY GENERAL'S ORDER TO SHOW CAUSE TO COMPEL COMPLIANCE WITH AN INVESTIGATIVE SUBPOENA**

----------------------------------------------------------------x

       YAEL FUCHS, an attorney duly admitted to the Bar of this State, affirms under penalties of perjury pursuant to Civil Practice Law and Rules § 2106 as follows:

       1.      I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, who appears on behalf of the People of the State of New York in this special proceeding.

       2.      I submit this Affirmation in support of the Office of the Attorney General's application by order to show cause seeking expedited relief in connection with an investigative subpoena *duces tecum* (the "Subpoena") issued by the Attorney General in connection with an investigation of Respondent VDARE Foundation, Inc. ("VDARE").

       3.      I am familiar with the facts and circumstances set forth in this affirmation, which are based upon my personal knowledge and information contained in the files of the Office of the Attorney General ("OAG").

       4.      As set forth below and in the accompanying Verified Petition and Memorandum of Law, in connection with a lawful law enforcement investigation, the Attorney General has issued an investigative subpoena and endeavored to resolve the issue of VDARE's compliance

1

with that subpoena and has been unable to reach a resolution. The OAG now seeks an order

pursuant to CPLR § 2308(b) to enforce its non-judicial subpoena without further delay.

5.      As set forth in greater detail in the accompanying Memorandum of Law, the

Attorney General is vested with expansive oversight authority of not-for-profit entities, their

representations to donors and potential donors, and their use of charitable assets under the New

York Not-for-Profit Corporation Law, the Estates, Powers and Trusts Law and the Executive

Law.

6.      Respondent VDARE is a not-for-profit corporation organized under the laws of

the State of New York. VDARE was previously known as the Lexington Research Institute,

Limited, and incorporated in New York under that name in 1999. A true and correct copy of

VDARE's Certificate of Incorporation is attached hereto as Exhibit A.

7.      VDARE's Certificate of Incorporation provides that:

        ***

5. Notwithstanding any other provisions of these articles, the Corporation is organized
exclusively for charitable, educational, and literary purposes and intends at all times to
qualify as exempt from federal income tax under section 501(c)(3) of the United States
Internal Revenue Code, as now in effect or as subsequently amended. Accordingly, the
Corporation shall not be operated for pecuniary profit or financial gain, no part of the net
earnings of the Corporation shall inure to the benefit of any private individual, no
substantial part of the Corporation's activities shall consist of carrying on propaganda or
otherwise attempting to influence legislation, and the Corporation shall not participate or
intervene in any political campaign on behalf of (or in opposition to) any candidate for
public office.

6. The Corporation may pay reasonable compensation to any person for services rendered
to the Corporation in furtherance of its lawful purposes.

Ex. A at 1.

8.      In 2000, VDARE, then still known as the Lexington Research Institute, Limited,

applied for recognition as a tax-exempt organization by the Internal Revenue Service (IRS). A

2

true and correct copy of VDARE's Form 1023 Application for Recognition of Exemption is

attached hereto as Exhibit B.

9.      VDARE was recognized as tax-exempt (under I.R.C. section 501(c)(3)) by the

IRS in or about May 2001.  A true and correct copy of an IRS confirmation letter addressed to

the Lexington Research Institute Limited dated August 9, 2005 is attached hereto as Exhibit C.

10.      In 2009, VDARE registered as a charity with the Charities Bureau of the Office of

the Attorney General, under both the Estates, Powers and Trusts Law ("EPTL") and under the

Executive Law.  A true and correct copy of VDARE's CHAR 410 initial registration form is

attached hereto as Exhibit D.

11.      VDARE filed its initial registration with the Charities Bureau in 2009, despite

having begun operations in New York in 2000.  New York law requires that charities register

with the Charities Bureau prior to any solicitation in New York, Exec. Law § 172, and within six

months "after any property held by [a trustee] or any income therefrom is required to be applied

to charitable purposes," EPTL § 8-1.4(d).

12.      In its CHAR 410, VDARE described its purpose as "creat[ing] and manag[ing]

internet publications."  Ex. D at 3.

13.      As a charity operating and soliciting in New York, VDARE is required to file

annually a CHAR500 Registration Form.  The CHAR500 must be signed by two officers and

asks for self-reporting regarding certain basic information, including the organization's contact

information, the number and identity of board members, and information relating to fundraising.

14.      The CHAR 500 also requires that organizations file and certify a copy of their

annual IRS Form 990.  According to the IRS, the Form 990 "is the IRS' primary tool for

gathering information about tax-exempt organizations, educating organizations about tax law

3

requirements and promoting compliance. Organizations also use the Form 990 to share information with the public about their programs." https://www.irs.gov/charities-non-profits/form-990-resources-and-tools (last visited December 14, 2022).

15. As part of its required filings with the IRS and the Charities Bureau, VDARE, since its belated registration, files an IRS Form 990 and certifies to its accuracy each year. According to VDARE's IRS Form 990, the organization's mission is to "Create and manage internet publication." True and correct copies of VDARE's Form 990 for 2018-2020 are attached hereto as Exhibits E-G.

16. As of the date of this Affirmation, VDARE has not filed its 2020 or 2021 CHAR500 Forms, which would include the IRS Form 990 as an attachment, and is delinquent in its required annual registration with the Charities Bureau.

17. VDARE reports on its Form 990 that its website is WWW.VDARE.COM. Exs. E-G.

18. According to VDARE's Form 1023 Application filed with the IRS and the Charities Bureau, Peter Brimelow ("Brimelow") is the "Director/CEO/Chairman" of VDARE. Ex. B at 3. Maggie Brimelow is listed as Secretary/Treasurer on VDARE's Form 1023 Application. Id. Upon information and belief, Maggie Brimelow was Peter Brimelow's wife prior to her death in 2004.

19. For certain years, Lydia Brimelow is listed as "Secretary, Treasurer and Publisher" of VDARE on VDARE's Char500 filed with the Charities Bureau. Upon information and belief, Lydia Brimelow is Peter Brimelow's current wife. This relationship is not listed on Schedule L or Schedule O of the 2020 IRS Form 990, as is required by law. Lydia Brimelow is listed as a director of VDARE in its IRS Form 990 for 2020, but not in other years. John

4

Brimelow is Peter Brimelow's brother and is listed as a director of VDARE in its Form 990 for 2018-2020. *See* Exs. E-G.

20.     As set forth in its IRS 990 for 2020, the most recent filing that is publicly available, VDARE's board and management for 2020 consisted entirely of members of the Brimelow family: Peter, Lydia, and John.  Ex. G.

21.     VDARE and its current and past board members are the subject of an ongoing investigation by the Attorney General concerning potential financial improprieties, including unlawful related party transactions between VDARE and affiliated entities, officers and board members, excessive compensation, private inurement, and violations of statutory and common law governance standards.

22.     In February 2020, VDARE was publicly reported to have bought a historic, 9,300-square foot castle in a West Virginia resort town for $1.4 million.  *See* Rick Steelhammer, Berkeley Springs Castle Becomes Conference Site for VDARE, an Organization to 'Keep America American,' Charleston Gazette-Mail (Mar. 7, 2020), available at https://www.wvgazettemail.com/news/berkeley-springs-castle-becomes-conference-site-for-vdare-an-organization-to-keep-america-american/article_170131e9-db7c-500f-8a57-91e1fcc1ad66.html (last visited December 14, 2022).

23.     In a February 2020 public announcement on VDARE.com, VDARE described the castle as a meeting space "where we can meet and share ideas without fear of deplatforming." *See* Lydia Brimelow, Lydia Brimelow: We Got the Keys to the Castle!, VDARE.COM (Feb. 26, 2020), https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited December 14, 2022).

24.    Months later, Brimelow continued to represent to donors that the castle was a necessity—stating in a solicitation that VDARE "had to buy the Berkeley Springs Castle." *See* "VDARE.com Editor Peter Brimelow: Please Give By Credit Card BEFORE MIDNIGHT—While You Still Can!", https://vdare.com/articles/vdare-com-editor-peter-brimelow-please-give-by-credit-card-before-midnight-while-you-still-can (last visited December 14, 2022).

25.    Upon information and belief, Peter Brimelow, Lydia Brimelow, and their three children moved into the Berkeley Springs Castle and have been using it as their primary family residence since March 2020.

26.    On VDARE.com, the Brimelows have posted photos of the family celebrating holidays at the castle such as the 4th of July (https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited December 14, 2022)), and Christmas Eve (https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-4d90-93b9-c82cd46c5950 (last visited December 14, 2022)).

27.    In a post dated December 4, 2020, a VDARE.com contributor reported visiting the castle and noted that "Peter and Lydia Brimelow have moved in and spend most of their time there with their [children]….".  *See* https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-and-students-cancel-black-etc (last visited December 14, 2022).

28.    Public filings indicate that, in December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property in two separate transactions to two West Virginia corporations that had been incorporated by Lydia Brimelow five months earlier.  VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative non-profit corporation. VDARE conveyed the remaining land, consisting of eight

6

parcels, to BBB, LLC, a for-profit corporation. Transfer of charitable assets to a for-profit entity without fair consideration is a violation of both New York and federal law. True and correct copies of these deeds are attached as Exhibit H and I.

29.     This transaction is not reported on the VDARE 2020 IRS Form 990, as required by law, nor was it submitted to the Charities Bureau for approval, as required by Sections 510 and 511 of the Not-for-Profit Corporation Law.

30.     According to records on file with the West Virginia Secretary of State, Lydia Brimelow incorporated BCF as a West Virginia domiciled nonprofit on July 21, 2020. A copy of the Business Organization Detail page for BCF from the West Virginia Secretary of State's website is attached as Exhibit J.

31.     BCF was recognized as a tax-exempt organization by the IRS by notice dated January 20, 2022. A copy of BCF's tax exemption recognition notice is attached hereto as Exhibit K.

32.     Using the tagline "When nothing but a castle will do," BCF offers to rent the castle as an event space through its website. According to that website, BCF began taking event reservations in summer 2020.



https://www.berkeleyspringscastle.com/contact.html (last visited December 14, 2022).

33.     According to records on file with the West Virginia Secretary of State, Lydia

Brimelow incorporated BBB, LLC as a West Virginia domiciled for-profit corporation on July

21, 2020.  Lydia Brimelow is listed as BBB, LLC's organizer and manager.  The organization's

only listed business purpose is "Real Estate and Rental and Leasing—Real Estate—Lessors of

Real Estate." A copy of the Business Organization Detail page from the West Virginia Secretary

of state is attached as Exhibit L.

34.     Announcements posted to VDARE.com in October 2021 indicate that the castle's

"First Public Event" was an "Auction Preview Party" showcasing items from the castle that the

Brimelows were selling in a private auction, including swords, a riding helmet, and a butter

churn.  *See* "Come To Our First Public Event! Castle Auction: Saturday, October 16th" *at*

https://vdare.com/posts/come-to-our-first-public-event-castle-auction-saturday-october-16th

("VDARE.com bought the Berkeley Castle furnished, and we're retaining many of the beautiful

pieces for Castle use. But there are just so many we can't use them all! So, in partnership with

local auction house J Lawyer, we're offering the rest up to our friends and supporters.") (last

visited December 14, 2022) *and* "Downsizing For The Historical Berkeley Springs Castle" at

https://www.jlawyerauctions.com/auctions/detail/bw70268 (last visited December 14, 2022).

35.     Following the public reporting of the castle purchase, personnel in the Office of

the Attorney General reviewed VDARE's Form 990s and other publicly available documents.

The OAG identified several areas of concern which may constitute violations of VDARE's

bylaws and/or New York law.  For example, and without limitation:

    a.     According to its IRS Form 990 for 2019, VDARE raised over $4.2 million

           in contributions and grants in 2019, which is more than eight times its

publicly reported 2018 revenue and more than ten times its publicly reported 2017 revenue. VDARE did not file a report by an independent auditor for that year, as required for organizations soliciting in New York with revenue of over $1,000,000. VDARE claimed an exemption from the requirement on the grounds that it raised less than the requisite $25,000 from New York donors.

b.  According to VDARE's disclosures in Schedule J of the 990, VDARE does not appear to have any process in place for determining Brimelow's salary.

c.  According to VDARE's IRS Form 990 for 2019, Brimelow's reported compensation for 2019 nearly doubled from 2018, to $345,364 — an amount equivalent to nearly half of VDARE's total program service budget for the year.

d.  According to Schedule L of VDARE's 990, rather than pay Brimelow directly, VDARE pays Brimelow's salary through an independent contractor, Happy Penguins LLC, which VDARE reports is owned by Brimelow. Under this arrangement, Peter Brimelow, VDARE's chief executive, is technically a Happy Penguins "leased employee" rather than a VDARE employee.

e.  In 2019, VDARE paid Happy Penguins more than Peter Brimelow's annual salary. Although Brimelow's reported salary for 2019 was $345,364, VDARE also reported paying Happy Penguins LLC $411,003. In 2019, VDARE also listed the Brimelows' residential home address in

9

Litchfield, Connecticut as its corporate address while reporting $36,142 in "office expenses" and $8,664 in "occupancy expenses" on its Form 990 — additional compensation to the Brimelows that was not properly reported. These financial arrangements may violate express conflict provisions in the N-PCL and VDARE's bylaws.

f.     Lydia Brimelow's position in the organization is inconsistently and incompletely reported. To the extent that she serves as an officer or director of VDARE, that family relationship, which should be disclosed, is not reported on VDARE's Form 990.

g.     The VDARE Form 990 for 2020 contains additional statements which raise significant issues about compliance with governing law and use of charitable assets. For example, in response to Form 990, Part VI, Line 11b: Form 990 Review Process Schedule O represents that "No review was or will be conducted." The IRS 990 at Section VI, question 12 represents that there is a conflict of interest policy (as required by New York Not-for-Profit Law) but the explanation of that policy is nowhere addressed on Schedule O, as required by the IRS. Schedule J, which requires disclosure of certain benefits to officers, leaves blank the question whether the officer receives a housing allowance or residence for personal use. Schedule L, which requires disclosures of transactions with interested persons, makes no mention either of Lydia Brimelow's salary from VDARE or of the transaction providing a residence for use by the Brimelows.

10

36.     In April 2020, Facebook suspended VDARE's Facebook account based on
Facebook's determination that VDARE engaged in "coordinated inauthentic behavior" by
creating a network of "fake accounts to create fictitious personas…drive traffic to off-platform
sites, and evade enforcement." According to Facebook's analysis, VDARE's network consisted
of "19 Pages, 15 Facebook accounts, and 1 Group" accounting for 207,700 followers. Facebook
determined that VDARE's network spent "around $114,000" buying ads to further its inauthentic
behavior.  If true, this could constitute a waste of charitable assets and breach of the Brimelows'
fiduciary duties as VDARE officers.  VDARE sued Facebook, alleging defamation, when
Facebook published a copy of its 2020 report, and VDARE attached a copy of the report to its
federal complaint.  A true and correct copy of the April 2020 "Coordinated Inauthentic Behavior
Report," as filed by VDARE, is attached as Exhibit M.

37.     On June 24, 2022, the Attorney General personally served a subpoena *duces
tecum* on VDARE by delivery to VDARE's designated agent for service, the Secretary of State
of New York, in compliance with CPLR 311 and N-PCL § 306.  A true and correct copy of the
Subpoena is attached hereto as Exhibit N.

38.     On June 24, 2022, the Attorney General mailed a copy of the Subpoena, by U.S.
Mail Certified Return Receipt to the address identified in VDARE's most recent annual filing
with the Charities Bureau (276 Cacapon Road, Berkeley Springs, West Virginia 25411), together
with a copy of the Affidavit of Service prepared by OAG Investigator Donald C. Anselment and
a cover letter confirming the nature of the document. A true and correct copy of the Attorney
General's June 24, 2022 letter is attached hereto as Exhibit O.

11

<u>Efforts to Obtain Subpoena Compliance Since July 2022</u>

39.     VDARE responded to receipt of the Attorney General's Subpoena by immediately

insisting that the Subpoena be withdrawn as unlawful:  on July 2, 2022, VDARE's then-counsel

Frederick Kelly confirmed receipt of the Subpoena, demanded that the Subpoena be withdrawn

in its entirety, and requested information regarding, *inter alia*, the subject matter of the

investigation and the relevance of the documents sought in the Subpoena.  True and correct

copies of Kelly's July 2, 2022 email and its attachments are attached hereto as Exhibit P.

40.     On July 18, 2022, counsel from the Attorney General's Office met telephonically

with Kelly.  During that call, Kelly asked the OAG to provide information regarding the nature

of the investigation and expressed concerns regarding certain Subpoena requests, including

requests that he believed were overbroad or called for production of documents protected by the

attorney-client privilege.  OAG counsel responded to Kelly's questions, with a reservation of

rights, and identified concerns regarding: (1) the purchase and use of the castle; (2) benefits

conferred upon the Brimelows; (3) whether the VDARE board is properly overseeing the

finances of the organization; and (4) whether the organization is using charitable assets in

accordance with its mission.  The OAG also stated that to the extent counsel believed that

production would invade attorney-client privilege, the Subpoena did not seek privileged

communications and expressly instructed counsel to withhold such documents and provide a

privilege log.

41.     On July 20, 2022, Kelly sent a second letter to the OAG, by which VDARE

renewed its request that the Subpoena be withdrawn and set forth individual objections to many

of the Subpoena's individual requests on the grounds of overbreadth, vagueness, attorney-client

12

INDEX NO. 453196/2022

RECEIVED NYSCEF: 12/16/2022

privilege, and that its requests sought the identities of VDARE readers, writers, and donors. A true and correct copy of VDARE's July 20, 2022 letter is attached hereto as Exhibit Q.

42.     On July 27, 2022, the Attorney General responded by email to the objections raised in VDARE's July 20 letter. With a reservation of rights, counsel for the OAG attempted to address VDARE's concerns by clarifying individual Subpoena requests and agreeing that the names of certain individuals, including VDARE contributors and volunteer supporters, could be redacted from otherwise responsive records. A true and correct copy of the OAG email dated July 27, 2022 is attached hereto as Exhibit R.

43.     In August 2022, VDARE retained substitute counsel — attorney Andrew Frisch — and indicated through that new counsel that it intended to comply with the Subpoena. Frisch contacted the OAG by phone and letter to identify himself as VDARE's new representative in connection with the Subpoena response and he requested additional time to collect and review potentially responsive material for production. In a letter on September 19, 2022, Frisch wrote: "I do not stand by my predecessor counsel's position that the Subpoena be withdrawn." He noted that there existed "a significant volume of electronically-stored and hard copy documents that need to be reviewed" and he confirmed that he had prepared the first of what he expected would be multiple rolling production deliveries. He also confirmed that he had redacted certain information in his first production delivery but had not "had ample time to fully evaluate bases underlying the redactions." A true and correct copy of Frisch's letter dated September 19, 2022 is attached hereto as Exhibit S.

44.     VDARE made its first production of responsive material to the OAG on September 19, 2022, nearly two months after the Subpoena's originally stated deadline for completion of all production. The September 19 production contained 27 documents produced

13

without Bates numbers and bearing unmarked redactions.  No log was provided with the production to identify or explain how and why the documents had been redacted.

45.     The OAG requested a redaction log for VDARE's production immediately upon receiving the September 19 delivery and has repeated that request in the three months since.  In an email on September 30, 2022, the OAG expressly insisted that productions be delivered in the form called for by the Subpoena and that all redactions be accompanied by "a log identifying the Bates range for any pages on which redactions appear, the legal basis for those redaction, and a general description of the category of information being withheld."  The OAG's September 30 email explained that, without a redaction log, the Office had no means to "reliably identify what has been deleted from the material [VDARE was] producing and on what legal basis."  A true a correct copy of the OAG's September 30, 2022 email is attached as Exhibit T.

46.     In twelve weeks since its first delivery, VDARE has produced approximately 6,000 pages of material from its hard copy records that it identifies as responsive to the Subpoena.  It has redacted that material without offering any legal basis for individual redactions or any explanation of how otherwise responsive material has been identified and segregated for redaction.  The redactions are extensive, and they have been applied across almost every category of document produced, including VDARE board meeting minutes, VDARE bank statements, internal VDARE accounting ledgers, VDARE credit card statements, invoices sent to VDARE, financial records for the limited liability company (Happy Penguins LLC) from which VDARE has historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow.  In one instance, VDARE appears to have redacted a magazine subscription renewal form addressed to Peter Brimelow that it also marked as Confidential.

14

47.     On October 31, 2022, Lydia Brimelow certified to the OAG that, with limited exceptions, VDARE's production from its hard copy files was complete. A true and correct copy of Brimelow's October 31 certification is attached as Exhibit U. As certified, VDARE's hard copy production contains no responsive material from the following categories of record called for by the Subpoena: (i) solicitation materials sent by VDARE to potential contributors; (ii) documents related to the setting or adjusting VDARE's officer compensation; (iii) documents concerning past or future VDARE events located at the Berkeley Springs Castle property; (iv) documents concerning Director and Officer liability insurance held by VDARE for the benefit of its Board; (v) documents sufficient to demonstrate who controls VDARE's financial accounts; and (vi) communications between VDARE and its accountants.

48.     On October 31, 2022, VDARE also identified 22 unique email accounts that together contained approximately 40 gigabytes of potentially responsive electronically-stored information. VDARE counsel stated on October 31 that review of those accounts would be completed on or before November 21, 2022. A true and correct copy of the October 31, 2022 letter to the OAG from VDARE counsel is attached, without its attached list of email account names, as Exhibit V.

49.     VDARE did not produce any material from its electronic files as promised on November 21. In letters dated November 21 and November 28, attached as Exhibits W and X, VDARE counsel reported to the OAG that its email review was taking longer than expected. In its November 28 letter, VDARE counsel identified December 12, 2022 as a new deadline — set without input or consent from the OAG — by which it would complete an email production. No such production was ever provided.

50. The OAG has met with VDARE counsel, in person and by phone, on multiple occasions in the months since VDARE made its first September 2022 production. VDARE counsel has assured the OAG throughout that he was working diligently to comply with the Subpoena. The OAG has expressed concern over production delay in each of its contacts with VDARE counsel and has objected repeatedly to VDARE's continuing production of redacted material without any identified explanation of or legal basis for redaction.

51. On December 2, 2022, counsel for the OAG summarized its concerns with the pace and scope of VDARE's production to date in a letter addressed to VDARE counsel. A true and correct copy of the December 2, 2022 letter is attached as Exhibit Y.

52. As of the date of this filing, the Subpoena's deadline for production has been extended no fewer than six times — most recently to December 12, 2022. In total, these adjournments extended the Subpoena's stated response deadline by approximately twenty weeks.

53. As of the date of this filing, VDARE has not produced any material from the 22 individual VDARE email accounts that it identified on October 31 as containing potentially responsive material.

54. As of the date of this filing, VDARE has refused to produce any log identifying the material in its production that it has redacted and the legal basis on which it is withholding the redacted information.

55. On December 12, 2022, the same date that VDARE counsel independently selected for complete production of responsive VDARE email, VDARE filed a lawsuit in the U.S. District Court for the Northern District of New York seeking to have the Attorney General's investigative Subpoena declared unconstitutional. A true and correct copy of VDARE's

16

December 12, 2022 Verified Complaint is attached as Exhibit Z.  The OAG believes that

VDARE's claims in that action are without merit and will seek to dismiss the complaint.

56.    In accordance with CPLR Rule 2217(b), I affirm that the Attorney General has

not previously requested the relief sought by this application.

Dated: New York, New York
       December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

By:

_____
Yael Fuchs
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8391
yael.fuchs@ag.ny.gov

17