EXHIBIT G

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CIVIL TERM - PART 57
- - - - - - - - - - - - - - - - - - - - - -X

        PEOPLE OF THE STATE OF NEW YORK, BY
        LETITIA JAMES, ATTORNEY GENERAL OF THE
        STATE OF NEW YORK,
                                            INDEX NUMBER:
                            Petitioner,     453196/2022

                - against -

        VDARE FOUNDATION, INC.,

                            Respondent.
- - - - - - - - - - - - - - - - - - - - - -X

                            Virtual Teams Meeting
        ORAL ARGUMENTS         New York, New York
                            January 19, 2023


B E F O R E :


    HONORABLE SABRINA B. KRAUS, JUSTICE OF THE SUPREME COURT


A P P E A R A N C E S :

        LETITIA JAMES,ESQ.
        Attorney General of the State of New York
        28 Liberty Street
        New York, New York  10005

    BY:  CATHERINE SUVARI, ESQ.


        THE LAW OFFICE OF ANDREW J. FRISCH, PLLC
        Attorneys for the Defendants
        40 Fulton Street, 17th Floor
        New York, New York  10038

    BY:  ANDREW J. FRISCH, ESQ.


ALSO PRESENT:                   YAEL FUCHS

                                LORETTA KRAVCHENKO
                                SENIOR COURT REPORTER
```

P R O C E E D I N G S                                              2

```
 1              THE COURT:  Okay.  Good morning, everybody.
 2    Why don't we start out by having the attorneys note
 3    their appearance for the record.
 4              MS. SUVARI:  Sure.  This is Catherine Suvari, Your
 5    Honor.  I am from the AG's office on behalf of the State of New
 6    York.  And I believe my colleague is on, Yael Fuchs, also from
 7    my office as well.
 8              MR. FRISCH:  Good morning.  For the Respondents, VDARE
 9    Foundation, Andrew Frisch, F-r-i-s-c-h.  Good morning.
10              THE COURT:  Okay.  I also have a James Sheehan listed.
11              MR. SHEEHAN:  That's correct, Your Honor.  This is
12    James Sheehan from the Attorney General's office as well.
13              THE COURT:  All right.  I'm going to give you some
14    time to present oral argument on your positions.
15              But before you start there, I want to highlight some
16    things that I'd like to hear from you about during the course of
17    those oral arguments.
18              So, specifically, the Petitioner has argued that the
19    Federal action is not duplicative of this proceeding, because
20    they can't get the relief in federal court that they are seeking
21    in this proceeding.
22              And I did not see Respondent address that argument at
23    all.  So I would like Respondent to advise whether they dispute
24    that that's correct.
25              And if they to do dispute that that's correct, I would
```

1  like each side to tell me what the legal authority is behind

2  their position on that point.

3          I would also like to know whether the Respondent asked

4  the federal court to stay this action or proceeding.

5          And then Petitioner's Order to Show Cause seems to

6  request a blanket order compelling compliance with the subpoena.

7  But, in the papers Petitioner seems to acknowledge that some

8  carve outs or sections are appropriate, for example, they ask

9  about the redaction log.  There are other carve outs or

10  acknowledgements of adjustments made to the Petitioner that the

11  Petitioner acknowledges may be appropriate.

12          So I may request Petitioner to send me a proposed

13  order at the conclusion of this, because it's not clear from the

14  Order to Show Cause specifically what order they are requesting

15  from the Court.

16          And then, finally, I would like the Respondent to

17  address whether a confidentiality agreement or order might not

18  cover their concerns about donors or contractors or vendors

19  being disclosed, and suffering negative business consequences as

20  a result of that.

21          So having said that, I'm going to let the Petitioner

22  go first.

23          MS. SUVARI:  Thank you, Your Honor.  This is Cate

24  Suvari again.  I'd like to start, if I can, with some basics

25  about who we are and exactly what is going on so the context for

P R O C E E D I N G S                                                    4

1    these arguments is as clear as possible.

2            The Attorney General began this proceeding to enforce

3    a Civil Pre-Complaint Investigative Subpoena that it has issued

4    to the VDARE Foundation.

5            And VDARE is a New York formed not-for-profit

6    corporation, whose stated charitable mission is to create and

7    manage an internet publication housed at VDARE.com.

8            The Attorney General's review and its subpoena to

9    VDARE last summer followed from public reports that VDARE had

10   spent roughly $1.4 million in charitable assets to buy a castle

11   in West Virginia that its chairman promptly moved his family

12   into.

13           The Attorney General reviewed public reports of that

14   transaction, and examined VDARE's regulatory filings with this

15   office; And in that process identified significant control

16   issues that formed the focus of this investigation.

17           And that sequence is reviewed in detail in the Fuchs'

18   affirmation that was submitted in support of our petition, which

19   is Docket No. 4, beginning at page 5.

20           Our subpoena seeks categories of documents and

21   information that are related to VDARE's governance, and to its

22   financial operation as a New York not-for-profit.

23           There are several features of our subpoena that we

24   think are especially important to note.  The first is that

25   regulatory compliance is a mandatory rule.  And the issue of

PROCEEDINGS                                                           5

1    should we choose to subpoena or not are not in dispute here.

2              They are incorporated in New York roughly 25 years

3    ago.

4              It registers with the Attorney General's Charities

5    Bureau to operate and solicit in New York, and has been doing

6    that for roughly 15 years.

7              And it does not dispute the Attorney General's

8    authority to regulate not-for-profit corporations generally, or

9    VDARE in particular.

10             The Attorney General also served it's investigative

11   subpoena pursuant to very well-established subpoena authority

12   that VDARE also does not dispute.

13             The Attorney General's subpoena in a proceeding like

14   this is entitled to a presumption of good faith.

15             So VDARE, as the subpoenaed party, bears the burden of

16   demonstrating that our office's subpoena should not be enforced.

17             VDARE has not moved to quash or modify the subpoena in

18   roughly six months between service and the start of this

19   proceeding.

20             VDARE has also partially complied with the subpoena

21   for months; and that's something that is discussed in our

22   submissions and VDARE's.  It has produced roughly 6,000 pages of

23   material already.

24             And it has insisted throughout and insists again

25   through it's submissions to this Court that it intended to fully

PROCEEDINGS

1  comply.  There is no record of harm to VDARE during that process

2  before this Court.

3           The reason that we are here now is because of the

4  delay in the production process, and VDARE's decisions about

5  withholding material that might otherwise be responsive have

6  required us to seek the Court's intervention to obtain

7  compliance with our subpoena.

8           And the Attorney General's office specifically warned

9  VDARE that it would pursue that relief if needed in a letter

10  that was sent to VDARE on December 2nd.  That fact is very

11  significant under the case law that is cited in both our

12  briefing and VDARE's regarding this Court's consideration of a

13  discretionary dismissal.

14           Specifically, what has been happening in the

15  production in the last six months, it began in late September,

16  VDARE had asked for and received multiple extensions from our

17  office in the summer of 2022, and began producing at the start

18  of the fall.

19           But by October, they had begun setting increasingly

20  later deadlines, and missing those deadlines along the way.

21           The final date by which VDARE had proposed to complete

22  production, and that's the September 12th date, it opted to sue

23  our office instead.

24           The sequence of exchanges from summer through fall,

25  and our response to VDARE's request for extension is reviewed in

PROCEEDINGS                                                    7

1  detail in our office's December 2nd letter to VDARE's counsel.

2  That is attached to Exhibit Y to the Fuch's affirmation, which

3  is Docket No. 29.  And VDARE does not dispute that chronology.

4        I think it's important to emphasize that VDARE could

5  have asserted constitutional concerns with the subpoena at

6  anytime from July of last year forward.

7        It is only when VDARE was threatened with a Motion to

8  Compel by our office that they alleged that our investigation

9  was, in fact, protectoral or baseless.

10       There are also particular problems with the material

11  that has been produced to date.  The first is the redactions

12  that Your Honor mentioned already.  VDARE has extensively

13  redacted the hardcopy material that it has produced.

14       And it has repeatedly declined to produce a log that

15  would identify to our office, even in broad strokes, the

16  categories of material being redacted and the legal bases for

17  those redactions.  You can see our office's request for that log

18  in the letter back and forth that is attached to the Fuch's

19  affirmation.

20       In our view it's very significant that when given an

21  opportunity to explain its redactions and its objections to the

22  request for a log in this proceeding, VDARE has chosen only to

23  argue that the proceeding should be dismissed, because it filed

24  in federal court four days earlier, and because it views the

25  subpoena as the retaliatory pretext.

```
 1              VDARE has also, separately from the redaction
 2    question, identified an enormous volume of electronic material
 3    that may be responsive to the subpoena.  VDARE first set that
 4    estimate at the end of October, that's the 40 gigabytes of
 5    potentially responsive ESI material.  And it has not produced
 6    anything from that source in two-plus months since.
 7              So considering this proceeding and our office's
 8    request from the Court, the standard of review here has been
 9    very well established.
10              Court review of agency investigative subpoenas like
11    ours is very differential.  The Court looks for a reasonable
12    basis for the investigation, and reasonably targeted demands;
13    both are met here.
14              The basis for our investigation is outlined in our
15    supporting materials, and, frankly, not disputed.  The facts
16    that have prompted our review are not really in dispute in any
17    of VDARE's submissions either.
18              Our investigation is targeting conduct of a New York
19    not-for-profit corporation that may be unlawful under New York
20    Non-Profit Law; not constitutionally protected speech at
21    VDARE.com; and not the social-associational activity by VDARE's
22    supporters.
23              And our subpoena's requests have been very carefully
24    drafted to identify documents and information that are relevant
25    to that review only.  So we did not call for material or
```

P R O C E E D I N G S

1   information related to VDARE's location at VDARE.com.

2          And we have not asked for identifying information

3   about anonymous VDARE contributors or identities, for example.

4          What we are asking is material and information about

5   VDARE's governance; about its internal controls; about its

6   spending; about its compensation practices; financial controls;

7   and financial transactions.

8          Typically, those are all topics that are squarely

9   within the realm of what our office is responsible for reviewing

10  at an organization like VDARE.

11         With respect to the question of whether our disclosure

12  demands are proper, including VDARE's constitutional concerns,

13  those issues can and should be addressed in this proceeding.

14  This Court is fully empowered to consider any constitutional

15  concern raised by the subpoena.

16         And, in fact, the same federal court that VDARE has

17  asked to join enforcement of the subpoena, the Northern District

18  of New York said as much just last year.

19         And that case, which is Trump versus James, is cited

20  in our opposition to VDARE's Motion For Dismissal, which is at

21  Docket No. 55.

22         VDARE has not addressed in any of its submissions the

23  availability of full relief for both parties through this court.

24  And it has not identified any barrier to asserting

25  constitutional arguments here.  Instead, it is asking only for

1    deference to the action that it filed.

2              I'd like to address, if I can, the standard for a

3    discretionary dismissal.  I think the first and critical point

4    is that dismissal in the case of two simultaneous actions under

5    CPLR 3211 is discretionary.  The Court may dismiss, but need not

6    dismiss in deference to a first-filed matter.

7              THE COURT:  I'm going to stop you, I'm going to ask

8    you to move on.  I'm not really inclined to dismiss.  If

9    anything, I would be inclined to stay.  So I don't think you

10   needs to spend a lot of time on the discretionary dismissal.

11             MS. SUVARI:  The last thing I'd like to turn to, if I

12   can, is whether a first amendment harm has actually been shown

13   here.  And it's argued that there is no showing of harm in front

14   of the Court.

15             VDARE has sought in its exchanges with us to

16   unilaterally withhold some universe of unidentified material

17   based on its own, you know, general reference to confidential

18   content at VDARE.com, and its own assertion that disclosure

19   would be problematic for VDARE's operation as a not-for-profit

20   corporation.

21             THE COURT:  Right.

22             MS. SUVARI:  In looking at what has been held, their

23   redactions sweep very broadly; and this is something that's also

24   reviewed in our papers.  The categories of material that are

25   being covered, and I think we've itemized some of them:  Board

1    meeting Minutes; bank statements; accounting ledgers, things

2    like that.  None of those are connected to protected First

3    Amendment speech, for example.

4            And without access to that kind of material it is

5    impossible for our office to conduct the review that it has

6    undertaken which looks at spending, conflicts of interests,

7    governance controls at an organization that we are responsible

8    for regulating.

9            THE COURT:  Right, but aren't they really arguing that

10   the whole reason that you're investigating them is because of

11   their unpopular speech or positions, and they tie that into the

12   Attorney General's public pronouncements about wanting to go

13   after hate crimes and perpetrators of hate speech?

14           MS. SUVARI:  They are asserting that, Your Honor.

15           But it's our position, Your Honor, that there's no --

16   first of all, that this is a lawful investigation with a

17   reasonable basis, of course.  And there is no showing of any of

18   the kind of connections that they are alleging in the record

19   before this Court.  And, in fact, in our view the subpoena on

20   its face demonstrates that that's not what we're looking at

21   here.

22           And I think it's important also to emphasize that we

23   have been responsive to concerns expressed by VDARE during our

24   back and forth with them about what will be produced and when.

25   So in the very first weeks after serving the subpoena, we were

1    in touch with Counsel for VDARE to clarify that we were not

2    looking for, for example, anonymous donor identifying --

3    anonymous donor information.  We were not targeting

4    speech-related activity at VDARE.

5           And we have really only insisted in the course of the

6    production process that VDARE identify and log the material that

7    it's choosing to withhold.  And, also, to explain the bases for

8    that withholding in a more specific way than just, you know, we

9    have constitutionally-significant interests that are being

10   intruded upon.

11          So it's our position that the response that we've

12   gotten so far is inadequate; it's inconsistent with what the

13   CPLR requires.  And we have been forced to come to the court to

14   press that position, and to clothe compliance with the subpoena

15   that we believe that, clearly, it's in our authority to issue.

16          THE COURT:  Mr. Frisch.

17          MR. FRISCH:  Thank you, Your Honor.  Thank you.

18          Let me just start by echoing something that Your Honor

19   said about the remedy that we seek.  While I don't want to

20   prejudice my client's position by talking about the law of a

21   discretionary dismissal, at the same time I agree that if the

22   Court issues a remedy to VDARE here, it should be just a stay,

23   not dismissal.

24          The Attorney General has identified in its papers

25   certain arguments that it's going to be making in federal court.

P R O C E E D I N G S                                                    13

```
 1    It filed its Motion to Dismiss yesterday, and I haven't had a
 2    chance -- I looked at the papers briefly, they were filed
 3    yesterday after six.
 4           If they are right that there's no basis for a Federal
 5    suit, if they are right -- They say that they believe Judge
 6    Scullin in Albany will agree with them, then he'll grant a
 7    dismissal and we'll be back.
 8           But I think the right remedy -- and I will talk about
 9    the specifics in a moment -- The right remedy here, and the
10    remedy I'd urge the Court to fashion, is simply to stay this
11    pending litigation on the Attorney General's Motion to Dismiss,
12    and see what happens.  There will be no prejudice if we take a
13    little bit of time to see that play out.
14           And what we're seeking in that suit is that this has
15    become -- It is clear to us, at least, while we had suspicions
16    initially at least that this was retaliatory, unconstitutionally
17    retaliatory.  It is the Attorney General's letter, the December
18    2nd letter, which changed the landscape and precipitated the
19    Federal suit.  We could have brought a federal suit earlier.
20    But it was the December 2nd letter and the positions taken,
21    which I'll talk more about in a moment, that was the triggering
22    event for the federal lawsuit.
23           So let me talk about some of the specifics.  So, first
24    of all, the Attorney General in their papers has challenged the
25    first filing rule as inapposite.  But we're not seeking -- and
```

1   this is at least today -- Well, we put in our papers that we're

2   seeking a stay, not dismissal, so that's one.

3            Second, this is not a commercial litigation where one

4   party is seeking an unfair tactical advantage by suing a

5   commercial litigant in an inconvenient forum.

6            This is federal and state, Albany and Manhattan.  And

7   we are alleging claims under the Federal Constitution, and the

8   State Constitution.

9            So even if this Court, even if the State Court were to

10  resolve federal constitutional claims against us, we would still

11  have the option of going to federal court.

12           So our view is that this is a more efficient and

13  appropriate way to deal with the overarching issues.

14           Look, I understand that on its face what Ms. Suvari

15  has said about what the subpoena looks like on its face, but

16  some context is relevant.

17           And it's not just the Attorney General's stated

18  position.  It's that the letter of December 2, which in my view

19  was somewhat heavy handed -- And I'll talk about the specifics

20  in a moment -- is the day before, December 3rd, the effective

21  date of the hate crimes, the hate conduct statute.

22           It seems to me that there's a lot of things here that

23  lawyers can -- should be able to deal with, they should be able

24  to work out things like the identities of a contract.

25           THE COURT:  Can I interrupt for one moment.

PROCEEDINGS                                                    15

1          Does anybody know the NYSCEF document number for the

2   December 2nd letter?

3          MR. FRISCH:  It's Exhibit G.

4          THE COURT:  I didn't hear what you said, sir.

5          MR. FRISCH:  It's Exhibit G, and I believe that it's

6   NYSCEF 34.  I think I might have --

7          MS. SUVARI:  It's also an exhibit to our information,

8   Your Honor, at Docket 28.

9          THE COURT:  Thank you.  Please continue.

10          MR. FRISCH:  Thank you.  So I think the kind of things

11   that we are talking about now in terms of substance of the

12   subpoena are the kind of things that lawyers can work out.

13          I'm going to talk first about the identity of

14   contractors, timing and redaction log, and I'll try and do it as

15   concisely as I can.  We've identified payments to contractors.

16   We've identified services rendered.  And we've identified

17   contractors that might qualify as so-called related parties

18   under, I believe, Section 715 of the New York Not-For-Profit

19   corporation law.

20          We've proposed a middle ground that, you know, we just

21   give them the related parties for now and a full reservation of

22   rights.  But we ended up -- Even after they rejected that middle

23   ground proposal, we gave it to them anyway.

24          And the proposal was, essentially, let us deal with

25   these contractors given the unusual landscape of our position as

P R O C E E D I N G S

1   we go forward.  You don't have to, you know, give up anything,

2   reserve your rights.  Let's just take it a step at a time and

3   finish the production, and see where we are.

4           If there's a particular need or a particular interest

5   in the identity of a particular contractor beyond the related

6   party ones, well, let's talk about it.  But that's not --

7           THE COURT:  But that seems to be completely opposite

8   to your conduct of filing the Federal suit.

9           MR. FRISCH:  Well, I'll come to that.  I'll come to

10   how I think December 2nd changed the landscape.

11          Look, one of things the Attorney General says in their

12   papers is that there's no real no concern about the identity of

13   these contractors, that's not true.  It is a matter of public

14   record that entities like Amazon and PayPal and others have

15   deplatformed VDARE.  Others have declined to work with them.

16          Just two weeks ago there was an article in the

17   Washington Post in which some local business people, I think one

18   was a chef, one was a proprietor of a local store, with a

19   subject of public ridicule, and the comments to the article.  So

20   this is a real concern.

21          Before I get to the December 2nd letter, let me talk

22   about timing to the redaction letter.  And I've said this,

23   right, when I came into the case in September, I went to their

24   office and met with them.  And I told them at the time that my

25   direction to the client is to comply; I'm new to the case; I'm a

P R O C E E D I N G S                                              17

```
 1    solo practitioner; I have competing court commitments; and that
 2    I'm a person of good faith.
 3              My client is literally a mom-and-pop operation.  They
 4    have three kids who they home school.  In order to look at the
 5    hardcopy documents, they had to get boxes out of their garage
 6    and out of storage.  One of them was waterlogged, I had to let
 7    it dry before I could go through it.
 8              The only thing we've redacted, with the exception of
 9    one or two attorney-privileged things, are the identities of
10    these contractors, that's it.  Nothing else has been redacted
11    from this, other than, again, in those one or two instances.
12    And we've put that in writing time and time again.
13              So I don't understand what the Attorney General's
14    position is that we haven't explained the redactions.  If
15    there's a particular page or multiple pages -- I don't think
16    this is so, but I understand.
17              If there's something that is not clear to them or they
18    can't read something or they are not clear, they can just pick
19    up the phone for me.
20              I wish I could have done all of this faster.  You
21    know, I set for myself in good faith ambitious deadlines.  I
22    don't think it's productive for either side to have to burden
23    this Court with a Motion about timing.
24              You know, I'd like to think that we are all lawyers
25    acting in good faith.  And they know that, especially because I
```

P R O C E E D I N G S

```
 1  completed the hardcopy, and completed the non-e-mail electronic
 2  production.  And I'm doing my best.  There's 40 gigabytes, I'm
 3  reviewing all of this myself.  I'm not a law firm.
 4           And, yes, I could have done it faster.  And maybe I
 5  was wrong to set ambitious deadlines, but I did as a way of
 6  showing good faith.
 7           And let me talk about the redaction log.  Redaction
 8  logs, at least in my experience, come after the production is
 9  complete, which makes perfect sense here.  Because as I've gone
10  forward -- When I first looked at the first batch of documents,
11  I redacted things that as I went forward and had a greater
12  understanding of the matter and the case, I decided going
13  forward that I'm not going to redact those names anymore.
14  Either they are already within the public view, or with regard
15  to employees I have not redacted them going forward.  Needless
16  to say, we're --
17           THE COURT:  Let me just stop you.
18           A moment ago you said the only thing redacted was
19  contractors.
20           Now, you're saying that there were employees also
21  previously redacted?
22           MR. FRISCH:  Initially, that's right.  But, as we've
23  gone forward --
24           THE COURT:  So then your statement that the only thing
25  redacted was contractors was not accurate?
```

1          MR. FRISCH:  It's not accurate to the extent that

2    there were a few hundred pages very early on that have some

3    redaction of those employees.  So as I've gone forward, I have

4    not redacted those names.

5          So I stand corrected, Judge, you're right about that.

6          So, in any event, redaction logs come later.  It is --

7    they characterize my good-faith basis to -- They made an

8    invitation to do a rolling production; I'm doing that, I'm

9    moving forward.

10         So as I've gone forward I am not redacting things, as

11   we discussed, that I've redacted earlier.  That's not haphazard,

12   that's just a function of doing a rolling production, and trying

13   to get through a massive amount of material.

14         And I think at this point given the nature of the

15   redactions it's -- And to have to do a privilege log while I'm

16   still going through 40 gigabytes of e-mails is unreasonable;

17   it's an unreasonable demand.

18         Here is the problem:  I understand that they are

19   entitled to apart from the issues that have arisen at least as

20   of December 2nd, to issue a subpoena.  We didn't challenge the

21   subpoena.

22         I also offered to go in and begin a conversation, not

23   to bind anyone but to begin a conversation about their

24   regulatory concerns.  All of which I believe, including the

25   castle, can be addressed.  And I understand that they are not

PROCEEDINGS                                                    20

1    going to want to resolve anything until they get more documents.

2              But I offered to go in and begin that conversation,

3    and start walking them through why I do not believe these are

4    regulatory concerns.  They rejected it.  They have a right to,

5    they don't have to do it that way.

6              Their position on December 2nd changed the landscape

7    in my view, and gave us cause to go to federal court and put the

8    brakes on this.  And say, Look, the only thing that we're

9    redacting with the exception of some employees' names early on,

10   just a handful of them, are the names of these contractors which

11   we don't want to disclose.  Which even to the Attorney General,

12   and even with confidentiality, in our view it requires a

13   different level of scrutiny because of the particular landscape

14   where not only are contractors and conference venues reluctant

15   to have their association with VDARE public, but we've cite in

16   our papers an instance where confidential information,

17   apparently, was provided to the Attorney General in another

18   case, and found it itself in the public sphere.  That is also a

19   concern, and the Attorney General has not addressed that.

20             I think that -- You know, we didn't move for a stay of

21   this proceeding, we could have.  I suppose we could still could,

22   if need be.  But our hope was that if we go to federal court,

23   and were heard on these issues that we can figure this out, and

24   simply see where we are with the federal case.

25             The December 2nd letter, I want to go back to that

P R O C E E D I N G S

 1    because it took us by somewhat -- It took us by surprise, and it
 2    certainly changed the landscape for us.

 3          Because while we were making the hardcopy production
 4    and working on the e-mails, and trying to complete production,
 5    they essentially said, You have 10 days.  Notwithstanding that
 6    the Attorney General asked me to put it in writing again, which
 7    I had already done.  Put in writing your objection to the
 8    identity of contractors; and I did it again.

 9          And I feel that was kind of a setup because as soon as
10    I put it in writing, they said, Well, December 2nd, you have 10
11    days, until December 12th to get us a complete redaction log,
12    and finish going through the 40 Gigabytes of e-mails.

13          It's not -- In my experience, this is not the way
14    these types of investigations go.  None of us may be happy with
15    the day-to-day progress of an investigation with compliance or
16    of compliance, but the parties work it out.

17          They work out things like a particular entity's
18    concern about the identity of contractors.  You get some now,
19    and if there's an issue you deal with it later.  You deal with
20    issues of timing when you have these circumstances.  I'm a small
21    outfit, a solo-practitioner on what really is a major project.

22          And you deal with a redaction log, if you need it,
23    later on.  Meanwhile, if you can't read something, call me; I'm
24    an approachable guy.

25          I want to be sure that I responded to the questions

P R O C E E D I N G S

1   that Your Honor mentioned upfront.

2        THE COURT:  So you haven't really responded to the

3   first question which is Petitioner's claim that the federal

4   court can't order enforcement of the subpoena, and, therefore,

5   the action is not duplicative and shouldn't be stayed.

6        MR. FRISCH:  Well, first of all, the issue -- Number

7   one, I have not looked at their Motion to Dismiss.  I haven't

8   looked at their papers.  And I haven't had a second to -- I

9   haven't even had a moment to digest them.

10       But the over arguing point is that our claim is that

11  the investigation, their conduct of it as of late has revealed

12  it to be unconstitutionally retaliatory.

13       Before we go forward, before we start talking about

14  providing responsive documents that contain the identities of

15  contractors, which we believe is a problem which will serve and

16  contribute to helping to put us out of business, and that we

17  shouldn't have to disclose absent a need.

18       I think the federal judge needs to review the

19  Complaint, and make a determination whether the Attorney General

20  is correct that the claim, as the papers say, is frivolous; I

21  disagree with that.

22       THE COURT:  Wait.

23       So I want that question specifically answered, so you

24  are -- It sounds to me like you are conceding that they are

25  correct that they can't get enforcement of the subpoena in

1   federal court.

2          MR. FRISCH:  I disagree with that because I think that

3   there's a number of things that could happen in federal court.

4   I need to look at their papers first.  My --

5          THE COURT:  Well, those arguments were made in the

6   papers filed in this case for VDARE.

7          I mean, I, obviously, haven't read the Motion to

8   Dismiss in the federal court case.  So I'm just addressing

9   myself to the argument that they raised in opposition to your

10  Motion For Dismissal or a stay.

11         MR. FRISCH:  I think that we cannot deal with their

12  compliance arguments until there's an initial determination or a

13  determination as to whether our claims of unconstitutional

14  retaliation are resolved.

15         THE COURT:  But you concede that the federal court

16  could not order compliance with the subpoena?

17         MR. FRISCH:  I'm not sure that I concede that.

18         I think that a federal court could address whether or

19  not our claim of -- and maybe -- I'm not trying to talk past

20  your question.  Just bear with me and let me talk out loud what

21  I'm thinking, and then we can back up.

22         So here is what could happen:  The federal judge could

23  say, You know what they are making compliance, here is what I'm

24  going to do:  I think they're right, I reject your claim of

25  Unconstitutional Retaliation.  But I agree with you that there's

1   a claim that there's a higher level of scrutiny in identifying
2   these contractors absent a need.

3          So in that instance, essentially, while it may not be
4   an actual Compulsion Order, essentially the effect of it would
5   be that a Federal Judge is saying, This is protected.  The
6   disclosure of the identities of these contractors is protected.
7   Even though, again, hypothetically, I reject your claim of
8   Unconstitutional Retaliation.

9          So that may not be a specific direct answer to Your
10  Honor's question, but I think practically that's how it would
11  play out, or it could play out I should say.

12         THE COURT:  You said that you didn't ask for a stay of
13  this case in the federal court case.

14         Was there a request for an initial stay of enforcement
15  of the subpoena with your initial filing, like a TRO type of
16  request pending?

17         I mean, I know that there was a motion pending for
18  that.  But was there any kind of request to stay an enforcement
19  of the subpoena pending a termination of the Motions?

20         MR. FRISCH:  The answer is no.  There's injunctive
21  relief sought in the Complaint, but not in TRO.

22         THE COURT:  Okay.  Ms. Suvari, do you want to respond
23  to anything?

24         MS. SUVARI:  I do just want to respond quickly, if I
25  can, Your Honor.

P R O C E E D I N G S

1          First, in giving you the document, the critical

2    December 2nd letter --

3          THE COURT:  I have it.

4          MS. SUVARI:  -- it is said Docket No. 29.

5          And I think the letter is significant for two reasons.

6    One, it does recite in some detail our exchanges with VDARE.  It

7    includes, for example, a paragraph, you know, reaffirming that

8    we have been discussing redactions and VDARE's approach to

9    asserting protections for months.

10          And that we have now come to a point, as of December

11   2nd, where we need to see some more specific articulation of

12   exactly what was being withheld.

13          And that's based in part on what we had seen by them

14   in their actual production.  And there is a whole resuscitation

15   of what appeared to have been redacted that was a far afield of

16   particular contractor names, for example, if that, in fact, is

17   the primary concern.

18          But the other thing that's significant about this

19   letter is that it responds to the letter from VDARE on November

20   28th, which proposed the December 12th production deadline.

21   That is a deadline that came from VDARE, not from our office.

22          And if you read through back and forth in October and

23   November, you can see that VDARE is proposing deadlines, missing

24   its own proposals, and proposing new deadlines.

25          And then, finally, on November 28th says, and this is

P R O C E E D I N G S

1    at Docket number 28, I am working through the ESI material.   I

2    propose to complete production of that material by December

3    12th.

4            So our letter on the 2nd essentially agrees to that

5    plan, insists that redaction log be prepared at the same time.

6    And then it says at the end, If this new deadline is not met, we

7    will seek relief in court to enforce the subpoena.

8            So it's not a change in the landscape.  It is not, you

9    know, a sudden change of position from our office.  It is,

10   essentially, you know, a final warning that we cannot continue

11   to watch the target of an ongoing investigation make sort of

12   unilateral decisions about what will and will not be shared

13   within categories of material that we view as very relevant to

14   the questions we're investigating about:  The financial

15   operation of this corporation; the potential of related-party

16   conflicts, and things like that.

17           And it signals that we will come to court if we need

18   to.  And, in fact, this proceeding, this formal proceeding is

19   exactly the mechanism for seeking enforcement of a subpoena.  It

20   is perfectly capable of considering constitutional issues under

21   the New York Constitution or the Federal Constitution.

22           So it offers complete relief on all of these questions

23   to both parties in a way that federal court does not.

24           And I do also want to clarify that what VDARE is

25   saying in the Federal action is not that, you know, the subpoena

PROCEEDINGS                                                          27

1    should be modified.  It is saying that the entire investigation

2    should, effectively, be enjoined.  So that is a very different

3    position than what's is being discussed today, which is largely

4    a discovery dispute in our view.

5             THE COURT:  And, specifically, the order that you're

6    asking for from the Court then is that -- Are you asking them to

7    -- Are you asking me to order them to do what they said they

8    were going to do in the letter that you responded to on 12/2?

9             MS. SUVARI:  Your Honor, we have asked in our petition

10   for an Order compelling compliance; and that's a very broad

11   request.

12            THE COURT:  Right.

13            MS. SUVARI:  I think we would be perfectly prepared to

14   send in a more specific order.

15            What we are really looking for is judicial supervision

16   because we find ourselves in a position of -- I don't know,

17   constantly having a back and forth about deadlines; and watching

18   the subject of our investigation fail to meet those deadlines

19   again and again.  So we're looking for some structure and some

20   enforcement of those commitments.

21            Also, I do want to offer that we would be happy to

22   submit our briefing, our recent briefing in the federal court

23   case, for the Court's review if that would be helpful.  So then

24   you can see our positions with respect to the availability of

25   any relief to be there in that action.

PROCEEDINGS                                                              28

```
 1              THE COURT:  Okay.  So I'm going to reserve decision.

 2              I would like the Petitioner to submit -- If it's

 3    possible to do this today, I would appreciate that -- to submit

 4    a proposed order that's more specific than the broad relief

 5    that's requested in the Order to Show Cause.

 6              And Mr. Frisch, I'm going to ask you, also, to submit

 7    a proposed order, not staying it, because obviously that's not a

 8    complicated order to issue, but if I were going to order

 9    enforcement of the subpoena, what would you like that order to

10    look like?  What carve outs or protections to your clients would

11    you like to see in such an order?  So if you would submit a

12    proposed order along those lines.

13              And then if the parties want to submit to me the

14    Motion papers that have been filed in the federal court action,

15    certainly, I'd be happy to read that.

16              So you could either file all of this on NYSCEF, and/or

17    you can e-mail it to my court attorney.  I don't know if you

18    have her e-mail address.

19              MS. SUVARI:  I'm sure we could find it, Your Honor, if

20    you could tell us who that is.

21              THE COURT:  I'll give it to you.  It's Tara Tszap,

22    it's T-s-z-a-p, @Nycourts.gov.

23              MR. FRISCH:  And you said T-s-z-a-p, Your Honor?

24              THE COURT:  Correct.

25              I mean, I will look on NYSCEF, but I don't get a
```

1   verification when you file stuff on NYSCEF.

2          MR. FRISCH:  Your Honor, would you permit me to make

3   one comment in response to Ms. Suvari's rebuttal?

4          THE COURT:  Sure.

5          MR. FRISCH:  The only thing I want to say is -- Well,

6   there's probably more than one thing, but I don't want to

7   overstay my welcome.

8          Ms. Suvari wove into her discussion that the

9   identities of contractors are necessary or part of their

10  investigation.  And I think given the landscape of the case,

11  given the particular things that are happening in the real

12  world, at the very least we think the matter should be stayed to

13  see where we are with the federal case.

14         But, at the very least they should be required to

15  explain why that is; why the identity of non-related contractors

16  is necessary.  There might be a particular instance where they

17  have concerns about the amount of money paid, or they think it's

18  a related party or something else that I can't think of.  But,

19  that's the heart of controversy.

20         And I just want to state again, apart from Your Honor

21  called me on the fact that there were some employee's names

22  initially redacted, I think it's been reviewed, ultimately, they

23  will be unredacted going forward.  If we continue, I'll have to

24  go back and unredact them.

25         But the only redactions, apart from one or two

PROCEEDINGS                                                      30

```
1    attorney-client things and the Board Minutes are identity of
2    contractors, and not all of them.  Just ones that are already in
3    the public sphere, or for which there are otherwise confidential
4    concerns.  And it's a real issue, it's a genuine issue with
5    regard to VDARE.
6              THE COURT:  I don't mean to continue this,
7    necessarily, but I really don't -- Normally, I mean, it's very
8    typical when these kinds of concerns are present for the parties
9    to enter a confidentiality agreement which would cover the
10   Respondent's concerns, and provide for remedy in the event that
11   there was -- you know, you said there was one case where you
12   believe that there was a leak from the AG's office.  But a
13   confidentiality agreement or order would provide your client
14   with, you know, a redress for that, or it would certainly, you
15   know, be something that the Court would take very seriously if
16   there was an allegation that such an order was breached.
17             MR. FRISCH:  The problem is that I don't understand
18   why they need to know the identities of these contractors.  As
19   soon as they reach out to them, or as soon as they take any
20   step, and they haven't answered the question about the leaking
21   and the other investigation, it could literally put VDARE out of
22   business.  There are sub-service providers where they have been
23   deplatformed to such an extent.  And there's just a limited
24   number -- and like in one instance that I'm thinking of, one.
25   But in all of these instances, there are limited service
```

1  providers out there.  It's not as if they can turn and go to the

2  next, and go to the next.  And even that is time consuming and

3  difficult.

4          Sorry if I'm overstaying my welcome, Your Honor; I

5  don't want to do that.  Your Honor has been generous with your

6  time.

7          But I think some of these same things came up in the

8  Evergreen case, which we cite in our papers.  A confidentiality

9  agreement is not necessarily an answer.  We could do the same

10  thing with donors.  We could do the same thing with the writers,

11  and the commentary contributors.

12          THE COURT:  But they are not looking for that

13  information now.

14          MR. FRISCH:  But it shows that confidentiality is not

15  always the answer.

16          If they have a particular reason, I've invited them to

17  say it to me.  What is it you need with regard to these

18  non-related contractors?  Why is it important that you have that

19  information?

20          My only point, given the extra time Your Honor has

21  given me, is to highlight that as an issue here, which I think

22  is unresolved.  And I think that it requires more than them

23  saying, We want it, or we're entitled to it.  Why do you want

24  it?  Why are you entitled to it?

25          And this is not, you know, stonewalling the

1    compliance.  We've given you all of the hardcopies.  I was on my
2    way to going through all 40 gigabytes; I was too ambitious in
3    setting a deadline.  Although, we were well on our way to
4    completing that.
5          This is the only issue, and they have not explained
6    either why they need it or why we can't visit it later down the
7    line after you've completed the rest of your investigation; it's
8    a really serious problem.
9          THE COURT:  Ms. Suvari, do you want to address that
10   question?
11         MS. SUVARI:  I would like to address that very quickly
12   if I can, Your Honor.
13         I don't think that is a fair presentation of what has
14   been done in VDARE's production to date, or the position that
15   our office has taken.
16         With respect to the question of why we need to see
17   complete financial records of this organization, the answer is
18   because that is the exact problem we're focused on here.  And
19   this is an organization, and, you know, the bases for this
20   concern is detailed in all of our papers to the Court.  This is
21   an organization that has already effectively conceded that there
22   are significant transactions moving internal assets from control
23   at VDARE into things, for example, like for-profit corporations
24   created by VDARE principals.
25         So the charitable assets are moving from VDARE into

1    something that is no longer a charitable entity; and that is run

2    by the current VDARE president exclusively.

3              So it is impossible for us to conduct a meaningful

4    review when we are being given records that are very heavily

5    redacted, far beyond -- You know, in listening to this

6    presentation today I think you could get the sense that we are

7    getting complete disclosure except for particular names, and

8    that is absolutely not the case.  The December 2nd letter from

9    our office makes that clear, we are getting material that has --

10   you know, that is blacked out, it's entirely blocked out on

11   certain pages, there are hundreds of pages with redactions that

12   are falling on things like credit card statements, bank account

13   statements for accounts held by VDARE's principals personally,

14   not by VDARE, not related to contractors.

15             So the sense that we are down to one particular

16   category of information I think is not accurate.  And that is

17   part of why we have been pressing in the way that we have for a

18   more specific showing from VDARE in the form of a redaction log

19   that would allow us to actually evaluate what they are saying

20   about the material that they are trying to withhold, and the

21   bases for withholding it.  So I just want to make sure that

22   that's clear on today's record.

23             THE COURT:  So you disagree with Mr. Frisch's

24   characterization that the only thing that has been redacted is

25   the names of unrelated contractors?

PROCEEDINGS                                                    34

```
 1              MS. SUVARI:  We are, Your Honor.

 2              And we have said that to VDARE in our letter exchanges

 3    with him.

 4              MR. FRISCH:  Okay.  And I dispute that, Your Honor.

 5              THE COURT:  Okay.  And the 600 pages -- I don't know

 6    why I'm asking, but the 600 pages is not attached anywhere as an

 7    exhibit to what's been filed; correct?

 8              MS SUVARI:  Which 600 pages are you referring to?  You

 9    mean the redacted pages?

10              THE COURT:  Yes.

11              MS. SUVARI:  No, we have not submitted samples from

12    their hardcopy production.

13              THE COURT:  All right.  Thank you both for your

14    arguments, I appreciate them.  I am going to reserve decision.

15              If you could upload and/or e-mail those additional

16    documents by the end of the day, I would greatly appreciate it.

17              MR. FRISCH:  Your Honor, I have to leave.  I have a

18    court appearance in the Brooklyn Federal Court in the afternoon.

19    So if I could have until tomorrow to submit --  I think what

20    Your Honor wants is what a proposed order would look like if you

21    order enforcement, and I can do that.

22              If Your Honor will permit, I can do it by the close of

23    business tomorrow.

24              THE COURT:  All right, that's fine.

25              MR. FRISCH:  Thank you.
```

1          MS. SUVARI:  Thank you, Your Honor.  Bye-bye.

2               *     *     *     *

3          The foregoing is hereby certified to be a true and

4     accurate transcript of the proceedings as transcribed from the

5     stenographic notes.

6               *     *     *     *

7

8     _____

9               LORETTA KRAVCHENKO
                SENIOR COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25