# EXHIBIT J

FILED: APPELLATE DIVISION - 3RD DEPT 02/07/2023 01:03 PM    2023-00672
NYSCEF DOC. NO. 3                                              RECEIVED NYSCEF: 02/07/2023

## SUMMARY STATEMENT ON APPLICATION FOR
## EXPEDITED SERVICE AND/OR INTERIM RELIEF

(SUBMITTED BY MOVING PARTY)

Date: February 6, 2023                                        Case # 2023-00672

Title of Matter: Attorney General of the State of New York, Petitioner,    Index/Indict/Docket # 453196/2022

v. VDARE Foundation, Inc., Respondent

Appeal by **Respondent** from

| | | | |
|---|---|---|---|
| Order | ☑ | Supreme | ☐ |
| Judgment | ☐ of | Surrogate's | ☐ |
| Decree | ☐ | Family | ☐ |

County **New York**

Court entered on **Jan 23**, 20 **23**

Name of Judge **Sabrina Kraus**

Notice of Appeal filed on **Feb 6**, 20 **23**

If from administrative determination, state agency _____

Nature of action or proceeding: Special proceeding to compel subpoenaed disclosures

Provisions of ☑ order / ☐ judgment / ☐ decree appealed from
(1) denial of respondent's application to stay matter pending respondent's first-filed federal case; and (2) grant of petitioner's motion to compel

This application by ☐ appellant / ☐ respondent is for stay of Order (1) denying stay of proceeding pending resolution of respondent's first-filed federal case and (2) granting motion to compel and ordering disclosures on February 10 and 24, 2023.

If applying for a stay, state reason why requested: The court below declined to stay this matter pending resolution of respondent's first-filed federal claim against the Attorney General and compelled constitutionally protected disclosures

Has any undertaking been posted **No** _____ If "yes", state amount and type _____

_____

_____

Has application been made to court below for this relief **No**    If "yes", state Disposition _____

Has there been any prior application here in this court **No**    If "yes", state dates and nature _____

_____

_____

Has adversary been advised of this application **Yes**    Does he/she consent **No**

Attorney for Movant                                    Attorney for Opposition

Name  Andrew J. Frisch, The Law Offices of Andrew J. Frisch, PLLC          **Yael Fuchs, Office of Attorney General**

Address  40 Fulton Street, 17th Floor                    28 Liberty Plaza

 New York, New York 10038                        New York, New York 10005

_____          _____

Tel. No.  212-285-8000  (cell 917-826-4668)            212-416-8391

Appearing by  Andrew J. Frisch                    AAG Yael Fuchs

_____          _____

_____          _____

_____          _____

_____          _____

**(Do not write below this line)**

DISPOSITION

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

                    _____        _____
                              Justice                          Date

Motion Date _____ Opposition _____ Reply _____

EXPEDITE _____ PHONE ATT ORNE YS _____DECISION BY _____

ALL PAPERS TO BE SERVED PERSONALLY.      _____
                                                    Court Attorney

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
- ---------------------------------------------------------------- x

People of the State of New York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

|                              |                                           |
|------------------------------|-------------------------------------------|
| Petitioner-Appellee,         | **Appellate Division**<br>**Docket No. 2023-00672** |
| - against -                  | **New York County**<br>**Index No. 453196/2022** |

VDARE  FOUNDATION,  INC.

                    Respondent-Appellant.

- ---------------------------------------------------------------- x


### AFFIRMATION IN SUPPORT OF APPLICATION<br>FOR A STAY AND INTERIM RELIEF PENDING APPEAL


Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorney for Respondent-Appellant*

Table of Contents

Introduction............................................................................................................... 4

A.    The OAG's Demand for Immediate Disclosure of Constitutionally Protected
      Information Extraneous to Any Legitimate Investigative Need Warrants the
      Inference that the OAG's Pursuit of VDARE is Retaliation for
      VDARE's Exercise of its Constitutional Rights....................................................5

B.    The OAG's Erroneous Challenge to New York's First-Filed Rule ........................ 12

C.    The Court Below Unduly Deferred to the OAG at the Expense of VDARE's
      Right to Seek Redress in Federal Court for the State's Unconstitutional
      Retaliation and Demand for Disclosures of Constitutionally Protected
      Information Extraneous to Any Truly Overriding Investigative Need .................... 15

Conclusion................................................................................................................. 22

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT
- ---------------------------------------------------------------- x

People of the State of New York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,

                              Petitioner-Appellee,               **Appellate Division**
                                              **Docket No.**

                        - against -                  **New York County**
                                             **Index No. 453196/2022**

VDARE  FOUNDATION,  INC.

                              Respondent-Appellant.

- ---------------------------------------------------------------- x

**AFFIRMATION IN SUPPORT OF APPLICATION
<u>FOR A STAY AND INTERIM RELIEF PENDING APPEAL</u>**

        **ANDREW J. FRISCH**, an attorney duly admitted to practice in the courts of

the

State of New York since 1985, affirms the following statements to be true under penalty of

perjury:

        1.        I am the principal of The Law Offices of Andrew J. Frisch, PLLC, counsel

to Respondent-Appellant VDARE Foundation, Inc. ("VDARE").  I make this affirmation in

support of VDARE's motion for an order pursuant to CPLR 5519(c), as well as this Court's

inherent power in aid of its appellate jurisdiction [*see Pokoik v. Dep't of Health & Human Servs.

of County of Suffolk*, 220 A.D.2d 13, 16 (2d Dep't 1996) (citing *Matter of Schneider v. Aulisi*, 307

N.Y.2d 376 (1954)], staying enforcement of an order of the Supreme Court, New York County

(Kraus, J.), dated January 23, 2023 (the "Order," attached hereto as **Exhibit A**).  The court

3

below erred in that it:

(a) denied VDARE's application to stay the proceeding pending resolution of VDARE's first-filed action against the Attorney General of the State of New York (the "OAG") in *VDARE Foundation, Inc. v. Letitia James*, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.) (*see* complaint in which is attached hereto as **Exhibit B**); and

(b) compelled VDARE, on ***February 10 and 24, 2023***, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

2.      This Affirmation is based on personal knowledge, true and correct copies of documents attached hereto as exhibits, the record of this matter below, and on information and belief as noted herein.

3.      On January 25, 2023, the OAG filed Notice of Entry of the Order. **Exhibit**

**C**.  On February 6, 2023, VDARE filed a Notice of Appeal.  **Exhibit D**.  On February 6, 2023, I advised the OAG that this application would be made to the Court.  **Exhibit E.**

<u>Introduction</u>

4.      VDARE is a non-profit foundation organized and existing under the laws of the State of New York with a principal place of business in Berkeley Springs, West Virginia. Undersigned counsel was engaged by VDARE in late August 2022 to comply with and otherwise respond to an investigative subpoena issued to VDARE by the OAG on or about June 24, 2022 (the "Subpoena," attached hereto as **Exhibit F**).

5.      On December 12, 2022, VDARE initiated its action against the OAG in federal court [**Exhibit B**] to protect its ability to continue to do business and its rights of speech and association guaranteed by the federal and state constitutions.  The OAG responded to VDARE's federal action with a motion to dismiss, which is not yet fully briefed.  **On December**

16, 2022, less than a week after VDARE initiated its federal action, the OAG commenced the

proceeding below against VDARE, seeking to compel the very disclosures identified in

VDARE's federal complaint as threatening its existence.

6.     The OAG's conduct and the court's Order support VDARE's view that a

federal court should hear and resolve VDARE's claims of unconstitutional retaliation before

VDARE is compelled to produce constitutionally-protected information to the OAG.  VDARE

should not be required to produce such material even if its claim of retaliation is rejected absent

an adequate justification for such information and the OAG's narrow tailoring of its demands to

fit legitimate investigative need.

7.     For these reasons, and as further detailed below, this Court should stay the

Order pending resolution of VDARE's appeal to this Court.  At the very least, this Court should

stay so much of the Order that compels disclosures of the information at issue.  If the Court is

unable to rule on this application for a stay until on or after **February 9, 2023**, the day before the

first disclosures must be made pursuant to the Order, the Court should stay the Order at least

until 72 hours after this application is resolved.

A. The OAG's Demand for Immediate Disclosure of Constitutionally
    Protected Information Extraneous to Any Legitimate Investigative
    Need Warrants the Inference that the OAG's Pursuit of VDARE is
    <u>Retaliation for VDARE's Exercise of its Constitutional Rights</u>

8.     While VDARE was briefly represented by an attorney who challenged the

validity of the Subpoena, undersigned counsel upon entering the matter as replacement counsel

assured the OAG of VDARE's intended compliance.  Recognizing the OAG's broad discretion

to exercise regulatory oversight of charities registered in New York and issue investigative

subpoenas, between September and November 2022 VDARE produced over 6,000 pages of

5

documents to the OAG after completing review of documents maintained in hard copy and electronically - - the universe of responsive documents so maintained.  By December 2022, VDARE had engaged a vendor to secure its 40 gigabytes of emails (the equivalent of millions of pages) for undersigned counsel's review; had identified email custodians to the OAG; and undersigned counsel's review for responsive emails was well under way.

9.    On December 2, 2022, however, the OAG took unduly heavy-handed positions that demanded disclosures of constitutionally-protected information, threatened VDARE's ability to conduct business, and unfairly inferred VDARE's bad faith from the mechanics of VDARE's then-ongoing compliance.  *See* Letter from the OAG to VDARE's counsel, NYSCEF Docket No. 44, attached hereto as **Exhibit G**.  The OAG's letter demanded that VDARE, within ten days, disclose its constitutionally protected information, reveal previously-redacted information in the first 6,000 pages of production, complete review of the 40 gigabytes of emails, and produce a complete redaction log for the entirety of its production.  *Id.*

10.    Only then, on December 12, 2022, when it appeared that the OAG was targeting VDARE for reasons other than regulatory compliance, VDARE initiated a federal action against the OAG to protect itself and its rights of speech and association guaranteed by the federal and state constitutions.

11.    In otherwise complying with the OAG's Subpoena, VDARE disputed the Subpoena's demand for the identities of contractors who did business with VDARE.  The subject matter of VDARE's principal activity - - commentary about immigration policy of the United States disseminated to the public through its website at www.VDARE.com - - is controversial.  As VDARE demonstrated below without dispute, VDARE's lawful speech has led to and

continues to cause reputational and professional harm to people and entities associated with it.

Contractors providing services essential to VDARE's very existence have refused to continue to

do business with VDARE, including venues which have cancelled contracts with VDARE to

host conferences, sometimes because of disagreement with VDARE's views, but typically

because of their aversion to public protests.  These harms to VDARE have made it increasingly

difficult for VDARE to find alternative contractors to stay in business.  *See* NYSCEF Docket

No. 37  (Affirmation of VDARE's Counsel) at 4, attached hereto as **Exhibit H** (citing *"VDARE*

*responds to conference cancellation at Cheyenne Mountain Resort,"* Aug. 15, 2017 ("Cheyenne

Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year.

We remain committed to respecting the privacy of guests at the resort."); Kristine Phillips, The

Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite National

Park, canceled [VDARE's] booking after receiving complaints about the organization's views.");

*"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To Announce*

*New Venue Soon!"* Mar. 7, 2018).

       12.     Likewise, multiple businesses providing services essential to VDARE's

continued operations have terminated their relationships with VDARE, including Mailchimp and

Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and

other lesser known businesses.  **Exhibit H** at 4-5.  VDARE created an entity called "Happy

Penguins LLC" for the sole purpose of paying VDARE's employees so that they could identify a

non-controversial entity (Happy Penguins) - - and not VDARE - - as their employer.  *See*

VDARE's Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC / Peter

Brimelow" (VDARE's founder) as a service providing leased employees).  See **Exhibit H** at 4-5.

13.    VDARE demonstrated below that the threat to its rights to free speech and association is ongoing and constitutes a genuine risk of irreparable harm.  As recently as January 4, 2023, the Washington Post published an article entitled, *"A 'hate castle' or welcome neighbor? VDare divides a West Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare, which some consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4, 2023.  *See* NYSCEF Docket No. 58 (Reply Affirmation of VDARE's Counsel) at 6-7, attached hereto as **Exhibit I**).  Comments to the article posted at *www.washingtonpost.com* contain multiple instances of public abuse of and threats to VDARE's neighbors in West Virginia solely because their favorable opinions of VDARE or its principals were quoted in the article.  Some comments identify those quoted in the article by name; claim that those with favorable opinions of VDARE's principals must necessarily be white supremacists; and threatened them with commercial retaliation and not to "spend money in their town."  One especially vile public comment called out an elderly proprietor of a local business as a "filthy racist" because she was quoted in the article as defending VDARE's principals.  **Exhibit I** at 7.

14.    As discussed *infra*, the court below granted the OAG's motion to compel identities of unrelated contractors and  VDARE's content providers - - writers and contributors who provide content for VDARE's website.  The court below did so despite the OAG's explicit concession in federal court that disclosure of the identities of content providers is beyond the Subpoena's scope.  As part of the OAG's submissions below in support of its motion to compel, the OAG emailed the court a copy of its papers in federal court in support of its [currently pending] motion to dismiss VDARE's federal case.  The OAG therein confirmed that its "VDARE Subpoena did *not* seek any information regarding the development or publication of

VDARE's online content." *See VDARE v. James*, 22-cv-1337 (N.D.N.Y.), Docket No. 12-1 (attached hereto as **Exhibit J**) at 8-9 (OAG's emphasis in original).  Just as the court below ignored VDARE's genuine constitutional concerns about its continued ability to do business if compelled to disclose identities of unrelated contractors to the OAG, the court below also ignored the OAG's own concession that the Subpoena did not demand disclosure of information about publication of VDARE's online content.  The court below compelled the disclosures anyhow.

15.     Further, the OAG made no genuine effort below and refused VDARE's repeated requests to show why its request for these identities could not be narrowly tailored.  *See Matter of Evergreen Assn., Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017) (citing *Shelton v. Tucker*, 364 U.S. 478, 488 (1960)) (the Attorney General's legitimate investigative purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved," and applying strict scrutiny where compliance with the OAG's subpoena would "have a chilling effect on [the group's] associations with its employees and potential clients" as well as at least one hospital); *New York State Senate Republican Campaign Comm. v. Sugarman*, 165 A.D.3d 1536, 1540–41 (3d Dep't 2018) (the subpoena's demands capture materials that are "extraneous to the central purposes of [respondent's] inquiry . . . and/or unnecessarily infringe on petitioners' First Amendment rights of political expression and association") (citing *Matter of Evergreen* and quoting *Matter of Kalkstein v. DiNapoli,* 228 A.D.2d 28, 30 (3d Dep't 1997) (quotation marks omitted)).  *See also NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of both public and private points of view, particularly controversial ones" and requiring association to produce

membership list interfered with First Amendment freedom of association).

   16. **The OAG - - and the court below - - failed to address** VDARE's concern about the OAG's apparent disclosure of constitutionally-protected information in another investigation. On August, 26, 2022, Politico published confidential information about donors to another conservative not-for-profit entity in the OAG's cross hairs. Thereafter, on October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG. *See* **Exhibit H** at 7.

   17. VDARE attempted to accommodate the OAG by proposing two middle grounds below, both of which were summarily rejected. *First*, VDARE proposed that it disclose the identities of all contractors who might qualify as "related" within the meaning of Section 715 of New York's Not-for-Profit Corporation Law and otherwise produce all information for all contractors about services provided and the amounts paid to each, without prejudice to the OAG's right to revisit the issue. The OAG would presumably have no investigative need for the identities of unrelated contractors near VDARE's headquarters in West Virginia (or elsewhere) earning *de minimis* compensation, or unrelated providers of general services such as website hosting, among other unrelated contractors. While the OAG rejected this middle ground, VDARE nonetheless provided the OAG with an independent auditor's report which identified contractors which might qualify as related.

   18. *Second*, VDARE alternatively proposed that it produce a fully unredacted list of contractors to the court below *in camera* (a protocol used in *Matter of Evergreen)*, subject to the OAG's request for disclosure of the identities of any particular unrelated contractor upon a

showing of a narrowly-tailored investigative need. **Exhibit K.** The court below summarily rejected this proposal without explanation.

19.    VDARE initiated its federal case only after the OAG's demand for constitutionally-protected information and its other unduly aggressive positions warranted the inference that the OAG was using its investigative authority in whole or in part as retaliatory state action for VDARE's exercise of its rights to speech and association. For example, the OAG claimed VDARE's non-compliance with the OAG's investigative subpoena on December 2, 2022 [*see* **Exhibit G**], just *one day* before December 3, 2022, the effective date of New York State's new law - - General Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of social media to vilify, humiliate, or incite violence. VDARE does not use social media (or any outlet) to vilify, humiliate, nor incite violence against anyone.

20.    The OAG's claim of noncompliance on December 2, 2022, the day before the effective date of New York's new law, December 3, 2022, was not the first temporal connection between the OAG's professed regulatory oversight of VDARE while signaling another agenda. As alleged in VDARE's federal complaint, the OAG issued the Subpoena to VDARE in June 2022 just after the OAG's newly created "Hate Crimes Unit" issued separate subpoenas to both Facebook and Facebook's parent company, seeking information about VDARE with specific reference to purported hate speech. **Exhibit B** at ¶¶ 16-18.

21.    As alleged in VDARE's federal complaint, the Attorney General in 2020 joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations." **Exhibit B** at ¶ 14. The Attorney General in 2020 also proclaimed - - expressly - - that she created her Hate Crimes Unit "*to strengthen oversight*, because we see how

11

much hate is being fueled by content on the internet. We're calling on these companies to regulate hate speech and strengthen their policies.  They can do more to fight these things - racism, the spread of disinformation and hate."  **Exhibit B** at ¶ 13 (emphasis added).

22.    In fact, the Subpoena itself requests documents far afield from any legitimate regulatory oversight.  For example, the OAG demanded "Copies of the transcripts to each deposition in the litigation between VDARE founder Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings."  This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for unjustifiably branding him an "open white nationalist."  **Exhibit B** at ¶ 23.

23.    The undue deference afforded the OAG by the court below notwithstanding the inference of the OAG's unconstitutional retaliation - - and the court's rush to grant the OAG's motion to compel in its entirety in the face of genuine constitutional concerns - - underscore why VDARE chose federal court to seek constitutional relief.

B.    The OAG's Erroneous Challenge to New York's First-Filed Rule

24.    In opposing a stay of this proceeding pending resolution of VDARE's federal case against the OAG (or at least pending decision on the OAG's motion to dismiss VDARE's federal case), the OAG did not dispute that VDARE initiated its federal case before the OAG initiated its special proceeding below.  New York's well-settled "first-filed" rule requires that the "court which has first taken jurisdiction" - - in this case, United States District Court for the Northern District of New York - - "is the one in which the matter should be determined and it is a violation of the rules of comity to interfere."  *Ace Prop. & Cas. Ins. Co. v.*

*Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008); *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 7 (1st Dep't 2007) (same); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 95 (1st Dep't 2013) (same); C.P.L.R. 3211(a)(4).

25.     Instead of acknowledging that VDARE had a right to choose its forum under settled law in New York, or otherwise consenting to a stay at least to accommodate decision on the OAG's [currently pending] motion to dismiss VDARE's federal case, the OAG analogized VDARE to a commercial plaintiff precipitously seeking tactical advantage by choosing a forum inconvenient to an aggrieved commercial opponent [*see* NYSCEF Docket No. 57, OAG's Memorandum of Law, Jan. 18, 2023 at 2 (citing *White Light Prods. v. On the Scene Prods.*, 231 A.D. 2d 90, 100 (1st Dep't 1997)], and argued that it was improper for VDARE to seek federal relief after the OAG threatened enforcement on December 2, 2022. *See* NYSCEF Docket No. 57 at 1. The analogy pressed by the OAG was misplaced for at least three independent reasons.

26.     *First*, unlike a commercial plaintiff who rushes to an inconvenient forum as soon as its opponent signals an intent to litigate, the OAG's resort to litigation is inherent in virtually every subpoena it issues. *See* **Exhibit F** at 1 (the Subpoena issued to VDARE in June 2022 included the OAG's standard warning that it can seek enforcement for disobedience). The OAG's analogy to commercial litigation would serve to bar every person issued a subpoena by the OAG from ever seeking federal redress in every case no matter how irreparable the federal constitutional harm threatened by the OAG.

27.     *Second*, apart from the Subpoena's inclusion of the OAG's standard warning of its right to seek enforcement, the OAG began expressly threatening VDARE with a

13

motion to compel as early as September 8, 2022, before undersigned counsel had even begun to undertake VDARE's compliance with the OAG's subpoena - - three months before December 10, 2022, when VDARE filed its federal case.  *See* Email from the OAG to undersigned counsel, September 8, 2022, attached as **Exhibit K** ("We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue to extending the deadline and will seek judicial relief ourselves to move this process forward.").

28.     *Third*, unlike a commercial litigant who chooses a geographically inconvenient forum to vindicate its interests in a financial transaction, VDARE chose federal court to vindicate its federal constitutional rights - - and did so in Albany where the OAG maintains an executive office.  *See https://ag.ny.gov/contact-attorney-general-letitia-james*.

29.     Likewise misplaced was the OAG's reliance below on *Trump v. James*, 2022 WL 1718951 (N.D.N.Y. May 27, 2022) [*see* NYSCEF Docket No. 57 at 2], in which the former president sought redress in federal court only *after* he had defied multiple orders for contempt and a state action was already ongoing.  No such actions preceded VDARE's federal case.  As *Trump v. James* itself makes clear, "the obligation of federal courts to hear cases within their jurisdiction is 'virtually unflagging'" absent pre-existing state litigation.  *Id.* at *23 (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022).

30.     Especially revealing was the OAG's subterfuge in delaying the federal case while secretly rushing to state court.  VDARE filed its federal case on December 12, 2022, simultaneously emailing a courtesy copy of its papers to the OAG in advance of formal service, which provided the OAG with three weeks (until January 4, 2023) to respond.  *See* F. R. C. P. 12(a)(1)(A)(I).  On December 21, 2022, a full two weeks before the OAG's response was due

on January 4, 2023, the OAG requested and secured VDARE's consent to an extension of the

OAG's deadline to respond in federal court, from January 4 to 18, 2023.  In so doing, the OAG

claimed (in an email) that the extension was necessary because of the holidays and an attorney

who had taken ill:  "Because of the holidays and a member of our team who has COVID, we

would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY.

Can you please confirm your consent?"  *See* **Exhibit H** at 2-3.

        31.     Unbeknownst to VDARE when it consented to the extension on December

21 2022, however, the OAG had already initiated this special proceeding the week before (on

December 16, 2022) with a proposed order to show cause.  The court below issued the OAG's

order to show cause on December 22, 2022, scheduling oral argument on the OAG's state

motion to compel on January 19, 2023, two business days before the court below denied

VDARE's application for a stay based on its first-filed federal action and compelled the

disclosures.

        32.     It is the OAG, not VDARE, which forum-shopped for undue tactical

advantage - - further warranting the inference that more is afoot here than a small charity's

regulatory compliance.

C.     The Court Below Unduly Deferred to the OAG at the Expense of VDARE's
        Right to Seek Redress in Federal Court for the State's Unconstitutional
        Retaliation and Demand for Disclosures of Constitutionally Protected
        <u>Information Extraneous to Any Truly Overriding Investigative Need</u>

        33.     Despite judicial deference afforded the OAG, nothing about the OAG's

professed concerns in its letter to VDARE of December 2, 2022, nor its subsequent motion to

compel in the court below demonstrated either a legitimate investigative need for the

constitutionally-protected information nor any true attempt at narrow tailoring.  To the contrary,

15

the OAG took the constitutionally offensive position that "the identities of contractors - - including writers who contribute to the website - - these are precisely the records the OAG must examine in its investigation of VDARE's organizational misconduct." NYSCEF Docket No. 3 at 16. The OAG's conclusion does not fit its rationale: a vendor's provision of services to VDARE or a writer's provision of content to its website has no automatic connection to any legitimate investigative need. The OAG took the Orwellian position that its demands were narrowly tailored [NYSCEF Docket No. 3 at 16] when it made no effort at all to narrowly tailor them and rejected VDARE's proposed middle grounds out of hand.

34. Likewise constitutionally offensive - - and irrational - - was the OAG's analogy below of VDARE's vendors and content providers to the copyright violator in *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), who declined to reveal his name after the copyright holder tracked him via his computer's IP address. The OAG relied on *Arista's* principle that anonymity may not be used to mask violations of the law [*see* NYSCEF Docket No. 3 at 16], but none of VDARE's vendors nor content providers are alleged to have violated the law nor to have helped VDARE to do so. The OAG's demand that VDARE reveal their identities is more than an overreach: it warrants the inference that the Attorney General may be after VDARE *because* of its speech and is demanding that it reveal identities of its vendors and content providers because either she intends to put it out of business or is otherwise hostile to the rights of those with whom she disagrees.

35. Before constitutionally-protected disclosures may be compelled, more is required than a general claim of investigative need. Instead, anonymous Internet speech is protected by the First Amendment unless a party seeking enforcement of a subpoena first

establishes "a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" so that a court may then "assess and compare the magnitude of the harms that would be caused" to freedom of speech and the defendant's commercial interests." *See Mirz v. Yelp, Inc.*, 2021 U.S. Dist. LEXIS 160961 (S.D.N.Y. Aug. 25, 2021); *"Anonymous criticism helped make America great: Trump's critic is utilizing a practice employed by many of the Founding Fathers to protect truth from power,"* The Washington Post, Sept. 8, 2018[1] ("anonymous publication has been an essential feature of American democracy since its beginning.  It has long allowed vulnerable voices to participate in public politics and speak truth to power.  Indeed, anonymous debate was at the center of the revolutionary politics that led to American independence, the U.S. Constitution and the Bill of Rights, which enshrined the press freedoms that continue to protect anonymous speech today.").

36.    The state of the record did not permit the court below to rule on the merit of the OAG's professed regulatory concerns about VDARE, but nor did it warrant unfettered judicial deference to every inference pressed by the OAG.  For example, a purported impetus for the OAG's investigation (as first disclosed by the OAG to VDARE shortly after issuance of the Subpoena) was VDARE's purchase in 2020 of a castle-styled property in West Virginia. VDARE did not dispute the OAG's discretion to conduct oversight of a charity's purchase of such a property and instead addressed the issues in its disclosures and offered to meet immediately with the OAG to discuss it.  VDARE explained, as otherwise publicly reported, that

---

[1] Available at *https://www.washingtonpost.com/outlook/2018/09/08/anonymous-criticism-helped-make-america-great/*

VDARE acquired the castle to host conferences and thereby eliminate the risk that VDARE's events could only be conducted at the whim of independent venue owners.  *See* **Exhibit H** at 8 (citing Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020)[2] (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views."); *see also* NYSCEF Docket No. 4 (Affirmation of the OAG in support of its motion to compel) at 5 (citing public reports of purchase of castle for use as a meeting place "without fear of deplatforming").

37.     The OAG questioned the use of the castle itself as housing for the Brimelows and their three children.  Among documents produced by VDARE to the OAG is a lease agreement establishing that the Brimelows paid rent to live in a cottage on the castle grounds beginning in April 2021.  Before the cottage was habitable, the Brimelows and their three children paid rent to live in the castle for a period of months after moving to West Virginia from Connecticut.  *See* **Exhibit H** at 8-9.  Upon locating and producing the Brimelows' lease agreement for the cottage, the undersigned proposed a meeting with the OAG to begin addressing the OAG's concerns [*see* NYSCEF Docket No. 4 at 6] that the Brimelows used the castle as a residence even after their cottage was made hospitable for lease or that the Brimelows *ever* derived any financial gain from the castle.

38.     Nothing about the castle, however, warranted the OAG's demand for identities of contractors and content providers absent narrow tailoring and a true showing of

---

[2] Available at *https://www.thedailybeast.com/berkeley-springs-west-virginia-freaks-out-after-vdare-founder-buys-its-castle*.

investigative need, especially while the OAG is simultaneously representing to a federal judge that VDARE was not required to provide information regarding the "publication of VDARE's online content." *See* **Exhibit J** at 8-9.

39.     Even with judicial deference afforded the OAG, other professed concerns about VDARE failed to demonstrate any connection between the constitutionally-protected information and any true investigative need.  At least some of the OAG's claims of malfeasance were either transparently pretextual or seemed designed to cast VDARE in the worst possible light whether or not truly warranted.  For example, the OAG argued in support of its motion to compel that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990.  *See* NYSCEF Doc. 4 at 4-5.  Peter and Lydia Brimelow, however, share the same last name, holding themselves out as husband and wife on the same VDARE website which the OAG reviewed to find information supporting its investigation, and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990.  *See* **Exhibit H** at 9.  Once again, the OAG asserted no connection between this purported misstep in completing an IRS form and the identities of VDARE's vendors or content providers.

40.     Similarly, the OAG insinuated that Peter Brimelow's compensation reported in from VDARE's 2019 IRS Form 990 was atypically high [NYSCEF Docket No. 3 at 9], but conveniently omitted that VDARE's total contributions for 2019 were $4,259,309 [see **Exhibit H** at 9-10], a far substantially greater amount than in other years.  The OAG also insinuated malfeasance from an auction of furnishings from the castle [NYSCEF Docket No, 4 at

8], but, on information and belief, the entirety of *de minimis* proceeds from the auction inured to VDARE's benefit.  **Exhibit H** at 9-10.  None of this innuendo from the OAG justified its demand for the identities of vendors and content providers.

       41.     Nor did the mechanics of VDARE's compliance warrant the OAG's demand for constitutionally-protected information.  In demanding on December 2, 2022, that VDARE complete its production and identify all contractors without redactions by December 12, 2022, the OAG complained that VDARE had inconsistently applied redactions without a log identifying the bases for the redactions.  But the OAG had itself agreed to "a rolling production" [*see* **Exhibit H** at 10], which enabled VDARE - - acting in good faith - - to reassess the need for redactions as its review continued.  VDARE's counsel expressly told the OAG that it had redacted some information in earlier installments of the rolling production which upon later review had been unnecessary.  *Id.*

       42.     Despite the OAG's innuendo that VDARE is acting in bad faith and has deliberately withheld responsive documents [*see* NYSCEF Docket No. 4 at 15], VDARE's counsel has represented in affirmations that the only redactions are to the information discussed herein plus a handful based on attorney-client privilege (and the identity of donors, to which the OAG has agreed) - - and that review of the 40 gigabytes of emails is the only remaining task to complete compliance.  While the OAG alleged with rhetorical flourish that redactions had been made to almost every category of document produced [NYSCEF Docket No. 3 at 9], the vendors, content providers, and donors whose identities were redacted are inextricable parts of VDARE's business - - as VDARE's counsel had expressly advised the OAG.  *See* **Exhibit H** at 11 (VDARE's counsel emailing the OAG that "the identities of VDARE's donors, content

20

providers, and vendors who provide services to VDARE in its locality or are otherwise

indispensable to its work are inextricably intertwined with some of its financial records.  For

example, some of these entities are identified in bank statements in lists of monthly transactions

and associated copies of checks.  The work to provide such financial records with redactions is

labor-intensive and time-consuming and is ongoing.").  Even if a redaction log after the final

installment of the rolling production does not the satisfy the OAG's indiscriminate preferred

timing, it did not justify the OAG's immediate demand for constitutionally-protected disclosures

far afield from any true investigative need.

    43. Nor did the OAG's complaint about delays in VDARE's production

warrant its demand for constitutionally protected information or any inference of bad faith.  By

the time of the OAG's letter of December 2, 2022, VDARE had completed production of

documents maintained in hard copy and electronically and review of 40 gigabytes of emails was

well under way.  VDARE is literally a mom-and-pop operation, run by parents of three home-

schooled children, represented by a solo practitioner with no legal or administrative staff.  *See*

**Exhibit H** at 10-11.  The types of mechanical issues of compliance about which the OAG

complained are typically solvable, especially where the respondent is close to completing

compliance.

    44. While the OAG had not proffered a confidentiality agreement to govern

VDARE's production presumably because constitutionally-protected information need not be

provided to the state under any circumstance absent narrow tailoring and a compelling state

interest in the specific information, the court below *sua sponte* invited the parties to enter into

such an agreement.  The OAG's subsequently proposed agreement [attached hereto as **Exhibit**

21

L] does not protect the identities of VDARE's contractors nor bar the OAG from issuing

subpoenas to them - - precisely the type of state action which is unconstitutional unless preceded

by narrow tailoring and a showing of legitimate investigative need. The OAG's proposed

agreement explicitly permits the OAG to use constitutionally protected disclosures to contact and

interview witnesses without seeking VDARE's permission or prior judicial approval.

45.    In denying to stay the proceeding initiated by the OAG pending VDARE's

first-filed federal action, the court below neither addressed New York's first-filed rule nor

VDARE's federal claim against the OAG for retaliation for exercise of its constitutional rights.

In granting the OAG's motion to compel, the court below did not address VDARE's concerns

about irreparable harm to its ability to conduct business and constitutional rights to speech and

association and, instead, accepted the OAG's misplaced analogy to the identity of the copyright

violator in *Arista*.

<u>Conclusion</u>

46.    This Court has the "inherent power to grant a stay" of proceedings

pending appeal "in aid of its appellate jurisdiction." *Pokoik v. Dep't of Health & Human Servs.*

*of County of Suffolk*, 220 A.D.2d at 16; *see also Schwartz v. New York City Housing Authority*,

219 A.D.2d 47, 48 (2d Dep't 1996) (an appellate court has "inherent power to grant a stay of

acts

or proceedings" that "will disturb the status quo and tend to defeat or impair [the court's]

appellate jurisdiction").

47.    This Court may also "stay all proceedings to enforce the judgment or

order

appealed from pending an appeal" under C.P.L.R. 5519(c). "[T]he granting of stays pending appeal in such cases is, for the most part, a matter of discretion." *Grisi v. Shainswit*, 119 A.D.2d 418, 421 (1st Dep't 1986). The Court's discretion "will be influenced by any relevant factor, including the presumptive merits of the appeal and any exigency or hardship confronting any party." Practice Commentaries, C.P.L.R. C5519:4; *see also Town of Orangetown v. Magee*, 218 17 A.D.2d 733, 734 (2d Dep't 1995) (staying enforcement of judgment pending appeal under § 5519(c)).

48.    For these reasons, this Court should stay the Order pending resolution of VDARE's appeal to this Court. At the very least, this Court should stay so much of the Order that compels disclosure of the information at issue. If the Court is unable to rule on this application for a stay until on or after **February 9, 2023**, the day before the first disclosures must be made pursuant to the Order, the Court should stay the Order at least until 72 hours after this application is resolved.

Dated: February 6, 2023

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Respondent*

23

# Exhibit A

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 28 of 178

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. SABRINA KRAUS** | **PART** 57TR |
| | *Justice* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK

INDEX NO.    453196/2022

MOTION DATE    1/19/2023

MOTION SEQ. NO.    001 002

Plaintiff,

- v -

VDARE FOUNDATION, INC.,

**DECISION + ORDER ON MOTION**

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60, 61

were read on this motion to/for          ENFORCEMENT     .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 58

were read on this motion to/for          DISMISSAL     .

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpoena

duces tecum dated June 23, 2022 (the "Subpoena") issued in conjunction with an investigation

into the activities of Respondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a New York charitable not-for-profit corporation that incorporated in New

York in 1999.  In 2000, Respondent, then known as, the Lexington Research Institute, Limited,

applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3)

charitable entity. Respondent did not register with the Attorney General's office until 2009.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 1 of 11

1 of 11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 29 of 178

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period, Respondent also substantially increased payments to Brimelow and to third-party, for-profit companies he controls.  In 2019, Brimelow's reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019, as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brimelow's residential home address.

In December 2020, Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director, five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a non-profit corporation.  Respondent conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation.

Based on the information it had obtained, the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

**453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002**

**Page 2 of 11**

2 of 11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 30 of 178

charities. The Subpoena seeks: documents concerning Respondent's organizational structure;

compliance conflict-of-interest policy requirements under New York law, and financial

operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions

between Respondent and entities controlled by the Brimelows.

   Respondent originally took the position that the Subpoena was unlawful and should be

withdrawn. On September 19, 2022, new counsel for Respondent agreed to comply with the

Subpoena but asserted that a significant volume of electronically-stored and hard copy

documents needed to be reviewed. Respondent made its first production that day consisting of 27

documents produced without Bates numbers and bearing unmarked redactions. No log was

provided to identify or explain the redactions.

   In the twelve weeks since its first September delivery, Respondent has produced

approximately 6,000 pages from its hard copy records.  It has redacted that material without any

explanation for how material was chosen for redaction.  Petitioner assets that the redactions are

extensive and have been applied across almost every category of document produced, including

board meeting minutes, bank statements, internal accounting ledgers, credit card statements,

invoices, financial records for the limited liability company (Happy Penguins LLC) from which

Respondent has historically leased Peter Brimelow's services, and bank statements to accounts

held personally by Peter and Lydia Brimelow.

    On October 31, 2022, Lydia Brimelow represented that, with limited exceptions,

Respondent's hard copy production was complete, and identified 22 unique email accounts

containing approximately 40 gigabytes of potentially responsive electronically stored

information. Respondent's counsel stated that review of that material would be completed by

**453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.**
**Motion No.  001 002**

**Page 3 of 11**

3  of  11

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline

for completing email production.

     On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with

the pace and scope of the production, including its extensive redactions, and demanded that

Respondent complete its subpoena compliance and produce a redaction log by December 12,

2022.

     On December 12, 2022, Respondent filed an action in United States District Court for the

Northern District of New York against Petitioner [*VDARE Foundation, Inc. v. James*, 1:22-cv-

01337 (FJS)], alleging, among other things, that Petitioner's demands for certain disclosures

threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory

pretext aimed at interfering with Respondent's rights to freedom of speech and association. The

federal complaint seeks a declaration that Subpoena violates Respondent's first amendment

rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

     On December 16, 2022, Petitioner commenced this special proceeding.

## **PENDING APPLICATIONS FOR RELIEF**

     Petitioner seeks an order compelling Respondent to comply with the investigative

Subpoena duces tecum dated June 23, 2022.

     Respondent has moved for an order dismissing this proceeding, or alternatively staying

the proceeding pending resolution of the Federal Action.[1]

     On January 19, 2023, the court heard oral argument on the motions and reserved

decision.  For the reasons stated below, Petitioner's motion to compel is granted and

Respondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its request to a stay pending the Federal Court litigation.

**453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 4 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002**

4 of 11

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" (*Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.,* 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017).

The Attorney General has broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-1.4(m). *See also Temple of the Lost Sheep*, 148 Misc. 2d at 828–29.  "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" (*Matter of Dental Coop. v. Attorney–General of State of N.Y.,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147).  The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "… if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

**453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002**

**Page 5 of 11**

5 of 11

*v. Lefkowitz*, 18 N.Y.2d 977, 979 (1966); *Hogan v. Cuomo*, 67 A.D.3d 1144, 1145 (3d Dep't

2009); *Anheuser-Busch. Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988)), aff'd 205 A.D.3d 625

(2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject

matter under investigation and the public interest to be served." *Giardina v. James*, 185 A.D.3d

451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information

sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d

327, 331–32 (1988).

New York State has a public policy interest in ensuring the robust regulation of tax-

exempt charitable entities like Respondent and Petitioner has authority to supervise and

investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory

provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for

example, provides that entities like Respondent may be formed only for charitable purposes, *see*,

*e.g.*, N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members,

directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements

under the N-PCL for lawful operation, including requirements for a process by which

compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition"

of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate

financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-

PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to

determine whether Respondent has complied with these requirements, including complete copies

**453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002**                                                    **Page 6 of 11**

6 of 11

Case 1:22-cv-01337-FJS-CFH   Document 35-10   Filed 04/10/23   Page 34 of 178

of Respondent's annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of charitable assets—for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, inter alia, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. See generally Executive Law § 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights (*see Matter of Full Gospel Tabernacle v. Attorney–General of State of N.Y.,* 142 A.D.2d 489, 493, 536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342, 1346–1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL–CIO,* 72 N.Y.2d 307, 532 N.Y.S.2d 722, 528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent's filings themselves underscore the reasonableness of the Subpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny— Peter Brimelow, Respondent's founder and director, and his wife, Lydia Brimelow, also a director,

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 7 of 11

7 of 11

used and continue to use a $1.4 million charitable asset as their personal residence. See Frisch

Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April

2021, however the lease is between Lydia Brimelow and BBB, LLC, a West-Virginia for-profit

corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant.

Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia

Brimelow as manager).

Respondent's motion and accompanying papers fail to meet its burden of establishing the

Subpoena's invalidity. Respondent, which has partially complied with the subpoena for months,

has not established why providing a redaction log for its already-produced documents raises any

First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions are required to protect the identities of

contractors—including writers who contribute to the website—these are precisely the records the

Petitioner seeks to examine in its investigation of Respondent's alleged organizational

misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by

the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member

is a known contributor. The Attorney General may probe this contributor's compensation as part

of its investigation of conflicts of interest and board independence. And the Attorney General

may seek the identities of other contributors to determine whether further conflicts of interest

may exist.

Respondent's reliance on *Americans for Prosperity v. Bonta*, 141 S.Ct. 2373 (2021), is

equally unavailing. That decision concerned only donor disclosures in statewide annual filing

**453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 8 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.**
**Motion No.  001 002**

8 of 11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 36 of 178

requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. *See Ams. for Prosperity Found*., 141 S. Ct. at 2386–87.  Moreover, Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further address any of Respondent's concerns.

Finally, Respondent presents no compelling basis for a stay of this proceeding in its moving papers, and acknowledged at oral argument it has not sought a stay of this proceeding from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion to compel is granted.

WHEREFORE it is hereby:

ORDERED Respondent VDARE Foundation, Inc. ("VDARE") shall comply with the Subpoena, subject to the agreement of July 27, 2022, memorialized in Exhibit R to the Affirmation of Yael Fuchs at Dkt. No. 22, that VDARE may redact the following from otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any responsive record of private contributions to the organization and/or purchases from the October 16, 2021 "Castle Auction" (transaction amounts, dates, and other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner's right to seek modification of these agreed redaction terms by written application to the Court on notice to VDARE; and it is further

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 37 of 178

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log; and it is further

ORDERED that on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production; and it is further

ORDERED that the parties, if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court; and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh);] and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

**453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.**
**Motion No.  001 002**

**Page 10 of 11**

10 of 11

ORDERED that this constitutes the decision and order of this court.

202301231454ZB58KRAUS6CD49D2CD5844BFE88AF03FF4E118495

| 1/23/2023 | | | | SABRINA KRAUS, J.S.C. |
| DATE | | | | |

| CHECK ONE: | | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
| | | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 11 of 11

# Exhibit B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

..................................................................x

VDAREFOUNDATION   INC.

      *Plaintiff,*

    against

LETITIA JAMES  in her official capacity
as Attorney General of the State of New York,

      *Defendant.*

..................................................................x

Civil Action No:     -cv-

**1:22-DW-1337**   ('+4/$'))

# VERIFIED COMPLAINT
# FOR DECLARATORY  AND INJUNCTIVE RELIEF

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
  ew York  New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

1

## PARTIES

1.     Plaintiff VDARE Foundation Inc. ( VDARE") is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of ew York, but with a principal place of business in Berkeley Springs West Virginia.

2.     VDARE was founded to support the efforts of VDARE.com a non-profit web magazine. VDARE is a charity registered in the State of ew York. VDARE is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources.

3.     Defendant Letitia James has been the Attorney General of the State of ew York since she was sworn into office on January **1,** 2019. Her office is located in Albany New York. She is sued here in her official capacity. She was Attorney General at all times relevant to this Complaint and has final policymaking authority with respect to her office and is responsible for the hiring, screening training retention supervision, discipline counseling and control of the attorneys under her command. Her name appears as the Attorney General on all the subpoenas at issue in this matter.

### JURISDICTION AND VENUE

**4.**     Pursuant to 28 U.S.C. § 1331 the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution and because this action seeks to prevent state officials from interfering with federal rights. Further, subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights privileges, and immunities secured by the United States

Constitution. This Court has supplemental jurisdiction over state law claims asserted in this action under 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) as the Attorney General has a principal office within it.

5.      There is a present and actual controversy between the parties.

6.      The relief requested is authorized pursuant to 28 U.S.C. § 1343(a)(4) (recovery of damages or equitable relief or any other such relief for the protection of civil rights), 28 U.S.C. § 2201 and 2202 (declaratory and other appropriate relief) 42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the Constitution) and 42 U.S.C. § 1988 (awards of attorneys' fees and costs).

## The Attorney General's Violation of VDARE's First Amendment Rights

7.      VDARE's founder, Peter Brimelow, is a well-known magazine editor, political commentator columnist and author whose career spans five decades. **He** has served as an editor and writer at the Wall Street Journal, Financial Post, Macleans, Barron's Fortune Forbes National Review, and MarketWatch. He is a recipient of the Gerald Loeb Award for Distinguished Business and Financial Journalism, was a media fellow at the Hoover Institution and has been described as "a star of the conservative movement in the 2000s. He is the author of four well-regarded books, including Alien Nation: Common Sense About America's Immigration Disaster (I995), a national bestseller in the United States. He also wrote The Patriot Game: National Dreams and Political Realities (1986) a book on Canadian politics that is credited with spurring the creation of the Reform Party of Canada in 1987; as well as The Wall Street Gurus: How You Can Profit from Investment ewsletters· and The Worm in the Apple: How the Teacher Unions Are Destroying American Education.

3

8.    Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States. Throughout its existence VDARE has published pieces that criticize current United States immigration policy for various reasons and from a variety of angles and perspectives. VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants. Brimelow is himself an immigrant and a naturalized United States citizen. Many of VDARE's editors and contributors, current and former are immigrants or foreign nationals. Stories originally published in VDARE have been positively cited by the ew York Times, the Harvard Journal on Law and Public Policy and many other publications.

9.    VDARE is not without detractors. VDARE has repeatedly been tarred with pejoratives such as 'white nationalist," and' racist. VDARE rejects these labels. Whatever the views of VDARE's detractors its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution.

10.    Use of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it. On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE s existence have opted to stop providing services. Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats. Such venues have sometimes cancelled contracts with VDARE.

11.    To protecl iLs rights of sp ech and association  VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law.

4

## THE ATTORNEY GENERAL HAS EXPRESSED DESIRE
## TO IMPEDE SPEECH SIMILAR TO VDARE'S

12.    The Attorney General, as the State's principal law enforcement officer, should be a stalwart steward of the First Amendment, protecting the right to expression of viewpoints and advocacy of positions about government policy. It is her obligation to distinguish viewpoints protected by the First Amendment with which she disagrees from calls to violence or other non-protected types of expression. *See Ro enberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819  828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional.  ).

13.    On January 8, 2020, the Attorney General told reporters that her then newly-created 'Hate Crimes Unit" wouJd 'focus on social media companies:' "We are going to strengthen oversight  because we see how much hate is being fueled by content on the internet. We re calling on these companies to reguJate hate speech and strengthen their policies. They can do more to fight these things - racism, the spread of disinformation and hate. ' *See https:/lwww. haaretz. comlus-news/2020-0 J-08/ty-articlelpremium/new-york-anti-semitism-crisis-jews-violence-trump/00000l 7f-e39c-d568-ad7f-j3.ff3b320000*

14.    On August 5, 2020, the Attorney General joined in a letter to Facebook demanding that it increase censorship against  hate speech  and hate organizations:

> *Although Facebook ha  developed policies against hate speech and organizations that peddle it, we remain concerned that Facebook's policies on Dangerou Individuals and Organizations, including but not limited to its policies on white nattonalisr and while supremacisr  content, are not enforced quickly and comprehensively enough.*

**15.**    The Attorney General  s desire to suppress free speech has led to ongoing litigation. In *Volokh v. James,* social media platforms and websites have noted her antipathy towards

free speech - - citing her desire to use the law to prevent what she describes as 'dangerous and corrosive ideas to spread." *See* Exhibit A at ¶ 18.

## The Attorney General Targets VDARE

16.     On May 13 2022, the Attorney General's Special Counsel for Hate Crimes subpoenaed Meta the parent company of Facebook for information about VDARE. Specifically, the subpoena demanded:

1. All account opening documents for the Facebook Accounts.

2. Documents sufficient to identify the individuals who opened the Facebook Accounts.

3. All documents concerning the grounds on which the Facebook Accounts were terminated.

4. A true and correct copy of the document entitled 'April 2020 Coordinated Inauthentic Behavior Report.

5. All documents relating to the finding that VDARE engaged in 'coordinated inauthentic behavior' in its use ofFacebook and other Meta platforms.

6. Documents sufficient to identify the Facebook Pages accounts and Group used by VDARE in their "coordinated inauthentic behavior" as described by the "April 2020 Coordinated Inauthentic Behavior Report.

7. Documents sufficient to identify the COVID-19-related conspiracies and hate speech about Asian Americans shared through the network of fake accounts VDARE created and identified by the 'April 2020 Coordinated Inauthentic Behavior Report. '

8. All documents indicating that VDARE violated the terms of service of Facebook or other Meta platforms.

9. All complaints made to Facebook or another Meta platform during the Rel vant Period concerning any allegations that VDARE violated the platform s terms of service.

10. All documents from investigations by Meta, its predecessors or agents into allegations that VDARE violated the terms of service of Facebook or other Meta platforms.

11. Documents sufficient to identify the amount, date, purpose, payor name and payor address for any payment made to VDARE by Facebook Pay or any other Meta payment platform.

12. All documents reflecting withdrawals by VDARE from Facebook Pay or any other Meta payment platform including the amount date withdrawing person or entity and recipients of each withdrawal.

13. All documents relating to any other transfers by VDARE to or from Facebook Pay or any other Meta payment platform including the source, recipients, dates, and amounts of such transfers to the extent not previously described herein.

14. Documents sufficient to identify the final balance(s), if any in VDARE s Facebook Pay or any other Meta payment account.

15. All account closing documents for VDARE's Facebook Pay or any other Meta payment account.

16. Documents sufficient to identify any advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

17. Documents sufficient to identify the total cost of advertisements placed by VDARE within the Relevant Period on Facebook or any other Meta platform.

18. Documents sufficient to identify the audiences targeted by VDARE s advertising within the Relevant Period on Facebook or any other Meta platform.

19. Documents sufficient to identify the number of users to whom VDARE s advertising was delivered within the Relevant Period on Facebook or any other Meta platform. Please note that this request does not call for production of the identity of any user who received VDARE s advertising.

17.     None of the documents that the Attorney General demanded from Meta appear

reasonably related to any unlawful activity by VDARE. Speech characterized by the

Attorney General as "hate speech" and 'misinformation" does not render it unprotected by

the First Amendment. While VDARE disagrees with Facebook that it ever engaged in

"coordinated inauthentic behavior," even such purported behavior does not constitute a

criminal or civil violation.

18.    On June 14 2022 the same Special Counsel for Hate Crimes issued a subpoena to Facebook Payments demanding:

> 1. Documents sufficient to identify the amount date, purpose payor name and payor address for any payment made to VDARE by Facebook Payments, Inc. or any other Meta payment platform.

> 2. All documents reflecting withdrawals by VDARE from Facebook Payments, Inc., or any other Meta payment platform, including the amount, date withdrawing person or entity and recipients of each withdrawal.

> 3. All documents relating to any other transfers by VDARE to or from Facebook Payments, Inc. or any other Meta payment platform including the source, recipients, dates, and amounts of such transfers, to the extent not previously described herein.

> 4. Documents sufficient to identify the final balance(s) if any m VDARE's Facebook Payments Inc., or any other Meta payment account.

> 5. All account closing documents for VDARE's Facebook Payments Inc. or any other Meta payment account.

19.    VDARE was notified of this subpoena by Facebook s counsel, not by the Attorney General, a violation by the Attorney General of the Stored Communications Act which requires "with prior notice from the governmental entity to the subscriber or customer if the governmental entity" for administrative subpoenas. 18 U.S.C. § 2703(b).

20.    The Facebook Payments and Meta subpoenas collectively asked for information about payments made to VDARE, which would have inevitably disclosed confidential information about VDARE's donors. In addition, asking for information about the names of those who operated the accounts would have identified the names of those who anonymously post from the social media accounts.

21.    Had Facebook and Meta supplied the information that the Attorney General demanded the rights under the First Amendment of donors and commentators would have

been violated.

## The Attorney General's Charities Bureau Subpoena

22.     On June 24 2022, before Meta or Facebook Payments produced documents the Attorney General's Charities Bureau issued a subpoena to VD*ARE,* identifying 44 categories of demanded documents.

23.     Among many other things, the Attorney General demanded "Copies of the transcripts to each deposition in the litigation between Peter Brimelow and/or VD*ARE* and the ew York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." This demand referred to a lawsuit for libel filed by Brimelow against the ew York Times for calling him an "open white nationalist,' which he is not.

24.     On July 20, 2022 after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to the Attorney General s subpoenas requested in writing that the she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment of the United States Constitution to express positions critical of governmental officials and policy. The Attorney General declined to withdraw the subpoenas.

25.     In August 2022 before a revised return date, VDARE engaged new counsel and directed him to comply with the Attorney General s subpoena. The Attorney General acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce' very basic corporate records" to demonstrate VDARE's intent to comply in advance of a rolling production. ' Between September 19 and November 21, 2022 VDARE produced about 6 000 pages of documents in response to the

Attorney General s subpoena to VDARE after completing review of documents maintained by VDARE electronically and in hard copy.

26.     While making and before completing the production, VDARE advised the Attorney General of its position that production of the identities of many of its contractors would violate the First Amendment to the United States Constitution. VDARE explained to the Attorney General that some contractors would face retribution if their association with VDARE was revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities were disclosed as has happened in the past. VDARE cited the Attorney General to *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 460, 462 (1958) (protecting the right of advocacy of both public and private points of view, particularly controversial ones and holding that an order requiring association to produce membership list interfered with First Amendment freedom of association); and *Evergreen Ass'n, Inc. v. Schneiderman* 153 A.D.3d 87 100 (2d Dept 2017) (applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the group's] associations with its employees and potential clients as well as at least one hospital). *See also Ronsenblatt v. Baer,* 383 U.S. 75 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free lest criticism of government itself be penalized.")

27.     VDARE proposed that U1t: Attorney General identify specific comracLors about which she might be concerned; and VDARE could otherwise identify any contractor which might qualify as a "related party" within the meaning of ew York law. VDARE

expressed its desire to make as robust a production as possible proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. The Attorney General rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors.

28.    By letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet-and-confer on the issue.  VDARE advised the Attorney General that the identities of VDARE's contractors are indispensable to its work, and their identities inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks.  VDARE had otherwise advised the Attorney General that the work of its counsel a solo practitioner reviewing all of VDARE's documents himself, to provide documents with redactions was labor-intensive, time-consuming, and ongoing.  VDARE proposed in its letter of October 31  2022 that the parties meet-and-confer to determine if they could find at least a temporary resolution of the issue.

29.    VDARE advised the Attorney General that its concerns were heightened by a letter dated October 11 2022 sent by members of Congress to Attorney General Merrick Garland requesting investigation of apparently undue disclosure of confidential information provided to or otherwise obtained by the Attorney General in another matter. On August, 26, 2022, Politico published confidential information about donors to a conservative political non-profit, Stand for America Inc.  Ac ording to reports, the information came from the Attorney General s office, though the exact leaker is unknown. *https://lwww.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-*

*letitia-james-stand-for-america-ll 662065044.*

30.     Meanwhile in early October 2022 the Attorney General requested that VDARE provide a general outline of electronically-stored files (emails) that VDARE would need to collect for review and produce and begin collecting. VDARE did so, advising that the universe of such files amounted to over 40 gigabytes of data providing a list of email custodians, and otherwise keeping the Attorney General updated as to the status of the review. The emails like VDARE's paper documents, contain information about the identities of contractors whose association with VDARE is not required for any legitimate oversight of VDARE by the Attorney General, and the disclosure of which *would* violate First Amendment protections and risk VDARE s existence.

31.     As for the Attorney General's subpoenas to Facebook Payments and Meta, while VDARE questioned the legitimate purpose of the Attorney General's demands, VDARE withdrew its objection to disclosures provided that no personal identifying information was disclosed and the anonymity of its donors and contributors was protected.

32.     On December 2, 2022, the Attorney General demanded full compliance with its subpoena to VDARE by December 12, 2022, or would deem VDARE to be in non-compliance. Though VDARE had advised the Attorney General about its concerns about unnecessary disclosure of identifies of contractors, the Attorney General demanded that their identities be disclosed. Though the Attorney General had encouraged VDARE to make a rolling production as documents were reviewed resulting in later decisions not to redact some information that had earlier been redacted the Attorney General questioned the validity of VDARE's concerns. Though VDARE had advised the Attorney General that redactions of identities of contractors were intertwined with its records and were

12

otherwise time-consuming and labor intensive to apply the Attorney General demanded by December 12, 2022 a log identifying each redaction of each contractor s identify in VDARE's production (and its prospective production of emails) as a precondition to a meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors.

33.     The Attorney General s position threatens VDARE s existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech.

### COUNT ONE
### Declaratory Relief under the First Amendment

34.     VDARE repeats and re-alleges every allegation in the preceding paragraphs as though frilly set forth herein.

35.     Long established First Amendment precedent establishes the right to associate with a group for "advocacy of both public and *private points of view, particularly controversial ones.' NAACP v. Alabama ex rel. Patterson,* 357 U.S. at 460 (emphasis added). This right is infringed when the identities of anonymous members of a controversial group are sought through a government subpoena. *See id.* at 462 (order requiring association to produce membership list interfered with First Amendment freedom of association).

36.     Imposing on "associational rights" ... "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *American for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2389 (2021).

37.     Subpoenas which could have a chilling effect on its associations with its employees and potential clients' by breaking anonymity are invalid. *See, e.g. Evergreen*

13

*Ass'n, Inc. v. Schneiderman* 153 A.D.3d at 100. *See also Brown v. Socialist Workers '74*

*Committee (Ohio)* 459 U.S. 87 96 (1982) ( Even individuals who receive disbursements for 'merely commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information. Because an individual who enters into a transaction with a minor party purely for commercial reasons lacks any ideological commitment to the party, such an individual may well be deterred from providing services by even a small risk of harassment.' )

38.    The Attorney General has failed to recognize the rights of speech and association of VDARE and its contractors and has rejected reasonable proposals to accommodate VDARE s concerns  which helps demonstrate the Attorney General s true agenda.

### COUNT TWO

**(Violation of VDARE's First and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 by Retaliating Against VDARE Based on Exercise of Its Rights of Freedom of Speech and of Association)**

39.    VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

40.    The First Amendment  which applies to the Attorney General by operation of the Fourteenth Amendment, secures VDARE's right to free speech, including its right to express political beliefs about immigration and related polices of the United States, regardless of whether the Attorney General agrees.

41.    The Attorney General  has expressed her desire to use her power to limit speech with which she disagrees and has cited the First Amendment as an obstacle to her goal.

42.    The Attorney Generals subpoena to VDARE  is an offshoot of the Attorney General's targeting of VDARE  because of its viewpoints.

43.    Government action in retaliation for the exercise of protected speech violates the First Amendment of the United States Constitution. *See Mozzochi v. Borden,* 959 F.2d 1174  1179 (2d Cir. 1992).

44.    "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss a plaintiff must allege ' (1) that the speech or conduct at issue was protected (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adver e action.' *Dolan v. Connolly* 794 F.3d 290, 294 (2d Cir. 2015).

45.    VDARE s expressed viewpoints about immigration and related subjects are protected by the First Amendment.

46.    Subpoenas can constitute the basis of adverse action to show retaliation. *See, e.g. Molefi* v. *Oppenheimer Tr.,* o. 03 CV 5631 FBVVP, 2007 WL 538547, at *4 (E.D.. Y. Feb. 15 2007).

47.    The Attorney General has targeted VDARE in retaliation for constitutionally protected speech.

## COUNT THREE

### (Violation of VDARE's Rights Under Article I, Section 8 of the New York State Constitution by Retaliating Against VDARE Based on Exercise of Its Rights of Freedom of Speech and Association)

48.    VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

49.    Article I, Section 8 of the New York State Constitution secures VDARE's right to free speech, including its right to express political beliefs concerning immigration policy

50.    'The analysis for a retaliation claim under the First Amendment and under Article I§ 8 of the New York State Constitution is the same. *Kuczinski* v. *City of New York* 352 F. Supp. 3d 314 321 (S.D.N.Y. 2019). The Attorney Generals targeting of VDARE constitutes retaliation under the United States and New York Constitutions.

## COUNT FOUR

### (Preliminary and Permanent Injunctions)

51.      VDARE repeats and re-alleges every allegation in the preceding paragraphs as though fully set forth herein.

52.      VDARE seeks and is entitled to a preliminary injunction prior to judgment in this case and a permanent injunction thereafter barring the Attorney General from enforcing her unconstitutional demands.

53.      VDARE will suffer irreparable harm absent such injunctive relief, including disclosure of identities of contractors, which disclosure cannot be undone.

54.      VDARE is likely to prevail on the merits in this litigation.

55.      The balance of equities favors VDARE.

56.      The public interest favors VDARE as the public interest itself lies squarely with the vigorous exercise of First amendment rights.

### DEMAND FOR JURY TRIAL

VDARE hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE VDARE respectfully requests judgment:

I.      On the First Cause of Action, declaring the Subpoenas' attempt to compel First Amendment speech and associational rights unconstitutional

II.      On the Second Cause of Action for compensatory and punitive damages in an amount to be determined at trial;

III.      On the Third Cause of Action, for compensatory and punitive damages in an amount to be determined at trial;

17

        1v.      On the Fourth Cause of Action, to enjoin the Defendant from enforcing

                the subpoena;

        v.       For the costs of this action  attorney's fees and such other further and

                different relief as this court deems just and proper.

Dated:  December 12  2022


Respectfully submitted,

*lsl Andrew J  Frisch*
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street  17th Floor
New York,   ew York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Plaintiff*

## VERIFICATION OF LYDIA BRIMELOW

Pursuant to 28 U.S.C. 1746, Lydia Brimelow declares as follows:

  1.  I am President of VDARE Foundation, Inc., the Plaintiff herein, and a citizen of the United States.

  2.  I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief

  3.  I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 12, 2022

Lydia Brimelow

# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- — — — — — — — — — — — — — — — — — — — — — — — — — — — — x

PEOPLE OF THE STATE OF NEW YORK, by LETITIA
JAMES, Attorney General of the State of New York,

                              Petitioner,

               -against-

**VDARE** FOUNDATION, INC.,

                         Respondent.

- — — — — — — — — — — — — — — — — — — — — — — — — — — x

Index No. 453196/2022

Hon. Sabrina B. Kraus

**Notice of Entry of**
**Decision and Order**

Mot. Seqs. 00I & 002

       **PLEASE TAKE NOTICE** that attached is a true copy of a Decision and Order on

Motion Sequence Nos. 001 and 002 by the Hon. Sabrina Kraus, dated January 23, 2023, which

was duly entered in this action and filed in the office of the Clerk of the Supreme Court, New

York County, on the 23rd day of January, 2023 (Dkt. No. 63).

DATED: January 25, 2023

                               Respectfully submitted,

                               LETITIA JAMES
                               *Attorney General*
                               *of the State of New York*

                               *Is Catherine Suvari*
                               _____

                               Catherine Suvari
                               Assistant Attorney General
                               NYS Office of the Attorney General
                               28 Liberty Street
                               New York, New York 10005
                               Tel. (212) 416-6172
                               Catherine.S uvari@ag.ny.gov

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 61 of 178

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | HON. SABRINA KRAUS | PART | 57TR |
|---|---|---|---|
| | *Justice* | | |

--------×

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK

|  |  |
|---|---|
| INDEX NO. | 453196/2022 |
| MOTION DATE | 1/19/2023 |
| MOTION SEQ. NO. | 001 002 |

Plaintiff,

−v−

VDARE FOUNDATION, INC.,

### DECISION + ORDER ON MOTION

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ×

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59, 60,61

were read on this motion to/for _____ ENFORCEMENT _____

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40, 41,42,43,44,45,46,47,48,49, 50,51, 52,54, 55, 58

were read on this motion to/for _____ DISMISSAL _____

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpoena

duces tecum dated June 23, 2022 (the "Subpoena") issued in conjunction with an investigation

into the activities of Respondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a New York charitable not-for-profit corporation that incorporated in New

York in 1999. In 2000, Respondent, then known as, the Lexington Research Institute, Limited,

applied for and received recognition of its tax-exempt status from the IRS as a 50l(c)(3)

charitable entity. Respondent did not register with the Attorney General's office until 2009.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY        Page 1 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

1  of  11

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in New York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue, from $700,000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle, a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period, Respondent also substantially increased payments to Brimelow and to third-party, for-profit companies he controls. In 2019, Brimelow's reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019, as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brime1ow's residential home address.

In December 2020, Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director, five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a non-profit corporation. Respondent conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation.

Based on the information it had obtained, the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 2 of 11

Case 1:22-cv-01337-FJS-CFH     Document 35-10     Filed 04/10/23     Page 63 of 178

charities. The Subpoena seeks: documents concerning Respondent's organizational structure; compliance conflict-of-interest policy requirements under New York law, and financial operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be withdrawn. On September 19, 2022, new counsel for Respondent agreed to comply with the Subpoena but asserted that a significant volume of electronically-stored and hard copy documents needed to be reviewed. Respondent made its first production that day consisting of 27 documents produced without Bates numbers and bearing unmarked redactions. No log was provided to identify or explain the redactions.

In the twelve weeks since its first September delivery, Respondent has produced approximately 6,000 pages from its hard copy records. It has redacted that material without any explanation for how material was chosen for redaction. Petitioner assets that the redactions are extensive and have been applied across almost every category of document produced, including board meeting minutes, bank statements, internal accounting ledgers, credit card statements, invoices, financial records for the limited liability company (Happy Penguins LLC) from which Respondent has historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow.

On October 31, 2022, Lydia Brimelow represented that, with limited exceptions, Respondent's hard copy production was complete, and identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information. Respondent's counsel stated that review of that material would be completed by

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 3 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDAR.E FOUNDATION, INC.
Motion No.  001 002

3 of 11

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the Northern District of New York against Petitioner [*VDARE Foundation, Inc.* v. *James,* 1:22-cv-01337 (FJS)], alleging, among other things, that Petitioner's demands for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and association. The federal complaint seeks a declaration that Subpoena violates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On December 16, 2022, Petitioner commenced this special proceeding.

## PENDING APPLICATIONS FOR RELIEF

Pf:titioner seeks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding, or alternatively staying the proceeding pending resolution of the Federal Action.[1]

On January 19, 2023, the court heard oral argument on the motions and reserved decision. For the reasons stated below, Petitioner's motion to compel is granted and Respondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its request to a stay pending the Federal Court litigation.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 4 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

4  of  11

Case 1:22-cv-01337-FJS-CFH     Document 35-10     Filed 04/10/23     Page 65 of 178

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(l) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" *(Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143,147,541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35,462 N.Y.S.2d 836,449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law ofN.Y. County Lawyers' Assn.,* 23 N.Y.2d 916,298 N.Y.S.2d 315,246 N.E.2d 166).

*EvergreenAss'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 96 (2017).

The Attorney General has broad and weU-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law §§ 63(12), 175; N-PCL § 112; EPTL § 8-l .4(m). *See also Temple of the Lost Sheep,* 148 Misc. 2d at 828-29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" *(Matter of Dental Coop. v. Attorney-General of State of N.Y.,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "... if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page S of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

5 of 11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 66 of 178

*v. Lefkowitz,* 18 N.Y.2d 977, 979 (1966); *Hogan v. Cuomo,* 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch Inc. v. Abrams,* 71 N.Y.2d 327, 332 (1988)), affd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James,* 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 331-32 **(1988).**

New York State has a public policy interest in ensuring the robust regulation of tax.-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see, e.g.,* N-PCL §§ 202,204,205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 515(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process for managing conflicts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

453196/202.2  **PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF** THE **STATE** OF **NEW YORK  vs. VDARE FOUNDATION,  INC.** Motion No.  001 002

Page 6 of 11

6  of  11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 67 of 178

of Respondent's annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review. The documents called for will permit Petitioner to determine whether there has been any diversion of cha itable assets-for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that, inter alia, a charity does not solicit contributions under false pretenses or use the contributions it receives in a manner that is not "substantially consistent" with the charity's stated purposes. See generally Executive Law§ 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights *(see Matter of Full Gospel Tabernacle v. Attorney-General a/State of NY,* 142 A.D.2d 489,493,536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342, 1346-1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas/or Locals 17,'135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO,* 72 N.Y.2d 307,532 N.Y.S.2d 722,528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent's filings themselves underscore the reasonableness of the Subpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny-Peter Brime]ow, Respondent's founder and director, and his wife, Lydia Brimelow, also a director,

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs.  VDARE FOUNDATION, INC.
Motion No.  001 002                                                          Page 7 of 11

7 of 11

used and continue to use a $1.4 million charitable asset as their personal residence. See Frisch

Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April

2021, however the lease is between Lydia Brimelow and BBB, LLC, a West-Virginia for-profit

corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant.

Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia

Brimelow as manager).

Respondent's motion and accompanying papers fail to meet its burden of establishing the

Subpoena's invalidity. Respondent, which has partially complied with the subpoena for months,

has not established why providing a redaction log for its already-produced documents raises any

First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions are required to protect the identities of

contractors-including writers who contribute to the website-these are precisely the records the

Petitioner seeks to examine in its investigation of Respondent's alleged organizational

misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by

the First Amendment." *Arista Recs., LLC v. Doe 3,* 604 F.3d 110, 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member

is a known contributor. The Attorney General may probe this contributor's compensation as part

of its investigation of conflicts of interest and board independence. And the Attorney General

may seek the identities of other contributors to determine whether further conflicts of interest

may exist.

Respondent's reliance on *Americans for Prosperity v. Bonta,* 141 S.Ct. 2373 (2021), is

equally unavailing. That decision concerned only donor disclosures in statewide annual filing

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                Page 8 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

8 of 11

requirements, while expressly permitting subpoenas seeking the same information as part of a

targeted investigation. *See Ams.for Prosperity Found.,* 141 S. Ct. at 2386-87.  Moreover,

Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further

address any of Respondent's concerns.

Finally, Respondent presents no compe11ing basis for a stay of this proceeding in its

moving papers, and acknowledged at oral argument it has not sought a stay of this proceeding

from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion

to compel is granted.

WHEREFORE it is hereby:

ORDERED Respondent VDARE Foundation, Inc. ("VDARE") shall comply with the

Subpoena, subject to the agreement of July 27, 2022, memorialized in Exhibit R to the

Affirmation of Yael Fuchs at Dkt. No. 22, that VDARE may redact the fo11owing from

otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE)

attendees present at VDARE events conducted at or broadcast from the 276

Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying

information in any responsive record of private contributions to the organization and/or

purchases from the October 16, 2021 "Castle Auction" (transaction amounts, dates, and

other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner's right to seek

modification of these agreed redaction terms by written application to the Court on notice to

VDARE; and it is further

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                    Page 9 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

9 of 11

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 70 of 178

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log; and it is further

ORDERED that on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production; and it is further

ORDERED that the parties, if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court; and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre **Street,** Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh):]; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 10 of 11

10 of 11

ORDERED that this constitutes the decision and order of this court.

1/23/2023
DATE

2023012314542DSBKRAUS0CDM6Q2CD58448FE88AF63FF4E118495

SABRINA KRAUS, J.S.C.

| | | | | |
|---|---|---|---|---|
| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY | REFERENCE |

453196/2022   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 11 of 11
GENERAL OF THE STATE OF NEW YORK vs.  VDARE FOUNDATION, INC.
Motion No.  001 002

11 of 11

# Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  EW YORK
------------------------------------------------------------x

People of the State of  ew York  by LETITIA JAMES
AITORNEY  GENERAL  OF THE STATE OF   EW YORK,


                              Petitioner


                - against -                          **New York County**
                                                     **Index No. 453196/2022**


VDARE FOUNDATIO    INC.


                              Respondent.


----------------------------------------------------------------x

                    PLEASE TAKE  OTICE that respondent VDARE FOUNDATION, INC. hereby

appeals to the App llate Di ision of the upreme Court of the tate of e, York, First Judicial

Departm nt, from a decision and order of the  upreme Court,  ew York ( abrina Kraus, J.S.C.),

dated and entered January 23  2023, a copy of which is annexed hereto. The appeal is taken from

each and every part of the decision  and order as well as the whole thereof.

Dated: February 6, 2023
          ew York, New York


                                        Respectfully submitted,

                                        */s/ Andrew J. Frisch*
                                        A ndr w J. Fri ch
                                        The Law Office  of   ndrew J. Fri ch, PLLC
                                        40 Fulton  treet, 17'''  lo  r
                                          ew York,   e,  York I 0038
                                        (212) 285-8000
                                        *t!frisch@andre1,1ifri.   cl?.com*

                                        *Allorneysfor Re pondenl*

To:  Office of the Attorney General

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. SABRINA KRAUS**                          PART          **57TR**

                                                                  *Justice*

- - - - - - - - - - - - - - - -  - - - - - - - - - - - - - - - - - - - - - X      **INDEX NO.**          453196/2022

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA        **MOTION DATE**          1/19/2023
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK                                                           **MOTION SEQ. NO.**      001 002

                                                    Plaintiff,

                           - v -
                                                                        **DECISION + ORDER ON**
VDARE FOUNDATION, INC.,                                                        **MOTION**

                                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 33, 53, 56, 57, 59,
60, 61

were read on this motion to/for                          _____ENFORCEMENT_____

The following e-filed documents, listed by NYSCEF document number (Motion 002) 36, 37, 38, 39, 40,
41, 42, 43, 44, 45, 46, 47, 48,  49, 50,  51, 52, 54, 55, 58

were read on this motion to/for                          _____DISMISSAL_____

## BACKGROUND

Petitioner commenced this special proceeding to compel compliance with a subpo na.

duces tecum dated June 23, 2022 (the" ubpoena") issued in conjunction with an investigation

into the activiti    of R spondent, a not-for-profit corporation.

## ALLEGED FACTS

Respondent is a    ew York charitable not-for-profit corporation that incorporated in    ew

York in 1999. In 2000, Respondent, th n known as. th  Lexington Research Institute, Limited,

applied for and received recognition of its tax-exempt status from the IRS as a 501(c)(3)

charitable entity. Respondent did not register with the Attorney General's office until 2009.

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 1 of 11

In its application for federal tax-exempt status, Respondent stated its plan to operate from offices in New York and listed two of its four directors at addresses in ew York City. Respondent described its primary purpose as creating a publication web page and magazine, with editorial content focusing on foreign and domestic policy issues.

In 2019, Respondent reported a six-fold increase in revenue from $700 000 in 2018 to approximately $4.3 million in 2019 and including a $1.5 million lump donation from a donor-advised fund. In early 2020, Respondent spent $1.4 million of these newly received funds on the purchase of the Berkeley Springs Castle a medieval-style castle located in West Virginia.

Public postings by Respondent Chairman Peter Brimelow and others indicate that he and his family have used the castle as their primary residence since at least March 2020. During this same period Respondent also substantially increased payments to Brimelow and to third-party for-profit companies he controls. In 2019, Brirnelow s reported salary more than doubled and comprised roughly one third of Respondent's operating expenditures. Respondent separately reported spending tens of thousands of dollars on office expenses in 2019 as well as paying hundreds of thousands of dollars to a third-party LLC controlled by Brimelow that was based at Brimelow's residential home address.

In December 2020 Respondent conveyed the entirety of the Berkeley Springs Castle property to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a Respondent director five months earlier. Respondent conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF) a non-profit corporation. Respondent conveyed the remaining land consisting ot' eight parcels, to BBB LL , a for-profit corporation.

Based on the information it had obtained the Attorney General began an investigation of Respondent and its leadership for potential violations of the New York law applicable to

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 2 of 11

charities. The Subpoena seeks: documents concerning Respondent's organizational structure;

compliance conflict-of-interest policy requirements under New York law and financial

operations; its purchase and conveyance of the Berkeley Springs Castle; and transactions

between Respondent and entities controlled by the Brimelows.

Respondent originally took the position that the Subpoena was unlawful and should be

withdrawn. On September 19 2022, new counsel for Respondent agreed to comply with the

Subpoena but asserted that a significant volume of electronically-stored and hard copy

documents needed to be reviewed. Respondent made its first production that day consisting of 27

documents produced without Bates numbers and bearing unmarked redactions.    o log was

provided to identify or explain the redactions.

In the twelve weeks since its first September delivery  Respondent has produced

approximately 6 000 pages from its hard copy records. It has redacted that material without any

explanation for how material was chosen for redaction.  Petitioner assets that the redactions are

extensive and have been applied across almost every category of document produced, including

board meeting minutes, bank statements  internal accounting ledgers  credit card statements

invoices  financial records for the limited liability company (Happy Penguins LLC) from which

Respondent has historically leased Peter Brimelow's services, and bank statements to accounts

held personally by Peter and Lydia Brimelow.

On October 31  2022  Lydia Brimelow represented that, with limited exceptions

Respondent s hard copy production was complete, and identified 22 unique email accounts

containing approximately 40 gigabytes of potentially responsive electronically stored

information. Respondent's counsel stated that review of that material would be completed by

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.     Page 3 of 11
Motion No.  001 002

3 of 11

November 21, 2022. Respondent subsequently proposed December 12, 2022, as a new deadline for completing email production.

On December 2, 2022, Petitioner wrote to Respondent, summarizing its concerns with the pace and scope of the production, including its extensive redactions, and demanded that Respondent complete its subpoena compliance and produce a redaction log by December 12, 2022.

On December 12, 2022, Respondent filed an action in United States District Court for the orthern District of New York against Petition r [*VDARE Foundation, Inc. v. James* 1:22-cv-O1337 (F**JS)],** alleging, among other things, that Petition r's demand for certain disclosures threaten Respondent's ability to conduct business; and that Petitioner's subpoena is a retaliatory pretext aimed at interfering with Respondent's rights to freedom of speech and as ociation. The federal complaint seeks a declaration that Subpoena iolates Respondent's first amendment rights, an injunction preventing Petitioner's enforcement of the Subpoena and damages.

On Dec mber 16, 2022 Petition r comm need this special proc eding.

## PENDING APPLICATIONS FOR RELIEF

Petition r s eks an order compelling Respondent to comply with the investigative Subpoena duces tecum dated June 23, 2022.

Respondent has moved for an order dismissing this proceeding or alternati ly staying the proceeding pending resolution of the Federal Action.[1]

On Januaiy 19, 2023, the court heard oral argument on the motions and reserved decision. *For* the reasons stated below, Petitioner' motion to compel is grant ct and R spondent's motion for a stay or dismissal is denied.

---

[1] At argument Respondent withdrew its request for dismissal and limited its reque t to a stay pending the Federal Court litigation.

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 4 of 11

4 f 17

## DISCUSSION

The requirements for the issuance of an investigatory subpoena duces tecum are "(l) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry" *(Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d 143, 147, 541 .Y.S.2d 856; citing *Matter of Levin v. Murawski,* 59 N.Y.2d 35,462 .Y.S.2d 836,449 .E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y County Lawyers' Assn.,* 23 .Y.2d 916, 298 N.Y.S.2d 315,246 .E.2d 166).

*Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 96(2017).

The Attorney General has broad and well- stablished authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. Exec. Law§§ 63(12), 175; N-PCL § 112; EPTL § 8-l.4(m). *See also Temple of the Lost Sheep,* 148 Misc. 2d at 828-29. "Moreover, in evaluating the Attorney General's justification for the issuance of a subpoena, there is a presumption that (s)he is acting in good faith" *(Matter of Dental Coop. v. Attorney-General of State of N.Y,* 127 A.D.2d 274, 280; *see Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.,* 147 A.D.2d at 147). The party challenging a subpoena issued by the Attorney General bears the burden of establishing the subpoena's invalidity. *Id.* at 828

CPLR §2308(b) provides "... if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

In evaluating the propriety of an investigative subpoena, New York courts apply a deferential standard of review: it is presumed that the Attorney General acts in good faith. *Ryan*

**453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. Motion No. 001 002**                    Page 5 of 11

c; ,..-F  77

*v. Lefkowitz,* **18** N.Y.2d 977,979 (1966); *Hogan v. Cuomo,* 67 A.D.3d 1144, 1145 (3d Dep't 2009); *Anheuser-Busch. Inc. v. Abrams,* 71 .Y.2d 327, 332 (1988)), affd 205 A.D.3d 625 (2022).

Petitioner's subpoena request must demonstrate a "reasonable relationship to the subject matter under investigation and the public interest to be served." *Giardina v. James,* 185 A.D.3d 451 (1st Dep't 2020). A party must respond to an investigative subpoena unless the information sought is "utterly irrelevant to any proper inquiry." *Anheuser-Busch, Inc. v. Abrams,* 71 .Y.2d 327, 331-32 (1988).

ew York State has a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like Respondent and Petitioner has authority to supervise and investigate such entities when misconduct is suspected.

Petitioner's Subpoena is focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations. The Not-for-Profit Corporation Law, for example, provides that entities like Respondent may be formed only for charitable purposes, *see, e.g.,* N-PCL §§ 202, 204, 205, and that charitable assets may not be distributed to members, directors or officers, N-PCL § 5I5(a). Charitable entities are also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set (N-PCL § 515(b)); processes for acquisition and "sale or other disposition" of property (N-PCL §§ 509, 510, 511 and 511-a); creating and presenting complete and accurate financial reports (N-PCL §§ 519, 520); a process for considering related party transactions (N-PCL § 715); and a process tor managing contl icts of interest. (N-PCL § 715-a).

The Subpoena's requests demand the type of material that will permit Petitioner to determine whether Respondent has complied with these requirements, including complete copies

453196/2022 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No. 001 002

Page 6 of 11

of Respondent's annual regulatory filings financial transaction records compensation records and records of Board meetings and review. The documents called for will pennit Petitioner to determine whether there has been any diversion of charitable assets-for example through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries. Article 7-A of the Executive Law authorizes the Attorney General to supervise charitable organizations that solicit in New York, and Article 7-A requires the Attorney General to monitor such organizations to ensure that inter alia, a charity does not solicit contribution under false pretenses or use the contributions it receives in a manner that is not' substantially consistent" with the charity's stated purposes. See generally Executive Law§ 172-d.

Respondent has raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights *(see Matter of Full Gospel Tabernacle v. Attorney-General of State of N.Y.,* 142 A.D.2d 489,493,536 N.Y.S.2d 201; *St. German of Alaska E. Orthodox Catholic Church v. United States,* 653 F.Supp. 1342 1346-1347 [S.D.N.Y.]; *see also Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO,* 72 N.Y.2d 307, 532 N.Y.S.2d 722, 528 N.E.2d 1195). However, Respondent makes this argument on behalf of its donors and Petitioner has agreed, initially to redact donors' and volunteers' identities. Respondent has not established that the Subpoena would impair Respondent's own First Amendment rights.

Additionally, Respondent s filings themselves underscore the reasonableness of the ubpoena. Respondent admits the critical facts that first triggered Petitioner's scrutiny- Peter Brimelow, Respondent's founder and director and his wife, Lydia Brimelow also a director

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY                Page 7 of 11
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

7 of 11

used and continue to use a 1.4 million charitable asset as their personal residence. See Frisch Aff. (Doc. No. 37).

Respondent argues that the Brimelows paid rent to live in the cottage beginning in April 2021, however the lease is between Lydia Brimelow and BBB LLC, a West-Virginia for-profit corporation she manages, and Lydia Brimelow signed the document as both landlord and tenant. Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager).

Respond nt's motion and accompanying papers fail to meet its burden of establishing the Subpoena's invalidity. Respondent which has partially complied with the subpoena for months, has not established why providing a redaction log for its already-produced documents raises any First Amendment concerns or why continuing production would pose a threat to its existence.

Although Respondent argues that redactions ar required to protect the identities of contractors-including writers who contribute to the website-these are precisely the records the Petition r seeks to examine in it in estigation of Re pendent's alleged organizational misconduct. To the extent anonymity is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3,604* F.3d 110 118 (2d Cir. 2010).

For example, the only board member among four who is not a Brimelow family member is a known contributor. The Attorney General may probe this contributor's comp n ation a part of its investigation of conflicts of interest and board indep ndenc . And the Attorney General ma seek the identities of other contributors to determin whether further conflicts of interest may xisc.

Respondent' reliance on *Americans for Prosperity v. Banta,* 141 S.Ct. 2373 (2021), is equally tmavailing. That decision concerned only donor disclosures in statewide annual filing

requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. *See Ams. for Prosperity Found.,* 141 S. Ct. at 2386-87.  Moreover, Petitioner has indicated a willingness to enter into a stipulation /order of confidentiality to further address any of Respondent's concerns.,

Finally Respondent presents no compelling basis for a stay of this proceeding in its moving papers and acknowledged at oral argum nt it bas not sought a stay of this proceeding from the Federal District Court.

Based on the foregoing, Respondent's motion for a stay is denied and Petitioner's motion to compel is granted.

WHEREFORE it is hereby:

ORDERED R spondent VDARE Foundation, Inc. ("VDARE") shall comply with the Subpoena, subj ct to the agreement of July 27, 2022, memorialized in Exhibit R to the Affirmation of Yael Fuch at Dkt.  o. 22, that VDARE may redact the following from oth rwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any respon ive record of private contributions to the organization and/or purchases from the October 16, 2021 "Castle uction" (transaction amounts, dates, and other details must be disclosed); and it is further

ORDERED that such redactions are without prejudice to Petitioner' right to seek modification of th se agreed redaction terms by written application to th owt on notice to VDARE; and it is further

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK  vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 9 of 11

9 of 11

ORDERED that on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to Petitioner, in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3l 22(b) log; and it is further

ORDERED that on or before February 24 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter (Dkt. No. 26); on or before February 24 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3l 22(b) to identify the redactions, if any, applied to such production· and it is further

ORDERED that the parties if so advised, may forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court· and it is further

ORDERED that, within 20 days from entry of this order, Petitioner shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing' page on the court's website at the address www.nycourts.gov/supctmanh);] and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

45319612022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 10 of 11

111  ,-,,F  11

ORDERED that this constitutes the decision and order of this court.

2023012314542DSBKRAUS6C94602CD5844BFE88AF03FF4E118495

_____1/23/2023_____
DATE

SABRINA KRAUS, J.S.C.

CHECK ONE:            [X] CASE DISPOSED              [ ] NON-FINAL DISPOSITION
                     [X] GRANTED    [ ] DENIED       [ ] GRANTED IN PART          [ ] OTHER
APPLICATION:          [ ] SETTLE ORDER               [ ] SUBMIT ORDER
CHECK IF APPROPRIATE: [ ] INCLUDES TRANSFER/REASSIGN [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE

453196/2022  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC.
Motion No.  001 002

Page 11 of 11

# upr.em.e Qtnurt nf t4.e  tut.e nf N.ew lnrk

# l\pp.ellut.e iiutsinn: First   iuhirial i.epurtm.ent

Informational Statement (Pursuant to 22    YCRR 1250.3 [a]) - Civil

C.l,e ritle: Set l'onh lllL' titk of the c.:ase as it appears 011 tllL' summons. notin.· ot''pc.:tit1011 or onk-r to shO\\ c.:ause b  11hich the mailer 11,h or is lo be c.:tllllllllL'llced 'oi a, amended

| | For Court of Original Instance |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK | |
| - against - | Date Notice of Appeal Filed |
| VDARE FOUNDATION, INC. | |

**For Appellate Division**

**Case Type**     Iiling Ipc

☐ Civil Action                    ☐ CPLR article 78 Proceeding          Appeal                ☐ Transferred Proceeding
☐ CPLR article 75 Arbitration        Special Proceeding Other          ☐ Original Proceedings       ☐ CPLR Article 78
                                 ☐ Habeas Corpus Proceeding        ☐ CPLR Article 78          ☐ faecutive Law § 298
                                                               0 Eminent Domain          0 CPLR 5704 Review
                                                               ☐ Labor Law 220 or 220-b
                                                               0 Public Officers Law§ 36
                                                               0 Real Property Tax Law§ 1278

**N.tturc of Suit:** Check  up to three **or the**  folkm ing categories\\ hich best relkcl the natun: of thl.' case

| | | | |
|---|---|---|---|
| ☐ Administrative Review | ☐ Business Relationships | ☐ Commercial | ☐ Contracts |
| ☐ Declaratory Judgrnent | ☐ Domestic Relations | ☐ Election Law | ☐ Estate Matters |
| ☐ Family Court | ☐ Mortgage Foreclosure | Miscellaneous | ☐ Prisoner Discipline & Parole |
| ☐ **Real Property** *(other than foreclosure)* | ☐ Statutory | ☐ Taxation | ☐ **Torts** |

Informational Statement - Civil

Appea

| Paper Appealed From (Check one only): | If an appeal has been taken from more than one order or judgment by the filing of this notice of appeal, please indicate the below information for each such order or judgment appealed from on a separate sheet of paper. |
|---|---|

| | | | |
|---|---|---|---|
| ☐ Amended Decree | ☐ Determination | ☐ Order | ☐ Resettled Order |
| ☐ Amended Judgement | ☐ Finding | ☐ Order & Judgment | ☐ Ruling |
| ☐ Amended Order Decision | ☐ Interlocutory Decree | ☐ Partial Decree | ☐ Other (specify): |
| | ☐ Interlocutory Judgment | ☐ Resettled Decree | |
| ☐ Decree | ☐ Judgment | ☐ Resettled Judgment | |

| Court: | Supreme Court | County: | New York |
|---|---|---|---|
| Dated: | 01/23/2023 | Entered: | January 23, 2023 |
| Judge (name in full): | Sabrina Kraus | Index No.: | 453196/2022 |
| Stage: ☐ Interlocutory  ☐ Final  ☐ Post-Final | | Trial: ☐ Yes  ☐ No  If Yes: ☐ Jury  ☐ Non-Jury | |

Prior Unperfected Appeal and Related Case Information

Are any appeals arising in the same action or proceeding currently pending in the court?  ☐ Yes  ☒ No
If Yes, please set forth the Appellate Division Case Number assigned to each such appeal.

Where appropriate, indicate whether there is any related action or proceeding now in any court of this or any other jurisdiction, and if so, the status of the case:
A related matter is pending in United States District Court for the Northern District of New York in VDARE Foundation, Inc. v. Letitia James in her official capacity as the Attorney General of the State of New York, 1:22-cv-01337-FJS-CFH. The Attorney General's motion to dismiss the proceeding is pending and not yet fully briefed.

Original Proceeding

| Commenced by:  ☐ Order to Show Cause  ☐ Notice of Petition  ☐ Writ of Habeas Corpus | Date Filed: |
|---|---|
| Statute authorizing commencement of proceeding in the Appellate Division: | |

Proceeding Transferred Pursuant to CPLR 7804(g)

| Court: | Choose Court | County: | Choose County |
|---|---|---|---|
| Judge (name in full): | | Order of Transfer Date: | |

CPLR 5704 Review of Ex Parte Order:

| Court: | Choose Court | County: | Choose County |
|---|---|---|---|
| Judge (name in full): | | Dated: | |

Description of Appeal, Proceeding or Application and Statement of Issues

Description: If an appeal, briefly describe the paper appealed from. If the appeal is from an order, specify the relief requested and whether the motion was granted or denied. If an original proceeding commenced in this court or transferred pursuant to CPLR 7804(g), briefly describe the object of proceeding. If an application under CPLR 5704, briefly describe the nature of the ex parte order to be reviewed.
Appellant appeals from an order of the Supreme Court, New York County (Kraus, J.), dated January 23, 2023, which (a) denied VDARE's application to stay the proceeding below pending resolution of VDARE's first-filed action against the Attorney General of the State of New York (the "OAG") in VDARE Foundation, Inc. v. Letitia James, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.); and (b) granted the OAG's motion to compel VDARE, beginning on February 10, 2023, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

Informational Statement - Civil

Issues:  Specify the issues proposed to be raised on the appeal, proceeding, or application for CPLR 5704 review, the grounds for reversal, or modification to be advanced and the specific relief sought on appeal.

Appellant's on appeal intends to argue that the court should have (a) stayed this proceeding pending resolution of Appellant's first-filed action against the OAG in VDARE Foundation, Inc. v. Letitia James, 1:22-cv-01337 (N.D.N.Y.) (Scullin, U.S.D.J.); and (b) denied the OAG's motion to compel VDARE, beginning on February 10, 2023, to produce materials to the OAG protected by the rights to speech and association guaranteed by the federal and state constitutions.

## Party Information

Instructions:  Fill in the name of each party to the action or proceeding, one name per line.  If this form is to be filed for an appeal, indicate the status of the party in the court of original instance and his, her, or its status in this court, if any.  If this form is to be filed for a proceeding commenced in this court, fill in only the party's name and his, her, or its status in this court.

| No. | Party Name | Original Status | Appellate Division Status |
|---|---|---|---|
| 1 | VDARE FOUNDATION, INC. | Respondent | Appellant |
| 2 | Attorney General of the State of New York | Petitioner | Respondent |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |

Informational Statement - Civil

| Attorney Information |
|---|

Instructions: Fill in the names of the attorneys or firms for the respective parties. If this form is to be filed with the notice of petition or order to show cause by which a special proceeding is to be commenced in the Appellate Division, only the name of the attorney for the petitioner need be provided. In the event that a litigant represents herself or himself, the box marked "Pro Se" must be checked and the appropriate information for that litigant must be supplied in the spaces provided.

| | |
|---|---|
| Attorney/Firm Name: Andrew J. Frisch/ The Law Offices of Andrew J. Frisch, PLLC | |
| Address: 40 Fulton Street, 17th Floor | |
| City: New York | State: New York | Zip: 10038 | Telephone No: 212-285-8000 |
| E-mail Address: afrisch@andrewfrisch.com | |
| Attorney Type: Retained ☐ Assigned D Government ☐ Pro Se ☐ Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): / | |
| Attorney/Firm Name: Assistant Attorney General Yael Fuchs/ Attorney General of the State of New York | |
| Address: 28 Liberty Street | |
| City: New York | State: New York | Zip: 10005 | Telephone No: 212-416-8391 |
| E-mail Address: yael.fuchs@ag.ny.gov | |
| Attorney Type: D Retained D Assigned Government ☐ Pro Se ☐ Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): | |
| Attorney/Firm Name: | |
| Address: | |
| City: | State: | Zip: | Telephone No: |
| E-mail Address: | |
| Attorney Type: ☐ Retained ☐ Assigned ☐ Government D Pro Se D Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): | |
| Attorney/Firm Name: | |
| Address: | |
| City: | State: | Zip: | Telephone No: |
| E-mail Address: | |
| Attorney Type: ☐ Retained ☐ Assigned ☐ Government ☐ Pro Se ☐ Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): | |
| Attorney/Firm Name: | |
| Address: | |
| City: | State: | Zip: | Telephone No: |
| E-mail Address: | |
| Attorney Type: ☐ Retained D Assigned ☐ Government ☐ Pro Se D Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): | |
| Attorney/Firm Name: | |
| Address: | |
| City: | State: | Zip: | Telephone No: |
| E-mail Address: | |
| Attorney Type: ☐ Retained D Assigned ☐ Government ☐ Pro Se D Pro Hae Vice | |
| Party or Parties Represented (set forth party number(s) from table above): | |

Informational Statement - Civil

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

People of the State of  ew York, by LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,


                        Petitioner,


          - against -                                   **New York County**
                                                        **Index No. 453196/2022**


VDARE FOUNDATIO , INC.

                        Respondent.


------------------------------------------------------------------x

## AFFIRMATION OF SERVICE

**ANDREW J. FRISCH,** an attorney duly admitted to practice in the courts of the State of

 ew York since 1985 affirms the following statements to be true under penalty of perjury:

1.  I am an attorney duly admitted to practice in the State of  ew York, am over the age

of 18 years, and am not a party to this action.

2.  On February 6, 2023, I served the within  OTICE OF APPEAL via  YSCEF within

the State of  ew York addressed to counsel of record for the Office of the Attorney General as

set forth in a Notice of Appearance at NYSCEF Docket  o. 34:

Yael Fuchs, Co-Section Chief, Enforcement
Charities Bureau Assistant Attorney General
28 Liberty Street
New York, New York 10005
*yael.fuchs@ag.ny.gov*


Dated: February 6, 2023

                              *Isl Andrew J  Frisch*
                              Andrew J. Frisch

# Exhibit E

The Law Offices of
## ANDREW J. FRISCH, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000

February 6, 2023

*Via Electronic Mail*

Yael Fuchs, Co-Section Chief, Enforcement
Charities Bureau Assistant Attorney General
28 Liberty Street
New York, New York 10005
*yael.fuchs@ag.ny.gov*
*:*

      *Re:  Attorney General of the State of New York v. VDARE Foundation, Inc.;*
           *Index Number 453196/2022*

Counsel:

      I write to provide you with notice that my office will be presenting an order to show cause to the Appellate Division of the Supreme Court of the State of New York, First Department, located at 27 Madison Avenue, New York, New York 10010, on a date and time to be set by the Appellate Division.

      The order to show cause will seek relief pursuant to CPLR 5519 and the inherent powers of the Court staying enforcement of an order dated January 23, 2023.

      A copy of the supporting papers will be provided to you when they are complete.

      Respectfully submitted,

      */s/ Andrew J. Frisch*
      Andrew J. Frisch

# Exhibit F



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
28 LIBERTY STREET
NEW YORK, NEW YORK 10005

### *SUBPOENA DUCES TECUM*
### THE PEOPLE **OF** THE STATE **OF** NEW YORK

To:      Custodian of Records
         VDARE Foundation, Inc.
         447 South Street
         Litchfield, CT 06759

     **You ARE HEREBY COMMANDED,** pursuant to the laws of the State of New York and all business and excuses being laid aside, to produce to the Office of the Attorney General of the State of New York, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the Instructions and Definitions below, any and all documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of entities that You own or control in whole or in part. Your production of documents in response to this subpoena should be addressed to the attention of Catherine Suvari, Assistant Attorney General, Charities Bureau, and may be submitted by mail or electronic mail provided it is received by **July 25, 2022,** or any agreed upon adjourned date thereafter.

     **PLEASE TAKE NOTICE** that the Attorney General deems the documents and testimony requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

     **PLEASE TAKE FuRTHER NOTICE** that disobedience of tbjs subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject VDARE Foundation, Inc. ("VDARE") to prosecution under New York law.

     **PLEASE TAKE FURTHER NOTICE** that VDARE shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. VDARE shall also issue document preservation letters for all documents relating to the subject matter of this subpoena to the following individuals: Peter Brimelow, Lydia Brimelow, John Brimelow, Scott McConnell, John O'Sullivan, Joseph (Joe) Fallon, John Wall, T.M. Byxbee Company, P.C., and Labyrinth, Inc. (Additional subpoenas may follow.)

 

**WITNESS, the  Honorable Letitia James**, Attorney General of the State of New York, this 23rd day of June, 2022.


By: */s/ Catherine Suvari*

Catherine Suvari
Assistant Attorney General, Charities Bureau
Catherine.Suvari@ag.ny.gov
(212) 416-6172

## SCHEDULE

### A. Instructions

1. Please produce the Documents described in Section C of this schedule, in the accordance with the Instructions (Section A), Definitions (Section B) and Format (Section D) described below.

2. <u>Time Frame.</u> Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January l, 2016 through the present** (the "Relevant Period").

3. <u>Continuing Obligation.</u> The obligation to produce Documents pursuant to this Subpoena is a continuing one. Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4. All Documents shall be produced either as kept in the ordinary course of business or with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is respons1ve.

5. <u>Documents No Longer in Your Possession.</u> If any Document requested was formerly in Your possession, custody or control but is no longer available or no longer exists, submit a statement in writing and under oath that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the date on which the Document was prepared, transmitted or received; (v) specifies the date on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

6. <u>Privilege.</u> If any Document requested is withheld on the ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production. If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors). Such statement (or log) shall accompany each production. Further, for each Document withheld pursuant to this paragraph, the relevantproduction shall include placeholder pages equivalent in number to the page-length of the withheld Document.

7. <u>Format for Production.</u> Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in electronic form in

accordance with the instructions and criteria set forth in Section D and Attachment 1 below.

8. <u>Certification</u>. In order for Your response to this subpoena to be complete, it must include a completed version of the attached Certification. In accordance with CPLR 3122-a, the Certification must be sworn in the form of an affidavit and subscribed by a qualified witness charged with the responsibility for maintaining the records, stating in substance that (a) s/he is the duly authorized custodian or other qualified witness and has the authority to make the certification; (b) to the best of his/her knowledge, after reasonable inquiry, the records or copies thereof are accurate versions of the documents described in this subpoena that are in Your possession, custody, or control; (c) to the best of his/her knowledge, after reasonable inquiry, the records or copies produced represent all the documents described in this subpoena, or if they do not represent a complete set of the documents subpoenaed, an explanation of which documents are missing and a reason for their absence is provided; and (d) the records or copies produced were made by the personnel or staff of the business, or persons acting under their control, in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein, or within a reasonable time thereafter, and that it was the regular course of business to make such records.

**B. Definitions**

1. "All" shall mean "each and every."

2. "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

3. "Any" shall mean "any and all."

4. "Communications" shall refer to any oral, written, in person, or any other form of relay, transmission, or transference of information by any means whatsoever including but not limited to by way of mail, computer, telephone, cellular or mobile phone, voice mail, electronic mail, radio, video, sound recordings, television, telefax, telex, social media, or any other medium, and shall include any Document that abstracts, digests, transcribes, records, or reflects any of the foregoing.

5. "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

6. "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including: originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires,

telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche; storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations. A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

7. "VDARE", "You", or "Your" shall mean VDARE Foundation, Inc. and (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, including Lexington Research Institute, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with VDARE Foundation, Inc., including by possessing, directly or indirectly, the power to direct or cause the direction of VDARE Foundation, Inc.'s management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

8. The singular form of any word shall include the plural and vice versa.

9. Any word used but not defined in this Schedule shall be construed consistently with its common meaning.

**C. Documents to be Produced**

1. Copies of VDARE's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from 1999 through the present.

2. Copies of the two most recent [RS Form 990s filed by VDARE with the Internal Revenue Service.

3. Copies of the transcripts to each deposition taken in the litigations between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings.

4. Documents sufficient to Identify (i) the names and addresses of VDARE's current and fonner employees, their titles, and their dates of employment; (ii) VDARE's current and former volunteers, their titles, and their dates of service; (iii) VDARE's current and former independent contractors and their dates of service; and (iv) VDARE's current and former officers and directors, their titles, and the period during which they held their positions.

5. All minutes of any meetings convened by the full VDARE Board of Directors or any committee thereof from 1999 through the present.

6. All Documents circulated for Board consideration or review.

7. All Documents concerning (i) compensation, including salary, wages, expense reimbursements, royalties, fees, bonuses, deferred compensation, pension and retirement

funds paid to any Officers and/or Directors; (ii) reimbursements or payments made to any Officer and/or Directors of or for travel-related expenses (u.,automobile purchases or leases, fuel, tolls, parkjng, push, and non-automobile transportation such as air and subway fare); (iii) insurance benefits (u., medical, dental, automobile, life, malpractice and disability) paid to any Officers and/or Directors; (iv) vacation pay, and/or vacation, sick, and personal leave time or payment therefor paid to any Officers and/or Directors; (v) severance pay or benefits paid to any Officers and/or Directors; (vi) any other payment or reimbursement paid to any Officers and/or Directors for services performed by them on behalf of VDARE, including any solicitation of funds; and (vii) all forms W-2 and 1099 issued to any Officers and/or Directors.

8.  Documents reflecting any solicitation of funds on VDARE's behalf, in any format, . hard copy mailers or solicitations or online fundraising such as GoFundMe or Kickstarter.

9.  All VDARE written policies, manuals, and/or procedures, including all policies related to conflicts of interest.

10. All Documents concerning or relating to setting, directing, paying, or adjusting any Officer's compensation.

11. All Documents concerning or relating to setting, directing, paying, or adjusting the compensation for Peter Brimelow, or any other employee, officer, director, consultant or vendor of VDARE.

12. All Documents concerning or reporting conflicts of interest "required to be disclosed annually" as set forth in responses to Question I2(b) on Part VJ of VDARE's 2019 Form 990.

13. All Documents concerning or reflecting any effort by VDARE to "regularly and consistently monitor and enforce compliance with" the conflicts of interest policy as set forth in response to Question 12(c) on Part VI ofVDARE's 2019 Form 990.

14. All Documents concerning or reflecting the purchase of 276 Cacapon Road, Berkeley Springs, West Virginia by or on behalf ofVDARE.

15. All Documents concerning or reflecting any representation to the State of West Virginia, the Town of Bath, West Virginia, or the County of Morgan, West Virginia regarding the taxation and/or use of 276 Cacapon Road, Berkeley Springs, West Virginia for charitable purposes.

16. All Documents concerning VDARE events (recorded or live) conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages), all records of any sales made during the event(s), and Documents sufficient to account for all funds received and disbursed because of such events.

17. All Documents concerning VDARE events (recorded or live) scheduled to be conducted at or broadcast from the 276 Cacapon Road, Berkeley Springs, West Virginia property, including all Communications (including emails and text messages) and Documents sufficient to account for all funds received and disbursed because of such scheduled events.

18. All Documents recording, reporting, considering or addressing conflicts of interest as reported on Schedule O of any IRS 990 form.

19. All director and officer insurance policies and any Documents relating to claims made on such policies.

20. Any claims for indemnification or defense by officers or directors upon VDARE.

21. All financial records of VDARE, including its books and records, general ledger, bank statements, credit card statements, debit card statements and receipts, copies of checks (front and back), canceled checks, account opening Documents, and Communications.

22. Documents sufficient to identify VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

23. Documents sufficient to identify all persons who have or had access to and/or control of VDARE's bank accounts, credit card accounts, website accounts, and accounts with credit card processing.

24. All audits, reports, reviews, corrective action plans or correspondence (including emails and text messages) issued to VDARE by any accounting firm or auditor, administrator, monitor, or any local, state, or federal agency or governmental or administrative entity.

25. Copies of any orders, judgments, cease and desist letters, or other Documents issued by any governmental entity or court regarding any alleged or confirmed wrongdoing, and any written settlement agreements executed in connection with the same.

26. Documents sufficient to identify any personal or business relationship between any current or former officer, director, or employee of VDARE, on the one hand, and any officer, director, employee, or contractor of VDARE, on the other hand.

27. All Communications between VDARE and the IRS, or between VDARE and any other local or state taxation authority.

28. All Communications between VDARE and any state or federal agency.

29. All Communications between VDARE and any of its accountants or auditors.

30. All Communications by VDARE or any of its agents regarding the Berkeley Castle Foundation, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of Berkeley Castle Foundation, Inc.

31. All Communications by VDARE or any of its agents regarding the BBB, LLC, including all emails and text messages exchanged by VDARE, its principals, or agents, and any copies of any documents filed with any state or federal agency by VDARE or its agent on behalf of BBB, LLC.

32. All records of transactions between BBB LLC and VDARE including books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

33. All records of transactions between Berkeley Castle Foundation, Inc. and VDARE including its books and records, general ledger, bank statements, credit card statements, copies of checks (front and back), canceled checks, and Communications.

34. Copies of BBB LLC's certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports from BBB's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

35. Copies of Berkeley Castle Foundation, Inc. certificates of incorporation, certificates of amendment, by-laws, any Documents related to all "d/b/a" names, and any annual reports, from Berkeley Castle Foundation's incorporation to the present, in the custody and control of VDARE, its principals, or its agents.

36. All records relating to real estate transactions between VDARE and Berkeley Castle Foundation, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

37. All records relating to real estate transactions between VDARE and Berkeley Springs Castle, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

38. All records relating to real estate transactions between VDARE and BBB, LLC, including all contracts, agreements, promissory notes, mortgages, loan documents, deeds, deeds of trust, property value assessments, title searches, title insurance, other insurance agreements, inspections, and Communications.

39. All records of renovations, improvements, construction, landscaping, or any other work done since February 14, 2020, on the real property described in the February 14, 2020 deed between Berkeley Springs Castle, LLC, and VDARE. Such records shall include without limitation all invoices, contracts, estimates, bids, requests for bids, copies of checks (front and back), and Communications.

40. All records concerning the October 16, 2021 "Castle Auction," including all Communications (including emails and text messages), all records of sales made, copies of checks (front and back), valuations of auction items, and Documents sufficient to account for all funds received and disbursed because of the Auction.

41. All records of and Communications concerning any loans VDARE made to Berkeley Castle Foundation, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

42. All records of and correspondence concerning any loans VDARE made to BBB, LLC, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text Communications.

43. All records of and Comnuwications concerning any loans Peter or Lydia Brimelow (individually or collectively) made to VDARE, including promissory notes, mortgages, deeds of trust, agreements, records of repayment, copies of checks (front and back), bank statements, email, and text correspondence.

44. All records of and correspondence concerning any loans VDARE made to Peter or Lydia Brimelow (individually or collectively), including promissory notes, mortgages, deeds of

trust, agreements, records ofrepayment, copies of checks (front and back), bank statements, email, and text Communications.

**D. Format for Production**

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1. <u>Concordance Production Components.</u> A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2:

   - *Metadata Load File*
   - *Extracted or OCR Text Files*
   - *Single-Page Image Files*
   - *Opticon Load File*
   - *Native Files.*

2. <u>Production File Requirements.</u>

   A. ***Metadata Load File***

   - Required file format:

       UTF-8
       .dat file extension
       Field delimiter: (ASCII decimal character 20)
       Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)

   - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.

   - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.

   - ***Note:*** All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

       **Accepted date formats:**

       mm/dd/yyyy
       yyyy/mm/dd
       yyyymmdd

   - Accepted time formats:

hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
hh:mm:ss:mmm

B. *Extracted or OCR Text Files*

- You must produce individual document-level text files containing the full extracted text for each produced document.

- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.

- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.

- Text files must be divided into subfolders containing no more than 5000 files.

C. *Single-Page Image Files (Petrified Page Images)*

- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.

- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.

- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."

- Each single-page TIF file must be endorsed with a unique Bates number.

- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).

- Required image file format:

  - CCITT Group 4 compression
    2-Bit black and white
    300 dpi
    Either .tif or .tiff file extension.

- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

11

D. *Opticon Load File*

- Required file format:

  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
    .opt file extension

- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):

  - ALIAS or IMAGEKEY - the unique Bates number assigned to each page of the production.
  - VOLUME- this value is optional and may be left blank.
  - RELATIVE PATH - the ftlepatb to each single-page image file on the production media.
  - DOCUMENT BREAK - defines the first page of a document. The only possible values for this field are "Y" or blank.
  - FOLDER BREAK - defines the first page of a folder. The only possible values for this field are "Y" or blank.
  - BOX BREAK - defines the first page of a box. The only possible values for this field are "Y" or blank.
  - PAGE COUNT - this value is optional and may be left blank.

- *Example:*

      ABC0000 I ,,TMAGES\0001\ABC0000l .tif,Y,,,2
      ABC00002,,IMAGES\0001\ABC00002.tif,,,,
      ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
      ABC00004,,TMAGES\0002\ABC00004.tif,Y,,,I

E. *Native Files*

- Non-printable or non-print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.

- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and the original file extension.

- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."

- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.

- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.

- You may be required to supply a software license for proprietary documents produced only in native format.

3. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:

- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization)

  \0001, \0002, \0003...

- natives\ (contains native files, with subfolder organization)

  \0001, \0002, \0003...

- text\ (contains text files, with subfolder organization)

  \0001, \0002, \0003...

4. <u>De-Duplication</u>. You must perform global de-duplication of stand-alone documents and email families.

5. <u>Paper or Scanned Documents.</u> Documents that exist only in paper format must be scanned to single-page **TIF** files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the Notice to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the Notice.

   <u>Relational Databases</u>

   - Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

   - Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

   - Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

7.  <u>Media and Encryption.</u>  All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.

## ATTACHMENT 1
### Required Fields for Metadata Load File

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | BC000I |
| ENDDOC | Bates number assigned to the last page of the document. | IABC0002 |
| REGATTACH | Rates number assigned to the first page of the parent document in a document ""amily *(i.e.,* should be the same as BEGDOC of the parent document, or ᴾARENTDOC). | ABC000J |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family *i.e.,* should be the same as ENDDOC of be last child document). | ABC0008 |
| IPARENTDOC | BEGDOC of parent document. | ABC000I |
| (:HILDDOCS | ıst oᵍBEGDOCs of all child documents, delimited by ";" when field 1as multiple values. | ABC0002; ABC0003; ABC0004... |
| (:OMMENTS | Additional document comments, such as )asswords for encrypted files. | |
| INATIVEFILE | Relative file path of the native file on the production media. | \Native File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on be production media. | \Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | Por scanned paper records this should be a description of the physical location of he original paper record. For loose electronic files this should be the name of the file server or workstation where he files were gathered. | Company Name, Department Name, Location, IBox Number... |
| CUSTODIAN | bwner of the document or file. | irstname Lastname, Lastname, Firstname, Oser Name; Company Name, Department IName... |
| FROM | Sender of the email. | Rirstname Lastname < FLastname @domain > |
| ITO | IAll to: members or recipients, delimited "Y ";" when field has multiple values. | Pirstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| K::C | 11 cc: members, delimited by";" when !field has multiple values. | l<irstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | IAll bee: members, delimited by";" when "ield has multiple values | i:'irstname Lastname < FLastoame @domain >; Firstname Lastname < FLastoame @domain >; ... |

| SUBJECT | Subject line of the email. | |
|---|---|---|
| DATERCVD | Pate and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or bh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; b.h:mm:ss AM/PM or hh:mm:ss |
| iCALBEGDATE | !Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | nate that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; bh:mm:ss AM/PM or hh:mm:ss |
| lATT ACHMENTS | OC.,ist of filenames of all attachments, elimited by";" when field has multiple alues. | AttachmentFileName.; AttachmentFi leName.docx; AttachmentFileName.pdf;... |
| INUMATTACH | lNumber of attachments. | |
| IRECORDTYPE | General type of record. | AGE; LOOSE E-MAIL; E-MAIL; E-DOC; MAGE ATTACHMENT; LOOSE E-MATL lATT ACHMENT; E-MAIL ATTACHMENT; IE-DOC ATTACHMENT |
| IFOLDERLOC | Priginal folder path of the produced kiocument. | IDrive:\Folder\...\...\ |
| !FILENAME | Priginal filename of the produced kiocument. | !Filename.ext |
| IDOCEXT | Original file extension. | '1tml, xis, pdf |
| IDOCTYPE | !Name of the program that created the produced document. | !Adobe Acrobat, Microsoft Word, Microsoft !Excel, Corel WordPerfect... |
| rnTLE | !Document title (if entered). | |
| AUTHOR | !Name of the document author. | |
| REVISION | lNumber of revisions to a document. | 18 |
| DATECREATED | !Date and time that a document was .,reated. | nm/dd/yyyy, yyyy/mm/dd, pr yyyymmdd; hh:mm:ss AM/PM orhh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mn/dd/yyyy, yyyy/mm/dd, pr yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | OC..ow, Normal, High |
| MD5HASH | MD5 hash value computed from native flle (a/le/a file fingerprint). | |
| SHAIHASH | SHA I hash value | |
| MSGINDEX | Email message ID | |
| iCONVERSATJONTNDEX | Email Conversation Index | |

**Certification of Business Records**

State of _____,
                                    )ss.:
County of _____    _,


_____,being duly sworn, deposes and says:


1.  I am the duly authorized custodian or other qualified witness of the business records of
    _____

    I am familiar with the business practices and procedures of _____
    and have the authority to make this certification.

2.  To the best of my knowledge, after reasonable inquiry, the records produced in response
    to the subpoena are accurate versions of the documents described in the subpoena that are
    in my possession, custody or control.

3.  To the best of my knowledge, after reasonable inquiry, the records represent all the
    documents described in the subpoena duces tecum except that the following documents
    are missing for the reason stated:

    _____


4.  The records produced were made by the personnel or staff of the business, or persons
    acting under their control, in the regular course of business, at the time of the act,
    transaction, occurrence or event recorded therein, or within a reasonable time thereafter,
    and it was the regular course of business to make such records.


Sworn to before me this

day of _____ ,2022


                                                   _____
                                                   Notary Public

# Exhibit G



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
    ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CHARITIES BUREAU

212.416.6172
Catherine.Suvari@ag.ny.gov

December 2, 2022

**Via Email To: afrisch@andrewfrisch.com**

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038

Re: *Subpoena to VDARE Foundation dated June 23, 2022*

Andy:

I write to address significant deficiencies in VDARE's production response to the above-referenced subpoena. As explained below, we have serious concerns regarding: (1) ongoing delay and your repeated failure to abide by deadlines that you yourself proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which you have not provided any legal justification and which appear to be applied haphazardly. VDARE is also delinquent in its required annual filings with this office: annual submissions for both 2020 and 2021, including the audited financials that you acknowledged in your November 21, 2022 cover letter, are all overdue.

Pursuant to Rule 4.4(b) of the Rules of Professional Conduct, we are also notifying you that you have produced material in your November 21 delivery that may be protected by an attorney-client privilege. *See* VF 4777-4780.

Continuing Production Delay

You have noted throughout your reports this Fall that you were first retained for this matter in August 2022 and that we agreed to extend the subpoena's stated deadline in response to your requests for more time to collect and review material. You now appear to be setting — and moving — your own chosen deadlines for VDARE's subpoena compliance: on October 25, you even remarked by email that our reference to previously-agreed deadlines was "not productive" and "divert[ed]" you from "subpoena-related tasks" on which you were working.

We are now more than three months into your representation of VDARE and more than five months since the date VDARE was served with the subpoena. In the past eight weeks alone, we have had the following assurances from you, none of which proved true: (i) that you would substantially complete hard copy production by October 31 (Oct. 6); (ii) that you would provide, on or before October 31, a privilege/ redaction log that identified each marked redaction in the production and the legal basis for those redactions (Oct. 6); (iii) that the "lion's share of documents" had been reviewed and sent to the vendor for a substantially complete production by October 31 (Oct. 20); (iv) that "95% or so" of VDARE's hard copy documents were in process at the vendor and "well underway aiming for substantial compliance on October 31 or before" (Oct. 21); (v) that

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 112 of 178

40 gigabytes of potentially responsive email records, as well as "more documents potentially responsive to the subpoena" could be reviewed and produced on or before November 21, including on a rolling basis (Oct. 31). In the last ten days, you have announced instead that email review is suddenly taking "longer than anticipated" and that you will "aim[ ] to complete that part of the response to the subpoena by December 12, 2022."

As of the date of this letter, you have produced a total of roughly 6,000 pages of Bates-stamped material, the first section of which you have produced three separate times and all of which bears extensive unlabeled redactions to which we have repeatedly objected. The material produced to date does not appear to include any significant volume of email from the VDARE accounts that you first identified to us on October 31 and does not identify which of the subpoena's requests each document responds to. Please complete the production of both hard copy and ESI documents, in the form called for by the subpoena, by **December 12, 2022**.

<u>VDARE's Unsubstantiated Objections to Certain Subpoena Requests</u>

In July 2022, we took steps to clarify several of the subpoena's requests in response to VDARE's stated privacy concern for donors and volunteers, but we have consistently objected to a generalized assertion of sensitivity and have emphasized that we do not agree to the withholding of documents and information on that basis.

Your production cover letter on October 31 stated that "VDARE is concerned that disclosures risk further impairment to freedoms of speech and association of itself and others." We note that the requests you identified in your October 31 letter as intrusive on fundamental liberties included the request for VDARE Board meeting minutes (Req. No 5), the request for *outgoing* solicitation materials sent on VDARE's behalf (Req. No. 8), the request for documents identifying the individual(s) who control VDARE financial accounts (Req. No. 23), and the request for documents concerning physical renovation of VDARE's West Virginia castle property (Req. No. 39). You have not articulated how — and we do not agree that — these requests implicate any constitutional speech or associational concern for VDARE donors or content providers. To the extent any of these documents have been withheld from your productions to date, we demand complete delivery by December 12, 2022.

<u>VDARE's Failure to Provide a Privilege/Redaction Log</u>

We have asked several times that you provide a privilege/ redaction log to identify the legal basis on which VDARE is redacting or withholding particular material, and we asked specifically in our conference on October 6 that you provide such a log on or before October 31. Such a log is necessary for us to understand and evaluate VDARE's basis for redacting or withholding information. Your October 31 letter offered only the assurance that you expected to complete your redactions to responsive financial records by November 21 and that you would be in the best position to explain those redactions after you had completed them. On November 21, you stated without explanation that you would identify redactions in the production "once the project is complete." We still have not received a log.

We have explained in several exchanges with you that we will not agree in advance to special treatment for a subset of vendor information that you and/or VDARE independently identify as sensitive: VDARE must articulate particular categories of material covered by any individual request that it believes cannot be lawfully demanded and provide substantive explanation of how the disclosure being sought would operate to chill VDARE's protected associational or speech rights. We will meet and confer on this issue again only after production of a written privilege-redaction log to serve as the basis for meaningful review. Please produce such a log by **December 12, 2022**.

We also note that, in your letter of September 26, 2022, you asserted that subpoena requests for employee, vendor, and contract information violate First Amendment rights held by those

entities because "[m]ost of [VDARE's] employees and contractors are writers and editors for the site."  The documents that you have produced to date have been redacted far beyond the limits of any editorial content:  you have redacted, among other things, (i) contact information for an architectural firm hired to review potential renovations at the Berkely Springs Castle property (VF 4427-4428; VF 4766-4767), (ii) the contact name, but not address, of a Switzerland-based firm hired to perform, according to its own invoice, "standard software development and server administration," (VF 3980-3981), (iii) the name of VDARE's bookkeeper, which appears to be separately disclosed in your production on a publicly-filed IRS Form I-9 prepared to confirm Lydia Brimelow's eligibility as an employee of Happy Penguins LLC (ex. VF 4280, VF 4282); (iv) contact information contained in a public magazine subscription renewal form sent to Peter Brimelow (VF 4187) (also marked as Confidential); (v) bank statements to accounts held by entities *other* than VDARE, including Happy Penguins LLC and Peter and Lydia Brimelow, as individuals (VF 4346-4348, VF 4338-4343); and the contact information for an individual or company hired to perform "VDARE Admin" services (VF 4017, VF 4274).  These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious concerns about the legal basis for any such redactions.

<u>VDARE's Failure to Provide Mandatory Filings</u>

As we have previously noted, VDARE is delinquent in its filing of its 2020 Char500 and schedules, including the IRS Form 990.  That filing was due in November 2021.  VDARE's filing for 2021 was due on November 29, 2022 and has not been received.  Attached to this letter is a notice of delinquency from our Registration Section.

We have discussed each of the above issues with you on several occasions and have agreed to significant deadline extensions to accommodate your requests for additional time to review.  We reserve all rights regarding our position on your client's non-compliance with the subpoena and will seek judicial intervention to obtain compliance if the documents and information listed here are not produced by December 12, 2022.

Sincerely,

*/s/ Kate Suvari*

Kate Suvari
Assistant Attorney General

Encl.

cc:    Assistant Attorney General Yael Fuchs



**STATE OF NEW YORK**

**OFFICE OF THE ATTORNEY GENERAL**

Letitia James                                                                Division of Social Justice
Attorney General                                                          Charities Bureau

December 2, 2022

Vdare Foundation
PO Box 211
Litchfield, CT 06759

**Re:**     **Vdare Foundation**
              **Delinquent Filing – Action Requested**
              **Registration Number: 41-37-83**

Dear Sir or Madam:

This letter is to notify you that the above organization is delinquent in filing its annual financial reports with the New York Attorney General's Charities Bureau. New York law requires registered organizations to file annually Form CHAR500, IRS Form 990 and, if applicable, an independent certified public accountant's audit or review report and pay an annual filing fee.

In order to resolve the delinquency, the organization must submit its delinquent filings, with a copy of this letter, to the Charities Bureau within **thirty (30) days** of the above date. According to our records, the following filings are delinquent:

- **Fiscal Year Ended 12/31/2020: CHAR500 Annual Filing – complete online.**
- **Fiscal Year Ended 12/31/2021: CHAR500 Annual Filing – complete online.**

A portal for electronic filing is posted on our webpage www.charitiesnys.com – online filing is required. Please be advised that Article 7-A of the Executive Law prohibits a delinquent organization from raising funds in New York, including through government grants. In addition, failure to submit all required filings may subject the organization to cancellation of its registration.

If you believe that the organization has already submitted its required filings or if it is no longer conducting activities or soliciting contributions in New York, please notify this office in writing upon receipt of this letter and include a copy of this letter with your response. Please mail your response to the attention of Stephenie Brathwaite. If you have any questions concerning this request, please contact the Charities Bureau by phone at (212) 416-8401 or by email to Stephenie.Brathwaite@ag.ny.gov.

Sincerely,

Hanna Rubin
Director-Registration Section
Charities Bureau

**28 Liberty St., New York, NY 10005  (212) 416-8401 Fax (212) 416-8393**
**http://www.charitiesnys.com**

# Exhibit H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,                                                   Index No. 453196/2022

                               Petitioner,                Motion Sequence No. 2
                                                            (VDARE's motion for dismissal
        - against -                                     or, alternatively, a stay)

VDARE FOUNDATION, INC.,

                               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIRMATION IN SUPPORT OF RESPONDENT'S ORDER TO SHOW CAUSE TO DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

Andrew J. Frisch, an attorney duly admitted to practice law in the State of New York since 1985, affirms the following statements to be true under penalties of perjury:

<u>Introduction</u>

1.      I am counsel to VDARE Foundation, Inc. ("VDARE"), a non-profit foundation organized and existing under the laws of the State of New York with a principal place of business in Berkeley Springs, West Virginia.  The undersigned was engaged by VDARE in late August 2022 to comply with and otherwise respond to an investigative subpoena issued to VDARE by the Attorney General of the State of New York ("OAG") on or about June 24, 2022. This Affirmation is based on personal knowledge, documents attached as exhibits which are true and accurate copies of the originals, and otherwise on information and belief as noted.

2.      On December 12, 2022, VDARE filed an action in United States District Court for the Northern District of New York against the OAG [*VDARE Foundation, Inc. v.*

*James*, 1:22-cv-01337 (FJS)], alleging, among other things, that the OAG's demands for certain disclosures in response to its subpoena (a) threaten VDARE's ability to conduct business; and (b) reveal the OAG's subpoena to be a retaliatory pretext aimed at interfering with VDARE's rights to freedom of speech and association guaranteed by the United States and New York Constitutions.  VDARE's federal complaint seeks declaratory and injunctive relief.  *See* VDARE's Complaint in United States District Court (the "Federal Complaint"), attached hereto as Exhibit A.

3.      On December 16, 2022, less than a week *after* December 12, 2022, when VDARE filed its Federal Complaint against the OAG (and simultaneously emailed a courtesy copy to the OAG in advance of formal service), the OAG commenced this special proceeding against VDARE, seeking to compel the very disclosures identified in VDARE's Federal Complaint that threaten its existence and further demonstrating that the OAG's arguments in support of its investigative subpoena are pretextual.

4.      It was not until December 22, 2022, that the OAG first notified VDARE that it had initiated this special proceeding, the day *after* the OAG (on December 21, 2022) requested and secured VDARE's consent to an extension of the OAG's deadline in federal court to respond to VDARE's Federal Complaint.  In securing VDARE's consent to an extension of the OAG's deadline in federal court, the OAG did not disclose that it had filed this special proceeding the week before and was apparently awaiting this Court's issuance of an order to show cause, instead claiming: "Because of the holidays and a member of our team who has COVID, we would appreciate an extension until Jan 18 to respond to VDARE's complaint in the NDNY.  Can you please confirm your consent?"  *See* Email from the OAG to the undersigned,

2

dated December 21, 2022, attached hereto as Exhibit B.

5.    This affirmation is respectfully submitted in support of VDARE's

application, pursuant to CPLR 3211(a)(4), that this special proceeding be dismissed or,

alternatively, stayed until VDARE's pending federal action is resolved.

I.    *VDARE Sought Relief in United States District Court Only After the
     OAG's True Motive for Conducting this Investigation Became Apparent,
     And the OAG's Position Threatened VDARE's Ability to Conduct Business*

     *(A)  VDARE's proposed middle ground and to meet and confer*

6.    Between September and November 2022, VDARE's undersigned counsel

completed review of records maintained by VDARE electronically and in hard copy and

produced over 6,000 pages to the OAG responsive to its investigative subpoena.  Before

December 2022, VDARE's counsel had provided the OAG with a list of email custodians and was

in the process of completing compliance with the OAG's subpoena by identifying responsive

emails from a universe of 40 gigabytes (the equivalent of millions of pages).

7.    While working towards completing compliance with the OAG's subpoena,

VDARE's counsel advised the OAG that disclosure of the identities of its employees and contractors

would violate constitutional guarantees of free speech and association.  The subject matter of

VDARE's principal activity - - commentary about immigration policy of the United States

disseminated to the public through its website at www.VDARE.com - - is controversial.  VDARE's

lawful speech has led to reputational and professional harm to people and entities associated with it.

In addition, contractors providing services essential to VDARE's survival have refused to continue to

do business with VDARE, including venues which cancelled contracts with VDARE to host

conferences, sometimes because of disagreement with VDARE's views, and sometimes because of

3

fear of protests. These harms to VDARE have made it increasingly difficult for VDARE to find alternatives to continue to stay in business. *See* Letter from the undersigned to the OAG, dated September 26, 2022, attached hereto as Exhibit C; Letter from the undersigned to the OAG, dated October 31, 2022, attached hereto as Exhibit D; Email from the undersigned to the OAG, dated October 20, 2022, attached hereto as Exhibit E.

8.     The OAG knows or should know that VDARE's controversial speech exposes it to reprisals from those who disagree or fear protests from those who disagree. *See, e.g.*, *"VDARE responds to conference cancellation at Cheyenne Mountain Resort,"* Aug. 15, 2017[1] ("Cheyenne Mountain Resort [in Colorado] will not be hosting the VDARE Foundation in April of next year. We remain committed to respecting the privacy of guests at the resort."); Kristine Phillips, The Washington Post, Jan 26, 2017 ("Tenaya Lodge, a resort on the border of Yosemite National Park, canceled [VDARE's] booking after receiving complaints about the organization's views.")[2]; *"Cancelled Tucson Conference Produces Five-Figure Settlement - - VDARE.com To Announce New Venue Soon!"* Mar. 7, 2018.[3]

9.     Likewise, multiple businesses providing services essential to VDARE's continued operations have terminated their relationships with VDARE, including Mailchimp and Constant Contact (providers of email marketing services), Paypal, Amazon, Google Ads, and

---

[1] Available at *https://www.kktv.com/content/news/Mayor-Suthers-responds-to-planned-VDARE-conference-in-Colorado-Springs-440537563.html*

[2] Available at *https://www.washingtonpost.com/news/post-nation/wp/2017/01/26/a-resort-canceled-a-white-nationalist-groups-first-ever-conference-because-of-its-views/*

[3] Available at *https://vdare.com/articles/cancelled-tucson-conference-produces-five-figure-settlement-vdare-com-to-announce-new-venue-soon*

4

many smaller businesses.[4]  VDARE created an entity called "Happy Penguins LLC" for the sole

purpose of paying VDARE's employees so that they could identify a non-controversial entity

(Happy Penguins) - - and not VDARE - - as their employer.  *See* VDARE's Internal Revenue

Form 990 for 2019[5] (identifying "Happy Penguins LLC / Peter Brimelow" (VDARE's founder)

as a service providing leased employees).

      10.    While simultaneously working to comply with the OAG's subpoena and

producing documents responsive to the OAG's subpoena, VDARE's counsel provided the OAG

with precedent that established the constitutionally-protected interests.  Exhibit C (citing *NAACP*

*v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 462 (1958) (protecting the right of "advocacy of

both public and private points of view, particularly controversial ones" and holding that an order

requiring association to produce membership list interfered with First Amendment freedom of

association); and *Evergreen Ass'n, Inc. v. Schneiderman,* 153 A.D.3d 87, 100 (2d Dep't 2017)

(applying strict scrutiny where anti-abortion advocacy group served with the Attorney General's

investigatory subpoena alleged that subpoena compliance would "have a chilling effect on [the

group's] associations with its employees and potential clients" as well as at least one hospital);

*see also Rosenberger v. Rector & Visitors of the Univ. of Va. ,* 515 U.S. 819, 828 (1995)

("Discrimination against speech because of its message is presumed to be unconstitutional.");

---

    [4] *See https://vdare.com/posts/we-ve-been-purged-from-mail-chimp-vice-gloats-deplatforming-works-update-we-re-back; https://vdare.com/posts/emergency-message-to-vdare-com-readers-from-peter-brimelow; see also "Tourist Town Desperate to Reopen Faces Another Battle" infra.*

    [5] *Available at https://www.charitiesnys.com/RegistrySearch/getcontent?guid={20D3F877-0000-CCBA-A2A6-DE59F92CA6EF}&orgid=41-37-83&title=IRS%20Annual%20Return&project=Charities.*

*Rosenblatt v. Baer,* 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.").

11.     On October 15, 2022, VDARE requested that the OAG explain its purpose in seeking information about contractors in an effort "to narrow issues and move things along." Email from the undersigned to the OAG, dated October 15, 2022, attached hereto as Exhibit F. While the OAG declined to provide any such explanation, VDARE proposed a middle ground to the OAG that addressed the OAG's ostensibly legitimate investigative interest while protecting VDARE's concerns - - with reservation of the OAG's right to revisit the issue at a later date if necessary. VDARE proposed that it identify contractors who are related parties as defined by Article 715 of the New York Not-for-Profit Corporation Law who earn more than $10,000 annually; and would "consider identifying other employees or contractors involved in specific transactions with which your office might be concerned." Email of the undersigned to the OAG, dated October 20, 2022, attached hereto as Exhibit E ("To the extent you continue to have a problem with this protocol for this subset of vendors, we can revisit the issue as your work continues and see if we can resolve it later. I would like to make as robust a production as I can now and deal with this issue later, to the extent that my way forward for now proves not to be a permanent solution.").

12.     The OAG rejected VDARE's proposed middle ground. The OAG invited VDARE to provide objections in writing to specific requests in the OAG's subpoena, giving the impression that the OAG was keeping an open mind about the issue. VDARE provided objections to specific requests by letter dated October 31, 2022, requesting an opportunity to meet and confer toward resolving the issue. *See* Letter of the undersigned to the OAG, dated Oct. 31, 2022, attached

6

hereto as Exhibit D). Even then, VDARE did not take a blanket approach to its continuing objections, but disclosed the identities of all of its employees as part of its continuing production, the identities of contractors who appeared to be related parties within the meaning of Article 715 of the New York Not for Profit Corporation Law (without regard to amount earned), as well as others whose associations with VDARE were apparently already publicly known.

13.    In the undersigned's letter to the OAG dated October 31, 2022 (Exhibit D), VDARE expressed concern to the OAG about its apparent disclosure of constitutionally protected information in another investigation. On October 11, 2022, members of the United States Congress wrote to United States Attorney General Merrick Garland, requesting investigation of apparently undue disclosures provided to or otherwise obtained by the OAG. On August, 26, 2022, Politico had published confidential information about donors to another conservative non-for-profit in the OAG's cross hairs which was reportedly leaked by the OAG.[6]

14.    Despite VDARE's completion of its review of records maintained electronically and in hard copy and attendant production of over 6,000 pages of documents, VDARE's continuing analysis of 40 gigabytes of emails, and its request to meet and confer on disclosure of the identifies of contractors, the OAG notified VDARE's counsel on December 2, 2022, that it required VDARE to complete production by December 12, 2022. Exhibit G. On December 12, 2022, as noted above, VDARE commenced a lawsuit in the Northern District of New York against the OAG. Exhibit A.

---

[6] *See https://www.wsj.com/articles/all-about-nikki-haleys-donors-new-york-attorney-general-letitia-james-stand-for-america*.

7

(B) *The OAG rejected VDARE's offer to immediately address the OAG's purported concern about VDARE's purchase and use of a property*

15.    The purported impetus for the OAG's investigation (as disclosed by the OAG to VDARE's counsel) is VDARE's purchase in 2020 of a castle-styled property in Berkeley Springs, West Virginia, to host conferences in order to eliminate the risk that VDARE's conferences could only be conducted at the whim of independent venue owners. *See* Rachel Olding, *"Tourist Town Desperate to Reopen Faces Another Battle"* Daily Beast (May 29, 2020)[7] (noting that VDARE's founder, Peter Brimelow, "said they plan to use the castle for meetings and as a studio - - handy considering at least three hotels have canceled conference contracts on VDARE after learning of the group's views.").

16.    After VDARE purchased the castle, a cottage on the castle's grounds in which the Brimelows intended to live was not yet habitable so the Brimelows (Peter and Lydia Brimelow and their three young children) moved from their home in Connecticut and lived in the castle for a period of months until the cottage was ready for them. Among documents produced to the OAG as part of the 6,000 pages (and separately in undersigned's email to the OAG) is a lease agreement establishing that the Brimelows paid rent to live in the cottage beginning in April 2021. *See* Lease Agreement, attached hereto as Exhibit H. Upon locating and producing the Brimelows' lease agreement for the cottage to the OAG, the undersigned proposed a meeting with the OAG to begin addressing the OAG's professed concerns about VDARE's purchase of the castle. The OAG rejected that invitation, expressly deferring even an initial discussion about the castle until after VDARE produced all documents deemed by the OAG to be responsive to its subpoena.

---

[7] Available at *https://www.thedailybeast.com/berkeley-springs-west-virginia-freaks-out-after-vdare-founder-buys-its-castle*.

8

> *(C) Additional concerns expressed by the OAG are*
> *pretextual and unfairly insinuate malfeasance*

17. The OAG has authority to inquire and request documents from charities registered in New York State, but it may not seek to supercede a previously-filed federal case with unfair insinuations of malfeasance nor by demanding constitutionally-protected information far afield from legitimate oversight.

18. A few examples are illustrative. The OAG notes in support of its motion that Lydia Brimelow is identified on filings as VDARE's "Secretary, Treasurer and Publisher," but not identified as Peter Brimelow's wife on VDARE's Internal Revenue Service Form 990. AAG Fuchs Affirmation [NYSCEF Doc. 4] at 19. Peter and Lydia Brimelow, however, are publicly known to be married and, on information and belief, file their income tax returns jointly as husband and wife with the same Internal Revenue Service with which VDARE files Form 990. The OAG asserts no connection between this purported misstep in completing an IRS form and the identities of VDARE's contractors.

19. Similarly, the OAG insinuates that Peter Brimelow's compensation reported in from VDARE's 2019 IRS Form 990 was atypically high [AAG Fuchs Affirmation at 9], but conveniently omits that VDARE's total contributions for 2019 were $4,259,309 [VDARE's Form CHAR500 for 2019, attached hereto as Exhibit I][8], a far substantially greater amount than in other years. Likewise, the OAG insinuates malfeasance from an auction of furnishings from the castle [AAG Fuchs Affirmation at 8], but, on information and belief, the entirety of *de minimis* proceeds from the auction went for VDARE's benefit. None of this innuendo from the OAG

---

[8] Available at *https://www.charitiesnys.com/RegistrySearch/getcontent?guid= {30D3F877-0000-CB55-8F8C-8ED446FA3F08}&orgid=41-37-83&title=Annual%20Filing% for%20Charitable%20Organizations&project=Charities*

9

justifies its demand for the identities of contractors and, instead, demonstrates that the OAG's

investigation is pretextual.

> ### (D) The OAG's complaints about inconsistencies in redactions
> ### ignore that the OAG encouraged a rolling production

20.      In the OAG's letter of December 2, 2022, demanding that VDARE complete

its production and identify all contractors without redactions by December 12, 2022, the OAG

complained that VDARE had inconsistently applied redactions, which had not been accompanied by

a log identifying the bases for the redactions.  But the OAG had agreed to "a rolling production"

[Email from the OAG to the undersigned, dated August 23, 2022, attached hereto as Exhibit J],

which permitted VDARE to act in good faith and reassess the need for redactions as its review

continued.  *See, e.g.*, Letter from the undersigned to the OAG, dated September 19, 2022, attached

hereto as Exhibit K ("As to redactions in the documents produced today, I have not had ample time

fully to evaluate bases underlying the reactions . . . I have opted instead to produce an installment of

documents today and will circle back on the redactions once my evaluations are complete."); Exhibit

E ("These issues . . . are not present for every vendor, so I am trying to identify precisely which

vendors present a problem.").

> ### (v) The OAG faulted VDARE for attempting to meet its own ambitious deadlines despite
> ### knowing that VDARE is a mom-and-pop operation represented by a solo practitioner

21.      As of December 2, 2022, when the OAG declined VDARE's proposal that

the parties meet and confer in response to VDARE's letter of October 31, 2022, and, instead,

demanded that production be completed within ten days, all that remained was resolution of

VDARE's objection to disclosure of contractors' identities and production of emails responsive to

the subpoena (and attendant redactions of contractors' identities).  Though the OAG's motion infers

undue delay in VDARE's production, the OAG is fully aware that VDARE "is literally a mom-an-

pop operation, with an actual mom who home schools three children, represented by a solo

practitioner with no staff," who reviewed all VDARE records himself to determine responsiveness.

Email from the undersigned to the OAG, dated September 30, 2022, attached hereto as Exhibit L.

VDARE's legitimate efforts to protect its contractors and business interests by redacting identities of

contractors was and remains labor-intensive and time-consuming, as VDARE reported to the OAG.

Letter from the undersigned to the OAG, dated Oct. 31, 2022, attached hereto as Exhibit D ("The

identities of VDARE's donors, content providers, and vendors who provide services to VDARE

in its locality or are otherwise indispensable to its work are inextricably intertwined with some of

its financial records.  For example, some of these entities are identified in bank statements in lists

of monthly transactions and associated copies of checks.  The work to provide such financial

records with redactions is labor-intensive and time-consuming and is ongoing.").  Meanwhile, as

to the OAG's request for a log of redactions and their bases, the extent of redactions of identities

of contractors was significant, favoring one log of redactions after production was complete.

Letter from the undersigned to the OAG, dated Nov. 21, 2022, attached hereto as Exhibit M.

22.     The undersigned set ambitious deadlines in a good faith effort to show

diligence and compliance and, as of December 2, 2022, had completed review and produced 6,000

pages of VDARE's records maintained electronically and in hard copy.  Completion of review of

emails was in sight when the OAG, on December 2, 2022, unreasonably demanded that VDARE

complete all steps necessary for compliance within ten days, apparently requiring that it either

disclose the identities of all contractors without redactions or provide a full list of all such redactions

from the 6,000 pages and responsive emails, and thereafter moved to compel compliance without

meeting and conferring as requested by the undersigned on October 31, 2022, as required by the

Court's local rules - - notwithstanding VDARE's previously filed Federal Complaint.

11

II      *Issues Raised by the OAG in this Special Proceeding Duplicate and Overlap
Issues Raised by VDARE's First-filed Federal Complaint Against the OAG*

23.      VDARE sought relief in federal court only after the OAG's approach to its

subpoena threatened VDARE's ability to conduct business and revealed that the OAG is using its

subpoena power as a pretext.  VDARE's Federal Complaint is based on many of the same

underlying issues raised by the OAG's subsequent special proceeding in this Court.

24.      Thus, VDARE's Federal Complaint (Exhibit A), among other things that

duplicate and overlap with this special proceeding, (a) alleges that the OAG unreasonably

demands disclosure of identities of contractors indispensable to VDARE's work without any

apparent legitimate investigatory purpose; (b) alleges settled principles of constitutional law cited

by VDARE to the OAG in redacting identities of contractors; (c) alleges the OAG's demand on

December 2, 2022, that VDARE complete its production without redactions by December 12, 2022,

and without the meet-and-confer proposed by VDARE's counsel on October 31, 2022; and

(d) alleges VDARE's concern about the OAG's leaking of confidential information in another

matter.

25.      As noted above, undersigned counsel consented to the OAG's request for

an extension of time for the OAG to respond to VDARE's Federal Complaint, which request did

not disclose that the OAG had initiated this special proceeding.  As of the date of this filing, the

OAG's response to VDARE's federal complaint is due by January 18, 2023.

INDEX NO. 453196/2022
Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 128 of 178
RECEIVED NYSCEF: 01/03/2023

26.    I affirm that the relief sought by VDARE in this application has not

previously been requested in this Court.

Dated: January 3, 2023

_/s/ Andrew J. Frisch_
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
_afrisch@andrewfrisch.com_

_Attorneys for Respondent_

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,                                         Index No. 453196/2022
                                                  Hon. Sabrina B. Kraus
                              Petitioner,
                                                  Motion Sequence 2 (dismissal/stay)
              - against -

VDARE FOUNDATION, INC.,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING
RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
afrisch@andrewfrisch.com

Attorneys for Respondent

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 131 of 178

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of
New York,                                                    Index No. 453196/2022
                                                             Hon. Sabrina B. Kraus
                                  Petitioner,
                                                             Motion Sequence 2 (dismissal/stay)
                 - against -

VDARE FOUNDATION, INC.,

                                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO
DISMISS OR, ALTERNATIVELY, STAY THIS PROCEEDING PENDING
RESOLUTION OF THE DUPLICATIVE AND OVERLAPPING FEDERAL CASE

            This Memorandum of Law is submitted on behalf of Respondent VDARE

Foundation, Inc. ("VDARE") in further support of dismissal of this special proceeding filed by

the Attorney General of the State of New York ("OAG") on December 16, 2022, or,

alternatively, for a stay pending resolution of VDARE's duplicative and overlapping federal case

previously filed on December 12, 2022, and in reply to the OAG's opposition, filed on January

11, 2023 (NYSCEF Docket No. 55).

A.      *The OAG Fails to Show How It is Prejudiced by VDARE's Choice of Forum*

            VDARE filed its federal lawsuit against the OAG only after the OAG's letter to

VDARE's counsel of December 2, 2022 [*see* NYSCEF Docket No. 44, "Exhibit G" to

2

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 132 of 178

Affirmation in Support of VDARE's Motion to Dismiss or Stay[1]] revealed the OAG's claims of

noncompliance to be pretexts.  Unlike the authority principally cited by the OAG in opposition to

dismissal or stay of this special proceeding, *Trump v. James*, 2022 WL 1718951 (N.D.N.Y. May

27, 2022), VDARE did not seek federal relief *after* any state proceeding or state enforcement

action was already ongoing, but to vindicate its constitutional rights and to protect itself from the

OAG's pretextual misuse of its regulatory authority.  As *Trump v. James* itself makes clear, "the

obligation of federal courts to hear cases within their jurisdiction is 'virtually unflagging'" absent

pre-existing state litigation.  *Id.* at *23 (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d

Cir. 2022).[2]

        While VDARE had the right to seek redress in either federal or state court, the

OAG declines to explain how it is prejudiced by VDARE's choice to seek redress in the

Northern District of New York.  If the OAG is right that VDARE's federal lawsuit will be

dismissed, the proof will be in the pudding when the Honorable Frederick J. Scullin, Jr., the

District Judge to whom VDARE's case is assigned, rules on the OAG's motion.  Meanwhile, this

Court should stay this special proceeding pending decision on the OAG's motion to dismiss

---

[1]  The Affirmation of VDARE's counsel in support of VDARE's motion to dismiss or
stay this special proceeding and the exhibits thereto are fully incorporated herein.

[2]  Unlike this case, pending proceedings in *Trump v. James* included various contempt
and other orders, which were defied by the former president a year prior to his commencement of
his action in federal court, including: (1) an order dated September 23, 2020, directing Eric
Trump to appear for a deposition and the Trump Organization to produce documents in
accordance with certain privilege rulings, which the state court later modified as to privilege
rulings on October 7, and December 15, 2020; (2) an order dated February 17, 2022, granting the
OAG's motion to compel the depositions of the former president, Ivanka Trump, and Donald
Trump, Jr., and the production of documents; and (3) an order dated April 26, 2022, holding the
former president in contempt for failure to adequately comply with the order directing the
production of documents.  *See Trump v. James,* 2022 WL 1718951.

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 133 of 178

VDARE's federal claims (expected to be filed today, January 18, 2023) and, if the OAG's

motion is denied, pending resolution of VDARE's federal case. *See Hyatt v. State of Cal.*

*Franchise Tax Bd.*, 105 A.D.3d 186, 200–201 (2d Dept. 2013) (even where an entity like the

OAG has a regulatory interest, a subpoena seeking information as opposed to an enforcement

action should yield where the entity is pressing a demand that is unreasonable and from which

the respondent is entitled to protection.).

B.    *The Timing of the OAG's Pursuit of VDARE Supports VDARE's Motion for Dismissal or a Stay and Its Federal Claim of Unconstitutional Retaliation*

        The OAG's opposition to dismissal or a stay of this proceeding ignores the

context and timing of the OAG's pursuit of VDARE.  The OAG claimed VDARE's non-

compliance with the OAG's investigative subpoena on December 2, 2022 [*see* Exhibit G], just

*one day* before December 3, 2022, the effective date of New York State's new law - - General

Business Law ("G.B.L.") Section 394-ccc - - aimed at "hateful conduct," defined as the use of

social media to vilify, humiliate, or incite violence.  VDARE does not use social media or any

outlet to vilify, humiliate, nor incite violence against anyone.

        The OAG's claim of noncompliance on December 2, 2022, the day before the

effective date of New York's new law, December 3, 2022, is not the first temporal connection

between the OAG's professed regulatory oversight of VDARE while using its power as a pretext

to pursue it for its speech.  As alleged in VDARE's federal complaint (NYSCEF Docket No. 38,

"Exhibit A" to Affirmation in Support of VDARE's Motion to Dismiss or Stay), the OAG issued

its subpoena to VDARE in June 2022 just after its newly created "Hate Crimes Unit" issued

subpoenas to both Facebook and Facebook's parent company, seeking information about

4

VDARE with specific reference to purported hate speech. Exhibit A at ¶¶ 16-18.

Meanwhile, as alleged in VDARE's federal complaint, the Attorney General in 2020 joined in a letter to Facebook demanding that it increase censorship against "hate speech and hate organizations." Exhibit A at ¶ 14. The Attorney General in 2020 also proclaimed - - expressly - - that she created her Hate Crimes Unit "*to strengthen oversight*, because we see how much hate is being fueled by content on the internet. We're calling on these companies to regulate hate speech and strengthen their policies. They can do more to fight these things - racism, the spread of disinformation and hate." Exhibit A at ¶ 13 (emphasis added). Here, the OAG is misusing its power of regulatory oversight to regulate - - and limit - - constitutionally-protected speech.

Even the OAG's subpoena to VDARE requests documents far afield from any legitimate regulatory oversight, revealing the OAG's true agenda. Among many other things, the OAG demanded "Copies of the transcripts to each deposition in the litigation between VDARE founder Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." This demand refers to a lawsuit for libel filed by Brimelow against the New York Times for calling him an "open white nationalist," which he is not. Exhibit A at ¶ 23.

Despite suspicion that the OAG might be targeting VDARE because of its speech, VDARE completed production of over 6,000 pages of documents maintained electronically and in hard copy in response to the OAG's investigative subpoena; was on its way to completing analysis of 40 gigabytes of emails to identify more responsive documents; and proposed a middle ground for the *only* substantive issue in dispute: the identities of some contractors. VDARE

5

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 135 of 178

produced information about contractors, including services performed and amount paid by

VDARE for such services, but objected to disclosing the *identifies* of all of VDARE's

contractors absent at least some explanation of the OAG's specific investigative need for any

particular contractor's identity.  Even though VDARE's proposed middle ground permitted the

OAG to reserve all rights, the OAG rejected VDARE's proposal, proffering a laundry list of

pretextual complaints.  *See* Exhibit G.  Meanwhile, without condition, VDARE again

demonstrated its good faith by disclosing the identifies of all contractors that might qualify as

"related" parties within the meaning of Section 715 of the New York Not-for-Profit Corporation

Law.

   The OAG rejected VDARE's proposed middle ground not *despite* VDARE's

concern that undue disclosures threatened VDARE's ability to conduct business, but because of

it:  the OAG's letter of December 2, 2022 - - and its pretextual nitpicking about VDARE's

compliance - - makes clear that the OAG's goal is to put VDARE out of business.

C.   *As New York State's Chief Law Enforcement Officer, the Attorney General*
     *Knows or Should Know that VDARE Faces Reprisals Because of its Speech*

   Even without VDARE's repeated objections to the OAG's demand for disclosure

of identities of contractors, it is publicly known that multiple entities have terminated

relationships with VDARE often from of fear of reprisals to themselves for their association with

VDARE.  VDARE's concerns are indisputably genuine.  As recently as January 4, 2023, the

Washington Post published an article entitled, *"A 'hate castle' or welcome neighbor? VDare*

*divides a West Virginia town.  In Berkeley Springs, the purchase of an iconic castle by VDare,*

*which some consider a hate group, has led to angst and ugliness,"* Washington Post, Jan. 4,

Case 1:22-cv-01337-FJS-CFH    Document 35-10    Filed 04/10/23    Page 136 of 178

2023.[3]  Comments to the article posted at *www.washingtonpost.com* contain multiple instances of

public ridicule of VDARE's neighbors in West Virginia whose favorable impressions of VDARE

and its principals were quoted in the article.  Some comments identify quoted people by name;

claim that those favorably impressed by the Brimelows must necessarily be white supremacists;

and express intent not to do business with them and not to "spend money in their town."  One

especially vile public comment called out an elderly proprietor of a local business as a "filthy

racist" because she was quoted in the article as defending VDARE and its principals.[4]

   The OAG neither disputes nor claims to be unaware, as alleged in VDARE's

papers in support on this motion, that multiple businesses providing services essential to

VDARE's continued operations have terminated their relationships with VDARE, including

Mailchimp and Constant Contact (providers of email marketing services), Paypal, Amazon,

Google Ads, and many other businesses.  VDARE created an entity called "Happy Penguins

LLC" for the sole purpose of paying VDARE's employees so that they could identify a non-

controversial entity (Happy Penguins) - - and not VDARE - - as their employer.  *See* VDARE's

Internal Revenue Form 990 for 2019 (identifying "Happy Penguins LLC / Peter Brimelow"

(VDARE's founder) as a service providing leased employees).  *See* NYSCEF Docket No. 37,

Affirmation of VDARE's counsel at ¶ 9.

   The OAG is aware of the risks to VDARE's ability to conduct business if

identities of contractors are disclosed.  The OAG's conduct of its investigative subpoena

---

[3]  Available at *https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/*

[4]  Available in *Comments* to *https://www.washingtonpost.com/dc-md-va/2023/01/03/vdare-berkeley-springs-castle-brimelows/*

Case 1:22-cv-01337-FJS-CFH     Document 35-10     Filed 04/10/23     Page 137 of 178

establishes that its claims of purported noncompliance are a pretext aligned with or indifferent to those risks.

D.      *The OAG's Claims of Purported Noncompliance Are Pretextual*

In opposing relief, the OAG reprises its claims of "haphazard" redactions and delayed production while continuing to ignore the context:  VDARE accepted the OAG's invitation to make a rolling production and set sometimes ambitious deadlines for itself as a showing of good faith.  Rather than acknowledge VDARE's good faith efforts to comply, the OAG brands VDARE's later decisions not to redact names previously redacted as "haphazard;" claims undue delay despite VDARE's completion of its production of over 6,000 pages of documents maintained in hard copy or electronically; and claims noncompliance from VDARE's failure to produce documents maintained in its 40 gigabytes of emails, which VDARE's counsel was analyzing and on the way to completing when the OAG threw down the gauntlet with its letter of December 2, 2022, the day before the effective date of G.B.L. § 394-ccc, New York State's new "hateful conduct" law.

E.      *The OAG Fails to Show Prejudice from Application of New York's "First-Filed" Rule*

The OAG's opposition fails to explain why this Court should not honor New York's well-settled rule and practice that the "court which has first taken jurisdiction" - - in this case, the Northern  District of New York - - "is the one in which the matter should be determined and it is a violation of the rules of comity to interfere."  *Ace Prop. & Cas. Ins. Co. v. Fed.-Mogul Corp.*, 55 A.D.3d 479, 480 (1st Dep't 2008); *accord L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 7 (1st Dep't 2007); *accord Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 110 A.D.3d 87, 95 (1st Dep't 2013) (same).

8

It is precisely because VDARE chose redress in federal court and because issues decided in VDARE's first-filed federal case may be entitled to preclusive effect in this case [*see Buechel v. Bain*, 97 N.Y.2d 295, 304, 315 (2001)], that "a stay is warranted to 'preserve judicial resources, further the interest of justice by preventing inequitable results and promote orderly procedure by furthering the goals of comity and uniformity.'" *National Rifle Assn. of Am. v North,* 2020 N.Y. Misc. LEXIS 6979 at *18 *(quoting Concord Assoc., L.P. v EPT Concord, LLC*, 101 A.D.3d 1574, 1575 (3rd Dep't, 2012).

Conclusion

For all of these reasons and those previously stated, this Court should dismiss this special proceeding or stay it pending resolution of VDARE's first-filed federal case.

Dated: January 18, 2023

Respectfully submitted,

*/s/ Andrew J. Frisch*
Andrew J. Frisch
The Law Offices of Andrew J. Frisch, PLLC
40 Fulton Street, 17th Floor
New York, New York 10038
(212) 285-8000
*afrisch@andrewfrisch.com*

*Attorneys for Respondent*

9

# Exhibit J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VDARE FOUNDATION, INC.,

                    Plaintiff,

      -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                    Defendant.

_____

                                   **22-cv-1337 (FJS/CFH)**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**LETITIA JAMES**
New York State Attorney General
28 Liberty St. New York, NY 10005

By:    JAMES SHEEHAN
        Assistant Attorney General
        NDNY Attorney Bar Roll #516406
        YAEL FUCHS
        Assistant Attorney General
        NDNY Attorney Bar Roll # 702160
        CATHERINE SUVARI*
        Assistant Attorney General
        RICHARD SAWYER*
        Special Counsel, Civil Rights Bureau

        *Pro hac vice applications forthcoming

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 4

New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE. .................................................................................. 4

Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors. ..................................................................................... 5

The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance. .............................................................................................................. 8

STANDARD OF REVIEW ...................................................................................... 11

ARGUMENT ........................................................................................................... 12

I. Sovereign immunity bars the majority of Plaintiff's claims. ............................... 12

II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance. .......................................................................................... 13

III. The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity. ........................... 14

IV. VDARE has not alleged a plausible First Amendment retaliation claim ............................ 17

B.   VDARE has not and cannot plead "but for" causation because no First Amendment claim can arise from an objectively justified investigation. ................................................ 19

C.   VDARE has failed to plead that illicit animus caused an injury. .................................. 21

V. Count Four must also be dismissed. .................................................................... 22

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993) ......................... 15, 19

*Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322 (N.D.N.Y. 2010) ..................................... 12

*Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013) ............................................ 12

*Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436 (2d Cir. 2003) ........................... 17

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84 (2d Cir.1988) ..................................... 14

*Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ................................... 3, 15, 16

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ............................................................ 15

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y 2014) .................................................................... 12

*Avery v. DiFiore*, 2019 WL 3564570 (S.D.N.Y. Aug. 6, 2019) ..................................... 12, 19, 21

*Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849 (E.D.N.Y. Sept. 28, 2010) ................ 5, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 11

*Bimber's Delwood, Inc. v. James*, 496 F. Supp. 760 (W.D.N.Y. 2020) ........................................ 22

*Brown v. Socialist Workers '74 Comm. (Ohio)*, 459 U.S. 87 (1982). ............................................ 16

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). .............................................................................. 13

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) .................................................... 15

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) .................................................... 20, 21, 22

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ............................................................. 18

*Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017) ................................. 3, 16

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ............................... 19

*Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521 (S.D.N.Y. 2007)... 12

*Hartman v. Moore*, 547 U.S. 250 (2006) ....................................................................... 18, 19, 20

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) .............................. 19

*Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980)..........................................................................14

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639 (2d Cir. 2009)...........................................14

*Matter of Hogan v. Cuomo*, 67 A.D.3d 1144 (3d Dep't 2009) ..........................................21

*Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700 (2d Cir. 2022) ....................................................21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)..............14

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).......................................................18, 19, 21

*Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311 (W.D.N.Y. 2020). 11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)..........................12, 13

*People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000 (Sup. Ct. N.Y. Cnty. 2022) ...........18, 21

*People by James v. VDARE Found., Inc.*, Index No. 453196/2022 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022) ...........................................................................................11, 17, 21

*People by Underwood v. Trump*, 62 Misc. 3d 500 (Sup. Ct. N.Y. Cnty. 2018)...........................18

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995)...........................................20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ....................................5, 20

*Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir. 1991) ...........................................13

*Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022)...........13

*United States v. Konstantakakos*, 121 F. App'x 902 (2d Cir. 2005)...............................19

*Wayte v. United States*, 470 U.S. 598 (1985) ...........................................................20

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011)...........................................................22

**Statutes**

42 U.S.C. § 1983 ...........................................................................................12, 13

EPTL § 8-1.4(i); ...........................................................................................5

Exec. Law § 175...........................................................................................5

Exec. Law § 63(12) ........................................................................................................5

N-PCL § 1008(a)(15) ......................................................................................................5

N-PCL § 1101 ................................................................................................................5

N-PCL § 1102 ................................................................................................................5

N-PCL § 1109(b) ...........................................................................................................5

N-PCL § 1115(a) ...........................................................................................................5

N-PCL § 112(b)(6) .........................................................................................................5

N-PCL § 509 ................................................................................................................20

N-PCL § 510 ................................................................................................................20

N-PCL § 511 ................................................................................................................20

N-PCL § 511-a .............................................................................................................20

N-PCL § 706 ..................................................................................................................5

N-PCL § 714 ..................................................................................................................5

N-PCL § 715 ............................................................................................................. 5, 20

N-PCL § 717 ..................................................................................................................5

N-PCL § 720 ..................................................................................................................5

N-PCL, Art. 5 .................................................................................................................5

U.S. Constitution, Amendment XI ...............................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1) ...............................................................................................12

Fed. R. Evid. 201 ..................................................................................................... 5, 20

## PRELIMINARY STATEMENT

Plaintiff VDARE Foundation, Inc., a New York-chartered non-profit, has asked the Court to end the Attorney General's lawful investigation into VDARE's apparent pattern of self-dealing and financial misconduct by nullifying a valid state administrative subpoena. But neither the First Amendment nor any other provision of law justifies such a drastic measure, and the Court's intervention would seriously harm New York State's interest in enforcing its non-profit law. The Attorney General has a statutory responsibility to protect charitable property controlled by organizations, like VDARE, under its jurisdiction. Publicly available information fully justifies its investigation here.

The Attorney General began investigating VDARE after its own public filings, statements, and published media reports revealed a possible pattern of self-dealing, misleading donor solicitation, misuse of charitable assets, and false reporting. As one example, VDARE apparently used charitable funds to purchase the $1.4 million medieval-style Berkeley Springs Castle and promptly conveyed the property to two corporations established by one of its directors. That director and her husband, the organization's founder and also a director, admittedly used the castle as a family residence. These transactions, among others, raise serious questions regarding VDARE's governance and use of charitable assets.

In June 2022, the Attorney General served an investigative subpoena on VDARE for records relating to the Berkeley Springs Castle transactions, other related-party transactions, VDARE's corporate structure, record keeping, and relevant governance policies. VDARE did not move to quash or modify the subpoena and partially complied for months. Its counsel repeatedly requested deadline extensions and promised to complete production by December 12, 2022. The Attorney General asked VDARE to provide a redaction log by that date to better

understand the extensive and haphazard redactions in VDARE's document productions. But VDARE did not complete production, as promised, or provide a redaction log on December 12. Instead, it ceased complying with the subpoena and filed this lawsuit.

VDARE's complaint completely ignores the indicia of self-dealing and other regulatory misconduct that drew the Attorney General's scrutiny. Those facts are detailed at length in a pending state-court petition to compel subpoena compliance. *See* Fuchs Aff., Ex. A. VDARE cannot use its status as a publisher of controversial opinions as a pretext for diversion or waste of charitable assets, and it should not be permitted to use this Court's power to circumvent the Attorney General's lawful investigation.

All of VDARE's claims are without merit and should be dismissed.

*First*, VDARE's claims for monetary damages, and its claims under the New York Constitution (Counts 2 and 3) are barred by the Eleventh Amendment and sovereign immunity and should be dismissed for lack of jurisdiction.

*Second*, the state-court proceeding pending before Justice Sabrina B. Kraus is the proper venue for raising the subpoena objections that VDARE wants this Court to consider. Given the comprehensive regulatory scheme governing New York charities and the State's clear interest in investigating potential violations of that law, the Court should abstain from deciding those issues under the *Burford* abstention doctrine.

*Third*, even if this Court considers VDARE's claims, VDARE has failed to plausibly allege that the Attorney General's subpoena violates the First Amendment (Count 1). In this investigation of self-dealing and misuse of charitable assets, the Attorney General's subpoena reasonably seeks the identities of those who have received payments from VDARE. VDARE has not and cannot cite a single example of a federal court granting the extraordinary relief requested

here—nullifying a lawfully issued subpoena on the basis that financial and governance records must be kept secret from a state agency investigating possible misuse of funds. On the contrary, the Supreme Court recently ratified such investigative tools in the *Americans for Prosperity* decision cited by VDARE. *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021). Unlike the federal cases cited by VDARE, the Attorney General is conducting a targeted investigation, not requiring blanket disclosures, and the information sought by the subpoena will not be made publicly available. Nor does the state-court case VDARE cites, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), justify enjoining this investigation. There, in an appeal of a state-court special proceeding (akin to the one pending in this case), the Appellate Division affirmed the Attorney General's subpoena and permitted the investigation to go forward while placing limited restrictions on the subpoena's scope. Nothing in that decision justifies an order under § 1983 declaring the Attorney General's investigation "unconstitutional."

*Fourth*, VDARE's complaint fails to plausibly allege a First Amendment retaliation claim. Illegal conduct, like the possible self-dealing under investigation, is not protected by the First Amendment. And because good cause exists for the Attorney General's subpoena, VDARE cannot show that any improper motive was the but-for cause of the investigation. Nor has VDARE shown any injury from the investigation, despite months of partial compliance and the haphazard disclosure by counsel of many contractors' identities.

*Finally*, because VDARE's other claims must be dismissed, its request for an injunction must also be denied.

For these reasons, the Court should dismiss this action in its entirety.

## BACKGROUND

**New York law authorizes the Attorney General to investigate apparent unlawful conduct at registered charities like VDARE.**

VDARE incorporated as a not-for-profit charitable corporation under the laws of New York and is registered as a charity under New York law. Compl. ¶¶ 1–2. VDARE does not dispute that it operates subject to the Attorney General's oversight as a New York regulated non-profit entity.

Under New York law, the Attorney General has a duty to protect "the public interest in charitable property." *Schneiderman v. Tierney*, No. 451489/2014, 2015 WL 2378983, at *2 (Sup. Ct. N.Y. Cnty. May 18, 2015). The law gives the Attorney General "broad supervisory and oversight responsibilities over charitable assets and their fiduciaries." *In re McDonell*, 195 Misc. 2d 277, 278-79 (Sup. Ct. N.Y. Cnty. 2002); *see also Abrams v. Found. for the Homeless*, 190 A.D.2d 578 (1st Dep't 1993); *Spitzer v. Lev*, No. 400989/2002, 2003 WL 21649444, at *3 (Sup. Ct. N.Y. Cnty. June 5, 2003); *In re McDonnell*, 195 Misc. 2d 277, 278–79 (Sup. Ct. N.Y. Cnty. 2002). This includes "preventing fraud and self-dealing in charities" by launching investigations and enforcement actions. *Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018).

As the State's chief law enforcement officer, "there is no doubt that the Attorney-General has a right to conduct investigations to determine if charitable solicitations are free from fraud and whether charitable assets are being used properly for the intended beneficiaries." *Abrams v. Temple of the Lost Sheep*, 148 Misc. 2d 825, 828–29 (Sup. Ct. N.Y. Cnty. 1990); *see also People by James v. Nat'l Rifle Assoc. of Am., Inc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022). Under both the Not-For-Profit Corporation Law and the Estates, Powers, and Trusts Law, the Attorney General may pursue such investigations through investigative subpoenas to New York

charities, like VDARE, and to any third parties that may have relevant documents or information. *See* EPTL § 8-1.4(i); N-PCL § 112(b)(6); *see also* Exec. Law §§ 63(12) (authorizing subpoenas directed at uncovering fraud and illegality), 175 (authorizing subpoenas for investigations of fraud in charitable solicitations). Issuing such subpoenas is a preliminary step to determine whether cause exists for the Attorney General to take further enforcement action, which could include directing restitution, unwinding transactions, requiring an accounting, removing officers, or dissolving the entity. *See, e.g.,* N-PCL §§ 706, 714, 715, 717, 720, 1008(a)(15), 1101, 1102, 1109(b), and 1115(a); *see also* N-PCL, Art. 5.

### Public filings indicate that VDARE used charitable funds to buy a medieval-style castle in West Virginia, permits its directors to live in it, and conveyed it to two corporations established by one of those directors.

According to VDARE, it is "a mom-and- pop operation run by Peter and Lydia Brimelow, husband and wife." Compl. ¶ 2. VDARE's 2020 IRS Form 990—the most available—confirms that the organization is overseen exclusively by the Brimelow family: Peter Brimelow serves as its chairman, Lydia Brimelow as president, and John Brimelow as a director. Fuchs Aff., Ex. B at 7.[1] On that same form, VDARE lists its only activity as "[c]reate[ing] and manag[ing] internet publication." Fuchs Aff., Ex. B at 1.

Publicly available documents suggest that VDARE has grown significantly in recent

---

[1] On a motion to dismiss, the Court may consider the pleading, information incorporated into the pleading by reference, and any document upon which the pleading relies. *Geron v. Seyfarth Shaw LLP*, 736 F.3d 213, 219 (2d Cir. 2013). Specifically, the Court may consider a document where a complaint "relies heavily upon its terms and effect" or "[w]here the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint…." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court may also consider matters that are subject to judicial notice, including properly recorded deeds, *Awan v. Ashcroft*, No. 09-cv-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010), newspaper articles, and regulatory filings, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). *See* Fed. R. Evid. 201.

years, and the organization now reports millions of dollars in charitable donations and hundreds

of thousands of dollars in compensation for Peter Brimelow. In 2019, VDARE reported $4.2

million in donations to the IRS, an eightfold increase over its reported 2018 revenue. *See* Fuchs

Aff., Ex. C, D. And Peter Brimelow's reported compensation jumped from $181,675 in 2018 to

$345,364 in 2019. *Id.* In 2020, VDARE reported paying more than $300,000 in compensation to

Peter and Lydia Brimelow. Fuchs Aff., Ex. B.

On February 14, 2020, VDARE purchased a medieval-style castle in Berkley Springs,

West Virginia. Shortly after the purchase, Lydia Brimelow confirmed that VDARE bought the

castle with donor funds, writing that "donors stepped forward in an unprecedented way" to

enable the purchase. *Lydia Brimelow: We Got the Keys to the Castle!*, VDARE.com,

https://vdare.com/articles/lydia-brimelow-we-got-the-keys-to-the-castle (last visited Dec. 12,

2022).. She described the castle as a "meeting space," and wrote that "[h]aving a space where we

can meet and share ideas without fear of deplatforming will make a difference so material it is

hard to overstate." *Id.*

But statements published on VDARE's website within months of the purchase indicate

that Peter and Lydia Brimelow were not using the castle as a meeting space but instead as their

family's full-time residence. The Brimelows posted family photos celebrating the Fourth of July

and Christmas Eve in the castle. *The Brimelow Family Wishes You a Happy Independence Day*,

https://vdare.com/posts/the-brimelow-family-wishes-you-a-happy-independence-day (last visited

Dec. 20, 2022); *Merry Christmas from VDARE.com!*, VDARE.com,

https://vdare.com/articles/peter-brimelow-merry-christmas-from-vdare-com-f3d0cb33-af41-

4d90-93b9-c82cd46c5950 (last visited Dec. 20, 2022). And, describing a visit to the castle, a

VDARE contributor wrote that "Peter and Lydia Brimelow have moved in and spend most of

11

their time there." *Radio Derb: Castling with VDARE.com*, VDARE.com,

https://vdare.com/radio-derb/castling-with-vdare-com-senate-visa-giveaway-covid-hypocrisy-
and-students-cancel-black-etc (last visited Dec. 20, 2022). In a state-court filing, VDARE's

counsel admitted that Peter and Lydia Brimelow lived in the castle "for a period of months" and

stated that they still live on the castle's grounds. *See* Fuchs Aff., E.

      Later in 2020, Lydia Brimelow executed two transfers on behalf of VDARE conveying

the entire castle property—a $1.4 million charitable asset—to two West Virginia corporations

she had founded earlier that year. *See* Fuchs Aff., Exs. F–I. One deed filed with the Morgan

County, West Virginia, Register of Deeds conveyed the castle itself and the land it occupies to

the Berkeley Castle Foundation, Inc., a not-for-profit established by Lydia Brimelow. Fuchs Aff.,

Exs. F, H. A second deed conveyed the remaining eight parcels of surrounding land to BBB,

LLC, a for-profit corporation also established by Lydia Brimelow. Fuchs Aff., Exs. G, I. The

sole signatory for both deeds was Lydia Brimelow. Fuchs Aff., Exs. F, G. Under the tagline

"When nothing but a castle will do," the Berkeley Castle Foundation now advertises the castle as

a for-rent event space. https://www.berkeleyspringscastle.com/contact.html (last visited

December 14, 2022). According to a publicly filed contract signed by Lydia Brimelow (as both

landlord and tenant), the Brimelows now pay monthly "rent" to BBB, the for-profit corporation,

to reside on the castle property. Fuchs Aff., Ex. J. In other words, the Brimelows used charitable

funds to purchase property in which they reside, transferred the grounds to a for-profit

corporation they control, and now pay rent to that company, in essence to themselves.

      There is a host of potential violations of New York charities law implicated in this series

of transactions. As an example, transferring or approving a transfer of charitable assets from a

charitable New York not-for-profit corporation to a for-profit entity without fair compensation is

a violation of New York and federal law and a breach of the fundamental fiduciary responsibilities of directors and officers. *See generally* Fuchs Aff., Ex. A (petition to compel subpoena in state court). The castle transactions were not reported on VDARE's 2020 IRS Form 990, as required by federal and New York law, nor were they submitted to the Charities Bureau or the New York Supreme Court for approval, as required by N-PCL §§ 510, 511, and 511a. *See* Fuchs Aff. at B. Even had they been submitted, neither the Charities Bureau nor the Court would have the authority to approve such a transaction because VDARE had no independent directors who could have approved it. *See* N-PCL § 510.

### The Attorney General begins investigating VDARE, issues subpoenas, and VDARE resists compliance.

On June 24, 2022, the Attorney General served VDARE with an investigative subpoena seeking information related to VDARE's purchase and conveyance of the Berkeley Springs Castle and other transactions between VDARE, the Brimelows, and entities they control (the "VDARE Subpoena"). Compl. ¶ 22; Fuchs Aff., Ex. K at 5–9. The VDARE Subpoena also sought information related to VDARE's compliance with New York law governing charities, including VDARE's structure, conflict -of -interest policies, charitable solicitations, and financial operations. Fuchs Aff., Ex. K at 5–9.[2]

The VDARE Subpoena did *not* seek any information regarding the development or

---

[2] The Attorney General also served subpoenas on Meta, Facebook's parent company, for information related to allegations that VDARE had engaged in what Facebook characterized as "coordinated inauthentic behavior," activity that could constitute breaches of fiduciary duty under New York law. Compl. ¶¶ 16, 17. Facebook's "Coordinated Inauthentic Behavior Report" described this misconduct as "us[ing] fake accounts to create fictitious personas, post in Groups, manage Pages, drive traffic to off-platform sites, and evade enforcement." Compl. ¶¶ 16, 17; Fuchs Aff. Ex. L at 16. Contrary to VDARE's assertion, *see* Compl. ¶ 19, the Facebook Subpoenas did *not* call for information protected by 18 U.S.C. § 2703(b), and explicitly said so on their face. *See* Fuchs Aff., Ex. M at 4, ¶ 10.

publication of VDARE's online content. *Id.* Nonetheless, VDARE's counsel initially refused to comply with the subpoena at all, describing it as "incredibly unlawful." Compl. ¶ 24; Fuchs Aff. Ex. N. To address VDARE's expressed concerns, the Attorney General agreed to permit limited redactions omitting names and address information for donors and uncompensated volunteers. *See* Fuchs Aff. Ex. O. But VDARE's counsel continued to refuse compliance.

In August 2022, VDARE retained new counsel and allegedly directed him to comply with the VDARE Subpoena. Compl. ¶ 25. In a letter on September 19, 2022, the new counsel identified "a significant volume of electronically-stored (sic) and hard copy documents that need to be reviewed" for production. Compl. ¶ 25; Fuchs. Aff., Ex. P. The parties also agreed on amending the scope of the Facebook Subpoenas to omit donors' identifying information. Compl. ¶ 31.

On September 19, 2022, nearly two months after the VDARE Subpoena's initial deadline, VDARE's counsel finally produced a mere 27 heavily redacted documents without Bates numbers. *See* Fuchs Aff., Exs. P, Q. VDARE provided no log to identify or explain the redactions. *See* Fuchs Aff., Ex. Q; Compl. ¶¶ 28, 32. By email, the OAG requested a redaction log describing the legal basis for each redaction and the category of information being withheld—information to which it is entitled under law. *Id.* Without such redactions, the email explained, the OAG had no means to "reliably identify what has been deleted…and on what legal basis." Fuchs Aff., Ex. Q..

In the nine weeks between September 19 and November 21, VDARE produced only about 6,000 pages of documents, including many duplicates. Compl. ¶ 25. The productions consisted primarily of documents from VDARE's paper files and did not include the 40 gigabytes of emails or other electronically stored data identified by VDARE's counsel. Compl.

¶¶ 25, 30. The documents also bore numerous redactions, and VDARE again did not provide a redaction log. Compl. ¶¶ 28, 32. According to VDARE, despite having more than six months to work, completing production and compiling a redaction log had not been possible because redacting documents is "labor-intensive and time-consuming." Compl. ¶¶ 28, 32. VDARE's counsel then missed an agreed November 21, 2022 deadline for electronic file production. On November 28, he wrote that email production would be complete by December 12, 2022. *See* Fuchs Aff., Ex. S.

After several attempts to resolve the dispute regarding redactions and to obtain a complete production, *see* Compl. ¶¶ 26–28, 30–31, on December 2, 2022, the OAG requested a complete production and redaction log by December 12, the date set by VDARE's counsel, Compl. ¶ 32; *see* Fuchs. Aff., Exs. S, T. The OAG's letter identified three areas of deficiencies: "(1) ongoing delay and…repeated failure to abide by deadlines that [VDARE itself] proposed; (2) VDARE's failure to produce certain categories of documents based on unsubstantiated objections; and (3) redactions in the production for which [VDARE has] not provided any legal justification and which appear to be applied haphazardly." Fuchs Aff., Ex. T at 1. The letter identified redactions to, among other things, the "contact information for an architectural firm hired to review potential renovations at the Berkeley Springs Castle property," "bank statements to accounts held by entities *other* that VDARE," including bank accounts for the Brimelows' privately controlled LLC, and "contact information for an individual hired to perform 'VDARE Admin' services." *Id.* at 3. The OAG observed:

> These redactions are accompanied by the unredacted disclosure of numerous other VDARE contractors, vendors, and employees identified in VDARE's records, so that your stated treatment of redaction appears inconsistent, to say the least, and raises serious

15

concerns about the legal basis for any such redactions.

*Id.*

On December 12, 2022, rather than provide a redaction log or make its required production, VDARE filed the present lawsuit. Despite months of partial compliance with the subpoena and promises to complete production, VDARE now claims that the Attorney General's efforts to compel timely and full compliance "threatens VDARE's existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected (sic) speech." Compl. ¶ 33.

On December 16, 2022, after VDARE missed its own proposed production deadline of December 12, the OAG began a state-court proceeding to compel compliance. *See People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. No. 1 (Sup. Ct. N.Y. Cnty. Dec. 16, 2022). Justice Sabrina B. Kraus of the New York County Supreme Court ordered VDARE to show cause and to respond by January 12, 2023; argument is set for January 19. *See People v. VDARE*, Index No. 453196/2022, Dkt. No. 33 (Sup. Ct. N.Y. Cnty. Dec. 21, 2022).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Orange Trans. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint's allegations are generally taken as true, a plaintiff must provide "more than labels and conclusions…. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*, quoting *Twombly*, 550 U.S. at 555. "A plaintiff must show more than a sheer possibility that a defendant has acted unlawfully." *Avery v.*

*DiFiore*, 2019 WL 3564570, at *2 (S.D.N.Y. Aug. 6, 2019) (cleaned up).

"The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) (cleaned up).

## ARGUMENT

### I.    Sovereign immunity bars the majority of Plaintiff's claims.

Sovereign immunity bars VDARE's claims seeking compensatory and punitive damages under 42 U.S.C. § 1983 (Count Two) and its claims under the New York Constitution (Count Three). Those claims must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

VDARE sued the Attorney General in her official capacity only, and all of its claims for monetary relief under § 1983 are therefore barred by the Eleventh Amendment and must be dismissed. *See, e.g.*, *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y 2014) (holding that the Eleventh Amendment bars § 1983 suits against the State of New York and state officers in their official capacities); *Finch v. N.Y. State Off. of Children and Family Servs.*, 499 F. Supp. 2d 521, 536 (S.D.N.Y. 2007) (holding "a suit against a State official in [her] official capacity is, in effect, a suit against the state itself, which is barred." (cleaned up)).

Sovereign immunity also bars VDARE's claim under the New York Constitution (Count Three). "Sovereign immunity bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought." *Alleyne v. N.Y. State Educ. Dep't*, 691 F.Supp.2d 322, 335 (N.D.N.Y. 2010) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984)). That includes injunctive or declaratory relief

against a state officer—unlike suits under federal law, such relief is not permitted for claims under state law. *Pennhurst*, 465 U.S. at 106. The Court must therefore dismiss VDARE's state-law claim for lack of jurisdiction.

## II. Abstention is appropriate given the ongoing state-court litigation concerning VDARE's subpoena compliance.

This action is an explicit attempt by VDARE to turn a state-law discovery dispute into a federal case, and, by extension, evade scrutiny for possible violations of New York state law. VDARE's request that this Court enjoin the Attorney General's subpoena constitutes an unwarranted federal intrusion into New York's oversight of charitable entities that raises serious federalism and comity concerns. Given the pending subpoena enforcement action, VDARE's claims here, including the constitutional issues it raises, may be litigated as defenses in the state forum. This is a clear example of an instance where abstention is justified. *See Burford v. Sun Oil Co*., 319 U.S. 315 (1943); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991);*see also Trump v. James*, 21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022) (dismissing a § 1983 lawsuit brought to nullify a state administrative subpoena and holding "[a] state's interest in enforcing its own laws and investigating their violation cannot seriously be disputed" (cleaned up)).

### A. The Court should abstain under the *Burford* abstention doctrine.

In *Burford v. Sun Oil Co*., 319 U.S. 315 (1943), the Supreme Court held that where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings…where the 'exercise of federal review…would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

(1989) (internal citation and quotation marks omitted).

*Burford* abstention applies to prevent federal courts from "interfering with state efforts…in an area of comprehensive regulation or administration," even where a federal question may be present. *American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988) (noting also that abstention may be appropriate "in deference to parallel state court proceedings….in order to further the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." (cleaned up)). *See also Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir.1980). Burford abstention applies when "the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009), and charities regulation certainly qualifies.

New York has a comprehensive statutory scheme for the oversight of charitable not-for-profits, which empowers the Attorney General to carry out the important state interest of ensuring proper governance and proper use of charitable assets to fulfill a legitimate charitable mission. Following an initial investigation, the Attorney General served a lawful investigative subpoena on VDARE. The ongoing proceeding in New York State Supreme Court is the appropriate place to assess VDARE's assertions that the Attorney General's claims of illegal conduct lack merit or infringe constitutional rights.

In light of the foregoing, the Court should abstain here.

## III. The First Amendment does not prohibit the use of an administrative subpoena to investigate potential unlawful conduct by a New York-regulated charity.

VDARE cannot cite a single case where a federal court has granted the extraordinary relief VDARE seeks under Count One: an order declaring "unconstitutional" a state administrative subpoena investigating a registered charity's self-dealing and diversion of charitable funds, solely on the basis that the subpoena infringes on an asserted First Amendment

19

right to keep contractors' identities a secret. To the contrary, the leading case VDARE cites, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), explicitly endorsed the use of such investigative tools. There, the Court found that the state "has an important interest in preventing wrongdoing by charitable organizations," and the Attorney General could use subpoenas and audit letters to combat "misuse, misappropriation, and diversion of charitable assets…false and misleading charitable solicitations [and] other improper activities by charities." *Id.* at 2386 (cleaned up). Anonymity *can* be an important First Amendment right, but when it is used to mask violations of the law, "it is unprotected by the First Amendment." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (affirming decision not to quash *federal* subpoena on First Amendment grounds because it would reveal the identity of alleged copyright violator); *see also Abrams v. N.Y. Found. for the Homeless*, 190 A.D.2d 578, 578 (1st Dep't 1993) ("The mere utterance of First Amendment privileges by a purported eleemosynary [charitable] organization cannot shield defendants from the scrutiny of the Attorney-General.").

Here, in an investigation of potential misuse of charitable assets, complete review of transaction parties, organizational spending, and governance and financial controls is critical. Public records have already disclosed more than a million dollars in transactions between VDARE and two corporations established—and controlled—by VDARE's directors. As described above, such transactions could not have been approved by a disinterested board— because the board consisted entirely of Brimelows—and thus violated New York law. Without review of VDARE's actual financial operation and its control by the Brimelows, the Attorney General cannot fulfill her mandate of "preventing fraud and self-dealing in charities." *Citizens United v. Schneiderman*, 882 F.3d 374, 379, 384 (2d Cir. 2018). No authority has ever held that

the Constitution applies the sort of blanket immunity to such scrutiny that VDARE requests here.

The cases VDARE cites are not to the contrary. *Americans for Prosperity* prohibited only mandated donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation. 141 S. Ct. 2386–87. Here, that decision is doubly irrelevant because the OAG has issued a valid subpoena (as that case endorsed) and has already agreed to redactions to unrelated donor identifying information (the only category of First Amendment-protected information at issue there). Similarly, *Brown v. Socialist Workers '74 Comm. (Ohio)* invalidated a statutory requirement that a political party report *all* of its donors and contractors for a list that would be "open to public inspection for at least six years." 459 U.S. 87, 89–90 (1982). Like *Americans for Prosperity*, that case did not even address, let alone call into question, a state's authority to issue targeted investigative subpoenas as part of a statutorily authorized, pre-complaint regulatory investigation. And VDARE has not come close to identifying a commensurate harm to that law's six-year public inspection requirement. It has not and cannot allege a *single* instance of the Attorney General publicizing confidential information obtained through a valid subpoena. Finally, despite VDARE's misleading characterization, *see* Compl. ¶ 37, *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87 (2d Dep't 2017), did *not* hold that the Attorney General's subpoena was "invalid." There, the court upheld the Attorney General's subpoena and enforced compliance but narrowed the scope of some of the subpoena's demands. *Id.* at 101–03. Such fine-tuning is a far cry from what VDARE seeks here—complete invalidation of the VDARE Subpoena.[3]

VDARE's request in Count One for an order declaring the VDARE Subpoena

---

[3] VDARE is free to raise similar arguments in the state-court proceeding if it believes some of the subpoena's requests violate the First Amendment. What it cannot do—and *Evergreen* did not

"unconstitutional" should accordingly be dismissed for failure to state a claim.

## IV.    VDARE has not alleged a plausible First Amendment retaliation claim.

VDARE's cursory allegation of "pretext" is not supported by any plausible allegation of

fact and cannot overcome the presumption of regularity accorded to the Attorney General's

review. The Attorney General began investigating VDARE after it became apparent that the

organization had used charitable funds to buy a castle for its directors to use as a family

residence. Public records further showed that VDARE conveyed the entire castle property to two

corporations established by director Lydia Brimelow and that the only signatory to those deeds

was Lydia Brimelow herself. Fuchs Aff. Exs. E–H. Those transactions should have been

disclosed to the IRS and reviewed by the Attorney General's office but were not. Those facts

suggested of self-dealing, misappropriation, and breach of fiduciary duties by VDARE's

directors, and false filings by VDARE with the Charities Bureau, in violation of New York law.

Other potential violations of law were apparent from the face of documents VDARE submitted

to the IRS and the Attorney General's Office. *See generally* Fuchs Aff., Ex. A; *People by James

v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4 (Sup. Ct. N.Y. Cnty. Dec. 16,

2022) (setting forth the Attorney General's basis to investigate).

Under Count Two, VDARE argues that the First Amendment shields it from such

scrutiny because of an asserted retaliatory motive. But it is not "within the province of the courts

---

do—is use this Court to invalidate the entire subpoena on a nebulous First Amendment ground.
To the extent the Court believes the subpoena requires fine-tuning, the issue is not yet ripe for
consideration because the same issue is pending in state court, and this Count should still dismiss
on prudential ripeness grounds. *See, e.g.*, *Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.*, 347
F.3d 436, 440 (2d Cir. 2003) (dismissing appeal as unripe, holding the issues it raised were "ill-
suited for judicial resolution at this stage" because other remedies were available). Finally,
*Evergreen* is fully distinguishable because the investigation at issue in that case did not entail
allegations of financial misconduct and self-dealing, like those against VDARE, that require
disclosure of financial records, including records of payments made, and governance documents.

to subjectively determine the motivation of a government agency in commencing an enforcement proceeding, or to dismiss the proceeding because of the political disagreements of the parties." *People by Underwood v. Trump*, 62 Misc. 3d 500, 509 (Sup. Ct. N.Y. Cnty. 2018). VDARE has failed to plead, as it must to succeed, that "animus and bias were the *sole* motivating factors for initiating the investigation." *Id.*; *see also People by James v. Nat'l Rifle Assoc.*, 75 Misc. 3d 1000, 1005 (Sup. Ct. N.Y. Cnty. 2022) (rejecting a First Amendment retaliation claim because "the 'nonretaliatory grounds' were more than sufficient to justify the Attorney General's investigation") (emphasis added).

To state a First Amendment retaliation claim, VDARE must adequately plead that "(1) [it] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [its] exercise of that right; and (3) the defendant's actions caused [it] some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

VDARE fails to plead all three elements. *First*, the alleged wrongdoing at issue in the Attorney General's investigation is not First Amendment-protected activity and VDARE does not allege any injury through the Attorney General's subpoena into its protected online speech or the identities of its readers or donors. *Second*, VDARE has not, and cannot, plead that the Attorney General's investigation was illegitimate. VDARE's allegations cannot overcome the "presumption of regularity" afforded the Attorney General's actions. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006). *Third*, VDARE has not pleaded that retaliatory animus was the but-for cause of any injury. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (emphasis in

23

original).

### A.   Illegal conduct is not protected by the First Amendment.

VDARE does not and cannot contend that possible self-dealing, looting of charitable assets, and false filings are protected by the First Amendment. *See, e.g.*, *Illinois, ex rel. Madigan v. Telemarketing Assocs.*, *Inc.*, 538 U.S. 600, 612 (2003); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 710 (S.D.N.Y. 2018) ("Ensuring that 'accurate information' reaches the market and the public is consistent with a *bona fide* investigation—not retaliation."); *see also United States v. Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005) ("[I]t has long been established that the First Amendment does not shield knowingly false statements made as part of a scheme to defraud."); *N.Y. Found. for the Homeless*, 190 A.D.2d at 578.

The VDARE Subpoena calls primarily for documents related to VDARE's governance, financial controls, and financial relationships with VDARE directors and their corporations, and it is aimed at discovering financial misconduct. The subpoena does not call for documents related to VDARE's editorial content—its First Amendment-protected activity. VDARE may not use its status as a publisher of controversial opinion as a pretext for its directors to divert or waste charitable assets. Allegations of such misconduct are a proper target of an investigation.

### B.   VDARE has not and cannot plead "but for" causation because no First Amendment claim can arise from an objectively justified investigation.

The retaliation claim also fails because VDARE has not, and cannot, plead that the Attorney General's investigation lacked a legitimate basis. Under settled precedent, a First Amendment retaliation claim requires proving that the investigation would not have taken place "but for" a retaliatory motive—in other words, the investigation had no legitimate legal or factual basis. *Nieves*, 139 S. Ct. at 1722 (citing *Hartman*, 547 U.S. at 259–260); *see also Avery*, 2019 WL 3564570, at *3 (applying *Nieves* on a motion dismiss). Conversely, when an

investigation has a legitimate cause, a retaliation claim necessarily fails. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[B]ecause defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive…need not be undertaken."); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (similar). The requirement of "but for" causation advances the "presumption that a prosecutor has legitimate grounds for the action [she] takes." *Hartman*, 547 U.S. at 263 (citing *Wayte v. United States*, 470 U.S. 598, 607–08 (1985)).

The Court can take judicial notice of public records, public filings, and public statements made by VDARE providing ample justification for the Attorney General's subpoena. Fed. R. Evid. 201; *Awan*, 2010 WL 3924849, at *2; *Staehr*, 547 F.3d at 425. Public records indicate that VDARE purchased a $1.4 million medieval-style castle in West Virginia, and public statements by VDARE suggest that it was bought with donor funds. *Supra*, 2–3. Additional statements by VDARE and published on its website indicate that VDARE's directors, Peter and Lydia Brimelow, use that castle as a family residence. *Id.* Public records show that VDARE conveyed the castle to two corporations owned and controlled by Lydia Brimelow, and the only signatory on both deeds was Lydia Brimelow herself. *Supra*, 3–4. And a document filed publicly by VDARE indicates that the Brimelows pay "rent" to BBB, LLC, the for-profit corporation Lydia Brimelow established, to reside on the castle grounds. *Supra*, 4. Those "related-party" transactions required disinterested board approval, disclosure on VDARE's IRS Form 990, and the submission of a petition by VDARE for review and approval by the Attorney General or N.Y. Supreme Court. *See* N-PCL §§ 509, 510, 511, 511-a, 715; Internal Revenue Service Filing Information, Intermediate Sanctions—Excise Taxes, at https://www.irs.gov/charities-non-profits/charitable-organizations/intermediate-sanctions-excise-taxes (last visited Dec. 15, 2022). Based on public records, none of those steps appears to have been taken. *See generally* Fuchs

Aff., Ex. A; *People by James v. VDARE Found., Inc.*, Index No. 453196/2022, Dkt. Nos. 3, 4

(Sup. Ct. N.Y. Cnty. Dec. 16, 2022) (setting forth the Attorney General's basis to investigate).

Those facts more than justify the Attorney General's investigation. Under New York law,

the factual basis for an investigative subpoena "need not be sufficient to *establish* fraud or

illegality, or even provide probable cause, as long as the futility of the process is not inevitable or

obvious." *Matter of Hogan v. Cuomo*, 67 A.D.3d 1144, 1146 (3d Dep't 2009) (emphasis added).

It is enough, as here, that available information provide a reasonable basis for further

investigation. Because the Attorney General's investigation has a legitimate basis, VDARE's

retaliation claims fail, and it does not matter whether VDARE has pleaded any alternative

motivation, no matter how nefarious. *See Nieves*, 139 S. Ct. at 1722; *Avery,* 2019 WL 3564570,

at *3; *Nat'l Rifle Ass'n*, 75 Misc. 3d at 1005.[4]

### C. VDARE has failed to plead that illicit animus caused an injury.

Finally, VDARE's claims also fail because it has not plausibly alleged an actionable

injury. *Dorsett*, 732 F.3d at 160. VDARE's only alleged injury is the conclusory assertion that

the OAG's investigation "threatens VDARE's existence." Compl. ¶¶ 30, 33. This is not

adequate—such "cursory" allegations are insufficient to "establish facial plausibility." *Zherka v.*

---

[4] The Court need not reach this question, *see Curley*, 268 F.3d at 73, but VDARE has also failed to plead *any* First Amendment animus. The out-of-context quotes from the Attorney General related to oversight of "social media companies" like Facebook do not establish any animus toward VDARE. *See* Compl. ¶¶ 13, 14; *Nat'l Rifle Assoc. v. Vullo*, 49 F.4th 700, 714–18 (2d Cir. 2022) (holding First Amendment permits a government official to speak about "her preferred course of action…it gives her the freedom to advocate for it"). VDARE has not and cannot plead a single example of the Attorney General abusing her authority by retaliating against an individual or entity based on their speech. The lawsuit VDARE cited—and attached to its complaint—concerns the constitutionality of a duly enacted state law that the Attorney General has yet to enforce. Compl. ¶ 15. The Attorney General has argued that the law is constitutional, but the outcome of that proceeding has no bearing on the serious but unsupported assertion made here—that the Attorney General has launched a baseless investigation to punish VDARE for protected speech.

*Amicone*, 634 F.3d 642, 647 (2d Cir. 2011). Moreover, VDARE has been complying partially

with the VDARE Subpoena for months without any discernable injury to it or its contractors—

despite "the unredacted disclosure of numerous other VDARE contractors, vendors, and

employees identified in VDARE's records." Fuchs Aff., Ex. T at 3. Given the absence of any

First Amendment chill or other injury notwithstanding the investigation already under way,

VDARE cannot show that it has suffered an actionable injury. *See Curley*, 268 F.3d at 73.

     For these reasons, the First Amendment claims fail.

## V.    Count Four must also be dismissed.

     Because VDARE's substantive claims (Counts One through Three) must be dismissed for

lack of jurisdiction and fail to state a claim, its request for an injunction (Count Four) must also

be denied as moot. VDARE has not moved for a preliminary injunction, and any such motion

would be futile because it has not and cannot meet its burden of showing "a clear or substantial

likelihood of success on the merits and a strong showing of irreparable harm." *Bimber's

Delwood, Inc. v. James*, 496 F. Supp. 760, 761 (W.D.N.Y. 2020) (cleaned up).

## CONCLUSION

     For the reasons set forth above, the Complaint should be dismissed in its entirety. In the

event any claims survive, the Attorney General respectfully requests 30 days to submit an

answer.

               Dated: January 18, 2023

               LETITIA JAMES
               Attorney General for the State of New York
               *Attorney for State Defendants*
               s/ Yael Fuchs
               Yael Fuchs
               Co-Chief, Enforcement Section, Charities

# Exhibit K

**Andrew Frisch**

| | |
|---|---|
| **From:** | Fuchs, Yael <Yael.Fuchs@ag.ny.gov> |
| **Sent:** | Thursday, September 8, 2022 5:18 PM |
| **To:** | Andrew Frisch |
| **Cc:** | Suvari, Catherine; Sawyer, Richard; Frederick C. Kelly (fckellylaw@protonmail.com) |
| **Subject:** | RE: VDare |
| **Attachments:** | OAG Subpoenas duces tecum to Facebook Payments, Inc. and Meta Platforms, Inc. |

Andy,

Thank you for your email. The Attorney General served its subpoena on VDARE on June 24, over two months ago. To date, we have not received a production of any kind, and or indication that any production is forthcoming. In fact, Mr. Kelly continues to assert in our discussions that the Attorney General's subpoena is barred by the First Amendment, even after we met several times and have taken steps to narrow certain requests and to clarify that no request calls for the identification of anonymous donors or unpaid VDARE supporters. We have already adjourned the subpoena's stated production deadline three times in response to both your and Mr. Kelly's stated scheduling conflicts this summer.

When we spoke again on Tuesday of this week, we asked you to confirm by COB today whether VDARE would be prepared to provide even an initial production by the subpoena's current agreed deadline (tomorrow). We proposed that such a production could include very basic corporate records-copies of the federal Form 990s that VDARE is required to file with this office as a registered New York charity, for example, or copies of VDARE Board meeting minutes, or (in response to Mr. Kelly's concerns about the nexus between certain requests and the suspected misconduct) basic documents regarding the purchase of the castle. We explained that such a production could demonstrate good faith on VDARE's part in connection with your current request for additional time to respond.

We understand from your email that VDARE will not be making any production tomorrow. You have not offered any explanation for why you could not confer with your client regarding their basic obligations since your retention, or why Mr. Kelly could not have begun to prepare basic categories of documents during the roughly two and a half months since VDARE received the subpoena. We are prepared to offer reasonable extensions of time reflecting your obligations, but without any production, we are not prepared to continue extending the deadline and will seek judicial relief ourselves to move this process forward.

With respect to the subpoenas to Facebook and Meta, I direct your attention to Ms. Suvari's email of Sept 6 (attached for your reference), which provides our agreement to certain modifications. We reserve all rights.

Regards,
Yael

**From:** Andrew Frisch <afrisch@andrewfrisch.com>
**Sent:** Thursday, September 8, 2022 2:02 PM
**To:** Fuchs, Yael <Yael.Fuchs@ag.ny.gov>
**Cc:** Suvari, Catherine <Catherine.Suvari@ag.ny.gov>; Sawyer, Richard <Richard.Sawyer@ag.ny.gov>; Frederick C. Kelly (fckellylaw@protonmail.com) <fckellylaw@protonmail.com>
**Subject:** VDare

[EXTERNAL]

Counsel:

# Exhibit L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                                   Petitioner,<br><br>           -against-<br><br>VDARE FOUNDATION, INC.,<br><br>                               Respondent. | Index No. 453196/2022<br><br>(Kraus, J.S.C.)<br><br>**STIPULATION AND [PROPOSED] ORDER FOR THE PRODUCTION OF CONFIDENTIAL INFORMATION** |

This matter having come before the Court by stipulation of Petitioner the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), and Respondent The VDARE Foundation, Inc. ("VDARE") (individually a "Party" and together, the "Parties") for the entry of a confidentiality order limiting the review, copying, dissemination and filing of confidential and/or proprietary documents and information to be produced by VDARE in response to the investigative subpoena dated June 23, 2022 (served June 24, 2022) and issued by OAG; and the Parties, by, between and among their respective counsel, having stipulated and agreed to the terms set forth herein, and good cause having been shown;

   IT IS hereby ORDERED that:

1.     This Stipulation is being entered into to facilitate the production, exchange and discovery of documents and information that the Parties agree merit confidential treatment (hereinafter the "Documents" or "Testimony").

2.     VDARE may designate Documents produced, or Testimony given, in connection with this action as "confidential," either by notation on each page of the Document so designated, statement on the record of the examination, or written advice to the respective undersigned counsel for the Parties hereto, or by other appropriate means.

3.      As used herein, "Confidential Information" shall mean all Documents and Testimony, and all information contained therein, and other information designated as confidential, if such Documents or Testimony contain proprietary business information or other sensitive information the disclosure of which would, in the good faith judgment of VDARE or its counsel, be detrimental to the conduct of VDARE's business or the business of any contractor engaged by VDARE to provide professional services to VDARE.

4.      OAG may, at any time, notify VDARE that OAG does not concur in the designation of a document or other material as Confidential Information. If VDARE does not agree to declassify such document or material within seven (7) days of the written request, OAG may move before the Court for an order declassifying those documents or materials. If no such motion is filed, such documents or materials shall continue to be treated as Confidential Information. If such motion is filed, the documents or other materials shall be deemed Confidential Information unless and until the Court rules otherwise. Notwithstanding anything herein to the contrary, VDARE bears the burden of establishing the propriety of its designation of documents or information as Confidential Information. To the extent OAG is successful on a motion for declassify such documents or materials, OAG shall be entitled to the legal fees and costs incurred in making such motion.

5.      Notwithstanding VDARE's designation, documents and information produced to OAG that have been designated as "Confidential Information" may be subject to disclosure pursuant to, without limitation, New York Public Officers Law § 87 and New York Criminal Procedure Law § 245. Confidential Information as defined herein may be provided by OAG to law enforcement agencies in response to inquiries or as part of a referral in connection with an actual or potential law enforcement investigation without prior notice to VDARE. In such instance, OAG

will notify the recipient of VDARE's confidentiality designation and will provide them with a copy of this Agreement.

6.      Upon a request by VDARE, OAG will deem "Confidential Information" produced to OAG to be subject to a request by VDARE for an exemption under New York Public Officers Law §§ 87(2)(b) and 89(2) or 87(2)(d), which provides certain protections from disclosure under the Freedom of Information ("FOIL") as outlined in New York Public Officers Law § 89(5). Unless such "Confidential Information" has been declassified in accordance with paragraph 4 above, "upon the request of any person for a record excepted from disclosure," OAG will: provide notice to VDARE of its intention to determine whether the exception will be granted or whether any other exemptions under FOIL apply; permit VDARE, within ten business days of receipt of such notice, to submit a written statement of the necessity for granting or continuing the exception; and within seven days of OAG's receipt of VDARE's written statement, or of the expiration of the ten-day period for VDARE's submission of such statement, issue a written determination granting, continuing or terminating the exception and stating reasons therefor. Finally, in connection with any FOIL request, OAG will provide VDARE with a reasonable opportunity to object, or seek court protection, as provided in New York Public Officers Law § 89(5)(b), in addition to any other remedy which may exist at law or in equity.

7.      Where OAG is required pursuant to New York Criminal Procedure Law § 245.20(2) to disclose "Confidential Information" in connection with a criminal matter, OAG will notify the recipient of VDARE's confidentiality designation, will provide them with a copy of this Agreement. OAG will not be deemed to have violated this Stipulation for failing to provide notice to VDARE.

8.      Except with the prior written consent of VDARE, by Order of the Court or as otherwise required by law, including without limitation as set forth in paragraph 7 above, Confidential Information shall not be furnished, shown or disclosed to any person or entity except to:

(a)      personnel of the Parties actually engaged in this investigation or other proceeding herein and who have been advised of their obligations hereunder;

(b)      counsel for the Parties to this action and their associated attorneys, paralegals and other professional and non-professional personnel (including support staff and outside copying services) who are directly assisting such counsel in the course of this investigation, are under the supervision or control of such counsel, and who have been advised by such counsel of their obligations hereunder;

(c)      expert witnesses or consultants retained by the Parties or their counsel to furnish technical or expert services in connection with this investigation or to give testimony with respect to the subject matter of this investigation or in connection with any other proceeding herein;

(d)      the Court and court personnel;

(e)      witnesses and their counsel in any interview or examination taken by OAG, as well as any officer before whom such examination is taken, including stenographic reporters and any necessary secretarial, clerical or other personnel of such officer;

(f)      any governmental body within the State of New York, any other State of the United States (collectively, "Governmental Body") pursuant to a law enforcement request, whether by subpoena or otherwise; and

(g)      any other person agreed to by VDARE.

9.      Confidential Information shall be utilized by OAG and its counsel only for

purposes of this investigation, regulation of any person or entity subject to OAG regulatory oversight, and any other litigation, investigations, and/or referrals to law enforcement agencies for law enforcement purposes, and otherwise for no other purposes.

10.     All investigative examinations shall presumptively be treated as Confidential Information and subject to this Stipulation during the examination and for a period of thirty (30) days after a transcript of said examination is received by counsel for each of the Parties. At or before the end of such thirty-day period, the examination shall be classified appropriately. If any portion of an examination designated as Confidential Information is challenged, it shall be subject to the procedures set forth in paragraph 4, *supra*.

11.     Filing:

(a)     A Party who seeks to file with the Court any examination transcripts or other documents which have previously been designated as comprising or containing Confidential Information shall file the document, pleading, brief, or memorandum on the NYSCEF system in redacted form until the Court renders a decision on any motion to seal (the "Redacted Filing"). If VDARE fails to move to seal within seven (7) days of the Redacted Filing, the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(b)     If VDARE makes a timely motion to seal, and the motion is granted, the filing Party shall ensure that all documents (or, if directed by the court, portions of documents) that are the subject of the order to seal are filed in accordance with the procedures that govern the filing of sealed documents on the NYSCEF system.  If VDARE's timely motion to seal is denied, then the Party making the filing shall take steps to replace the Redacted Filing with its corresponding unredacted version.

(c)     Any Party filing a Redacted Filing in accordance with the procedure set forth in this

paragraph 11 shall, contemporaneously with or prior to making the Redacted Filing, provide the other Parties and the Court with a complete and unredacted version of the filing.

(d)      All pleadings, briefs or memoranda which reproduce, paraphrase or disclose any materials which have previously been designated by a party as comprising or containing Confidential Information shall identify such documents by the production number ascribed to them at the time of production.

12.      With the exception of any Governmental Body or other person or entity that receives Confidential Information pursuant to a disclosure by the OAG as set forth in paragraph 5 above, any person receiving Confidential Information shall not reveal or discuss such information to or with any person not entitled to receive such information under the terms hereof and shall use reasonable measures to store and maintain the Confidential Information so as to prevent unauthorized disclosure.

13.      Any document or information that may contain Confidential Information that has been inadvertently produced without identification as to its "confidential" nature as provided in paragraphs 2 and/or 10 of this Stipulation, may be so designated by the party asserting the confidentiality privilege by written notice to the undersigned counsel for OAG identifying the document or information as "confidential" within a reasonable time following the discovery that the document or information has been produced without such designation.

14.      Extracts and summaries of Confidential Information shall also be treated as confidential in accordance with the provisions of this Stipulation.

15.      The production or disclosure of Confidential Information shall in no way constitute a waiver of VDARE's right to object to the production or disclosure of other information in this investigation or in any other proceeding. Nothing in this Stipulation shall operate as an admission

by any Party that any particular document or information is, or is not, confidential. Failure to challenge a Confidential Information designation shall not preclude a subsequent challenge thereto.

16.     In connection with their review of electronically stored information and hard copy documents for production (the "Documents Reviewed") the Parties agree as follows:

(a)     to implement and adhere to reasonable procedures to ensure documents reviewed that are protected from disclosure pursuant to CPLR 3101(c), 3101(d)(2) and 4503 ("Protected Information") are identified and withheld from production.

(b)     if Protected Information is inadvertently produced, VDARE shall take reasonable steps to correct the error, including a request to OAG for its return.

(c)     upon request by VDARE for the return of Protected Information inadvertently produced OAG shall promptly return the Protected Information and destroy all copies thereof. Furthermore, OAG shall not challenge either the adequacy of VDARE's document review procedure or its efforts to rectify the error, and OAG shall not assert that its return of the inadvertently produced Protected Information has caused it to suffer prejudice.

17.     This Stipulation is entered into without prejudice to the right of any Party to seek relief from, or modification of, this Stipulation or any provisions thereof by properly noticed motion to the Court or to challenge any designation of confidentiality as inappropriate under the Civil Practice Law and Rules or other applicable law.

18.     This Stipulation shall continue to be binding after the conclusion of this investigation except that there shall be no restriction on documents that are used as exhibits in Court (unless such exhibits were filed under seal); and (b) that OAG may seek the written permission of VDARE or further order of the Court with respect to dissolution or modification of

the Stipulation. The provisions of this Stipulation shall, absent prior written consent of the parties, continue to be binding after the conclusion of the investigation.

19.    Nothing herein shall be deemed to waive any privilege recognized by law or shall be deemed an admission as to the admissibility in evidence of any facts or documents revealed in the course of disclosure.

20.    This Stipulation shall not be interpreted in a manner that would violate any applicable rules of professional conduct.

21.    If OAG is called upon to produce Confidential Information in order to comply with a court order, subpoena, or other direction by a court, administrative agency, or legislative body, OAG shall (a) give written notice by overnight mail and either email or facsimile to the counsel for VDARE within five (5) business days of receipt of such order, subpoena, or direction, and (b) give VDARE five (5) business days to object to the production of such Confidential Information, if VDARE so desires. Notwithstanding the foregoing, nothing in this paragraph shall be construed as requiring any party to this Stipulation to subject itself to any penalties for noncompliance with any court order, subpoena, or other direction by a court, administrative agency, or legislative body.

22.    This Stipulation may be changed by further order of this Court and is without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

23.    This Stipulation may be signed in counterparts, which, when fully executed, shall constitute a single original, and electronic signatures shall be deemed original signatures.

Dated: _____, 2023                    LETITIA JAMES
Attorney General of New York


By: _____

        James G. Sheehan
        Yael Fuchs
        Catherine Suvari
        Assistant Attorneys General
        28 Liberty Street
        New York, NY 10005
        Tel: (212) 416-xxxx

        *Attorneys for Petitioner State of New York*


Dated: _____, 2023                    LAW OFFICES OF ANDREW J. FRISCH, PLLC


By: _____

        Andrew J. Frisch
        40 Fulton Street, 17th Floor
        New York, New York 10038
        Tel: (212) 285-8000

        *Attorneys for Respondent VDARE Foundation, Inc.*