UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VDARE FOUNDATION, INC.,

                              Plaintiff,

            v.                                        1:22-CV-1337
                                                      (FJS/CFH)
LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                              Defendant.
_____

APPEARANCES                           OF COUNSEL

RANDAZZA LEGAL GROUP, PLLC            JAY MARSHALL WOLMAN, ESQ.
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Attorneys for Plaintiff

OFFICE OF THE NEW YORK                ALEXANDER S. MENDELSON, AAG
STATE ATTORNEY GENERAL                RICK SAWYER, AAG
28 Liberty Street
New York, New York 10005
Attorneys for Defendant

SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER[1]

### I. INTRODUCTION

        Pending before the Court is Plaintiff's motion for a preliminary injunction.  *See* Dkt. No.

29.  Defendant opposes the motion.  *See* Dkt. No. 34.

_____

[1] All references to page numbers in documents filed in this case are to the page numbers that the
Court's CM/ECF System generates and appear in the upper right corners of those pages.

## II. DISCUSSION

On December 12, 2022, Plaintiff VDARE Foundation, Inc. (hereinafter "Plaintiff" or "VDARE") commenced this action by the filing of a Verified Complaint for declaratory and injunctive relief.  *See* Dkt. No. 1, Complaint.  According to the Complaint, VDARE "is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of New York, but with a principal place of business in Berkeley Springs, West Virginia." *See id.* at ¶ 1.  Furthermore, "VDARE was founded to support the efforts of VDARE.com, a non-profit web magazine . . . [and] is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources." *See id.* at ¶ 2.

VDARE states that "the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution, and because this action seeks to prevent state officials from interfering with federal rights." *See id.* at 4.  Furthermore, VDARE asserts that "subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges, and immunities secured by the United States Constitution." *See id.* Finally, VDARE states that "the Court has supplemental jurisdiction over state law claims asserted in this action[.]" *See id.*

According to VDARE, "Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States." *See id.* at ¶ 8.  "Throughout its existence, VDARE has published pieces that criticize current United States immigration policy for various reasons and from a variety of angles and

perspectives.  VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants.  Brimelow is himself an immigrant and a naturalized United States citizen."  *See id.*  In addition, "[m]any of VDARE's editors and contributors, current and former, are immigrants or foreign nationals."  *See id.*  Plaintiff contends that "[s]tories originally published in VDARE have been positively cited by the New York Times, the Harvard Journal on Law and Public Policy, and many other publications."  *See id.*

However, Plaintiff acknowledges that "VDARE is not without detractors . . . [and] has repeatedly been tarred with pejoratives such as 'white nationalist,' and 'racist[']."  *See id.* at ¶ 9. "VDARE rejects these labels."  *See id.*  Plaintiff argues that, "[w]hatever the views of VDARE's detractors, its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution."  *See id.*

Plaintiff contends that "[u]se of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it.  On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services.  Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats. Such venues have sometimes cancelled contracts with VDARE."  *See id.* at ¶ 10.  Finally, Plaintiff asserts that, "[t]o protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law."  *See id.* at ¶ 11.

According to Plaintiff, on June 24, 2022, Defendant issued a subpoena to VDARE, identifying 44 categories of demanded documents.  *See id.* at ¶ 22.  Among other things, Defendant demanded 'copies of transcripts to each deposition in the litigation between Peter

Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings.'" *See id.* at ¶ 23.  VDARE explains that "[t]his demand referred to a lawsuit for libel filed by Brimelow against the New York Times for calling him an 'open white nationalist,' which he is not." *See id.*

On July 20, 2022, after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to Defendant's subpoenas, requested in writing that she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment to express positions critical of governmental officials and policy. *See id.* at ¶ 24.  Defendant declined to withdraw the subpoenas. *See id.*

In August 2022, before a revised return date, VDARE engaged new counsel and directed him to comply with Defendant's subpoena. *See id.* at ¶ 25.  Defendant acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce "very basic corporate records" to demonstrate its intent to comply in advance of a "rolling production." *See id.*  Between September 19 and November 21, 2022, VDARE produced approximately 6,000 pages of documents in response to Defendant's subpoena to Plaintiff after completing review of documents that VDARE maintained electronically and in hard copy. *See id.* at ¶ 25.

While making and before completing the production, VDARE advised Defendant of its position that production of the identities of many of its contractors would violate the First Amendment. *See id.* at ¶ 26.  VDARE explained to Defendant that some contractors would face retribution if their association with VDARE were revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities were disclosed, as had happened in the past. *See id.*  VDARE cited several cases to support its position. *See id.*

VDARE proposed that Defendant identify specific contractors about which she was concerned, and VDARE could otherwise identify any contractor that might qualify as a "related party" within the meaning of New York law.  *See id.* at ¶ 27.  VDARE expressed its desire to make as robust a production as possible, proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose.  *See id.*  Defendant rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors.  *See id.*

In a letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet and confer on the issue.  *See id.* at ¶ 28.  VDARE advised Defendant that the identities of its contractors were indispensable to its work and their identities were inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks.  *See id.*  VDARE also advised Defendant that the work of its counsel, a sole practitioner reviewing all of its documents himself, to provide documents with redactions was labor-intensive, time-consuming and ongoing.  *See id.*  VDARE proposed in its letter of October 31, 2022, that the parties meet and confer to determine if they could find at least a temporary resolution of this issue.  *See id.*

In addition, Plaintiff states that, in early October 2022, Defendant requested that VDARE provide a general outline of electronically-stored filed (emails) that it would need to collect for review and produce and begin collecting.  *See id.* at ¶ 30.  VDARE did so, advising that the universe of such files amounted to more than 40 gigabytes of data, providing a list of email custodians, and otherwise keeping Defendant updated as to the status of the review.  *See id.*  According to VDARE, the emails, like its paper documents, contain information about the identities of contractors whose association with VDARE is not required for any legitimate

oversight of VDARE by Defendant, and the disclosure of which would violate First Amendment protections and risk VDARE's existence.  *See id.*

On December 2, 2022, Defendant demanded VDARE's full compliance with its subpoena by December 12, 2022, or she would deem VDARE to be in non-compliance.  *See id.* at ¶ 32. Although VDARE advised Defendant of its concerns about unnecessary disclosure of identities of contractors, Defendant demanded that their identities be disclosed.  *See id.*  Furthermore, although Defendant had encouraged VDARE to make a rolling production as documents were reviewed, resulting in later decisions not to redact some information that had earlier been redacted, Defendant questioned the validity of VDARE's concerns.  *See id.*  Although VDARE had advised Defendant that redactions of identities of contractors were intertwined with its records and were otherwise time consuming and labor intensive to apply, Defendant demanded, by December 12, 2022, a log identifying each redaction of each contractor's identity in VDARE's production, and its prospective production of emails, as a precondition to a meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors. *See id.* at ¶ 32.  Finally, VDARE contends that Defendant's position threatens its existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech.  *See id.* at ¶ 33.

Based on these allegations, VDARE asserts the following causes of action: (1) declaratory relief under the First Amendment; (2) violation of VDARE's First and Fourteenth Amendment rights under § 1983 by retaliating against VDARE based on its exercise of its rights of freedom of speech and association; (3) violation of VDARE's rights under Article I, Section 8 of the New York State Constitution by retaliating against VDARE based on the exercise of its

rights of freedom of speech and association; and (4) preliminary and permanent injunctions barring Defendant from enforcing her unconstitutional demands.

On December 14, 2022, two days after VDARE commenced its action in this Court, Defendant petitioned New York State Supreme Court, pursuant to New York Not for Profit Corporation Law, Estates, Powers and Trusts Law, Executive Law and CPLR Article 4, *see* Dkt. No. 35-6, State Court Petition, at ¶ 9, for an Order (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate, *see id.* at ¶ 6.

In support of her petition, Defendant asserted that (1) the subpoena was issued pursuant to a legally-authorized investigation for which there was a factual basis and that the requests in the Subpoena were reasonably related to that investigation; (2) VDARE had interposed no cognizable basis for delaying or withholding responsive document productions to Defendant; and (3) as a result, VDARE should be ordered to comply with the Subpoena without further delay. *See id.* at ¶¶ 29-31.  Therefore, Defendant requested that the State Supreme Court enter a judgment and order (i) compelling VDARE to comply without delay with the June 23, 2022 Subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate.  *See id.*

On January 19, 2023, the State Supreme Court heard oral argument and reserved decision on Defendant's petition.  On January 23, 2023, the State Supreme Court issued a decision and order noting that the Subpoena sought documents (1) concerning VDARE's organizational structure; (2) compliance with conflict-of-interest policy requirements under New York law and

financial operations; (3) its purchase and conveyance of the Berkeley Springs Castle; and (4) transactions between VDARE and entities controlled by the Brimelows.  See Dkt. No. 15, State Supreme Court Decision, at 6.  The State Supreme Court also noted that, although VDARE had originally taken "the position that the Subpoena was unlawful and should be withdrawn[, o]n September 19, 2022, new counsel for [VDARE] agreed to comply with the Subpoena but asserted that a significant volume of electronically-stored and hard copy documents needed to be reviewed." *See id.*  VDARE made its first production that day, consisting of 27 documents produced without Bates numbers and bearing unmarked redactions. *See id.*  VDARE, however, provided no log to identify or explain the redactions. *See id.*

The State Supreme Court further explained that, in the 12 weeks since its first September delivery, VDARE had produced "approximately 6,000 pages from its hard copy records . . . [and had] redacted that material without any explanation for how the material was chosen for redaction. " *See id.*  Defendant asserted that "the redactions [were] extensive and ha[d] been applied across almost every category of document produced, including board meeting minutes, bank statements, internal accounting ledgers, credit card statements, invoices, financial records for the limited liability company (Happy Penguins LLC) from which [VDARE] had historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow." *See id.*

Furthermore, the State Supreme Court noted that, "on October 23, 2022, Lydia Brimelow [had] represented that, with limited exceptions, [VDARE's] hard copy production was complete, and identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information." *See id.*  VDARE's counsel had originally "stated that review of that material would be completed by November 21, 2022.  [VDARE] subsequently

proposed December 12, 2022, as the new deadline for completing email production." *See id.* at 6-7.

The State Supreme Court further noted that, on December 2, 2022, Defendant wrote to VDARE, "summarizing [her] concerns with the pace and scope of production, including [VDARE's] extensive redactions, and demanded that [VDARE] complete its subpoena compliance and produce a redaction log by December 12, 2022." *See id.* at 9.

In response to the petition, VDARE moved for an Order dismissing the special proceeding or alternatively staying the proceeding pending resolution of VDARE's federal action. *See id.* (footnote omitted). The State Supreme Court granted Defendant's motion to compel and denied VDARE's motion for a stay or dismissal. *See id.*

In its Decision and Order, the State Supreme Court explained that "[t]he requirements for the issuance of an investigatory subpoena duces tecum" were as follows: "'(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry.'" *See* Dkt. No. 15 at 8 (quoting *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017) (quoting *Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.*, 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski*, 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166)).

The State Supreme Court found that "New York State ha[d] a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like [VDARE], and [Defendant] ha[d] authority to supervise and investigate such entities when misconduct was suspected." *See*

*id.* at 9.  The State Supreme Court also found that Defendant's Subpoena was "focused on subject matter areas that f[e]ll within the statutory provisions that govern[ed] not-for-profit corporations."  *See id.*  Furthermore, the State Supreme Court noted that "[t]he Not-for-Profit Corporation Law [("N-PCL")] provide[d] that entities like VDARE may be formed only for charitable purposes . . . and that charitable assets may not be distributed to members, directors or officers, . . ."  *See id.* (internal citations omitted).  Moreover, the State Supreme Court found that "[c]haritable entities [were] also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set, . . .; processes for acquisition and 'sale or other disposition' of property . . .; creating and presenting complete and accurate financial reports . . .; a process for considering related party transactions, . . .; and a process for managing conflicts of interest. . . ."  *See id.* (internal citations omitted).

The State Supreme Court concluded that "[t]he Subpoena's requests demand[ed] the type of material that [would] permit [Defendant] to determine whether [VDARE] ha[d] complied with these requirements, including complete copies of [VDARE's] annual regulatory filings, financial transaction records, compensation records, and records of Board meetings and review."  *See id.* at 9-10.  The State Supreme Court found these documents would "permit [Defendant] to determine whether there ha[d] been any diversion of charitable assets, [*e.g.,*] through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries.  *See id.* at 10.  Furthermore, the State Supreme Court noted that "Article 7-A of the Executive Law authorize[d] [Defendant] to supervise charitable organizations that solicit in New York, and Article 7-A required [Defendant] to monitor such organizations to ensure that  . . .  a charity d[id] not solicit contributions under false pretenses or use the contributions it receive[d] in a manner

that [was] not 'substantially consistent' with the charity's stated purposes." *See id.* (citing Executive Law § 172-d).

In addition, the State Supreme Court noted that VDARE had "raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights." *See id.* (citations omitted).  The State Supreme Court, however, concluded that VDARE made "this argument on behalf of its donors and [Defendant] ha[d] agreed, initially to redact donors' and volunteers' identities." *See id.*  Thus, the State Supreme Court concluded that VDARE had "not established that the Subpoena would impair [its] own First Amendment rights." *See id.*

Additionally, the State Supreme Court found that VDARE's "filings . . . underscore[d] the reasonableness of the Subpoena." *See id.*  VDARE "admit[ed] the critical facts that first triggered [Defendant's] scrutiny – Peter Brimelow, [VDARE's] founder and director, and his wife, Lydia Brimelow, also a director, [had] used and continue[d] to use a $1.4 million charitable asset as their personal residence." *See id.* at 10-11 (citing Frisch Aff. (Doc. No. 37)).  The State Supreme Court noted that VDARE argued that "the Brimelows paid rent to live in the cottage beginning in April 2021, however, the lease [was] between Lydia Brimelow and BBB, LLC, a West Virginia for-profit corporation she manage[d], and Lydia Brimelow [had] signed the document as both landlord and tenant." *See id.* (citing Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager)).

The State Supreme Court also found that VDARE's motion and accompanying papers fail[ed] to meet its burden of establishing the Subpoena's invalidity" and that VDARE, "which ha[d] partially complied with the [S]ubpoena for months, ha[d] not established why providing a redaction log for its already-produced documents raise[d] any First Amendment concerns or why

- 11 -

continuing production would pose a threat to its existence." *See id.*  The State Supreme Court

stated that, although VDARE argued "that redactions [were] required to protect the identities of

contractors – including writers who contribute[d] to the website – these were precisely the

records [Defendant sought] to examine in [her] investigation of [VDARE's] alleged

organizational misconduct." *See id.*  The State Supreme Court noted that, "[t]o the extent

anonymity is used to make violations of law, 'it is unprotected by the First Amendment.'" *See id.*

(quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

      The State Supreme Court also addressed the fact that "the only board member among

four who [was] not a Brimelow family member was a known contributor." *See id.*  The State

Supreme Court found that Defendant could "probe this contributor's compensation as part of

[her] investigation of conflicts of interest and board independence." *See id.*  The State Supreme

Court also found that Defendant could "seek the identities of other contributors to determine

whether further conflicts of interest [might] exist." *See id.*

      In addition, the State Supreme Court found VDARE's reliance on *Americans for*

*Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), unavailing because "[t]hat decision

concerned only donor disclosures in statewide annual filing requirements, while expressly

permitting subpoenas seeking the same information as part of a targeted investigation." *See id.* at

11-12 (citing *Ams. for Prosperity Found.*, 141 S. Ct. at 2386-87).  Moreover, the State Supreme

Court noted that Defendant had "indicated a willingness to enter into a stipulation/order of

confidentiality to further address any of [VDARE's] concerns. *See id.* at 12.  Finally, the State

Supreme Court found that VDARE had not presented any "compelling basis for a stay of [the]

special proceeding in its moving papers and acknowledged at oral argument that it had not

sought a stay of this proceeding from the Federal District Court." *See id.*

Based on these findings, the State Supreme Court ordered VDARE to "comply with the Subpoena, subject to the agreement of July 27, 2022, . . . that VDARE may redact the following from otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any responsive record of private contributions to the organization and/or purchases from the October 16, 2021 'Castle Auction' (transaction amounts, dates, and other details must be disclosed)"; and "such redactions [were] without prejudice to [Defendant's] right to seek modification of these agreed redaction terms by written application to the Court on notice to VDARE"; and "on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to [Defendant], in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log"; and "on or before February 24, 2023, VDARE shall complete production of all responsive material contained in the universe of electronic files identified by its October 31, 2022 letter . . .; on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production[.]" *See id.* at 12-13.  Finally, the State Supreme Court directed that "the parties, if so advised, [might] forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court[.]"  *See id.* at 13.

After the State Supreme Court entered its Order, VDARE moved for a stay and interim relief pending appeal.  *See generally* Dkt. 35-10, VDARE's motion for a stay.  As grounds for its

motion, VDARE argued that (1) Defendant's demand for immediate disclosure of constitutionally protected information extraneous to any legitimate investigative need warranted the inference that Defendant's pursuit of VDARE was retaliation for VDARE's exercise of its constitutional rights, *see id.* at 8-15; (2) Defendant's erroneous challenge to the first-filed rule, *see id.* at 15-18; and (3) the State Supreme Court had unduly deferred to Defendant at the expense of VDARE's right to seek redress in federal court for the state's unconstitutional retaliation and demand for disclosures of constitutionally protected information extraneous to any truly overriding investigative need, *see id.* at 18-25..

In opposition to VDARE's motion for a stay, Defendant argued that the court should deny the stay pending appeal because VDARE was unlikely to succeed on the merits of its appeal; equitable factors weighed against staying the State Supreme Court's Order that VDARE comply with its outstanding Subpoena obligations, *i.e.*, VDARE would not be harmed – irreparably or otherwise – by complying with that Order and the relative hardships of the parties weighed in favor of denying VDARE's application. *See generally* Dkt. No. 35-11. New York State, Appellate Division, First Department, denied VDARE's motion for a stay pending appeal. *See generally* Dkt. No. 35-12.

On March 21, 2023, Plaintiff filed the pending motion for a preliminary injunction. *See* Dkt. No. 29.[2] Before it can address the merits of Plaintiff's motion, it must address whether the doctrine of *res judicata* bars the Court from granting the relief that Plaintiff seeks.

"To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state[,]" in this case New York. *Conopco, Inc. v. Roll Int'l,*

---

[2] Plaintiff's motion also requested that the Court issue a temporary restraining order. After conferring with counsel, the Court denied that request. *See* Dkt. No. 32.

231 F.3d 82, 87 (2d Cir. 2000) (citations omitted).  Under New York's doctrine of *res judicata*, a "disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding[.]"  *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d 945, 946 (2d Dep't 2016) (citations omitted).  Therefore, because Defendant is invoking *res judicata* in opposition to [VDARE's] motion for preliminary injunction, she must show "'(1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions.'"  *Divito v. Glennon*, 193 A.D.3d 1326, 1328 (4th Dep't 2021) (quotation and other citations omitted).

In this case, there is no dispute that the State Supreme Court entered a final judgment when it compelled VDARE to comply with Defendant's Subpoena.  In fact, VDARE appealed that judgment and requested a stay pending the outcome of the appeal, which the Appellate Division denied.  There is also no dispute that the parties in the two actions are the same – VDARE and the Attorney General of the State of New York.  Thus, the only issue in dispute is the identity of the claims in this action and the state-court action.

As the court explained in *Trump v. Jones*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951 (N.D.N.Y. May 27, 2022), "[a] 'final judgment' includes 'any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal.'"  *Id.* at *16 (quoting *Bannon v. Bannon*, 270 N.Y. 484, 489, 1 N.E.2d 975 (1936)).  "The 'final judgment on the merits' requirement may therefore be satisfied by a 'final order in a special proceeding [which] conclusively determine[s] every question at issue therein.'"  *Id.* (quoting [*Bannon*, 270 N.Y.] at 489-90, 1 N.E.2d 975 ("The essential element of a conclusive adjudication is finality of the proceedings.  A judicial decision can constitute a

conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had jurisdiction to render an irrevocable and final decision upon such question."); *see also Slater v. Am. Mineral Spirits Co.*, 33 N.Y.2d 443, 446, 354 N.Y.S.2d 620, 310 N.E.2d 300 (1974) (finding "no occasion" to "attach significance to any such distinction" between final orders and final judgments); *Sabatino v. Capco Trading, Inc.*, 27 A.D.3d 1019, 1020, 813 N.Y.S.2d 237 (3d Dep't 2006) ("[I]f finality is clear, the source of it should be secondary." (quoting Siegel, N.Y. Prac. § 444, at 751 [4th ed.])); *Aziz v. Butt*, 156 N.Y.S.3d 832, 73 Misc. 3d 1233A (Sup. Ct. Westchester Cty. 2021) (giving res judicata effect to prior special proceeding)).

Finally, Defendant argues that Plaintiff had a full and fair opportunity to litigate the propriety of Defendant's investigation in the New York proceeding. "In determining whether a claim 'could have been raised,' New York has adopted the 'transactional analysis approach.'" *Trump*, 2022 WL 1718951, at *18 (quoting *O'Brien*, 54 N.Y.2d at 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (citing *Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978))). "Under this approach, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Id.* (quoting [*O'Brien*, 54 N.Y.2d at 357]). To determine whether claims arise out of the same transaction or series of transactions, a court must analyze "'whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111-12, 170 N.E.3d 733 (2021) (citations and internal quotation marks omitted)). "Th[is] approach is 'pragmatic and flexible.'" *Id.* (quoting [*Simmons*, 37 N.Y.3d at 111-12]).

In this case, all of VDARE's claims in this action arise out of Defendant's investigation into VDARE; and, therefore, those claims arise out of the same transaction or series of transactions as those involved in the State Supreme Court proceeding.  Moreover, it is beyond dispute that, if VDARE believed that Defendant's Subpoena was overbroad or unconstitutional, it could have brought a motion to quash or vacate that Subpoena in State Supreme Court challenging the validity of Defendant's Subpoena or her authority to issue that Subpoena.  Rather than do so, however, VDARE, at least initially, partially complied with the Subpoena.  Moreover, in response to Defendant's filing of the special proceeding in State Supreme Court to compel VDARE to comply fully with the Subpoena, Plaintiff could have, and did, raise many issues in opposition to certain aspects of the Subpoena, including its constitutionality.

Finally, VDARE argues that it could not pursue an injunction in the State Supreme Court proceeding because Defendant was a "petitioner" in that special proceeding and CPLR § 3019 appears only to authorize a counterclaim against a "plaintiff."  *See* Dkt. No. 38 at 15.[3]  Although New York's "permissive counterclaim rule may save from the bar of res judicata those claims for separate or different relief that could have been but were not interposed in the parties' prior

---

[3] Defendant brought her petition in State Supreme Court pursuant to Article 4 of the N.Y. C.P.L.R.  In such a proceeding, the notes to N.Y. C.P.L.R. § 402 specifically provide that

> [t]he adverse party . . . must serve an answer, responding to the allegations of the petition.  CPLR 402.  Here again, the general pleading rules of CPLR Article 30 are applicable unless superseded by the statute governing the particular special proceeding.  In addition to denials and affirmative defenses (CPLR 3018), the respondent may assert any counterclaim against the petitioner, a point made clear by the reference in the second sentence of CPLR 402 to the requirement that a reply be served in response to a counterclaim.

N.Y. C.P.L.R. § 402 (C402:2 Answer).

action,' it does not allow a party 'to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action.'" *Trump*, 2022 WL 1718951, at *18 (quoting *67-25 Dartmouth St. Corp. v. Syllman*, 29 A.D.3d 888, 889-90, 817 N.Y.S.2d 299 (2d Dep't 2006)).  Even to the extent VDARE's federal claims are permissive counterclaims, they are not saved from the bar of *res judicata* because VDARE's claims for relief in this action would "impair the rights or interests established" in the subpoena enforcement proceeding.  *Id.* (quoting [*67-25 Dartmouth St. Corp.*, 29 A.D.3d at 889-90]).  Specifically, the State Supreme Court has determined that Defendant's Subpoena was authorized, she had the right to conduct the investigation, and VDARE must comply with the Subpoena.  Clearly, an order from this Court enjoining Defendant's investigation, even temporarily, would impair those rights.

Although VDARE argues that the scope of the State Supreme Court special proceeding was narrow and that it did not have a full and fair opportunity to litigate its constitutional claims in that forum, it has not provided any authority to support its contention that the State Supreme Court did not "have the power to award the full measure of relief" it seeks or that there were any formal barriers to the assertion of its federal claims in the State Supreme Court proceeding; and the cases it cites for that proposition are distinguishable.  In fact, the record clearly demonstrates that VDARE raised its constitutional claims in State Supreme Court in opposition to Defendant's petition. *See Trump*, 2022 WL 1718951, at *19 (*cf. Exxon Mobil Corp*, 28 F.4th at 400 (noting that the "specific relief that Exxon now claims was available only in federal court – namely, an injunction prohibiting pretextual investigations and ending the Massachusetts Attorney General's investigation – was equally available in state court."); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 184 (2d Cir. 1991) (noting that the district court judge "properly found" that the federal

plaintiffs "[could] adequately raise their [Section 1983] constitutional challenges to the Attorney

General's conduct in pending state proceedings" involving a motion to compel compliance with

subpoenas and a cross-motion to quash)).

With regard to VDARE's argument that the Court should not apply *res judicata* because

this action preceded the filing of Defendant's state-court special proceeding, there is no support

for that argument.  The law is clear that the sequence of the filing of the actions is not relevant to

determining whether *res judicata* applies.  As the court noted in *Forte v. Kaneka Am. Corp.*,

although "it is true that the present action cannot be classified as 'future litigation on the same

cause' because it was pending when the stipulations were entered into, for purposes of res

judicata the effective date of a final judgment is the date of its rendition, without regard to the

date of commencement of the action in which it is rendered or the action in which it is to be

given effect[.]"  *Forte v. Kaneka Am. Corp.*, 110 A.D.2d 81, 86 (2d Dep't 1985) (citing *Williams

v. Ward*, 556 F.2d 1143, 1154; Restatement [Second] of Judgments § 14 comment a).

Furthermore, Comment a to the Restatement (Second) of Judgments § 14 provides as

follows:

> [i]n order that a final judgment shall be given res judicata effect in
> a pending action, it is not required that the judgment shall have
> been rendered before that action commenced.  Nor is a judgment,
> otherwise entitled to res judicata effect in a pending action, to be
> deprived of such effect by the fact that the action in which it was
> rendered was commenced later than the pending action.  It is
> merely required that rendition of the final judgment shall antedate
> its application as res judicata in the pending action.  Thus when
> two actions are pending which are based on the same claim, or
> which involve the same issue, it is the final judgment first rendered
> in one of the actions which becomes conclusive in the other action
> (assuming any further prerequisites are met), regardless of which
> action was first brought.

Restatement (Second) of Judgments, § 14, comment a; *see also Williams v. Ward*, 556 F.2d

1143, 1154 (2d Cir. 1977) (stating that "it is clear that even though the Southern District action

was filed before the Eastern District action, when the latter proceeded to final judgment first it became a bar to the former if the underlying claims are the same" (citing Restatement of Judgments s 43 (1943); Restatement of Judgments Second s 41.1 (Tentative Draft No. 1, March 28, 1973))).

A review of the State Supreme Court's decision/judgment makes clear that the State Supreme Court's decision was a final judgment on the merits of Defendant's petition to compel VDARE to comply with its Subpoena on the merits, that the parties in the State Supreme Court and in this case are the same, that the claims in both actions arise out of the same series of transactions and that VDARE raised or could have raised all of its constitutional claims in the special proceeding in State Supreme Court.  Therefore, for all these reasons, the Court concludes that *res judicata* bars the relief that VDARE seeks in its motion for a preliminary injunction, *i.e.*, an order temporarily restraining and enjoining Defendant during the pendency of this action from enforcing the Decision and Order of the Appellate Division, First Department dated March 9, 2023, and entered on March 10, 2023, which reinstated the Order of the Honorable Sabrina Kraus, Justice of the Supreme Court of the State of New York, directing VDARE to comply with Defendant's Subpoena.

## III. CONCLUSION

Accordingly, after reviewing the entire file in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that VDARE's motion for a preliminary injunction, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that each of the parties may supplement their prior submissions supporting or opposing Defendant's motion to dismiss, to address the issue of the effect of *res judicata* on that

motion in a letter brief, not to exceed five pages, within thirty (30) days of the date of this

Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated:  June 27, 2023
   Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge