UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VDARE FOUNDATION, INC.,

                      Plaintiff,

      v.                                          1:22-CV-1337 (FJS/CFH)

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

                      Defendant.
_____

**APPEARANCES**

**RANDAZZA LEGAL GROUP, PLLC**
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
      - and –
4974 South Rainbow Boulevard, Suite 100
Las Vegas, Nevada 89118
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL**
28 Liberty Street
New York, New York 10005
Attorneys for Defendant

**OF COUNSEL**

**JAY MARSHALL WOLMAN, ESQ.**
**MARC J. RANDAZZA, ESQ.**

**ALEXANDER S. MENDELSON, AAG**
**RICK SAWYER, AAG**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. *See* Dkt. No. 12, 51. Plaintiff opposes the motion. *See* Dkt. Nos. 25-26, 54.

## II. BACKGROUND

On December 12, 2022, Plaintiff VDARE Foundation, Inc. (hereinafter "Plaintiff" or "VDARE") commenced this action by filing a Verified Complaint for declaratory and injunctive relief and, for certain causes of action, sought compensatory and punitive damages.  *See generally* Dkt. No. 1, Complaint.  According to the Complaint, VDARE "is a non-profit foundation recognized by the IRS as a 501(c)(3) educational organization organized and existing under the laws of the State of New York, but with a principal place of business in Berkeley Springs, West Virginia." *See id.* at ¶ 1.  Furthermore, "VDARE was founded to support the efforts of VDARE.com, a non-profit web magazine . . . [and] is literally a mom-and-pop operation, run by Peter and Lydia Brimelow, husband and wife, with limited staff and resources." *See id.* at ¶ 2.

VDARE states that "the Court has subject matter jurisdiction because this action involves claims based on the First and Fourteenth Amendments to the United States Constitution, and because this action seeks to prevent state officials from interfering with federal rights." *See id.* at ¶ 4.  Furthermore, VDARE asserts that 'subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges and immunities secured by the United States Constitution." *See id.* Finally, VDARE states that "the Court has supplemental jurisdiction over state law claims asserted in this action[.]" *See id.*

According to VDARE, "[Peter] Brimelow with an editorial collective of several other journalists started VDARE.com to publish articles critical of the immigration policy of the United States." *See id.* at ¶ 8.  "Throughout its existence, VDARE has published pieces that

criticize current United States immigration policy for various reasons and from a variety of angles and perspectives.  VDARE's editorial position in favor of limiting immigration is not based on any sort of aversion to immigrants.  Brimelow is himself an immigrant and a naturalized United States citizen." *See id.*  In addition, "[m]any of VDARE's editors and contributors, current and former, are immigrants or foreign nationals." *See id.*

Plaintiff contends that "[s]tories originally published in VDARE have been positively cited by the New York Times, the Harvard Journal on Law and Public Policy, and many other publications." *See id.*  However, Plaintiff acknowledges that "VDARE is not without detractors . . . [and] has repeatedly been tarred with pejoratives such as 'white nationalist,' and 'racist[']." *See id.* at ¶ 9.  "VDARE rejects these labels." *See id.*  Plaintiff argues that, "[w]hatever the views of VDARE's detractors, its speech is non-violent and lawful and protected by the First Amendment to the United States Constitution." *See id.*

Plaintiff states that the "[u]se of pejoratives to describe VDARE has led to significant reputational and professional harm for those associated with it.  On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services.  Venues which have agreed to host VDARE's conferences have faced pressure campaigns and threats.  Such venues have sometimes cancelled contracts with VDARE." *See id.* at ¶ 10.  Finally, Plaintiff asserts that, "[t]o protect its rights of speech and association, VDARE is vigilant about maintaining the privacy of those associated with it and does not disclose their identities unless required by law." *See id.* at ¶ 11.

On June 24, 2022, Defendant issued a subpoena to VDARE, identifying 44 categories of demanded documents.  *See id.* at ¶ 22.  Among other things, Defendant demanded "copies of

transcripts of each deposition in the litigation between Peter Brimelow and/or VDARE and the New York Times, and all documents produced by VDARE and/or Brimelow in connection with those proceedings." *See id.* at ¶ 23.  VDARE explained that "[t]his demand referred to a lawsuit for libel filed by Brimelow against the New York Times for calling him an 'open white nationalist,' which he is not." *See id.*

Thereafter, on July 20, 2022, after a meet-and-confer with Assistant Attorneys General on July 18, 2022, an attorney then advising VDARE on responding to Defendant's subpoena, requested in writing that she withdraw her subpoenas on grounds that they were pretexts aimed at VDARE's rights under the First Amendment to express positions critical of governmental officials and policy.  *See id.* at ¶ 24.  Defendant declined to withdraw the subpoenas.  *See id.*

In August 2022, before a revised return date, VDARE engaged new counsel and directed him to comply with Defendant's subpoena.  *See id.* at ¶ 25.  Defendant acknowledged new counsel's need to get up to speed and his competing commitments and requested that VDARE produce "very basic corporate records" to demonstrate its intent to comply in advance of a "rolling production."  *See id.*  Between September 19 and November 21, 2022, VDARE produced approximately 6,000 pages of documents in response to Defendant's subpoena to Plaintiff after completing review of documents that VDARE maintained electronically and in hard copy.  *See id.* at ¶ 25.

While making and before completing the production, VDARE advised Defendant of its position that production of the identities of many of its contractors would violate the First Amendment.  *See id.* at ¶ 26.  VDARE explained to Defendant that some of the contractors would face retribution if their association with VDARE were revealed and that VDARE otherwise risked losing services of contractors indispensable to its existence if their identities

were disclosed, as had happened in the past. *See id.* VDARE cited several cases to support its position. *See id.*

VDARE proposed that Defendant identify specific contractors about which she was concerned, and VDARE could otherwise identify any contractor that might qualify as a "related party" within the meaning of New York law. *See id.* at ¶ 27. VDARE expressed its desire to make as robust a production as possible, proposing that the issue of disclosure of contractors' identities could be revisited if it did not prove to be an adequate solution or if a specific need arose. *See id.* Defendant rejected VDARE's proposals and requested that VDARE further articulate its objection to disclosure of the identities of vendors. *See id.*

In a letter dated October 31, 2022, VDARE again articulated its objection to disclosure of the identities of contractors and requested that the parties meet and confer on the issue. *See id.* at ¶ 28. VDARE advised Defendant that the identities of its contractors were indispensable to its work and their identities were inextricably intertwined with financial records, including on lists of banking transactions and associated copies of checks. *See id.* VDARE also advised Defendant that the work of its counsel, a sole practitioner reviewing all of its documents himself, to provide documents with redactions was labor-intensive, time-consuming and ongoing. *See id.* VDARE proposed in its letter of October 31, 2022, that the parties meet and confer to determine if they could find at least a temporary resolution of the issue. *See id.*

In addition, in early October 2022, Defendant requested that VDARE provide a general outline of electronically-stored files (emails) that it would need to collect for review and produce and begin collecting. *See id.* at ¶ 30. VDARE did so, advising that the universe of such files amounted to more than 40 gigabytes of data, providing a list of email custodians, and otherwise keeping Defendant updated as to the status of the review. *See id.* According to VDARE, the

emails, like its paper documents contain information about the identities of contractors whose association with VDARE is not required for any legitimate oversight of VDARE by Defendant, and the disclosure of which would violate First Amendment protections and risk VDARE's existence.  *See id.*

On December 2, 2022, Defendant demanded VDARE's full compliance with its subpoena by December 12, 2022, or she would deem VDARE in non-compliance.  *See id.* at ¶ 32. Although VDARE advised Defendant of its concerns about unnecessary disclosure of identities of contractors, Defendant demanded that their identities be disclosed.  *See id.*  Furthermore, although Defendant had encouraged VDARE to make a rolling production as documents were reviewed, resulting in later decisions not to redact some information that had earlier been redacted, Defendant questioned the validity of VDARE's concerns.  *See id.*  Although VDARE had advised Defendant that redactions of identities of contractors were intertwined with its records and were otherwise time consuming and labor intensive to apply, Defendant demanded, by December 12, 2022, a log identifying each redaction of each contractor's identity in VDARE's production, and list prospective production of emails, as a precondition to meet-and-confer about VDARE's constitutional objection to unnecessary disclosure of identities of contractors.  *See id.* at ¶ 32.  Finally, VDARE contends that Defendant's position threatens its very existence and reveals that her targeting of VDARE is a pretext because she disagrees with its constitutionally-protected speech.  *See id.* at ¶ 33.

Based on these allegations, VDARE asserts the following causes of action: (1) declaratory relief under the First Amendment, i.e., a declaration that the subpoena's attempts to compel First Amendment speech and association rights are unconstitutional; (2) violation of VDARE's First and Fourteenth Amendment rights under § 1983 by retaliating against VDARE

based on its exercise of its rights of freedom of speech and association for which it seeks compensatory and punitive damages; (3) violation of VDARE's rights under Article I, Section 8 of the New York State Constitution by retaliating against VDARE based on its exercise of its rights of freedom of speech and association, for which it seeks compensatory and punitive damages; and (4) injunctions barring Defendant from enforcing her subpoena.

On December 14, 2022, two days after VDARE commenced the present action, Defendant petitioned New York State Supreme Court, pursuant to New York Not-for-Profit Corporation Law, Estates, Powers and Trusts Law, Executive Law and CPLR Article 4, *see* Dkt. No. 35-6, State Court Petition, at ¶ 9, for an Order (i) compelling VDARE to comply without delay with the June 23, 2022 subpoena; (ii) ordering all documents produced to be unredacted (except for agreed upon redactions to donor and volunteer information); and (iii) granting such other and further relief as it deems just, proper, and appropriate, *see id.* at ¶ 6.

In support of her petition, Defendant asserted that (1) the Subpoena was issued pursuant to a legally-authorized investigation for which there was a factual basis and that the requests in the Subpoena were reasonably related to the investigation; (2) VDARE had interposed no cognizable basis for delaying or withholding responsive document productions to Defendant; and (3) as a result, VDARE should be ordered to comply with the Subpoena without further delay. *See id.* at ¶¶ 29-31.

On January 18, 2023, Defendant filed the pending motion to dismiss in this Court. *See* Dkt. No. 12. The next day, January 19, 2023, the State Supreme Court heard oral argument and reserved decision on Defendant's petition. On January 23, 2023, the State Supreme Court issued a decision and order, in which it noted that the Subpoena sought documents (1) concerning VDARE's organizational structure; (2) compliance with conflict-of-interest policy requirements

under New York law and financial operations; (3) its purchase and conveyance of the Berkeley Springs Castle; and (4) transactions between VDARE and entities controlled by the Brimelows. *See* Dkt. No. 15, State Supreme Court Decision, at 6.  The State Supreme Court also noted that, although VDARE had originally taken "the position that the Subpoena was unlawful and should be withdrawn[, o]n September 19, 2022, new counsel for [VDARE] agreed to comply with the Subpoena but asserted that a significant volume of electronically-stored and hard copy documents needed to be reviewed." *See id.*  VDARE made its first production that day, consisting of 27 documents produced without Bates numbers and bearing unmarked redactions. *See id.*

The State Supreme Court further explained that, in the 12 weeks since its first September delivery, VDARE had produced "approximately 6,000 pages from its hard copy records . . . [and] had] redacted that material without any explanation for how the material was chosen for redaction." *See id.*  Defendant asserted that "the redactions [were] extensive and ha[d] been applied across almost every category of document produced, including board meeting minutes, bank statements, internal accounting ledgers, credit card statements, invoices, financial records for the limited liability company (Happy Penguins LLC) from which [VDARE] had historically leased Peter Brimelow's services, and bank statements to accounts held personally by Peter and Lydia Brimelow." *See id.*

Furthermore, the State Supreme Court noted that, "on October 23, 2022, Lydia Brimelow [had] represented that, with limited exceptions, [VDARE's] hard copy production was complete, and identified 22 unique email accounts containing approximately 40 gigabytes of potentially responsive electronically stored information." *See id.*  VDARE's counsel had originally "stated that review of that material would be completed by November 21, 2022.  [VDARE] subsequently

proposed December 12, 2022, as the new deadline for completing email production." *See id.* at 6-7.

The State Supreme Court further noted that, on December 2, 2022, Defendant wrote to VDARE, "summarizing [her] concerns with the pace and scope of production, including [VDARE's] extensive redactions, and demanded that [VDARE] complete its subpoena compliance and produce a redaction log by December 12, 2022." *See id.* at 9.

In response to the petition, VDARE moved for an Order dismissing the special proceeding or alternatively staying the proceeding pending resolution of VDARE's federal action. *See id.* (footnote omitted). The State Supreme Court granted Defendant's motion to compel and denied VDARE's motion for a stay or dismissal. *See id.*

In its Decision and Order, the State Supreme Court explained that "[t]he requirements for the issuance of an investigatory subpoena duces tecum" were as follows: "'(1) that the issuing agency has authority to engage in the investigation and issue the subpoena, (2) that there is an authentic factual basis to warrant the investigation, and (3) that the evidence sought is reasonably related to the subject of the inquiry.'" *See* Dkt. No. 15 at 8 (quoting *Evergreen Ass'n, Inc. v. Schneiderman*, 153 A.D.3d 87, 96 (2017) (quoting *Matter of Abrams v. Thruway Food Market & Shopping Center, Inc.*, 147 A.D.2d 143, 147, 541 N.Y.S.2d 856; citing *Matter of Levin v. Murawski*, 59 N.Y.2d 35, 462 N.Y.S.2d 836, 449 N.E.2d 730, and *Matter of A'Hearn v. Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 N.Y.2d 916, 298 N.Y.S.2d 315, 246 N.E.2d 166)).

The State Supreme Court found that "New York State ha[d] a public policy interest in ensuring the robust regulation of tax-exempt charitable entities like [VDARE], and [Defendant] ha[d] authority to supervise and investigate such entities when misconduct was suspected." *See*

*id.* at 9.  The State Supreme Court also found that Defendant's Subpoena was "focused on subject matter areas that f[e]ll within the statutory provisions that govern[ed] not-for-profit corporations."  *See id.*  Furthermore, the State Supreme Court noted that "[t]he Not-for-Profit Corporation Law [("N-PCL")] provide[d] that entities like VDARE may be formed only for charitable purposes . . . and that charitable assets may not be distributed to members, directors or officers, . . ."  *See id.* (internal citations omitted).  Moreover, the State Supreme Court found that "[c]haritable entities [were] also subject to express requirements under the N-PCL for lawful operation, including requirements for a process by which compensation is set, . . .; processes for acquisition and 'sale or other disposition' of property . . .; creating and presenting complete and accurate financial reports . . .; a process for considering related party transactions, . . .; and a process for managing conflicts of interest. . . ."  *See id.* (internal citations omitted).

The State Supreme Court concluded that "[t]he Subpoena requests demand[ed] the type of material that [would] permit [Defendant] to determine whether [VDARE] ha[d] complied with these requirements, including complete copies of [VDARE's] annual regulatory filings, financial transaction records, compensation records of Board meetings and review."  *See id.* at 9-10.  The State Supreme Court found these documents would "permit [Defendant] to determine whether there ha[d] been any diversion of charitable assets, [*e.g.*] through unlawful payments to for-profit corporations held by the Brimelows or other VDARE fiduciaries."  *See id.* at 10.  Furthermore, the State Supreme Court noted that "Article 7-A of the Executive Law authorize[d] [Defendant] to supervise charitable organizations that solicit in New York, and Article 7-A required [Defendant] to monitor such organizations to ensure that . . . a charity d[id] not solicit contributions under false pretenses or use the contributions it receive[d] in a manner that [was]

not 'substantially consistent' with the charity's stated purposes." *See id.* (citing Executive Law § 172-d).

In addition, the State Supreme Court noted that VDARE had "raised constitutional objections related to the First Amendment and therefore had the initial threshold burden to make a showing that production of the information sought would impair its First Amendment rights." *See id.* (citations omitted). The State Supreme Court, however, concluded that VDARE made "this argument on behalf of its donors and [Defendant] ha[d] agreed, initially, to redact donors' and volunteers' identities." *See id.* Thus, the State Supreme Court concluded that VDARE had "not established that the Subpoena would impair [its] own First Amendment rights." *See id.*

Additionally, the State Supreme Court found that VDARE's "filings . . . underscore[d] the reasonableness of the Subpoena." *See id.* VDARE "admit[ted] the critical facts that first triggered [Defendant's] scrutiny – Peter Brimelow, [VDARE's] founder and director, and his wife, Lydia Brimelow, also a director, [had] used and continue[d] to use a $1.4 million charitable asset as their personal residence." *See id.* at 10-11 (citing Frisch Aff. (Doc. No. 37)). The State Supreme Court noted that VDARE argued that "the Brimelows paid rent to live in the cottage beginning in April 2021, however, the lease [was] between Lydia Brimelow and BBB, LLC, a West Virginia for-profit corporation that she manage[d], and Lydia Brimelow [had] signed the document as both landlord and tenant." *See id.* (citing Frisch Aff. Ex. H (Doc. No. 45); Fuchs Aff. Ex. L (BBB, LLC registration showing Lydia Brimelow as manager)).

The State Supreme Court also found that VDARE's motion and accompanying papers fail[ed] to meet its burden of establishing the Subpoena's invalidity" and that VDARE, "which ha[d] partially complied with the [S]ubpoena for months, ha[d] not established why providing a redaction log for its already-produced documents raise[d] any First Amendment concerns or why

continuing production would pose a threat to its existence." *See id.*  The State Supreme Court stated that, although VDARE argued "that redactions [were] required to protect the identities of contractors – including writers who contribute[d] to the website – these were precisely the records [Defendant sought] to examine in [her] investigation of [VDARE's] alleged organizational misconduct." *See id.*  The State Supreme Court noted that, "[t]o the extent anonymity is used to make violations of law, 'it is unprotected by the First Amendment.'" *See id.* (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)).

The State Supreme Court also addressed the fact that "the only board member among four who [was] not a Brimelow family member was a known contributor." *See id.*  The State Supreme Court found that Defendant could "probe this contributor's compensation as part of [her] investigation of conflicts of interest and board independence." *See id.*  The State Supreme Court also found that Defendant could "seek the identities of other contributors to determine whether further conflicts of interest [might] exist." *See id.*

In addition, the State Supreme Court found VDARE's reliance on *Americans for Prosperity Found. v. Bonita*, 141 S. Ct. 2373 (2021), unavailing because "[t]hat decision concerned only donor disclosures in statewide annual filing requirements, while expressly permitting subpoenas seeking the same information as part of a targeted investigation." *See id.* at 11-12 (citing *Ams. for Prosperity Found.*, 141 S. Ct. at 2386-87).  Moreover, the State Supreme Court noted that Defendant had "indicated a willingness to enter into a stipulation/order of confidentiality to further address any of [VDARE's] concerns.  *See id.* at 12.  Finally, the State Supreme Court found that VDARE had not presented any "compelling basis for a stay of [the] special proceeding in its moving papers and acknowledged at oral argument that it had not sought a stay of this proceeding from the Federal District Court." *See id.*

Based on these findings, the State Supreme Court ordered VDARE to "comply with the Subpoena, subject to the agreement of July 27, 2022 . . . that VDARE may redact the following from otherwise responsive material: (i) the names of any actual or anticipated private (nonVDARE) attendees present at VDARE events conducted at or broadcast from the 276 Cacapon Road, Berkley Springs, West Virginia Property; and (ii) donor-identifying information in any responsive record of private contributions to the organization and/or purchases from the October 16, 2021 'Castle Auction' (transaction amounts, dates, and other details must be disclosed)"; and "such redactions [were] without prejudice to [Defendant's] right to seek modification of these agreed redaction terms by written application to the Court on notice to VDARE"; and "on or before February 10, 2023, VDARE shall re-produce all hard copy documents previously produced to [Defendant], in a revised form that bears only those redactions outlined in the preceding paragraph or any additional redaction identified by VDARE in a written log that complies with the requirements of CPLR 3122(b); this production shall be accompanied by simultaneous delivery of the corresponding CPLR 3122(b) log"; and "on or before February 24, 2023, VDARE shall provide a written log that complies with the requirements of CPLR 3122(b) to identify the redactions, if any, applied to such production[.]" *See id.* at 12-13.  Finally, the State Supreme Court directed that "the parties, if so advised, [might] forthwith enter into a Stipulation for the Production of Confidential Information pursuant to this order and submit said stipulation to be so-ordered by the court[.]" *See id.* at 13.

After the State Supreme Court entered its Order, VDARE moved for a stay and interim relief pending appeal.  *See generally* Dkt. No. 35-10, VDARE's motion for a stay.  As grounds for its motion, VDARE argued that (1) Defendant's demand for immediate disclosure of constitutionally protected information extraneous to any legitimate investigative need warranted

the inference that Defendant's pursuit of VDARE was retaliation for VDARE's exercise of its constitutional rights, *see id.* at 8-15; (2) Defendant's erroneous challenge to the first-filed rule, *see id.* at 15-18; and (3) the State Supreme Court had unduly deferred to Defendant at the expense of VDARE's right to seek redress in federal court for the state's unconstitutional retaliation and demand for disclosure of constitutionally protected information extraneous to any truly overriding investigative need, *see id.* at 18-25.

In opposition to VDARE's motion for a stay, Defendant argued that the court should deny the stay pending appeal because VDARE was unlikely to succeed on the merits of its appeal; equitable factors weighed against staying the Supreme Court's Order that VDARE comply with its outstanding Subpoena obligations, *i.e.*, VDARE would not be harmed – irreparably or otherwise – by complying with that Order and the relative hardships of the parties weighed in favor of denying VDARE's application. *See generally* Dkt. No. 35-11. On March 23, 2023, New York State Court, Appellate Division, First Department denied VDARE's motion for a stay pending appeal. *See generally* Dkt. No. 35-12.

On March 21, 2023, Plaintiff filed a motion requesting that this Court enter a Temporary Restraining Order or, in the alternative, a preliminary injunction. *See* Dkt. No. 29. After consulting with counsel, the Court denied the motion for a Temporary Restraining Order, *see* Dkt. No. 32, and issued a scheduling order for Defendant to file its opposition to Plaintiff's motion for a preliminary injunction and for Plaintiff to file its reply to Defendant's opposition. *See id.* After the briefing was complete and the Court had reviewed the parties' submissions, the Court issued a Memorandum-Decision and Order, dated June 27, 2023, denying VDARE's motion for a preliminary injunction. *See* Dkt. No. 50. In that Memorandum-Decision and Order, the Court also ordered that each of the parties could supplement their prior submissions

supporting or opposing Defendant's motion to dismiss to address the issue of the effect of *res judicata* on that motion within 30 days. *See id.* Both parties filed their submissions on July 27, 2023. *See* Dkt. Nos. 51, 52. On that same date, VDARE filed a Notice of Appeal regarding this Court's denial of its motion for a preliminary injunction. *See* Dkt. No. 53.[1]

### III. DISCUSSION

Defendant has moved to dismiss VDARE's complaint based on *res judicata* and for failure to state a claim. The Court will address the parties' *res judicata* arguments first.

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached to or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine S.A. v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citation omitted). In addition, the court "'may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.'" *Simpson v. Melton-Simpson*, No. 10 Civ. 6347 (NRB), 2011 WL 4056915, *2 (S.D.N.Y. Aug. 29, 2011) (quoting *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels and Resorts, Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)) (other citation omitted); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (noting that courts may take judicial notice of state-court judgments and filings); *Staehr v. Hartford Fin. Servs. Grp., Inc.* 547 F.3d 406, 426 (2d Cir. 2008) (holding that matters judicially noticed by a court "are not considered matters outside the pleadings" (citation omitted)).

---

[1] According to the Second Circuit's Docket for this case, VDARE's brief is due on November 8, 2023. *See VDARE Found., Inc. v. James*, No. 23-1084, Dkt. No. 23.

In its previous Memorandum-Decision and Order, in which it denied VDARE's motion for a preliminary injunction, the Court addressed the necessary elements for a *res judicata* defense. *See* Dkt. No. 50. As the Court explained, "[t]o determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state[,]" in this case New York. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) (citations omitted). Under New York's doctrine of *res judicata*, "a disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding[.]" *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d 945, 946 (2d Dep't 2016) (citations omitted). Therefore, because Defendant is invoking *res judicata* as a defense in opposition to VDARE's motion to dismiss, she must show that "'(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *TechnoMarine SA*, 758 F.3d at 499 (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

In this case, there can be no dispute that the State Supreme Court entered a final judgment when it compelled VDARE to comply with Defendant's Subpoena. *See Trump v. Jones*, No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951, *16 (N.D.N.Y. May 27, 2022) (explaining that "[t]he 'final judgment on the merits' requirement may . . . be satisfied by a 'final order in a special proceeding [which] conclusively determine[s] every question at issue therein'" (quoting [*Bannon*, 270 N.Y.] at 489-90, 1 N.E.2d 975 ("The essential element of a conclusive adjudication is finality of the proceedings. A judicial decision can constitute a conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had

- 16 -

jurisdiction to render an irrevocable and final decision upon such question.")) (other citations omitted).  In this case, the State Supreme Court had jurisdiction to conduct a special proceeding in which Defendant sought an Order compelling VDARE to comply with her Subpoena. Furthermore, the State Supreme Court granted Defendant's request and ordered VDARE to comply with that subpoena, which was a final order and, thus, should be given *res judicata* effect.  *See Aziz v. Butt*, 156 N.Y.S.3d 832, 73 Misc. 3d 1233A (Sup. Ct. Westchester Cty. 2021) (giving *res judicata* effect to prior special proceeding).

Furthermore, there is no dispute that the parties in the state-court action and in this action are the same – VDARE and the Attorney General of the State of New York.  Thus, the only dispute is whether the causes of action that VDARE raises in this action arise out of the same transaction or series of transactions as the causes of action that either were raised or could have been raised in the state-court proceeding.[2]

Under New York's transactional analysis approach, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Trump*, 2022 WL 1718951, at *18 (quoting [*O'Brien*, 54 N.Y.2d at 357]).  To determine whether claims arise out of the same transaction or series of transactions, a court must analyze "'whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111-12, 170 N.E.3d 733 (2021) (citations and internal quotation marks omitted)).

---

[2] The Court notes that VDARE incorrectly argues that *res judicata* requires that the causes of action in the two proceedings must be the same and must seek the same relief.

In this action, VDARE raises four claims: (1) a declaration that Defendant's Subpoena's attempt to compel First Amendment speech and associational rights is unconstitutional; (2) a claim that Defendant violated its First Amendment rights by retaliating against it based on its exercise of its rights of freedom of speech and association and that her Subpoena is an offshoot of Defendant's targeting of VDARE because of its viewpoints;[3] (3) a claim that Defendant violated its rights under Article I, Section 8 of the New York State Constitution by retaliating against it based on its exercise of its rights of freedom of speech and association;[4] and (4) injunctive relief barring Defendant from enforcing her unconstitutional demands. *See generally* Complaint.

All of VDARE's claims in this action arise out of Defendant's investigation into VDARE and her issuance of a Subpoena seeking certain documents as part of that investigation. Likewise, the state-court action involved the same investigation and the issue of whether VDARE should be compelled to provide certain documents to Defendant as part of that investigation. Thus, the Court concludes that the claims in this action clearly arise out of the

---

[3] The Court notes that the only Defendant in this action is the New York State Attorney General, whom VDARE has sued in her official capacity. In Count Two, VDARE seeks compensatory and punitive damages against Defendant for violations of its First Amendment rights. However, the Eleventh Amendment bars such claims. *See Lewis v. Stango*, No. 3:22-cv-1248 (OAW), 2023 WL 4684666, *10 (D. Conn. July 21, 2023) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))

[4] The Court notes that, in Count Three, VDARE seeks compensatory and punitive damages against Defendant for violating its rights under Article I, Section 8 of the New York State Constitution by retaliating against it based on exercise of its rights of freedom of speech and association. However, "[s]overeign immunity bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought." *Alleyne v. New York State Educ. Dep't*, 691 F. Supp. 2d 322, 335 (N.D.N.Y. 2010) (Sharpe, J.) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (finding sovereign immunity bars federal courts from adjudicating state claims against the state); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988); *Diamond v. Pataki*, No. 03 Civ. 4642, 2007 WL 485962, at *7 (S.D.N.Y. Feb. 14, 2007)).

same transaction or series of transactions as the claims involved in the State Supreme Court proceeding.

The Court also notes that there is no reason why, if VDARE believed that Defendant's Subpoena was overbroad or unconstitutional, it could not have brought a motion to quash or vacate that Subpoena in State Supreme Court challenging the validity of Defendant's Subpoena or her authority to issue that Subpoena. Rather than do so, however, VDARE at least initially, partially complied with the Subpoena. Moreover, in response to Defendant's filing of the special proceeding in State Supreme Court to compel VDARE to comply fully with the Subpoena, VDARE could have, and did, raise many of the same issues in opposition to certain aspects of the Subpoena, including its constitutionality.

For all of the above-stated reasons, the Court concludes that *res judicata* bars the Court from considering VDARE's claims in this action.

### IV. CONCLUSION

Having reviewed the entire file in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint, *see* Dkt. No. 12, is **GRANTED**; and the Court further

**ORDERS** that VDARE's motion for an injunction pending appeal, *see* Dkt. No. 56, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 13, 2023
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge